PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

ALEXANDER C. DRYLEWSKI (admitted *pro hac vice*)
alexander.drylewski@skadden.com
SHAUD G. TAVAKOLI (admitted *pro hac vice*)
shaud.tavakoli@skadden.com
KYLE J. SCHWARTZ (admitted *pro hac vice*)
kyle.schwartz@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:   (212) 735-3000
Facsimile:    (212) 735-2000

*Attorneys for Defendants*
YUGA LABS, INC., WYLIE ARONOW, GREG SOLANO,
KEREM ATALAY, ZESHAN ALI, NICOLE MUNIZ,
JASMIN SHOEMAKER, PATRICK EHRLUND,
CHRISTOPHER LYONS, and GUY OSEARY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> YUGA LABS, INC., et al., <br><br> Defendants. | CASE NO.: 2:22-cv-08909-FMO-PLA <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;** <br><br> **FILED UNDER SEPARATE COVER:** <br><br> **(1) [PROPOSED] ORDER.** <br><br> Judge: Hon. Fernando M. Olguin <br> Complaint Filed: December 8, 2022 <br> Courtroom: 6D <br> Date: November 30, 2023 <br> Time: 10:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D, located at 350 West First Street, Los Angeles, California 90012, Defendants Yuga Labs, Inc. ("Yuga Labs"), Wylie Aronow ("Aronow"), Greg Solano ("Solano"), Kerem Atalay ("Atalay"), Zeshan Ali ("Ali"), Nicole Muniz ("Muniz"), Jasmin Shoemaker ("Shoemaker"), Patrick Ehrlund ("Ehrlund"), Christopher Lyons ("Lyons"), and Guy Oseary ("Oseary") (collectively, "Yuga Labs Defendants") will, and hereby do, present for hearing by the Court, the Honorable Fernando M. Olguin presiding, this Motion to Dismiss the First Amended Class Action Complaint (the "Motion").

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on September 1, 2023. The Motion seeks dismissal with prejudice of the First Amended Class Action Complaint (the "Amended Complaint" or "AC") brought by Lead Plaintiffs Johnny Johnson ("Johnson"), Ezra Boekweg ("Boekweg"), and Mario Palombini ("Palombini"), and Named Plaintiff Adam Titcher ("Titcher") (collectively, "Plaintiffs"), for failure to state a claim upon which relief may be granted, lack of standing, and, with respect to certain Defendants, lack of personal jurisdiction.

This Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), 12(b)(2), 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 ("PSLRA"), and is based on the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

Pursuant to the Court's Order dated August 14, 2023 (ECF 125), Defendants Alexis Ohanian ("Ohanian"), Amy Wu ("Wu"), Maaria Bajwa ("Bajwa"), Mike Winkelmann ("Winkelmann"), Madonna Louise Ciccone ("Ciccone"), Paris Hilton ("Hilton"), James Fallon ("Fallon"), Electric Hot Dog, Inc. ("EHD"), Universal Television, LLC ("Universal"), Justin Bieber ("Bieber"), Kevin Hart ("Hart"),

1  Wardell Stephen Curry II ("Curry"), adidas America Inc. ("adidas America"), adidas

2  Ventures B.V. ("adidas Ventures"), Ivan Soto-Wright ("Soto-Wright"), and MoonPay

3  USA LLC ("MoonPay") are concurrently filing Motions to Dismiss and, to the extent

4  set forth in their respective Memoranda of Points and Authorities, join in some or all

5  of the Yuga Labs Defendants' arguments herein. The Yuga Labs Defendants likewise

6  join in all other defendants' arguments, including those of Sotheby's Holdings Inc.

7  ("Sotheby's"), to the extent they apply to the Yuga Labs Defendants. The Yuga Labs

8  Defendants, together with all the foregoing defendants, are referred to herein as the

9  "Moving Defendants."

10  DATED:  September 12, 2023

11                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

12

13                  By:  _____
                                    */s/Peter B. Morrison*
14                                PETER B. MORRISON

15                              *Attorneys for Defendants*
                        Yuga Labs, Inc., Wylie Aronow, Greg Solano,
16                      Kerem Atalay, Zeshan Ali, Nicole Muniz,
                        Jasmin Shoemaker, Patrick Ehrlund,
17                      Christopher Lyons, and Guy Oseary

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................vi

I.    PRELIMINARY STATEMENT ...................................................................1

II.   FACTUAL BACKGROUND .........................................................................6

    A.    The Parties ..........................................................................................6

    B.    The Products .......................................................................................7

    C.    The Disjointed Alleged "Schemes" ..................................................8

          1.    The Sotheby's Auction ............................................................8

          2.    Alleged Trading "Manipulation".............................................8

          3.    Celebrity "Promotions"...........................................................9

    D.    Plaintiffs' Alleged Reliance ..............................................................9

    E.    The So-Called "Dump" .....................................................................9

III.  ARGUMENT................................................................................................10

    A.    Plaintiffs Fail To State a Claim Under Section 10(b) of the
          Exchange Act (Counts 7-8) ............................................................10

          1.    The Amended Complaint Fails Because It Is a "Shotgun
                Pleading" ...............................................................................10

          2.    Plaintiffs Do Not Plead an Actionable "Scheme" To
                Defraud (Count 8) .................................................................11

                (a)    Plaintiffs Do Not Plead an Actionable Manipulative
                        Trading Scheme ..........................................................11

                (b)    Plaintiffs Do Not Plead an Actionable Auction
                        Scheme ........................................................................13

                (c)    Plaintiffs Do Not Plead a "Celebrity Promotions"
                        Scheme ........................................................................13

          3.    Plaintiffs Do Not Plead Any Actionable Misstatement or
                Omission Against Any Executive Defendant (Count 7) .............15

                (a)    "Members-Only Benefits" Tweets ...................................15

                (b)    "High School Dropout" Tweet .........................................16

                (c)    "Leaked" Pitch Deck.......................................................17

                (d)    Purported Omissions.......................................................18

iii

4. Plaintiffs Do Not Plead Scienter ..................................................18

    (a) Plaintiffs Impermissibly Rely on Group Pleading ............19

    (b) Plaintiffs Do Not Allege Access to or Knowledge of Contrary Information ......................................................19

    (c) Plaintiffs Do Not Allege Any Motive To Defraud............21

5. Plaintiffs Do Not Plead Loss Causation ....................................22

6. Plaintiffs Do Not Plead Reliance.................................................24

B. Plaintiffs Fail To State a Claim Under Sections 5 and 12(a)(1) of the Securities Act (Count 4) ....................................................25

    1. Plaintiffs Do Not Allege That Any Yuga Labs Defendant Is a "Statutory Seller" ...............................................................26

        (a) No Passing of Title .........................................................26

        (b) No "Successful Solicitation"...........................................26

            (i) None of Plaintiffs' Allegations Constitutes Solicitation................................................................27

            (ii) Plaintiffs Do Not Allege Any "Successful" Solicitation................................................................29

            (iii) Plaintiffs Do Not Plead Financial Motivation ........30

    2. Plaintiffs' Section 12(a)(1) Claim Is Time-Barred ....................30

C. Plaintiffs Fail To State a Claim Under Section 15 of the Securities Act or Section 20(a) of the Exchange Act (Counts 5 and 9) ...............31

D. Plaintiffs Do Not Plead a Domestic Transaction Under *Morrison* ........31

E. Plaintiffs Fail To State a Claim for Violations of the California Unfair Competition Law ("UCL") (Counts 1-3)...................................32

    1. Plaintiffs Lack Standing...............................................................33

    2. Plaintiffs Fail To Plead Recoverable Remedies........................33

    3. Plaintiffs Do Not Allege Direct Economic Injury......................34

    4. Plaintiffs Do Not Plead Unlawful, Unfair, or Fraudulent Acts ..........................................................................................34

    5. The UCL Does Not Apply to Alleged "Securities" ...................35

F. Plaintiffs Fail To State a Qualification Claim Under Sections 25110 and 25503 of the California Corporations Code (Count 6) ........36

iv

1.       No Alleged Acquisition From Any Yuga Labs Defendant .........36

2.       No Alleged Acquisition in an "Issuer Transaction"...................36

3.       No Alleged Purchases in California ...........................................37

4.       Plaintiffs' Qualification Claim Is Time-Barred .......................37

G.    Plaintiffs Fail To State a Misrepresentation or "Manipulation"
      Claim Under Sections 25400-01 and 25500-01 of the California
      Corporations Code (Counts 10 and 11) .............................................38

H.    Plaintiffs Fail To State a Secondary Liability Claim Under
      Sections 25403(b), 25504, and 25504.1 of the California
      Corporations Code (Count 12) ...........................................................38

I.     Plaintiffs Fail To State a Claim for Unjust Enrichment (Count 13) ......39

J.     Plaintiffs Lack Standing To Pursue California Claims Regarding
      BAYC, BAKC and ApeCoin ...............................................................39

K.    Plaintiffs Cannot Pursue California State Law Claims on Behalf
      of a Nationwide Class ........................................................................40

L.     The Court Should Decline To Exercise Pendent Personal
      Jurisdiction With Respect to Plaintiffs' State Law Claims ..................41

IV.    CONCLUSION .........................................................................................42

CERTIFICATE OF COMPLIANCE................................................................44

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aleksick v. 7–Eleven, Inc.*,
    140 Cal.Rptr.3d 796 (2012) ........................................................................35

*Anderson v. Binance*,
    No. 1:20-cv-2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) .........31

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
    158 Cal.App.4th 226 (2007) .......................................................................36

*In re Apple Processor Litigation.*,
    No. 18-cv-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022) . 34, 35, 39

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ......................................................................39

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .........................................................................12

*In re Autodesk, Inc. Securities Litigation*,
    132 F.Supp.2d 833 (N.D. Cal. 2000) ..........................................................20

*In re Bank of America Corp.*,
    No. 09-md-02014 JSW, 2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ......11, 12

*Bergeron v. Monex Deposit Co.*,
    No. SACV 17-1968 JVS, 2020 WL 3655495 (C.D. Cal. Apr. 29, 2020) ........33

*In re Bibox Group Holdings Ltd. Securities Litigation*,
    534 F.Supp.3d 326 (S.D.N.Y. 2021) ......................................................37, 38

*Billion International Trading Inc. v. University Sportswear Inc.*,
    No. 12-CV-06705-BRO, 2013 WL 12403059 (C.D. Cal. Dec. 27, 2013).......42

*BMA LLC v. HDR Global Trading Ltd.*,
    No. 20-cv-03345-WHO, 2021 WL 949371 (N.D. Cal. Mar. 12, 2021)...........12

*Bowden v. Robinson*,
    67 Cal.App.3d 705 (1977).........................................................................36

*Bowen v. Ziasun Technologies, Inc.*,
    116 Cal.App.4th 777 (2004)........................................................................35

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. 255 (2017)....................................................................................42

*Brody v. Homestore, Inc.*,
    No. CV02-08068FMCJWJX, 2003 WL 22127108
    (C.D. Cal. Aug. 8, 2003) ............................................................................28

*Brody v. Transitional Hospitals Corp.*,
    280 F.3d 997 (9th Cir. 2002).......................................................................18

*California Public Employees' Retirement System v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)...........................................................................5

*In re Calpine Corp. Securities Litigation*,
    288 F.Supp.2d 1054 (N.D. Cal. 2003).........................................................12

*Carol Gamble Trust 86 v. E-Rex, Inc.*,
    84 F.App'x 975 (9th Cir. 2004).....................................................................25

*Carpenter v. PetSmart, Inc.*,
    441 F.Supp.3d 1028 (S.D. Cal. 2020) ..........................................................42

*Chapman v. Pier 1 Imports (United States) Inc.*,
    631 F.3d 939 (9th Cir. 2011).........................................................................33

*Chu v. Fay Servicing, LLC*,
    No. 16-cv-04530-KAW, 2016 WL 5846990 (N.D. Cal. Oct. 6, 2016) ...........34

*Cowan v. Goldcorp*,
    No. CV 16-6391 FMO, 2017 WL 5495734 (C.D. Cal. Sept. 6, 2017) ..... *passim*

*Crago v. Charles Schwab & Co.*,
    No. 16-cv-03938-RS, 2017 WL 2540577 (N.D. Cal. June 12, 2017) .......24, 25

*Cullen v. Shutterfly Lifetouch, LLC*,
    No. 20-cv-06040-BLF, 2021 WL 2000247 (N.D. Cal. May 19, 2021) ....10, 11,
    40

*In re Cutera Securities Litigation*,
    610 F.3d 1103 (9th Cir. 2010).......................................................................16

*Daimler AG v. Bauman*,
      571 U.S. 117 (2014) ................................................................................ 41

*In re Daou Systems, Inc.*,
      411 F.3d 1006 (9th Cir. 2005), *abrogated on other grounds
      by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ...................... 27

*Dietrich v. Bauer*,
      76 F.Supp.2d 312 (S.D.N.Y. 1999) ................................................................ 36

*In re Downey Securities Litigation*,
      No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........... 22

*Drake v. Toyota Motor Corp.*,
      No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125
      (C.D. Cal. Nov. 23, 2020) ............................................................................ 39

*In re Ethereummax Investor Litigation*,
      No. CV 22-00163-MWF, slip op. (C.D. Cal. June 6, 2023) ........................... 35

*In re Facebook, Inc. Securities Litigation*,
      477 F.Supp.3d 980 (N.D. Cal. 2020) ............................................................ 18

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*,
      532 F.Supp.3d 956 (S.D. Cal. 2021) ............................................................ 39

*Ferraro Family Foundation, Inc. v. Corcept Therapeutics Inc.*,
      501 F.Supp.3d 735 (N.D. Cal. 2020) ............................................................ 14

*Friel v. Dapper Labs, Inc.*,
      No. 21 Civ. 5837 (VM), 2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) ............. 1

*In re FVC.com Securities Litigation*,
      32 F.App'x 338 (9th Cir. 2002) .................................................................... 21

*Gershman v. Bayer HealthCare LLC*,
      No. 14-cv-05332-HSG, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ........... 40

*Goldberg v. Rome McGuigan, P.C.*,
      No. CV 20-9958-JFW, 2021 WL 3520725 (C.D. Cal. Apr. 23, 2021) ........... 41

*Goldstein v. General Motors LLC*,
      445 F.Supp.3d 1000 (S.D. Cal. 2020) .......................................................... 39

*Grundstrom v. Wilco Life Insurance Co.*,
  No. 20-cv-03445-MMC, 2022 WL 2390992 (N.D. Cal. July 1, 2022) ..........34

*Hadley v. Kellogg Sales Co.*,
  243 F.Supp.3d 1074 (N.D. Cal. 2017) ...........................................................35

*Hall v. SeaWorld Entertainment, Inc.*,
  747 F.App'x 449 (9th Cir. 2018) ....................................................................35

*Hashem v. NMC Health PLC*,
  No. CV 20-2303 CBM, 2021 WL 5926133 (C.D. Cal. Nov. 1, 2021) ...........25

*Hollifield v. Resolute Capital Partners Ltd., LLC*,
  No. 2:22-cv-07885-SB-RAO, 2023 WL 4291524
  (C.D. Cal. May 12, 2023) .................................................................. 27, 29, 36

*Holsworth v. BProtocol Foundation*,
  No. 20 Civ. 2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ..........29

*In re iAnthus Capital Holdings, Inc. Securities Litigation*,
  No. 20-cv-3135 (LAK), 2021 WL 3863372 (S.D.N.Y. Aug. 30, 2021) ..........32

*Ibarra v. Pharmagenics LLC*,
  No. SACV 23-00116-CJC, 2023 WL 2445397 (C.D. Cal. Mar. 8, 2023) .......33

*In re Inogen, Inc. Securities Litigation*,
  No. CV 19-1643 FMO, slip op. (C.D. Cal. Aug. 13, 2021) ...........................19

*Jackson v. Fischer*,
  931 F.Supp.2d 1049 (N.D. Cal. 2013) ...........................................................38

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).......................................................... 13, 14, 16, 17

*Johnson v. Commission on Presidential Debates*,
  No. SA CV 12-1600 FMO, 2014 WL 12597805 (C.D. Cal. Jan. 6 2014).......42

*Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*,
  No. C-97-4618 MHP, 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ...........38

*Kalin v. Semper Midas Fund, Ltd.*,
  No. 4:21-cv-01062-YGR, 2021 WL 5906053 (N.D. Cal. Dec. 14, 2021).......42

*Kang v. PayPal Holdings, Inc.*,
  620 F.Supp.3d 884 (N.D. Cal. 2022).............................................................15

ix

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)................................................................32, 35

*Klaehn v. Cali Bamboo LLC*,
    No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ...........................39

*In re Lehman Brothers Securities & ERISA Litigation*,
    903 F.Supp.2d 152 (S.D.N.Y. 2012) ...........................................................36

*LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*,
    622 F.Supp.3d 935 (S.D. Cal. 2022) ............................................................31

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016)......................................................................24

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014)........................................................................23

*Lorentzen v. Kroger Co.*,
    532 F.Supp.3d 901 (C.D. Cal. 2021) ...........................................................39

*Lorenzo v. S.E.C.*,
    139 S.Ct. 1094 (2019) ..................................................................................17

*Louisiana Pacific Corp. v. Money Market 1 Institutional Investment Dealer*,
    No. C 09-03529 JSW, 2011 WL 1152568 (N.D. Cal. Mar. 28, 2011) ...........25

*Lubin v. Sybedon Corp.*,
    688 F.Supp. 1425 (S.D. Cal. 1988) ..............................................................37

*McGee v. American Oriental Bioengineering, Inc.*,
    No. 12-cv-5476 FMO, 2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)....18, 19

*McGovney v. Aerohive Networks, Inc.*,
    367 F.Supp.3d 1038 (N.D. Cal. 2019).....................................................15, 17

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996)..........................................................................5

*Meeco Manufacturing Co. v. True Value Co.*,
    No. C06-1582RSL, 2007 WL 1051259 (W.D. Wash. Apr. 4, 2007) .............35

*Melot v. JAKKS Pacific, Inc.*,
    No. LA CV13-05388 JAK, 2014 WL 12589334
    (C.D. Cal. June 6, 2014)...............................................................................17

x

*Melvin v. Brayshaw*,
    No. EDCV 19-712 JGB, 2019 WL 6482220 (C.D. Cal. Oct. 3, 2019)............32

*Menora Mivtachim Insurance Ltd. v. Frutarom Industries Ltd.*,
    54 F.4th 82 (2d Cir. 2022)...................................................................18

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)....................................................1, 20

*MGA Entertainment, Inc. v. Cabo Concepts Ltd.*,
    No. CV 20-10170 FMO, 2021 WL 4733784 (C.D. Cal. June 7, 2021)..........42

*Mirkin v. Wasserman*,
    5 Cal.4th 1082 (1993) .........................................................................36

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)....................................................................4, 31

*Moser v. Benefytt, Inc.*,
    8 F.4th 872 (9th Cir. 2021)................................................................42

*Mosqueda v. American Honda Motors Co.*,
    443 F.Supp.3d 1115 (C.D. Cal. 2020) ............................................40

*In re Nektar Therapeutics Securities Litigation*,
    34 F.4th 828 (9th Cir. 2022)...............................................................1

*In re Nektar Therapuetics*,
    No. 18-cv-06607-HSG, 2020 WL 3962004 (N.D. Cal. July 13, 2020) ..........22

*In re NJOY, Inc. Consumer Class Action Litigation*,
    No. CV 14-00428 MMM, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014)......33

*In re NVIDIA Corp.Securities Litigation*,
    768 F.3d 1046 (9th Cir. 2014)...........................................................18

*In re Okta, Inc. Securities Litigation*,
    No. 22-cv-02990-SI, 2023 WL 2749193 (N.D. Cal. Mar. 31, 2023) .............19

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014)....................................... 10, 19, 22, 24

*In re Paypal Holdings, Inc.*,
    No. 3:17-CV-02206-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018)............18

xi

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)........................................................42

*Pino v. Cardone Capital, LLC*,
    55 F.4th 1253 (9th Cir. 2022)........................................ 26, 27, 28, 29

*Pinter v. Dahl*,
    486 U.S. 622 (1988)..............................................................*passim*

*Pitt v. Metropolitan Tower Life Insurance Co.*,
    No. 18-cv-06609-YGR, 2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ............14

*Plumley v. Sempra Energy*,
    No. 3:16-cv-00512-BEN-AGS, 2017 WL 2712297
    (S.D. Cal. June 20, 2017) ..............................................................15

*Police Retirement System Of Street Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)........................................................16

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)........................................ 18, 19, 21

*Rain Design, Inc. v. Spinido, Inc.*,
    No. 17-cv-03681-JSC, 2018 WL 4904894 (N.D. Cal. Oct. 9, 2018) ........41, 42

*Reed v. Amira Nature Foods Ltd.*,
    No. CV 15-0957 FMO, 2016 WL 6571281
    (C.D. Cal. July 18, 2016) ............................................ 2, 10, 19, 22

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.
    Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017)........................................................10

*Rhynes v. Stryker Corp.*,
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011)....................34

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    No. C 09-00546 JSW, 2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ............11

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012)....................................................22, 31

*Risley v. Universal Navigation*,
    No. 22 Civ. 2780 (KPF),
    2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ..........................................28, 30

*Ryder International Corp. v. First American National Bank*,
    943 F.2d 1521 (11th Cir. 1991) .....................................................................27

*Salameh v. Tarsadia Hotels*,
    No. 09CV2739 DMS, 2010 WL 2839013 (S.D. Cal. July 20, 2010) ........28, 29

*Schmitt v. Younique LLC*,
    No. SACV 17-1397 JVS, 2017 WL 10574060 (C.D. Cal. Dec. 4, 2017)........40

*Schuman v. Microchip Technology Inc.*,
    372 F.Supp.3d 1054 (N.D. Cal. 2019) ...........................................................33

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .........................................................................41

*Scognamillo v. Credit Suisse First Boston LLC*,
    No. C03-2061 TEH, 2005 WL 2045807 (N.D. Cal. Aug. 25, 2005),
    *aff'd* 254 F.App'x 669 (9th Cir. 2002) ..........................................................38

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F.Supp.3d 1213 (C.D. Cal. 2015) .............................................. 12, 24, 25

*Securites Exchange Commission v. Levine*,
    462 F.App'x 717 (9th Cir. 2011) ...................................................................31

*Securites Exchange Commission v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) .............................................................................13

*Sharp v. Arena Pharmaceuticals, Inc.*,
    No. 10-cv-2111-CAB, 2013 WL 12094819 (S.D. Cal. Mar. 29, 2013)...........38

*Siegal v. Gamble*,
    No. 13-cv-03570-RS, 2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) .............37

*Sneed v. AcelRx Pharmaceuticals, Inc.*,
    No. 21-cv-04353-BLF, 2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) ....13, 14

*Sollberger v. Wachovia Secs., LLC*,
    No. SACV 09-0766 AG, 2010 WL 2674456 (C.D. Cal. June 30, 2010)...10, 11

xiii

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)..........................................................34

*State Treasurer of Michigan v. Countrywide Financial Corp.*,
    No. CV-11-00809-MRP-MAN, 2011 WL 13220150
    (C.D. Cal. Aug. 22, 2011) ............................................................26

*Stearns v. Select Comfort Retail Corp.*,
    763 F.Supp.2d 1128 (N.D. Cal. 2010)..........................................32

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018)...................................................31, 32

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................2, 19

*Tellone Professional Center LLC v. Allstate Insurance Co.*,
    No. 8:19-cv-02479-JLS-KES, 2021 WL 1254360
    (C.D. Cal. Jan. 26, 2021) .............................................................33

*In re Tezos Securities Litigation*,
    No. 17-cv-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)..............29

*In re Tibco Software, Inc. Securities Litigation*,
    No. C 05-2146 SBA, 2006 WL 1469654 (N.D. Cal. May 25, 2006) .............22

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985)........................................................31

*Underwood v. Coinbase Global, Inc.*,
    No. 21 Civ. 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023)...........28

*Vignola v. FAT Brands, Inc.*,
    No. 18-cv-7469 PSG, 2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) .............27

*Viterbi v. Wasserman*,
    191 Cal.App.4th 927 (2011).........................................................37

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................41

*Webb v. Solarcity Corp.*,
    884 F.3d 855 (9th Cir. 2018)........................................................22

*Weston Family Partnership LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)............................................................ 15, 16, 17

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ....................................................................14

*Wilson v. Frito-Lay North America, Inc.*,
    961 F.Supp.2d 1134 (N.D. Cal. 2013) ......................................................40

*Wofford v. Apple Inc.*,
    No. 11-CV-0034 AJB NLS, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011)......34

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................20

**Statutes**

15 U.S.C. § 77*l*(a)(1) ...................................................................................26

17 C.F.R. § 240.3b-16(a)(1)–(2) ...................................................................31

Cal. Bus. & Prof. Code, § 17200......................................................................32

Cal. Corp. Code § 25008(a) ............................................................................37

Cal. Corp. Code § 25110.................................................................................36

Cal. Corp. Code § 25503.................................................................................37

Cal. Corp. Code § 25504.1..............................................................................38

Cal. Corp. Code § 25507(a)............................................................................37

**Other Authorities**

Harold W. Marsh & Robert H. Volk, 1 Practice Under the California
    Securities Laws § 14.06 (2018) .............................................................36

Solicitation, BLACK'S LAW DICTIONARY (11th ed. 2019) ...............................27

DEFENDANTS' MOTION TO DISMISS                CASE NO.: 2:22-cv-08909-FMO-PLA

## I.     PRELIMINARY STATEMENT[1]

Yuga Labs is a media and technology company devoted to shaping the future of entertainment through storytelling, experiences and community. It is the creator of the "Bored Ape Yacht Club," a popular collection of non-fungible tokens ("NFTs")[2]—unique digital art collectibles that provide owners with access to events, interactive games, and membership in an exclusive community of online fans.

On August 4, 2023, Plaintiffs filed a sprawling, 699-paragraph Amended Complaint asserting a hodgepodge of conspiracy theories involving Yuga Labs and 28 other defendants. The complaint asserts 13 causes of action sounding in fraud, all centered around the Bored Ape Yacht Club NFTs and four other digital entertainment products (collectively, the "Products"). Plaintiffs' claims are long on innuendo and sensationalism but glaringly short on well-pleaded facts. Indeed, Plaintiffs repeatedly lump together all Defendants and all Products in a meandering, undifferentiated tangle of accusations, while the key allegations underpinning *each* of Plaintiffs' supposed "schemes" are made merely "on information and belief," with more than two dozen unsupported "information and belief" allegations forming the core of the Amended Complaint.

The Court should dismiss all of Plaintiffs' claims under the PSLRA and/or Rule 9(b), both of which impose "formidable" heightened pleading requirements. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). The PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception," *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022), and is aimed at curbing lawsuits like this one, which are used

---

[1] Unless otherwise specified, all emphases are added and internal citations, quotations and alterations are omitted.

[2] NFTs are unique digital products whose authenticity and ownership can be verified on a blockchain. *Friel v. Dapper Labs, Inc.*, 2023 WL 2162747, at *4 (S.D.N.Y. Feb. 22, 2023). Generally speaking, a "blockchain platform" is a peer-to-peer network that records and reflects all transactions on a publicly viewable and unalterable system. *Id.* at *3.

"abusively to impose substantial costs on companies and individuals," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also Cowan v. Goldcorp*, 2017 WL 5495734, at *6 (C.D. Cal. Sept. 6, 2017) (Olguin, J.). Rule 9(b) likewise imposes "exacting" standards for pleading claims predicated on allegations of fraud. *Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *4 (C.D. Cal. July 18, 2016) (Olguin, J.). Plaintiffs' claims fall far short of these demanding standards, or even notice pleading standards, and the Court should dismiss them for the following reasons.

**First,** Plaintiffs' fraud claims under the Securities Exchange Act of 1934 ("Exchange Act") fail as a matter of law. The Yuga Labs Defendants unequivocally deny that any of the Products are "securities," but the Court need not address that issue now because Plaintiffs fail to plead (i) any actionable scheme, misrepresentation or misleading omission, (ii) scienter, (iii) loss causation, or (iv) reliance, much less with the particularity Rule 9(b) and the PSLRA mandate. Each of these deficiencies is fatal.

No Fraudulent "Scheme" (*infra* § III.A.2). For example, Plaintiffs allege that an unspecified group of defendants orchestrated a number of "market manipulation" "schemes" in a coordinated effort to fraudulently "pump" the price of the Products. These conspiracy theories fall apart upon inspection.

- ***Manipulative Trading.*** Plaintiffs first speculate that unspecified third parties ***may*** have made so-called "wash trades" on unspecified dates. But Plaintiffs nowhere allege that any Defendant conducted, or had ***any*** connection to, a single one of these supposed trades—or even knew they were happening. Nor do Plaintiffs explain how the tiny volume of purported transactions (just a dozen of the 10,000 Bored Ape NFTs) possibly could have manipulated an alleged multi-billion dollar market.

- ***"Deceptive" Sotheby's Auction.*** Plaintiffs also claim that Sotheby's, one of the world's largest auction houses, conspired with an unspecified group of defendants to host a "deceptive auction" of Bored Ape NFTs.

Plaintiffs fail to offer a single fact impugning the integrity of the auction, nor do they allege a single statement or action by any Yuga Labs Defendant to show their involvement in, or even knowledge of, this unidentified "scheme."

- ***Celebrity Promotions.*** Finally, Plaintiffs theorize that various unrelated celebrities colluded to "pump" and "dump" certain NFTs by falsely conveying that they had purchased them when, "upon information and belief," they had not. But Plaintiffs never allege facts to show any "pump" or any "dump" at all—let alone by any Yuga Labs Defendant. Nor do Plaintiffs allege that any Yuga Labs Defendant had any involvement, control, or input over—***or even awareness of***—the alleged actions or statements of these celebrities.

<u>No Misstatement or Omission (*infra* § III.A.3).</u> While Plaintiffs also challenge a litany of seemingly randomly selected statements across hundreds of paragraphs, they fail to plead with any particularity which of these statements were false or why. In fact, the small handful of statements attributed to Yuga Labs Defendants are demonstrably true and Plaintiffs offer no factual allegations indicating otherwise.

<u>No Scienter (*infra* § III.A.4).</u> Plaintiffs also fail to plead that any Yuga Labs Defendant acted with the requisite "strong inference" of scienter—*i.e.*, an intent to defraud. There is not one factual allegation about any Yuga Labs Defendant's state of mind whatsoever. Instead, Plaintiffs offer only vague and unsupported allegations that conflate all "Defendants"—a tactic that cannot satisfy the PSLRA. Plaintiffs also fail to plead a coherent motive for ***any*** Yuga Labs Defendant (much less ***all*** of them) to engage in fraud—a fatal shortcoming that independently causes Plaintiffs' house of cards to collapse.

<u>No Loss Causation (*infra* § III.A.5).</u> Plaintiffs also fail to meet their burden of pleading loss causation—*i.e.*, "that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event." *Cowan*, 2017 WL 5495734,

3

at \*6. To the contrary, Plaintiffs **admit** that their losses were caused by intervening events having nothing to do with any alleged fraud, including problems involving unrelated digital trading platforms FTX and Voyager. Plaintiffs also allege that the Class Period runs **through the present**, thus tacitly conceding that the supposed "fraud" has **never** been revealed to the market and defeating any claim of loss causation.

No Reliance (*infra* § III.A.6). Finally, the Amended Complaint fails to plead any Plaintiff's actual reliance on any supposed scheme or misstatement, or sufficient facts to invoke a presumption of reliance. This deficiency further dooms Plaintiffs' fraud claim.

**Second,** Plaintiffs fail to state a claim that Defendants violated Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") by selling unregistered "securities." (*Infra* § III.B.) Putting aside that the Products are not "securities," these claims fail because Plaintiffs do not allege that any Yuga Labs Defendant is a "statutory seller" as required under Section 12(a)(1). *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Plaintiffs do not (and cannot) claim that they purchased any Product from any Defendant. Nor do Plaintiffs allege that any Yuga Labs Defendant "successfully solicit[ed]" the sale of any supposed "security." *Id.* at 647. Regardless, their solicitation-based theory is time-barred with respect to any alleged solicitations prior to December 8, 2021—*i.e.*, more than one year before the filing of this action.

**Third,** Plaintiffs cannot maintain any of their federal securities claims because they fail to plead a "domestic" transaction, as required under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). (*Infra* § III.D.) The Amended Complaint contains no facts from which to conclude that Plaintiffs' purchases occurred on a "domestic exchange" or were otherwise "domestic" such that the U.S. securities laws can apply.

**Fourth,** Plaintiffs' remaining California statutory and common law claims fail for many of the same reasons as their federal claims, including:

- With respect to **UCL claims**, Plaintiffs fail to plead any unlawful, unfair or fraudulent conduct, economic injury, or entitlement to equitable relief. (*Infra* § III.E.)

- With respect to **qualification claims**, Plaintiffs fail to plead privity or any other elements. (*Infra* § III.F.)

- With respect to **misrepresentation** and **fraud-based claims**, Plaintiffs fail to plead, much less with particularity, any misrepresentation or "manipulation." (*Infra* § III.G.)

- Plaintiffs ignore that their "**unjust enrichment**" claim fails as a standalone cause of action. Plaintiffs also do not plead any valid basis for restitution. (*Infra* § III.I.)

- Plaintiffs **lack standing** to bring California claims regarding three of the five Products because no California-based Plaintiff is alleged to have purchased them. (*Infra* § III.J.)

- Plaintiffs also cannot pursue California statutory claims on behalf of a **nationwide class**. (*Infra* § III.K.)

- And, in the absence of viable federal claims, the Court should decline to exercise **personal jurisdiction** as to the non-California defendants. (*Infra* § III.L.)

                              *       *       *

Simply "[c]obbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004). Even under Rule 8, "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996). Plaintiffs' kitchen-sink pleading is devoid of well-pleaded allegations and fails to perform the essential

1  functions of a complaint. For the reasons herein, the Court should dismiss the
2  Amended Complaint with prejudice.

3  **II.    FACTUAL BACKGROUND**

4  **A.    The Parties**

5      Lead Plaintiffs Johnson (Texas resident), Boekweg (Texas resident), Palombini
6  (Portugal resident), and additional named Plaintiff Titcher (California resident) allege
7  that they purchased the Products on secondary marketplaces and later suffered losses
8  when the prices of the Products declined. (AC ¶¶ 10-13; 613-27.) Plaintiffs seek to
9  represent a putative class of all persons who purchased Products between April 23,
10  2021, and the present. (AC ¶¶ 1, 465-66.)

11      Plaintiffs assert claims against a wide array of 29 defendants:

12      (i)      Yuga Labs;

13      (ii)     Yuga Labs' founders and certain current or former Yuga Labs
14               executives: Aronow, Solano, Atalay, Ali, Muniz, Shoemaker, Ehrlund,
15               and Lyons ("Executive Defendants");

16      (iii)    an alleged Yuga Labs minority partner, consultant and spokesperson:
17               Oseary;

18      (iv)     "Special Council" advisors to non-party Ape Foundation, which
19               administratively supports the ApeCoin "DAO" (a decentralized
20               autonomous organization): Ohanian, Wu, and Bajwa;

21      (v)      certain alleged "celebrity" owners of certain of the Products and their
22               affiliated companies: Winkelmann, Ciccone, Hilton, Fallon, EHD,
23               Universal, Bieber, Post, Broadus, Hart, Curry, adidas America, and
24               adidas Ventures ("Celebrity Defendants");

25      (vi)     a financial technology company that builds payments infrastructure for
26               digital products: MoonPay, and its CEO, Soto-Wright ("MoonPay
27               Defendants"); and

28

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

1      (vii)   an auction house for art and other collectibles: Sotheby's (collectively,

2            "Defendants").

3  **B.**    **The Products**

4      The Products comprise five distinct digital entertainment products:

5      (i)    the **Bored Ape Yacht Club ("BAYC") NFT collection** (allegedly

6          purchased by Boekweg alone (AC ¶ 11; ECF 74-2));

7      (ii)   the **Mutant Ape Yacht Club ("MAYC") NFT collection** (allegedly

8          purchased by Johnson, Boekweg, Palombini, and Titcher (AC ¶¶ 10-13;

9          ECF 74-2));

10      (iii)  the **Bored Ape Kennel Club ("BAKC") NFT collection** (allegedly

11          purchased by Johnson and Boekweg (AC ¶¶ 10-11; ECF 74-2));

12      (iv)  the **Otherdeed NFT collection** (allegedly purchased by Boekweg,

13          Palombini, and Titcher (AC ¶¶ 11-13)); and

14      (v)    **ApeCoin** (allegedly purchased by Johnson and Boekweg (AC ¶¶ 10-

15          11)).[3]

16  (AC ¶ 1 n.1.) Yuga Labs created and sold all 10,000 BAYC NFTs in April 2021. (AC

17  ¶¶ 64, 67.) It later created MAYC, BAKC and the metaverse project known as

18  "Otherside." (AC ¶¶ 62, 71, 76.)[4] Plaintiffs do not allege to have purchased any of

19  these NFTs from any Yuga Labs Defendant when the products were first created and

20  sold—rather, they admit purchasing them later from unidentified third parties on

21  secondary non-party marketplaces.

22      ApeCoin is a fungible cryptocurrency token that serves as a governance token

23  for the DAO and can also be used to pay for certain goods and services and to provide

24  access to token-gated games and merchandise. (AC ¶¶ 220-22, 259.) According to

25  ―――――――――――――――――

26  [3] Although not pleaded in the Amended Complaint, Titcher's certification reflects that he transacted in ApeCoin over a roughly one-month period and ultimately sold more

27  than he acquired. (ECF 1-2.)

28  [4] Plaintiffs improperly conflate Otherside with Otherdeed NFTs, which are separate products. (*E.g.*, AC ¶¶ 1 n.1, 76.)

DEFENDANTS' MOTION TO DISMISS        CASE NO.: 2:22-cv-08909-FMO-PLA

Plaintiffs, ApeCoin was introduced in 2022, and Yuga Labs later adopted it as the official currency of the BAYC "ecosystem" where members could "explore" and "play." (AC ¶¶ 220, 278.)

## C.  The Disjointed Alleged "Schemes"

The Amended Complaint baldly alleges that all 29 Defendants "united" to orchestrate three supposed "schemes": (i) the Sotheby's Auction; (ii) manipulative NFT trading, and (iii) celebrity promotions. Yet Plaintiffs fail to specify exactly which Defendants are part of which "schemes" or how their purported conduct contributed to said schemes. Moreover, none of the schemes is pleaded with any particularized supporting facts, instead resting on an unsupported foundation of "information and belief" allegations. (*E.g.*, AC ¶¶ 3, 85, 114, 127, 132, 143-44, 154, 160, 166, 197 n.149, 198-200, 226, 256, 261, 270, 282, 463, 588, 664.)

### 1.  The Sotheby's Auction

First, Plaintiffs allege that Yuga Labs "colluded" with Sotheby's "to run a deceptive auction of a lot of 101 BAYC NFTs" in September 2021, and that at the auction's conclusion, Sotheby's identified the winning bidder as a "traditional" collector that paid $24.4 million for the lot. (AC ¶¶ 117, 130-34). Plaintiffs allege that the auction and related statements were "rooted in deception" because the winner was allegedly "not a 'traditional' buyer . . . , but rather the now-defunct cryptocurrency exchange FTX." (AC ¶ 142.)

With hopes of tying the Yuga Labs Defendants to this alleged scheme, Plaintiffs cite a single innocuous tweet from the BAYC Twitter account after the auction that simply noted the sales price, congratulated the buyer, and welcomed them "to the club." (AC ¶ 135.)

### 2.  Alleged Trading "Manipulation"

Next, Plaintiffs allege a manipulation scheme based on purported "wash trad[es]" that are part of the public record. (AC ¶¶ 52, 307.) But Plaintiffs do not allege any actual specific instances of wash trading—let alone by or at the behest of any

8

1   Defendant. Instead, Plaintiffs point to "research" supposedly "suspect[ing]" that wash

2   trading has occurred among a minute fraction of only *certain* Products. (AC ¶¶ 311-

3   15.) Plaintiffs also allege that the purported "wash trading" involved just a dozen of

4   the 10,000 BAYC NFTs. (AC ¶¶ 64, 311-14.)

5          **3.**    **Celebrity "Promotions"**

6         Lastly, Plaintiffs allege that Yuga Labs and Oseary arranged for "celebrity

7   influencers" to "deceptively promote the artificially inflated BAYC NFTs." (AC

8   ¶ 152.) Plaintiffs claim that the Celebrity Defendants "promot[ed]" the Products by

9   alleging, "[u]pon information and belief," they each "received a BAYC NFT and/or

10   other fiat or cryptocurrency from MoonPay and/or Yuga as compensation." (AC

11   ¶ 166.) These claims are made without any factual support or information, and further

12   fail to plead facts that show a cognizable connection between or among Yuga Labs,

13   Oseary, or MoonPay in support of this supposed claim. And notably, Plaintiffs have

14   now withdrawn such claims against eight celebrities named in the original complaint,

15   providing no explanation for their supposed change in conviction.

16  **D.**    **Plaintiffs' Alleged Reliance**

17         Plaintiffs fail to identify the specific transaction decisions (if any) they made in

18   reliance on the various statements alleged in the Amended Complaint. Instead,

19   Plaintiffs make conclusory and vague assertions that unspecified Plaintiffs supposedly

20   followed Twitter feeds or saw select statements and were "induced to purchase and/or

21   continue to hold" *unspecified* Products on *unspecified* dates. (*E.g.*, AC ¶¶ 164, 174,

22   177, 179, 182, 193, 201, 204, 206, 218, 228, 234, 237, 283.) Plaintiffs fail to allege

23   that Boekweg—the only Plaintiff to allegedly buy a BAYC NFT—read or relied on

24   *any* of the alleged statements in making any purchase decision.

25  **E.**    **The So-Called "Dump"**

26         Plaintiffs allege that Defendants' various "schemes" culminated in a purported

27   "dump" in which "the floor price of the BAYC NFT collection began to deflate." (AC

28   ¶ 387.) But Plaintiffs do not connect this "deflat[ing]" to any supposed fraud, nor do

9

1  Plaintiffs allege that any Defendant ever sold their own Products at "artificially

2  inflated" prices, let alone in a way that caused any sort of "dump."

3

4  **III.   ARGUMENT**

5  **A.   Plaintiffs Fail To State a Claim Under Section 10(b) of the Exchange Act (Counts 7-8)**

6  The Court should dismiss Plaintiffs' securities fraud claim because they fail to

7  plead: (i) any actionable misstatements, omissions or "scheme" to defraud; (ii) the

8  requisite strong inference of scienter; (iii) reliance; or (iv) loss causation. *Or. Pub.*

9  *Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). "To state a

10 claim under [Section 10(b)], a plaintiff must meet 'the exacting pleading standards of

11 [Rule] 9(b) and the [PSLRA].'" *Reed*, 2016 WL 6571281, at *4. Rule 9(b) requires

12 that "a party must state with particularity the circumstances constituting fraud or

13 mistake." *Id.* "This includes 'the who, what, when, where, and how of the misconduct

14 charged.'" *Id.* The PSLRA requires that a plaintiff (i) "specify *each* statement alleged

15 to have been misleading [and] the reason or reasons why the statement is misleading,"

16 and (ii) "state with particularity facts giving rise to a strong inference that [each]

17 defendant acted with the required state of mind." *Id.*; *Retail Wholesale & Dep't Store*

18 *Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir.

19 2017).

20 **1.   The Amended Complaint Fails Because It Is a "Shotgun Pleading"**

21 As an initial matter, the "shotgun" Amended Complaint should be dismissed

22 because it seeks to "overwhelm defendants with an unclear mass of allegations and

23 make it difficult or impossible for defendants to make informed responses to the

24 plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4

25 (C.D. Cal. June 30, 2010). Plaintiffs appear to allege a series of "schemes" involving

26 29 unrelated Defendants, but completely ignore the obligation to distinguish among

27 them, their alleged conduct, or the five distinct Products at issue. (AC ¶¶ 250, 270,

28 431, 520.) This utter failure mandates complete dismissal. *Cullen v. Shutterfly*

10

1  *Lifetouch, LLC*, 2021 WL 2000247, at *8 (N.D. Cal. May 19, 2021) (dismissing entire

2  complaint where "Plaintiffs make no attempt to distinguish between conduct of [two

3  defendants], but rather use the term 'Defendants' throughout the complaint");

4  *Sollberger*, 2010 WL 2674456, at *4 (dismissing where plaintiff "group[ed]

5  defendants together without identifying what the particular defendants specifically did

6  wrong").

7  **2.  Plaintiffs Do Not Plead an Actionable "Scheme" To Defraud (Count 8)**

8

9  **(a)  Plaintiffs Do Not Plead an Actionable Manipulative Trading Scheme**

10  Plaintiffs assert a supposed market manipulation "scheme" based on rank

11  speculation about "wash trades" and ***publicly disclosed*** purchases of NFTs made

12  "above the floor price." (AC ¶¶ 307-86.) These claims fail because they lack the

13  required particularity as to who made the trades, when, and in what way they caused

14  any purported manipulation, and are untethered to any conduct by any Yuga Labs

15  Defendant. *In re Bank of Am. Corp.*, 2011 WL 740902, at *9 (N.D. Cal. Feb. 24, 2011)

16  ("plaintiff must allege 'what manipulative acts were performed,' by 'which

17  defendants,' 'when,' and 'what effect the scheme had on the market for the securities

18  at issue'").

19  Tellingly, Plaintiffs ***do not*** allege that ***any*** Yuga Labs Defendant made or

20  participated in ***any*** supposed "wash" or "above the floor price" trades, foreclosing any

21  claims against them. *In re Rigel Pharms., Inc. Sec. Litig.*, 2009 WL 5125344, at *6

22  (N.D. Cal. Dec. 21, 2009) ("To plead a claim based on market manipulation, a plaintiff

23  must allege, *inter alia*, that *the defendant* engaged in manipulative acts . . . ." ). Nor

24  do Plaintiffs allege "what manipulative acts were performed" or "when." *Bank of Am.*,

25  2011 WL 740902, at *9.

26  Just as fatally, Plaintiffs do not plead definitively that any "wash trades" actually

27  occurred. All they allege is that certain Products "exhibit[ed] signs of wash trading"

28  or were "flagged" as only ***potentially*** involving wash trading. (AC ¶¶ 311-14.) That

11

1    cannot satisfy Rule 9(b) and the PSLRA. *ScripsAmerica, Inc. v. Ironridge Glob. LLC*,

2    119 F.Supp.3d 1213, 1240 (C.D. Cal. 2015) (plaintiffs "must plead *which* trades were

3    manipulative" (emphasis in original)).

4         As for the "floor price" allegations, Plaintiffs simply identify a series of

5    purchases of Products at prices above the "floor price" and assert, without any

6    explanation, that these transactions reflect an "orchestrated pump" of the price. (AC

7    ¶¶ 325-85.) But, as Plaintiffs themselves allege, the "floor price" is simply the lowest

8    price for which an NFT in a given collection can be purchased. (AC ¶ 54.) Each NFT

9    in a collection is unique and differently valued. (*E.g.*, AC ¶ 236 (alleging "rare 'pink'

10   Bored Apes . . . were more valuable").) As such, by Plaintiffs' own allegations, any

11   purchase above the floor price is most logically an indication that the purchaser

12   subjectively valued that unique NFT higher than the lowest priced NFT within the

13   collection. It cannot reflect "manipulation" based on the price alone. *BMA LLC v. HDR

14   Glob. Trading Ltd.*, 2021 WL 949371, at *1 (N.D. Cal. Mar. 12, 2021) (dismissing

15   unsupported market manipulation claim); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

16   493 F.3d 87, 103 (2d Cir. 2007) (same). Indeed, Plaintiffs' theory is equivalent to the

17   nonsensical claim that, if an individual chooses to purchase a high-priced piece of art

18   rather than the lowest-priced one on the market from the same artist, that person has

19   somehow automatically manipulated the market.

20        Plaintiffs also fail to allege "what effect" any of the alleged trading schemes

21   "had on the market for the [Products]." *Bank of Am.*, 2011 WL 740902, at *9. They

22   allege that just a dozen of the 10,000 BAYC NFTs "exhibit[ed] signs" of wash trading,

23   and do not explain how the tiny alleged wash trading volume, even if it occurred—

24   impacting just 0.11% of all BAYC NFTs—could possibly have manipulated the

25   market. *In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054, 1085 (N.D. Cal. 2003)

26   (dismissing fraud claim based on "relatively tiny volume of wash trades with

27   unspecified persons or entities"). Plaintiffs muster nothing about the alleged wash

28

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

1  trading volume for MAYC NFTs and Otherdeeds, and no wash trading whatsoever for
2  the remaining Products.

3          **(b)**    **Plaintiffs Do Not Plead an Actionable Auction Scheme**

4        Plaintiffs' Sotheby's auction "scheme" claim fares no better, as Plaintiffs do not
5  allege a scheme at all. The crux of this claim is that Sotheby's stated that a traditional
6  art collector purchased 101 BAYC NFTs at auction when in fact the buyer was
7  allegedly "FTX." (AC ¶¶ 132-34.) That is a purported misrepresentation claim under
8  Rule 10b-5(b), not a scheme claim under Rule 10b-5(a) or (c). *S.E.C. v. Rio Tinto plc*,
9  41 F.4th 47, 55 (2d Cir. 2022) (rejecting attempt to repackage misrepresentation claims
10  as scheme claims). Moreover, the Yuga Labs Defendants cannot be held liable for this
11  statement because they did not make it. Section 10(b) imposes liability only on the
12  "maker" of a statement. *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135,
13  142 (2011). Plaintiffs also do not allege that any Yuga Labs Defendant "disseminated"
14  this or any other false statement, let alone with fraudulent intent. *See Sneed v. AcelRx*
15  *Pharms., Inc.*, 2022 WL 4544721, at *6 (N.D. Cal. Sept. 28, 2022).[5]

16        Regardless, Plaintiffs fail to allege that the Yuga Labs Defendants had ***any***
17  involvement in the auction or its promotion whatsoever. At most, Plaintiffs point to a
18  post from the BAYC Twitter account simply reporting the $24 million purchase price
19  at auction, congratulating the unidentified buyer, and welcoming them to the "club."
20  (AC ¶ 135.) No aspect of this statement is alleged to be false, much less part of any
21  "scheme" to conduct a "deceptive" auction. This claim also independently fails
22  because no Plaintiff has standing to bring it for the reasons set forth in Sotheby's
23  forthcoming motion to dismiss.

24          **(c)**    **Plaintiffs Do Not Plead a "Celebrity Promotions" Scheme**

25        Plaintiffs' scheme claim based on "celebrity promotions" also fails because
26  Plaintiffs have not pleaded any particularized facts to show (i) that any Yuga Labs

27  ───────────────

28  [5] Plaintiffs' claim also fails because the information on which they rely to connect
FTX to the purchase was at all times in the public domain. (AC ¶¶ 52, 144-45.)

DEFENDANTS' MOTION TO DISMISS        CASE NO.: 2:22-cv-08909-FMO-PLA

1  Defendant was involved in any Celebrity Defendant's acquisition of any NFT,
2  (ii) what that involvement consisted of, or (iii) that any Yuga Labs Defendant had any
3  input into, control over, or even awareness of, any of the statements or actions by the
4  celebrities alleged in the Amended Complaint. *Ferraro Fam. Found., Inc. v. Corcept*
5  *Therapeutics Inc.*, 501 F.Supp.3d 735, 756-57 (N.D. Cal. 2020) (dismissing purported
6  "off-label marketing" scheme claim as inadequately pleaded).

7       At most, Plaintiffs speculate that MoonPay gave away NFTs to some celebrities.
8  But Plaintiffs do not plead any particularized facts that such giveaways occurred, let
9  alone connect them to the Yuga Labs Defendants. (AC ¶ 166 (relying on "information
10 and belief").) While Plaintiffs attempt to conflate Yuga Labs and MoonPay by
11 asserting in conclusory fashion that "MoonPay acted as an agent and indirect
12 spokesperson for [Yuga Labs] by virtue of it being controlled, in part, by Defendant
13 Oseary" (AC ¶ 42), this bald and "conclusory legal statement unsupported by any
14 factual assertion" should not be "credit[ed]." *Williams v. Yamaha Motor Co. Ltd.*, 851
15 F.3d 1015, 1024 (9th Cir. 2017) (rejecting agency allegations). The mere fact that
16 Oseary allegedly had roles with Yuga Labs and MoonPay is wholly insufficient to
17 conflate these two entirely different companies. *Pitt v. Metro. Tower Life Ins. Co.*,
18 2020 WL 1557429, at *4 (N.D. Cal. Apr. 1, 2020) ("[A]s the Supreme Court has noted,
19 employees routinely wear multiple 'hats' in the course of performing duties for
20 different legal entities without imputing the conduct of one entity to all of its corporate
21 affiliates.").

22      At base, this "scheme" claim boils down to the bare allegation that certain
23 celebrities made statements that led consumers to believe those celebrities had
24 purchased NFTs when they had not. Even if such a claim were supported (and it is not,
25 for the reasons set forth in the MoonPay and Celebrity Defendants' motions to
26 dismiss), Plaintiffs fail to allege, let alone with particularity, that the Yuga Labs
27 Defendants ever made or disseminated any such statements (*supra* § III.A.2.b (citing
28 *Janus*)). Thus, this claim should be dismissed. *Sneed*, 2022 WL 4544721, at *6

1  (dismissing scheme claim on same basis as misstatement claim); *Kang v. PayPal*

2  *Holdings, Inc.*, 620 F.Supp.3d 884, 902 (N.D. Cal. 2022) (same).

### 3.  Plaintiffs Do Not Plead Any Actionable Misstatement or Omission Against Any Executive Defendant (Count 7)

5  Plaintiffs' Section 10(b) claim for "fraudulent misstatement" against the

6  "Executive Defendants" is also inadequately pleaded and should be dismissed. "For a

7  statement to be false or misleading, it must 'directly contradict what the defendant

8  knew at that time' or 'omit[ ] material information.'" *Weston Fam. P'Ship LLLP v.*

9  *Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). Plaintiffs appear to challenge only

10  three statements by any Executive Defendant (AC ¶ 603(b)-(d)), none of which is

11  alleged to have been false or misleading.[6]

### (a)  "Members-Only Benefits" Tweets

13  First, Plaintiffs challenge two tweets by Solano stating that BAYC NFTs would

14  "double as membership cards to an exclusive club with benefits" and "grant[] access

15  to a collaborative art experiment in the form of a canvas only token-holders can draw

16  on." (AC ¶¶ 239-240; 603(b)-(c).) But Plaintiffs do not even try to explain how this

17  was false, and in fact ***admit*** throughout the Amended Complaint that the BAYC NFTs

18  ***did*** offer owners numerous members-only benefits, consistent with these tweets. (*E.g.*,

19  AC ¶¶ 74, 159, 243, 292.) These admissions belie any notion of falsity. *McGovney v.*

20  *Aerohive Networks, Inc.*, 367 F.Supp.3d 1038, 1059 (N.D. Cal. 2019) (challenged

21  statement was "quite literally true" and "[t]herefore, by definition, it is not

22  misleading"); *Plumley v. Sempra Energy*, 2017 WL 2712297, at *8 (S.D. Cal. June 20,

23  2017) (dismissing where "Plaintiffs' own allegations contradict their claims").

24  Unable to dispute the accuracy of these statements, Plaintiffs assert that they

25  actually "suggested to investors that there would be a broader ecosystem for BAYC

---

[6] Because Plaintiffs challenge no statements by any of the other Executive Defendants and do not assert this claim against Yuga Labs, Count 7 must be dismissed as to each of them. (AC ¶¶ 596, 603.)

1   NFT holders to interact in" and "the BAYC brand was poised for significant growth."

2   (AC ¶ 603(b)-(c).) The tweets say no such thing. Regardless, Plaintiffs ironically admit

3   even those interpretations are not false, alleging that Yuga Labs took strides to build a

4   BAYC ecosystem through promotions, auctions, merchandise sales, "casting call[s]"

5   for film series, hosting parties, and other events. (*E.g.*, AC ¶¶ 157-59, 184, 220, 243,

6   257-59, 266, 268, 292, 298.)

7         Moreover, even if one credited Plaintiffs' fanciful interpretation of these tweets

8   as some promise regarding the future prospects of BAYC NFTs, such statements

9   would be forward-looking and optimistic opinions that cannot support a claim unless

10  coupled with allegations that the speaker had actual knowledge of their falsity when

11  made. *Weston*, 29 F.4th at 620. Plaintiffs fail to plead any facts whatsoever about

12  Solano's actual knowledge, mandating dismissal.

13               **(b)    "High School Dropout" Tweet**

14        Plaintiffs also challenge Aronow's tweet stating "[n]ot bad for a high school

15  dropout" in response to a third party's post that the collective value of BAYC NFTs

16  exceeded a billion dollars. (AC ¶¶ 241-42, 496, 526, 603(d).) Plaintiffs nowhere

17  explain how this statement could possibly have been material to any purchaser of any

18  Product. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060

19  (9th Cir. 2014) (immaterial statements not actionable as a matter of law).[7]

20        Nor do Plaintiffs allege any facts to refute that Aronow was a high school

21  dropout. Plaintiffs instead assert that the tweet had the effect of endorsing a different

22  statement made by "Willy Ɓullish" that the value of the BAYC NFT collection

23  exceeded $1 billion. Aronow cannot be held liable for this statement because he did

24

25

26

---

27  [7] The statement is also non-actionable puffery. *See In re Cutera Sec. Litig.*, 610 F.3d

28  1103, 1111 (9th Cir. 2010) ("mildly optimistic, subjective assessment hardly amounts to a securities violation").

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

not "make" it. *Janus*, 564 U.S. at 142.[8] Regardless, Plaintiffs also do not allege that Willy Bullish's statement was false, *i.e.*, that the BAYC NFT collection's value did ***not*** exceed $1 billion. *McGovney*, 367 F.Supp.3d at 1059; *Melot v. JAKKS Pac., Inc.*, 2014 WL 12589334, at *10 (C.D. Cal. June 6, 2014) ("'[A]ccurate statements of past performance' are not actionable as a matter of law."). At best, Plaintiffs allege that the statement was misleading on account of unspecified "manipulative trading practices" (AC ¶ 603(d)), yet they utterly fail to offer any particulars regarding such "manipulation," including how it rendered a factual statement about the BAYC collection's value ***knowingly*** false.

### (c)   "Leaked" Pitch Deck

Plaintiffs allege in passing that a pitch deck allegedly provided to Yuga Labs' private investors (not Plaintiffs) falsely stated that unnamed "[c]elebrities are buying Apes to signal that they know what's up." (AC ¶ 603(l).) But Plaintiffs do not allege any of the most basic information with particularity, including who created the deck or was responsible for its contents. Plaintiffs also do not allege that the statement in the deck was false, because they do not allege that no celebrities bought "Apes," which they would need to do to render the statement false. At most, Plaintiffs invite the unsupported inference that certain specific celebrities never paid for their BAYC NFTs (*supra* § III.A.2.c), but they do not even attempt to claim this theory applies to every celebrity who owns a BAYC NFT or explain how these unsupported allegations refute the pitch deck statement that some celebrities had bought "Apes."[9] And Plaintiffs fail to allege that this forward-looking statement was made with actual knowledge that it was supposedly false. *Weston*, 29 F.4th at 620.

---

[8] Aronow also cannot be held liable for disseminating the statement because, as explained below, Plaintiffs do not allege that he "understood" it "to contain material untruths." *Lorenzo v. S.E.C.*, 139 S.Ct. 1094, 1101 (2019).

[9] These allegations also fail for the reasons set forth in the separate briefs of other Moving Defendants.

DEFENDANTS' MOTION TO DISMISS          CASE NO.: 2:22-cv-08909-FMO-PLA

### (d)   Purported Omissions

Finally, Plaintiffs suggest that all "***Defendants*** were obligated to disclose" various other pieces of information related to the Products ranging from the identity of the buyer at the Sotheby's auction to details about "secret loans of ApeCoin" allegedly given to third parties. (AC ¶¶ 520, 604.) Yet Plaintiffs identify no duty to disclose any of this. "[N]either Section 10(b) nor Rule 10b–5 'create[s] an affirmative duty to disclose any and all material information.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014); *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (no "freestanding completeness requirement" under Rule 10(b)-5). Here, all of the items Plaintiffs allege were "omitted" are nothing more than Plaintiffs' own unproven allegations. Defendants, however, "are not required to engage in 'self-flagellation' by disclosing unproven allegations." *In re Facebook, Inc. Sec. Litig.*, 477 F.Supp.3d 980, 1023 (N.D. Cal. 2020); *In re Paypal Holdings, Inc.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies a 'duty to disclose uncharged, unadjudicated wrongdoing.'"). Plaintiffs' use of the omnibus term "Defendants," instead of identifying which specific Defendant(s) had a duty to disclose which specific pieces of information, further mandates dismissal.[10]

### 4.   Plaintiffs Do Not Plead Scienter

Plaintiffs' Section 10(b) claims should be dismissed on the independent ground that they do not come close to "stat[ing] with particularity facts giving rise to a strong inference that [any Yuga Labs Defendant] acted with the required state of mind." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021); *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 (C.D. Cal.

---

[10]  In addition, Plaintiffs' claims fail to the extent they are based on alleged misstatements with respect to Products that they did not purchase. *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022) (plaintiffs must allege to "have bought or sold the security about which a misstatement was made in order to have standing to sue under Section 10(b)").

Sept. 23, 2014) (Olguin, J.) ("The [complaint] is lengthy, with over 210 paragraphs, but the lack of allegations regarding scienter is readily apparent."). "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *In re Inogen, Inc. Sec. Litig.*, No. CV 19-1643 FMO (AGRx), slip op. at 12 (C.D. Cal. Aug. 13, 2021) (Olguin, J.). Deliberate recklessness "is 'an *extreme* departure from the standards of ordinary care.'" *Prodanova*, 993 F.3d at 1106. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *Inogen*, slip op. at 12.

### (a)    Plaintiffs Impermissibly Rely on Group Pleading

At the outset, Plaintiffs' scienter allegations fail because they do not distinguish between any Defendant and instead lump all "Defendants" and "Executive Defendants" together. (AC ¶¶ 609, 644.) It is well-settled that failure to plead particularized facts "with respect to ***each*** of the individual defendants" mandates dismissal as to all. *Apollo*, 774 F.3d at 607; *Cowan*, 2017 WL 5495734, at *6; *Reed*, 2016 WL 6571281, at *10.

### (b)    Plaintiffs Do Not Allege Access to or Knowledge of Contrary Information

Plaintiffs also do not plead particularized facts that any Yuga Labs Defendant knew any challenged statement was false or acted with deliberate recklessness. To meet this burden, Plaintiffs must allege facts to show "access to, or knowledge of . . . specific contradictory or negative information." *Inogen*, slip op. at 13; *see also In re Okta, Inc. Sec. Litig.*, 2023 WL 2749193, at *17 (N.D. Cal. Mar. 31, 2023). Plaintiffs do not even attempt to "identify any internal reports" or other information available to any Yuga Labs Defendant, much less "plead, in any detail, the contents of any such report or the purported data." *Inogen*, slip op. at 13.

19

1   Plaintiffs claim that "[b]ased on their control of the smart contracts to mint the
2   Bored Apes and their oversight of trading activity, the Executive Defendants knew
3   that the [Products] were being subjected to manipulative trading." (AC ¶ 609.) But
4   there are no well-pleaded facts establishing or even just ***describing*** this "control" and
5   "oversight," or explaining how this unspecified information would have alerted them
6   to manipulation. *See Metzler*, 540 F.3d at 1068 (plaintiffs must allege "***specific***
7   information conveyed to management"). Moreover, insofar as Plaintiffs base their
8   argument on the Executive Defendants' purported positions, such allegations are
9   insufficient. *In re Autodesk, Inc. Sec. Litig.*, 132 F.Supp.2d 833, 844 (N.D. Cal. 2000)
10   (allegations that corporate "officers had the requisite knowledge by virtue of their
11   'hands on' positions . . . would eliminate the necessity for specially pleading
12   scienter").

13   Plaintiffs allege in the vaguest of terms that "[t]he Executive Defendants knew
14   that the trading done by Binance and/or FTX insiders close to the mint had outsized
15   impacts." (AC ¶ 609.) But they do not plead any details as to:

16   - how, or when, any Executive Defendant had any knowledge of such trading;
17   - what this trading was;
18   - when it occurred;
19   - how it led to "outsized impacts"; or
20   - what it has to do with Plaintiffs' theory of liability.

21   Plaintiffs do not even allege what "close to the mint" or "outsized impacts" means.
22   *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), as
23   amended (Feb. 10, 2009) ("conclusory" allegations of scienter insufficient). And even
24   assuming that third parties bought or sold Products in large volumes, that alone does
25   not equate to "market manipulation" absent specific allegations of wrongdoing (which
26   are lacking here), otherwise, any large transaction in any market could result in
27   liability.

28

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

1    Further, Plaintiffs offer no fact to support the bald allegation that "Yuga knew

2   that the celebrity promotions had been done at the behest of Oseary and MoonPay"

3   (AC ¶ 609.) Whether Yuga Labs knew promotions were done "at the behest" of Oseary

4   and/or MoonPay does not say anything about whether it knew celebrities were not

5   buying their Apes—which is the purported undisclosed fact at the heart of the alleged

6   fraud.[11] And insofar as Plaintiffs point to "a now-deleted Twitter Spaces live video"

7   in which a third-party "social media influencer" allegedly claimed he was "offered a

8   Bored Ape through MoonPay" (AC ¶ 271), Plaintiffs fail to allege any facts connecting

9   the individual's comments to any Yuga Labs Defendant or the claims asserted here.

10    Lastly, although not included in Plaintiffs' scienter allegations (AC ¶¶ 609,

11   644), Plaintiffs also allege that Yuga Labs knew that FTX was the buyer of the

12   Sotheby's lot of BAYC NFTs because, "[u]pon information and belief," there were

13   "extensive financial interests shared by Yuga, Sotheby's and FTX" (AC ¶ 143). This

14   claim fails, as Plaintiffs again rely on rank speculation made "on information and

15   belief" without any factual support. *In re FVC.com Sec. Litig.*, 32 F.App'x 338, 340

16   (9th Cir. 2002) (scienter allegations deficient where based on "speculation," which "is

17   precisely the kind of allegation that the PSLRA is designed to defeat"). Plaintiffs'

18   failure to plead any facts as to what these "shared" interests were, or explain how they

19   would have alerted Yuga Labs to the buyer of the NFTs, warrants dismissal.

20        **(c)    Plaintiffs Do Not Allege Any Motive To Defraud**

21    It also bears emphasis that Plaintiffs fail to plead any cognizable motive for any

22   Yuga Labs Defendant to commit fraud. *Prodanova*, 993 F.3d at 1108 ("[T]he lack of

23   a plausible motive . . . makes it much less likely that a plaintiff can show a strong

24   ―――――――――――――

25   [11] Although Plaintiffs allege the purported account of a confidential witness who
     allegedly suspected wrongdoing—a former "Compliance" employee at MoonPay—

26   this allegation is wholly insufficient to support their claims, much less that any Yuga
     Labs Defendant was ever aware of it. (AC ¶¶ 107-110.) Plaintiffs offer no facts to tie

27   any Yuga Labs Defendant to the purported conduct that is the subject of the
     confidential witness's recollection. Nor is there any basis to conclude that the

28   witness's inability to locate celebrities' sensitive personal information in a MoonPay
     database raises any inference of scienter.

21

1  inference of scienter."); *In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at
2  *21 (N.D. Cal. May 25, 2006). Indeed, Plaintiffs do not allege that any Executive
3  Defendant sold a single Product at inflated prices for personal gain. Plaintiffs allege
4  only vaguely that unspecified Yuga Labs "insiders" sought to get "rich" by boosting
5  the prospects of Yuga Labs and the Tokens. (AC ¶ 603(b).) But generally seeking to
6  increase business prospects is the type of routine corporate objective that courts
7  uniformly reject as insufficient to plead motive. *In re Rigel Pharms., Inc. Sec. Litig.*,
8  697 F.3d 869, 884 (9th Cir. 2012) ("[A]llegations of routine corporate objectives . . .
9  are not, without more, sufficient to allege scienter."); *In re Downey Sec. Litig.*, 2009
10  WL 2767670, at *13 (C.D. Cal. Aug. 21, 2009) (even "a strong inference of scienter
11  is negated when there is an absence of stock sales or where such sales are minimal");
12  *accord Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

13  ### 5.    Plaintiffs Do Not Plead Loss Causation

14      Plaintiffs also fail to plead loss causation—*i.e.*, "'that the [price of the product]
15  fell significantly after the truth became known' or was 'revealed to the market.'"
16  *Cowan*, 2017 WL 5495734, at *6; *Apollo*, 774 F.3d at 605 (loss causation must be
17  pleaded with particularity). Plaintiffs appear to allege five purported "corrective
18  disclosures" that caused the price of their Products to decline (and thus caused them
19  losses). (AC ¶¶ 614-24.) But *none* is alleged to have "revealed" any truth about the
20  purported fraud and thus *none* is sufficient to plead loss causation. *See Apollo*, 774
21  F.3d at 608 (no loss causation where it was "unclear what claims made by the
22  Defendants were invalidated by [alleged corrective disclosure]"); *In re Nektar
23  Therapeutics*, 2020 WL 3962004, at *16-17 (N.D. Cal. July 13, 2020) (rejecting
24  scheme liability claim where plaintiffs "[did] not plausibly allege that the claimed
25  manipulation . . . was the proximate cause of the . . . price drop"); *Reed*, 2016 WL
26  6571281, at *11.

27      *Voyager Lockout.* First, Plaintiffs allege that "in June 2022," Voyager
28  "announced that it had significant exposure to [a] bankrupt hedge fund," allegedly

causing a price decline in ApeCoin over an unspecified period. (AC ¶ 617.) This event is untethered to any of the supposed fraudulent "schemes" alleged. In fact, there are no allegations that ApeCoin or the Yuga Labs Defendants had anything to do with non-party Voyager's products, platform or financial difficulties, or the non-party hedge fund. Nor do Plaintiffs specifically allege *when* in June 2022 this occurred or *what* price decline resulted.

*Celebrity Endorsements "Dried Up."* Second, Plaintiffs allege that "[b]y August 2022"—again, the reader is left to guess when exactly—"the celebrity endorsements had dried up." (AC ¶ 618.) Plaintiffs do not even allege, as required, which Product(s) they are referring to, let alone any revelation to the market that celebrities were no longer endorsing those Products. Nor do Plaintiffs allege any concrete price decline in response to this amorphous "event." (AC ¶ 389.) Moreover, as set forth in the MoonPay Defendants' motion to dismiss, the article Plaintiffs cite as purported support for this allegation says nothing about celebrity endorsements.

*ApeCoin "Token Unlock."* Third, Plaintiffs allege that on September 16, 2022, the price of ApeCoin dropped 9% "in anticipation of a significant token unlock." (AC ¶ 619.) Plaintiffs make no effort to describe what a "token unlock" supposedly is (AC ¶¶ 390, 619), and there are no allegations that any "unlock" revealed any alleged misleading statement or scheme causing a subsequent price decline. Plaintiffs' allegation that the "token unlock" was "anticipat[ed]" (AC ¶¶ 390, 619) further undermines their theory that it served as a surprise, corrective disclosure.

*SEC Investigation.* Fourth, Plaintiffs allege that on October 11, 2022, Bloomberg reported that the SEC was conducting an investigation of Yuga Labs. (AC ¶ 620.) Under binding Ninth Circuit precedent, "the announcement of an investigation, standing alone, is insufficient to establish loss causation." *Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014); *Cowan*, 2017 WL 5495734, at *7.

*FTX Collapse.* Finally, Plaintiffs allege that the "downfall of FTX had a significant impact" on the Products. (AC ¶¶ 622-24.) Again, this is an external event,

1   and there are no allegations connecting FTX's supposed "downfall" to any of the

2   specific alleged fraudulent schemes or misstatements in this case. Plaintiffs have thus

3   failed to adequately allege the requisite "causal connection" between the event and

4   their purported harm. *Apollo*, 774 F.3d at 608. And, again, Plaintiffs **do not even allege**

5   when the corrective disclosure or price declines occurred, the amount of the declines

6   or which Products were impacted.

7        If anything, the above intervening events Plaintiffs allege simply confirm that

8   Plaintiffs' claimed losses were ***not*** caused by the revelation of any fraud. *Cowan*, 2017

9   WL 5495734, at *6 ("[T]he plaintiff in a securities fraud action must demonstrate that

10  an economic loss was caused by the defendant's misrepresentations, *rather than some*

11  *intervening event.*" (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir.

12  2016))). Tellingly, Plaintiffs elsewhere allege that the fraud is ***ongoing*** and that the

13  Class Period runs through "the present." (AC ¶ 1.) As such, the fraud—on Plaintiffs'

14  own theory—somehow remains concealed and thus there was ***no*** corrective disclosure.

15       **6.   Plaintiffs Do Not Plead Reliance**

16       Plaintiffs' claim should be dismissed for the final reason that they do not plead

17  reliance on any deceptive acts, "an essential element of the § 10(b) private cause of

18  action." *ScripsAmerica*, 119 F.Supp.3d at 1247. The only purportedly misleading

19  statement that any Plaintiff is alleged to have read is Aronow's Twitter post responding

20  to a tweet about the BAYC NFT market value. (AC ¶ 464.) But the only Plaintiffs

21  alleged to have seen this statement—Titcher and Johnson—did not purchase BAYC

22  NFTs. (AC ¶¶ 10, 13; ECF 1-2; ECF 74-2 at 2-8.) Plaintiffs tacitly concede this defect,

23  alleging that Titcher and Johnson "saw"—but not that they ***relied on***—this statement.

24  (AC ¶ 464.) Plaintiffs otherwise allege that Titcher, Johnson and Palombini

25  "followed" Twitter accounts allegedly controlled by Yuga Labs Defendants and "saw"

26  promotions and press releases, but do not identify ***any*** specific false or misleading

27  statement on which they allegedly relied to make any purchase. (AC ¶ 462.) These

28  generalized allegations are insufficient. *Crago v. Charles Schwab & Co.*, 2017 WL

2540577, at *7 (N.D. Cal. June 12, 2017) (plaintiffs must plead they "actually relied on [the defendant's] alleged misrepresentations").[12]

Plaintiffs also do not plead reliance with respect to their market manipulation "scheme" claims. To do so, Plaintiffs "must allege that [they] relied on 'an assumption of an efficient market free of manipulation.'" *ScripsAmerica*, 119 F.Supp.3d at 1249; *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 2011 WL 1152568, at *9 (N.D. Cal. Mar. 28, 2011) ("Damage caused by reasonable reliance 'on an assumption efficient market free of manipulation,' is an essential element of a market manipulation claim."). Plaintiffs' own allegations confirm they could not have relied on a market free of manipulation. They expressly claim that NFT market manipulation was "prevalent" and widely known. (AC ¶¶ 307, 311-16.)

Nor can Plaintiffs rely on a mere presumption of class-wide reliance under the fraud-on-the-market doctrine. (AC ¶ 474.) Plaintiffs plead ***none*** of the factors necessary to establish market efficiency, such as trading volume, analyst coverage, the existence of arbitrageurs, issuer SEC registration eligibility, or that prices rapidly responded to news. *See Hashem v. NMC Health PLC*, 2021 WL 5926133, at *4 (C.D. Cal. Nov. 1, 2021) (dismissing section 10(b) claim where market efficiency not adequately pleaded); *ScripsAmerica*, 119 F.Supp.3d at 1250-58 (same).

**B.     Plaintiffs Fail To State a Claim Under Sections 5 and 12(a)(1) of the Securities Act (Count 4)**

As an initial matter, the heightened pleading requirements of Rule 9(b) apply to Plaintiffs' Section 12(a)(1) claim because it arises out of the same conduct as Plaintiffs' fraud claims and is therefore grounded in fraud. *See Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F.App'x 975, 978 (9th Cir. 2004) (Section 12(a)(1) claims "must be pleaded with 'particularity'" where coupled with fraud claims and "grounded in

---

[12] Although Plaintiffs allege that Titcher, Johnson, and Palombini relied on a March 19, 2022 promotional video, they do not allege anything whatsoever about what the video contained, let alone how it was misleading.

25

1  fraud"). Indeed, Plaintiffs rely on the very same allegations for their Section 10(b) and

2  Section 12(a)(1) claims. (*E.g.*, AC ¶¶ 561, 566.) Regardless, Plaintiffs' Section

3  12(a)(1) claim fails under any pleading standard.

4
5  **1.   Plaintiffs Do Not Allege That Any Yuga Labs Defendant Is a "Statutory Seller"**

6  Plaintiffs' Section 12(a)(1) claim should be dismissed because Plaintiffs do not

7  allege that Yuga Labs or the Executive Defendants are "statutory sellers."[13] *Pinter*,

8  486 U.S. at 642, 647; 15 U.S.C. § 77*l*(a)(1). A defendant is a "statutory seller" only if

9  it (i) "passed title, or other interest in the security, to the buyer for value," or

10  (ii) "successfully solicit[ed] the purchase [of a security], motivated at least in part by

11  a desire to serve [its] own financial interests or those of the securities' owner." *Pinter*,

12  486 U.S. at 642, 647.

13  **(a)   No Passing of Title**

14  Plaintiffs do not meet the first prong of *Pinter* because no Plaintiff alleges to

15  have bought any Product from any Defendant. *State Treasurer of Mich. v.*

16  *Countrywide Fin. Corp.*, 2011 WL 13220150, at *6 (C.D. Cal. Aug. 22, 2011)

17  (dismissing where "the AC does not explain whether Plaintiff purchased directly from

18  [defendant]"). Rather, Plaintiffs admit they acquired their Products on secondary

19  platforms from unidentified secondary market participants. (AC ¶¶ 10-13, 588.)

20  **(b)   No "Successful Solicitation"**

21  Plaintiffs also do not meet the second prong of *Pinter* because they do not allege

22  that Yuga Labs or any Executive Defendant "successfully solicit[ed]" the purchase of

23  any Products by any Plaintiff for financial gain. *Pinter*, 486 U.S. at 623; *accord Pino*

24  *v. Cardone Capital, LLC*, 55 F.4th 1253, 1257-58 (9th Cir. 2022).[14]

25  _____

26  [13] The Section 12 claim is not brought against Oseary. (AC at 184 lines 3-4; *id.* ¶ 560.)

27  [14] The Ninth Circuit in *Pino* departed from prior precedent and deepened a circuit split
28  by holding that social media posts soliciting sales can be "solicitations" under
Section 12 even if the defendant did not directly or actively target the particular

*(cont'd)*

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

**(i)      None of Plaintiffs' Allegations Constitutes Solicitation**

To adequately allege solicitation, a plaintiff "must allege that the defendants did more than simply urge another to purchase a security." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011); *Pino*, 55 F.4th at 1259. Rather, a plaintiff must allege that a statement was "directed at producing [a] sale," *Pinter*, 486 U.S. at 646, and "persuade[d] potential purchasers to invest," *Pino*, 55 F.4th at 1260. A defendant's efforts that are merely a "substantial factor" in causing the sale or that reflect "mere participation" are insufficient. *Pinter*, 486 U.S. at 650, 654; *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *4 (C.D. Cal. Dec. 17, 2019) ("'remote' involvement" insufficient). As one court explained, a claim under Section 12(a) fails where the defendant "did not specifically recommend or 'talk [the plaintiff] into buying'" the security. *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1532 (11th Cir. 1991); *see also* Solicitation, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act or an instance of requesting or seeking to obtain something; a request or petition").

Here, Plaintiffs allege generic statements attributed to various Defendants, but never identify the specific statements that constitute "solicitations," let alone explain how they actually solicited the purchase of any specific Product. (AC ¶¶ 559-68.) Instead, Plaintiffs assert in boilerplate fashion that certain Defendants "actively solicited sales of the [Products] on social media, proprietary web sites, press releases, and traditional print media." (AC ¶ 566.)

Plaintiffs' failure to identify which statements solicited the purchase of which Products is fatal to their claim under any standard. *See Hollifield v. Resolute Capital Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) ("Without any factual allegations from which to draw the conclusion that Movants directly sold

---

plaintiff. *Pino*, 55 F.4th at 1256, 1258. The *Pino* defendants filed a petition for writ of certiorari to the Supreme Court on this issue. If *Pino* is reversed, Plaintiffs' claims would fail for the additional reason that they do not even attempt to plead direct solicitation. Nonetheless, Plaintiffs do not plead solicitation under *Pino* for the reasons set forth herein.

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

securities or engaged in solicitation to Plaintiffs, Plaintiffs do not state plausible claims against Movants for the sale of unregistered securities."); *Risley v. Universal Navigation*, 2023 WL 5609200, at *18 (S.D.N.Y. Aug. 29, 2023) (dismissing Section 12(a)(1) claims where "Plaintiffs offer[ed] nothing more than a conclusory allegation that Defendants 'sold, promoted, and/or solicited the Tokens directly to Plaintiffs and the Class members.'").[15]

Regardless, none of the statements attributed to the Yuga Labs Defendants was "solicitation" under *Pinter*.[16] At most, the statements merely described one or more of the Products and their features, announced sales that had already occurred, discussed unrelated products, or reflected excitement and enthusiasm about Yuga Labs' endeavors—none of which constitutes "solicitation." *See Risley*, 2023 WL 5609200, at *19 (tweets about safety of functions of exchange were "too attenuated" to constitute solicitation); *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023) (no solicitation where defendant "promoted the sale of Tokens by providing users with descriptions of each Token"); *Brody v. Homestore, Inc.*, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (no solicitation where underwriters "presented highly favorable information about the Company").

Plaintiffs' general and disjointed references to "solicitation" are a far cry from what the Ninth Circuit has held constitutes solicitation. *See Pino*, 55 F.4th at 1256 ("I am offering investment opportunities to the everyday investor, like you! . . . [Y]ou're gonna walk away with a 15% annualized return.");[17] *Salameh v. Tarsadia Hotels*, 2010

---

[15] The same is true of Plaintiffs' other conclusory allegations of solicitation, such as Plaintiffs' bare allegation that "Shoemaker consistently reposts the solicitations and misleading statements from the main BAYC, Otherside, ApeCoin, and Yuga Twitter accounts." (AC ¶ 268.)

[16] None of the statements by the Moving Defendants named in Count 4 are solicitations for the reasons set forth in their contemporaneously submitted briefs.

[17] The complaint in *Pino* further explained that the defendant in that case asked potential investors, "Want to double your money[?]" and stated that an investor could receive $480,000 in cash flow after investing $1,000,000, achieve "north of 15%

*(cont'd)*

28

1  WL 2839013, at *5 (S.D. Cal. July 20, 2010) (no Section 12 liability where there were

2  "no allegations that the [defendants] sought out Plaintiffs or somehow induced

3  Plaintiffs into entering into the particular transactions"). They are thus insufficient to

4  allege that any Yuga Labs Defendant was a statutory seller.[18]

5                    **(ii)    Plaintiffs Do Not Allege Any "Successful" Solicitation**

6           Plaintiffs also do not plead that any alleged solicitation was "successful," as

7  they must. *Pinter*, 486 U.S. at 647. To plead "successful" solicitation, at minimum,

8  Plaintiffs must show that they were actually aware of and influenced by the

9  solicitations when purchasing Products. *See Hollifield*, 2023 WL 4291524, at *6

10 (dismissing solicitation claims because "Plaintiffs d[id] not allege that they attended

11 any seminars or dinners or listened to any radio shows" hosted by defendants); *In re

12 Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) ("Without

13 averments that he was cognizant of, or influenced by, [defendant] Draper's

14 involvement in the Tezos project, [plaintiff]'s statutory seller claim against Draper is

15 not plausible."); *Holsworth v. BProtocol Fund*, 2021 WL 706549, at *3 (S.D.N.Y.

16 Feb. 22, 2021) (plaintiff failed to plead solicitation where he had not "shown that he

17 was directly contacted by [d]efendants or that he purchased securities *as a result of*

18 any active solicitations by [d]efendants"). Plaintiffs do not allege that they purchased

19 any Products as a result of any "solicitations" by Yuga Labs or the Executive

20 Defendants.

21        ***"High School Dropout" Tweet.*** Titcher, Johnson, and Palombini allege to have

22 been induced to purchase and hold unspecified Products based on Aronow's

23 August 21, 2021, Twitter post. (AC ¶ 464.) All of these Plaintiffs' claims fail as a

24 ──────────────────────────

25 returns after fees," and obtain a "118% return amounting to 19.6% per year." *Pino*, 55
   F.4th at 1256. These posts were intended "to source investors" and "persuade potential
26 purchasers to invest." *Id.* at 1260. Plaintiffs allege no such solicitation here.

27 [18] Plaintiffs also misattribute without support certain statements on apecoin.com to
   Yuga Labs. (AC ¶¶ 258-59.) In any event, these statements similarly just described
28 ApeCoin's features and benefits, such as access to "exclusive games, merch, events,
   and services" (AC ¶ 259), and did not urge anyone to make a purchase.

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

1    matter of law because ***none*** actually purchased BAYC NFTs—the only Products that
2    were the subject of the tweet. (AC ¶¶ 10-13; ECF 1-2 (Titcher purchases); ECF 74-2
3    at 2-8 (Johnson purchases); ECF 74-2 at 25-26 (Palombini purchases).) Palombini's
4    claim independently fails because he does not allege that he even saw the post.

5        ***Sotheby's Auction Tweet.*** Titcher and Palombini also allege that they relied on
6    a tweet from the BAYC Twitter account relating to the Sotheby's auction of BAYC
7    NFTs. (AC ¶ 454.) Neither of these Plaintiffs even alleged to have purchased BAYC
8    NFTs, so a statement about an auction of BAYC NFTs could not have solicited their
9    purchases. (AC ¶¶ 12-13; ECF 1-2; ECF 74-2 at 25-26.) Titcher and Palombini's
10   solicitation claim is also gutted by their admission that they made their purchases
11   before the September 9, 2021 auction (on August 29, 2021, and April 30, 2021,
12   respectively). (AC ¶¶ 135, 454.)

13       ***Rolling Stone Tweets.*** Plaintiffs point to BAYC tweets promoting *Rolling Stone*
14   magazine covers featuring BAYC NFTs, but none of the Plaintiffs who claim to have
15   seen them allege that they bought BAYC NFTs. Thus, there cannot possibly be any
16   claim for successful solicitation.[19]

17               **(iii)    Plaintiffs Do Not Plead Financial Motivation**

18       A solicitation is only actionable under Section 12(a)(1) if made by a defendant
19   for financial gain. *Pinter*, 486 U.S. at 623. Aside from vague generalities, Plaintiffs do
20   not plead any cognizable financial motivation by Yuga Labs or the Executive
21   Defendants (or anyone else, for that matter) to solicit Plaintiffs' purchases of the
22   Products, which were allegedly made on secondary marketplaces from unidentified
23   third parties, not any Defendant. *See Risley*, 2023 WL 5609200, at *19.

24       **2.    Plaintiffs' Section 12(a)(1) Claim Is Time-Barred**

25       Finally, even if Plaintiffs had pleaded solicitation (they have not), they must
26   "affirmatively plead" a "violation" that occurred within one year of the date the action

27   _____

28   [19] Plaintiffs' vague references to assorted, undefined "promotions" fail to plead even
     the most basic facts necessary to plead solicitation under *Pinter*.

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

1   was filed. *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985). This action was filed

2   on December 8, 2022. Accordingly, claims based on any alleged solicitations that

3   occurred prior to **December 8, 2021**, are time-barred, including: (i) Aronow's tweet

4   on August 21, 2021; and (ii) Yuga Labs' tweets on September 9, 2021, November 1,

5   2021, and November 15, 2021. (AC ¶¶ 157-58, 454, 464); *Anderson v. Binance*, 2022

6   WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) (dismissing where acts of solicitation

7   occurred more than a year before plaintiffs filed their complaint).

8
9   **C.    Plaintiffs Fail To State a Claim Under Section 15 of the Securities Act or Section 20(a) of the Exchange Act (Counts 5 and 9)**

10      Plaintiffs' control person claims under Section 15 of the Securities Act and

11   Section 20(a) of the Exchange Act should be dismissed because Plaintiffs have not

12   alleged a primary violation. *See Rigel*, 697 F.3d at 886 (Section 15); *LifeVoxel Va.*

13   *SPV, LLC v. LifeVoxel.AI, Inc.*, 622 F.Supp.3d 935, 947 (S.D. Cal. 2022)

14   (Section 20(a)).

15   **D.    Plaintiffs Do Not Plead a Domestic Transaction Under *Morrison***

16      Plaintiffs' federal securities claims must also be dismissed in their entirety

17   because no Plaintiff alleges any domestic transaction that is subject to the U.S.

18   securities laws, which only cover conduct "in connection with [i] the purchase or sale

19   of a security listed on an American stock exchange, and [ii] the purchase or sale of any

20   other security in the United States." *Morrison*, 561 U.S. at 273; *S.E.C. v. Levine*, 462

21   F.App'x 717, 719 (9th Cir. 2011).

22      Plaintiffs do not meet the first prong of *Morrison* because they do not allege any

23   facts from which to conclude that they purchased Products on a domestic "exchange."

24   *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 936 (9th Cir. 2018). The SEC's

25   implementing regulation sets forth requirements of an exchange, *id.* at 946 (citing 17

26   C.F.R. § 240.3b-16(a)(1)–(2)), and Plaintiffs do not allege any facts to show that any

27   of the platforms on which they allege to have purchased their Products meet these

28   standards.

31

1   Plaintiffs also do not meet the second prong of *Morrison* because they do not

2   allege that they engaged in domestic transactions. To plead a domestic transaction, "a

3   plaintiff must plausibly allege 'that the purchaser incurred irrevocable liability within

4   the United States to take and pay for a security, or that the seller incurred irrevocable

5   liability within the United States to deliver a security.'" *Stoyas*, 896 F.3d at 948. Here,

6   Plaintiffs allege no facts to support the conclusion that irrevocable liability occurred

7   in the United States. They merely allege that they purchased Products on secondary

8   platforms from unidentified secondary market or liquidity pool participants. (AC

9   ¶¶ 10-13, 588; *infra* § III.F.1.) Such allegations are insufficient to establish a domestic

10  transaction. *Melvin v. Brayshaw*, 2019 WL 6482220, at *3 (C.D. Cal. Oct. 3, 2019)

11  (dismissing complaint "devoid of allegations from which the Court could infer

12  irrevocable liability incurred or that title transferred in the United States"); *In re*

13  *iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2021 WL 3863372, at *4 (S.D.N.Y. Aug. 30,

14  2021) ("[T]hat a trade was made through the United States over-the-counter market

15  does not indicate where the parties to that transaction incurred irrevocable liability or

16  where title passed.").[20] Accordingly, all of Plaintiffs' federal securities claims should

17  be dismissed on this ground.

18
19  **E.    Plaintiffs Fail To State a Claim for Violations of the California Unfair Competition Law ("UCL") (Counts 1-3)**

20   To plead a claim under California's Unfair Competition Law, a plaintiff must

21  allege "unfair competition," defined as a "business act or practice" that is

22  (i) "unlawful," (ii) "unfair," or (iii) "fraudulent." Cal. Bus. & Prof. Code, § 17200;

23  *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1149-51 (N.D. Cal.

24  2010). As Plaintiffs concede, these claims must be pleaded with particularity under

25  Rule 9(b). (AC ¶¶ 483, 519, 539); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120,

26  1125 (9th Cir. 2009).

27  _____

28  [20] This defect is particularly acute for Palombini, who is alleged to be a resident and citizen of Portugal. (AC ¶ 12.)

32

### 1.    Plaintiffs Lack Standing

As a threshold matter, Plaintiffs lack standing because they do not plead with particularity "that they relied on the misleading materials" in making a purchase for the reasons set forth above. (*Supra* § III.A.6.) *See Bergeron v. Monex Deposit Co.*, 2020 WL 3655495, at *4-5 (C.D. Cal. Apr. 29, 2020) (dismissing UCL claim where plaintiff failed to adequately plead actual reliance); *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *12 (C.D. Cal. Oct. 20, 2014). This alone requires dismissal.

### 2.    Plaintiffs Fail To Plead Recoverable Remedies

Dismissal is also warranted because Plaintiffs fail to plead cognizable UCL remedies. "The UCL provides a private plaintiff two equitable remedies: injunctive relief and restitution." *Tellone Prof. Ctr. LLC v. Allstate Ins. Co.*, 2021 WL 1254360, at *6 (C.D. Cal. Jan. 26, 2021). Plaintiffs do not adequately allege entitlement to either.

First, "to establish standing to pursue injunctive relief . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Plaintiffs here merely assert that they "seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants." (AC ¶¶ 502, 538, 558.) This allegation is insufficient "to plead that ongoing or future harm is likely." *Tellone*, 2021 WL 1254360, at *7. Plaintiffs also do not allege any intent to buy any Products in the future. *Ibarra v. Pharmagenics LLC*, 2023 WL 2445397, at *3 (C.D. Cal. Mar. 8, 2023) (dismissing request for injunctive relief where plaintiff did not "claim that he intends to purchase the product at issue . . . in the future").

Plaintiffs' requests for restitution fare no better. "A claimant may seek restitution in equity 'where money or property identified as belonging in good conscience to the [claimant] could clearly be traced to particular funds or property in the defendant's possession.'" *Schuman v. Microchip Tech. Inc.*, 372 F.Supp.3d 1054, 1059 (N.D. Cal. 2019). Plaintiffs do not allege transacting with any Yuga Labs

1   Defendant (*supra* § III.B.1.a), and thus fail to allege any particular money or property

2   in any Yuga Labs Defendant's possession that can be subject to restitution. While

3   Plaintiffs allege that certain Products have decreased in value, they cannot seek

4   restitution on this basis because a loss of value "provide[s] no corresponding gain to a

5   defendant." *Wofford v. Apple Inc.*, 2011 WL 5445054 at *3 (S.D. Cal. Nov. 9, 2011).

6         Finally, Plaintiffs cannot seek equitable relief under the UCL because they fail

7   to allege an inadequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d

8   834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy

9   at law before securing equitable restitution for past harm under the UCL");

10  *Grundstrom v. Wilco Life Ins. Co.*, 2022 WL 2390992, at *2 (N.D. Cal. July 1, 2022)

11  (same). Rather, Plaintiffs plead a host of claims seeking legal remedies. While

12  Plaintiffs assert that if their statutory claims are dismissed they would then have no

13  adequate remedy at law (AC ¶ 554), that allegation is irrelevant. *Rhynes v. Stryker*

14  *Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded

15  by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is

16  unavailable."); *Grundstrom*, 2022 WL 2390992, at *2.

17      **3.**    **Plaintiffs Do Not Allege Direct Economic Injury**

18        Plaintiffs fail to plead that any alleged misstatement, omission, or fraudulent

19  scheme actually caused any loss. (*Supra* § III.A.5.) Therefore, Plaintiffs' UCL claims

20  fail for the independent reason that Plaintiffs do not plead the requisite direct economic

21  injury. *See Chu v. Fay Serv., LLC*, 2016 WL 5846990, at *6 (N.D. Cal. Oct. 6, 2016).

22      **4.**    **Plaintiffs Do Not Plead Unlawful, Unfair, or Fraudulent Acts**

23        Plaintiffs do not plead "acts or practices" that are "unlawful," "unfair" or

24  "fraudulent" because, as explained herein, they have not pleaded fraud or any violation

25  of federal or California law. *In re Apple Processor Litig*., 2022 WL 2064975, at *12

26

27

28

DEFENDANTS' MOTION TO DISMISS         CASE NO.: 2:22-cv-08909-FMO-PLA

1 (N.D. Cal. June 8, 2022); *Aleksick v. 7–Eleven, Inc.*, 140 Cal.Rptr.3d 796, 801

2 (2012).[21]

3       Plaintiffs also do not plead any "unfair" conduct but rather merely allege a

4 boilerplate "recitation of the 'unfair' legal standard." *Apple*, 2022 WL 2064975, at

5 *13; (AC ¶ 510). Moreover, "where the unfair business practices alleged under the

6 unfair prong of the UCL overlap entirely with the business practices addressed in the

7 fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

8 survive if the claims under the other two prongs of the UCL do not survive." *Hadley*

9 *v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104-05 (N.D. Cal. 2017).[22]

10      **5.     The UCL Does Not Apply to Alleged "Securities"**

11      Finally, Plaintiffs' allegation that the Products are "securities" mandates

12 dismissal because the UCL "does not apply to securities transactions." *Bowen v.*

13 *Ziasun Tech., Inc.*, 116 Cal.App.4th 777, 788 (2004). Plaintiffs may contend that they

14 are pleading in the alternative, but a plaintiff "cannot reasonably assert that it was

15 pleading 'in the alternative'" where, as here, a claim "incorporate[s]" and has at its

16 "foundation" another claim. *Meeco Mfg. Co. v. True Value Co.*, 2007 WL 1051259, at

17

18

_____

19 [21] The information that supposedly should have been disclosed also does not relate to
20 the Products' "central functionality," providing an independent basis for dismissal of
   Plaintiffs' UCL claims. *See Hall v. SeaWorld Entm't, Inc.*, 747 F.App'x 449, 451 (9th
21 Cir. 2018) (cited in AC ¶¶ 489, 545). While Plaintiffs assert that Yuga Labs made
   "misleading statements and omissions concerning the ability to use [the Products] and
22 their related intellectual property rights" (AC ¶¶ 489, 545), Plaintiffs do not identify
   which specific statements concerning the Products' features were supposedly
23 "misleading." This cannot satisfy the applicable heightened pleading standard.
   *Kearns*, 567 F.3d at 1125.

24 [22] Insofar as Plaintiffs may attempt to defend their UCL claim by relying on the non-
25 binding decision in *In re Ethereummax Investor Litigation*, No. CV 22-00163-MWF,
   slip op. (C.D. Cal. June 6, 2023), the case is inapposite for numerous reasons,
26 including that there the plaintiff alleged: (i) specific facts showing how they knew
   celebrities were paid for promotions, *id.* at 8-10; (ii) certain defendants profited by
27 selling tokens at artificially inflated prices, even bragging about doing so, *id.* at 10;
   and (iii) certain defendants solicited investments promising substantial returns without
28 any legitimate business plan, *id.* at 69, 75-76. Here there are no supported allegations
   of this sort.

1  *3 (W.D. Wash. Apr. 4, 2007); (*e.g.*, AC ¶¶ 112, 234, 244, 517, 520(e); *see also* AC

2  ¶ 503 (incorporating AC ¶¶ 1-399 and 454-475)).

### F.    Plaintiffs Fail To State a Qualification Claim Under Sections 25110 and 25503 of the California Corporations Code (Count 6)

#### 1.    No Alleged Acquisition From Any Yuga Labs Defendant

Plaintiffs do not allege that they purchased any Product from any Defendant.[23]
This omission is fatal, as a plaintiff must allege "that the defendant actually sold the
securities to the plaintiff." *See Hollifield*, 2023 WL 4291524, at *6 (citing *Apollo Cap.
Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal.App.4th 226, 252-54 (2007)).
Plaintiffs suggest that ApeCoin tokens were "provided and/or sold into the ApeCoin
liquidity pool" on secondary platforms by "Executive Defendants" and that Plaintiffs
purchased from the liquidity pool, which is merely a secondary trading pool that can
be utilized by any third party. (AC ¶ 588.) But Plaintiffs offer no supporting facts to
show a direct purchase from a Defendant, as they must. Indeed, Plaintiffs ***do not even
allege that a single ApeCoin*** they purchased from any liquidity pool was actually sold
into the pool by any Executive Defendant. This is fatal. *See In re Lehman Bros. Sec.
& ERISA Litig.*, 903 F.Supp.2d 152, 197 n.244 (S.D.N.Y. 2012); *Dietrich v. Bauer*, 76
F.Supp.2d 312, 330, 351 (S.D.N.Y. 1999).

#### 2.    No Alleged Acquisition in an "Issuer Transaction"

Similarly, Plaintiffs also fail to allege they acquired their Products in a so-called
"issuer transaction," as required to state a claim under Sections 25110 and 25503. *See*
Cal. Corp. Code § 25110; *Bowden v. Robinson*, 67 Cal.App.3d 705, 711 (1977). An
"issuer transaction" is the sale of a security "purchased from the issuing corporation
in a public offering," *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1104 (1993), and is limited
to the transaction that occurs the *first* time a security is sold, *see* Harold W. Marsh &
Robert H. Volk, 1 Practice Under the California Securities Laws § 14.06 (2018).

---

[23] This claim is not asserted against Oseary. (AC at 187, lines 13-14; *id.* ¶ 578.)

36

1  Because securities "purchased . . . on the open market" do not require the purchaser to

2  "deal face to face with the defendants, the price the purchasers [pay does] not accrue

3  directly to the defendants," and such transactions do not meet the definition of issuer

4  transaction. *Viterbi v. Wasserman*, 191 Cal.App.4th 927, 938 (2011). Here, Plaintiffs

5  admit they made their purchases on anonymous secondary marketplaces. (AC ¶¶ 10-

6  13.) Their claims thus fail.

7       ### 3.    No Alleged Purchases in California

8          In addition, Plaintiffs fail to allege that the offer or sale with respect to any

9  Products occurred in California, as required to state a claim under Section 25110.

10 Cal. Corp. Code § 25503; *Siegal v. Gamble*, 2016 WL 1085787, at *7 (N.D. Cal.

11 Mar. 21, 2016). Whether a sale takes place in California does not depend on whether

12 the purchaser is a California citizen or the alleged "issuer" is located or conducts

13 business in California. *Siegal*, 2016 WL 1085787, at *7 ("That a person is a citizen of

14 a state is insufficient to leap to the conclusion that the sale of a security took place in

15 that state."). Rather, a sale "is made in this state when an offer to sell is made in this

16 state, or an offer to buy is accepted in this state, or (if both the seller and the purchaser

17 are domiciled in this state) the security is delivered to the purchaser in this state." Cal.

18 Corp. Code § 25008(a); *see also Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1460

19 (S.D. Cal. 1988). Plaintiffs do not allege that any Defendant offered to sell Plaintiffs

20 any Products, accepted any Plaintiff's offer to buy Products, or delivered Products to

21 any Plaintiff in California. This requires dismissal.

22      ### 4.    Plaintiffs' Qualification Claim Is Time-Barred

23         Plaintiffs' qualification claim is time-barred at the very least for any transactions

24 that occurred on or before December 8, 2021—*i.e.*, one year before this action was

25 filed—because Plaintiffs knew "the facts constituting" such transactions at the time

26 they occurred, if not sooner. Cal. Corp. Code § 25507(a); *accord In re Bibox Grp.*

27 *Holdings Ltd. Sec. Litig.*, 534 F.Supp.3d 326, 338-39 (S.D.N.Y. 2021) (dismissing

28 Section 12(a)(1) claim as time-barred where plaintiff failed to plead any concealment

1    of "critical facts"); (*supra* § III.A.3.d). Indeed, all of the alleged facts on which

2    Plaintiffs rely in mistakenly claiming that the Products are "securities" were known to

3    Plaintiffs at the time they allegedly purchased their Products. (AC ¶¶ 403, 406, 413.)

4    **G.    Plaintiffs Fail To State a Misrepresentation or "Manipulation" Claim Under Sections 25400-01 and 25500-01 of the California Corporations**

5    **Code (Counts 10 and 11)**

6    Plaintiffs do not plead a fraud claim under California law because they have not

7    alleged any actionable misstatement or scheme for the reasons set forth above. *See*

8    *Jackson v. Fischer*, 931 F.Supp.2d 1049, 1077-78 (N.D. Cal. 2013) (dismissing

9    Sections 25401 and 25501 claims when plaintiff failed to plead false or misleading

10   statements under Section 10(b)); *Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc*.,

11   1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998). Plaintiffs' Section 25401 claim

12   must also be dismissed because they do not allege "'strict privity' between the

13   parties"—*i.e.*, that any Defendant "sold [a Product] directly to [any Plaintiff]." *Sharp*

14   *v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013); (*supra*

15   § III.B.1.a). Moreover, Plaintiffs' claim under 25400 and 25500 requires that the

16   "defendant 'willfully participate[ ]' in the violation," *Sharp*, 2013 WL 12094819, at

17   *2, which Plaintiffs do not plead for the reasons set forth above. (*Supra* § III.A.4.)

18   **H.    Plaintiffs Fail To State a Secondary Liability Claim Under Sections 25403(b), 25504, and 25504.1 of the California Corporations Code**

19   **(Count 12)**

20   Plaintiffs' claims for secondary liability should be dismissed because they have

21   not pleaded a predicate primary violation. *Jackson*, 931 F.Supp.2d at 1064. Plaintiffs'

22   Section 25504.1 claim should also be dismissed because Plaintiffs do not plead the

23   requisite "intent to deceive or defraud." Cal. Corp. Code § 25504.1; (*supra* § III.A.4).

24   Plaintiffs' claim under Section 25403(b) should be dismissed because Section 25403

25   does not provide a private right of action. *Scognamillo v. Credit Suisse First Boston*

26   *LLC*, 2005 WL 2045807, at *9 (N.D. Cal. Aug. 25, 2005), *aff'd*, 254 F.App'x 669

27   (9th Cir. 2007).

28

DEFENDANTS' MOTION TO DISMISS            CASE NO.: 2:22-cv-08909-FMO-PLA

**I.      Plaintiffs Fail To State a Claim for Unjust Enrichment (Count 13)**

"[I]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *accord Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022) ("Unjust enrichment can be alleged [only] to the extent it represents a remedy for some other valid cause of action."). Plaintiffs' unjust enrichment claim should be dismissed on this basis alone.

Although an "unjust enrichment" claim may be brought in the form of a "quasi-contract claim seeking restitution," such a claim predicated on fraud or consumer protection claims—as here—must nonetheless be dismissed if those predicate claims fail. *Apple*, 2022 WL 2064975, at *12 (citing *Astiana*, 783 F.3d at 762). Plaintiffs' claim also fails because it does not allege any unjustly "retained" "benefit" conferred on the Yuga Labs Defendants at the expense of any Plaintiff. *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 532 F.Supp.3d 956, 970 (S.D. Cal. 2021); (*supra* § III.E.2).

**J.      Plaintiffs Lack Standing To Pursue California Claims Regarding BAYC, BAKC and ApeCoin**

Plaintiffs lack standing to pursue California claims regarding BAYC NFTs, BAKC NFTs and ApeCoin because no California resident plaintiff purchased these Products. (*Supra* § II.A-B.) "Plaintiffs must show they have standing for each claim they raise." *Goldstein v. Gen. Motors LLC*, 445 F.Supp.3d 1000, 1021 (S.D. Cal. 2020). "Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection." *Id.*; *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *3-4 (C.D. Cal. Nov. 23, 2020).

All Plaintiffs except Titcher reside outside California and allege no injury in California. (AC ¶¶ 10-13.) While Titcher alleges that he purchased one MAYC NFT and one Otherdeed NFT, he has standing to assert claims only as to specific products he purchased. *See Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901, 909 (C.D. Cal. 2021).

As noted above, although not pleaded in the Amended Complaint, Titcher's certification reflects that he transacted in ApeCoin over a roughly one-month period and ultimately sold more than he acquired. (*Supra* § II.B.) He fails to allege that any of these transactions were connected to any purported wrongdoing, and, in fact, his certification indicates that he *profited* from these ApeCoin transactions. (ECF 1-2.) Thus, Plaintiffs' California claims regarding BAYC NFTs, BAKC NFTs and ApeCoin should be dismissed. *See Schmitt v. Younique LLC*, 2017 WL 10574060, at *4 (C.D. Cal. Dec. 4, 2017).

## K.    Plaintiffs Cannot Pursue California State Law Claims on Behalf of a Nationwide Class

All state law claims brought on behalf of non-California putative class members also should be dismissed because the California statutes do not apply extraterritorially. "California law presumes that the legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1147 (N.D. Cal. 2013); *see also Mosqueda v. Am. Honda Mot. Co., Inc.*, 443 F.Supp.3d 1115, 1126 (C.D. Cal. 2020) (cited in AC ¶ 544) (plaintiffs "may not assert nationwide claims under California law" because "other states have a compelling interest in setting the scope of recovery for consumers under their own laws").

Here, Plaintiffs do not allege that any Plaintiff or putative class member located outside California has been harmed due to activity occurring in California, foreclosing claims on behalf of these Plaintiffs and putative class members. *Wilson*, 961 F.Supp.2d at 1148 (dismissing with prejudice plaintiffs' California law claims based on activity occurring in other states); *Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *6-7 (N.D. Cal. May 8, 2015) ("[w]here 'none of the alleged misconduct or injuries occurred in California,' the UCL has no application," and thus plaintiff could bring UCL claim only "on behalf of the putative California-only class").

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA

**L.      The Court Should Decline To Exercise Pendent Personal Jurisdiction With Respect to Plaintiffs' State Law Claims**

Finally, because Plaintiffs do not state a claim under the federal securities laws, the Court should also decline to exercise pendent personal jurisdiction as to the non-California Defendants, including Yuga Labs, Aronow, Solano, Atalay, Muniz, Shoemaker, Ehrlund, and Lyons. (AC ¶¶ 14-17, 19-22.) Courts "decline[ ] to exercise pendent personal jurisdiction" where, as here, a plaintiff's federal claims providing for nationwide personal jurisdiction lack merit and there is no independent basis for personal jurisdiction. *Cullen*, 2021 WL 2000247, at *4-5; *Goldberg v. Rome McGuigan, P.C.*, 2021 WL 3520725, at *3-4 (C.D. Cal. Apr. 23, 2021).

**No general jurisdiction.** Plaintiffs allege that Aronow, Solano, Atalay, Muniz, Shoemaker, Ehrlund, and Lyons reside outside California and that Yuga Labs is based and incorporated outside California. (AC ¶¶ 14-17, 19-22.) As such, none are subject to general jurisdiction in California. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

**No specific jurisdiction.** To establish specific jurisdiction over a non-resident defendant, a plaintiff bears the burden of showing that (i) the defendant "purposefully direct[ed]" activities or consummated a transaction with the forum or "purposefully avail[ed] himself of the privilege of conducting activities in the forum," and (ii) the claim arises out of defendant's "forum-related activities." *Schwarzenegger v. Fred Martin Mot. Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff satisfies both prongs, the defendant may still defeat jurisdiction by showing that its exercise would not "comport with fair play and substantial justice." *Id.* Importantly, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original).

Here, Plaintiffs fail to allege any acts that the non-California Defendants took in California, let alone sufficient contacts with California to establish specific jurisdiction. Plaintiffs' recitation of the legal requirements for specific jurisdiction (AC ¶ 47) is insufficient. *Rain Design, Inc. v. Spinido, Inc.*, 2018 WL 4904894, at *2

1   (N.D. Cal. Oct. 9, 2018) (rejecting "conclusory" and "boilerplate" allegations of

2   personal jurisdiction); *Billion Int'l Trading Inc. v. Univ. Sportswear Inc.*, 2013 WL

3   12403059, at *5 (C.D. Cal. Dec. 27, 2013). So is the mere fact that Titcher is allegedly

4   located in California. *Kalin v. Semper Midas Fund, Ltd.*, 2021 WL 5906053, at *2

5   (N.D. Cal. Dec. 14, 2021) ("The plaintiff cannot be the only link between the defendant

6   and the forum . . . ."). At the core of the Amended Complaint are allegations that

7   Defendants posted material on the internet, which this Court has held is insufficient to

8   confer specific jurisdiction absent purposeful direction. *Johnson v. Comm'n on*

9   *Presidential Debates*, 2014 WL 12597805, at *9 (C.D. Cal. Jan. 6, 2014) (Olguin, J.)

10  (no jurisdiction where defendant posted material on website that could "be viewed by

11  members of the general public both inside and outside California"); *MGA Entm't, Inc.*

12  *v. Cabo Concepts Ltd.*, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021) (Olguin, J.)

13  (dismissing for lack of personal jurisdiction and noting that "[o]perating a universally

14  accessible website alone cannot satisfy the express aiming prong"); *accord Pebble*

15  *Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (website insufficient to

16  confer jurisdiction where it was "not aimed at California").

17       Consequently, the Court should decline to exercise pendent personal

18  jurisdiction over the non-California Defendants once the federal claims are

19  dismissed.[24]

20  **IV.   CONCLUSION**

21       For these reasons, the Court should dismiss the Amended Complaint in its

22  entirety with prejudice.

23  _____

24  [24] The Court also lacks personal jurisdiction over the non-California defendants for
    claims arising out of non-California conduct on behalf of non-California putative class

25  members. In *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255
    (2017), the Supreme Court held that a court may exercise personal jurisdiction in a

26  mass action only if there is personal jurisdiction over the defendant as to each plaintiff.
    While there is a split of authority on whether *Bristol-Myers* applies in the nationwide

27  class action context, Defendants respectfully submit that it does, *Carpenter v.*
    *PetSmart, Inc.*, 441 F.Supp.3d 1028, 1035 (S.D. Cal. 2020), and intend to argue as

28  much should this case proceed past the pleading stage, *Moser v. Benefytt, Inc.*, 8 F.4th
    872, 878 (9th Cir. 2021).

42

1

2  DATED:  September 12, 2023

3                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4

5              By:  _____*/s/ Peter B. Morrison*_____

6                           PETER B. MORRISON

7                     *Attorneys for Defendants*
               Yuga Labs, Inc., Wylie Aronow, Greg Solano,
8               Kerem Atalay, Zeshan Ali, Nicole Muniz,
               Jasmin Shoemaker, Patrick Ehrlund,
9               Christopher Lyons, and Guy Oseary

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS              CASE NO.: 2:22-cv-08909-FMO-PLA

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Yuga Labs, Inc., Wylie Aronow, Greg Solano, Kerem Atalay, Zeshan Ali, Nicole Muniz, Jasmin Shoemaker, Patrick Ehrlund, Christopher Lyons and Guy Oseary, certifies that this brief contains 13,998 words, which complies with the word limit set by Court Order dated August 14, 2023.

DATED:  September 12, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
*/s/ Peter B. Morrison*
PETER B. MORRISON

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,
Kerem Atalay, Zeshan Ali, Nicole Muniz,
Jasmin Shoemaker, Patrick Ehrlund,
Christopher Lyons, and Guy Oseary

DEFENDANTS' MOTION TO DISMISS                    CASE NO.: 2:22-cv-08909-FMO-PLA