William J. Briggs, II (Bar No. 144717)
wjbriggs@venable.com
Laura A. Wytsma (Bar No. 189527)
lawytsma@venable.com
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
T: (310) 229-9900
F: (310) 229-9901

*Attorneys for defendant Kevin Hart*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ADONIS REAL and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., *et al.*,<br><br>Defendants. | Case No. 2:22-cv-08909-FMO-PLA<br><br>**DEFENDANT KEVIN HART'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 30, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Complaint filed: December 8, 2022 |

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D, located at 350 West First Street, Los Angeles, California 90012, defendant Kevin Hart will, and hereby does, move for an order dismissing with prejudice the First Amended Class Action Complaint (ECF No. 114) ("Complaint" or "FAC")[1] pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as follows:

- Claims 1, 2 and 3 under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200;
- Claim 8 under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act");
- Claim 10 under California Corp. Code §25401, §25501;[2] and
- Claim 13 for Unjust Enrichment/Restitution.

Mr. Hart also moves to strike Plaintiffs' prayer for injunctive relief.

Mr. Hart further joins the motions of the Yuga Labs Defendants and other individual defendants to the extent applicable to the claims against Mr. Hart.

This motion is based on the attached Memorandum of Points and Authorities, the arguments relating to claims 1-3, 8, 10 and 13 in the Yuga Defendants' separate motion, which Mr. Hart joins and incorporates by reference; the pleadings and evidence on file in this matter; the arguments of counsel; and any other matters properly before the Court.

---

[1] Citations to "¶" in the Memorandum of Points and Authorities refer to the FAC.

[2] Mr. Hart does not concede and specifically reserves the right to challenge that non-fungible tokens (NFTs)—or any of the other Yuga products at issue—are securities under *SEC v. Howey Co.*, 328 U.S. 293 (1946).

1         This motion follows a conference of counsel pursuant to Local Rule 7-3 on

2    September 1, 2023.

3    Dated: September 12, 2023          Respectfully submitted,

4                          **VENABLE LLP**

5

6                          By    /s/ Laura A. Wytsma

7                                Laura A. Wytsma

8                          *Attorneys for defendant Kevin Hart*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

PROCEDURAL BACKGROUND ..................................................................... 2

LEGAL ARGUMENT ....................................................................................... 4

I.   Plaintiffs Cannot Satisfy Their Heightened Pleading Burden with
     Conclusory, Scattershot, and Group Allegations ................................... 4

     A.   Plaintiffs' Fraud-Based Claims Must Be Particularly Pled ......... 4

     B.   Plaintiffs' Complaint Is an Improper Puzzle Pleading ............... 4

II.  Plaintiffs Fail to Plead Standing to Assert Claims Against Mr. Hart .... 5

III. Plaintiffs Fail to State a Claim for Securities Fraud Under Federal
     or State Law Against Mr. Hart ................................................................ 6

     A.   Plaintiffs Fail to State a Claim for "Scheme Liability" under
          the Exchange Act Against Mr. Hart (Claim 8) ........................... 6

          1.   Plaintiffs Fail to Allege a False or Misleading
               Statement ........................................................................... 7

          2.   Plaintiffs Fail to Allege Scienter ...................................... 8

          3.   Plaintiffs Fail to Allege Reliance ...................................... 8

          4.   Plaintiffs Fail to Plead Loss Causation ............................ 9

     B.   Plaintiffs Fail to Allege Facts to State a Claim under
          California Securities Law Against Mr. Hart (Claim 10) ........... 10

IV.  Plaintiffs Fail to State Claims Under California's Unfair
     Competition Law Against Mr. Hart (Claims 1-3) ................................ 10

     A.   Plaintiffs Fail to Allege Personal Participation or Control ........ 11

     B.   Plaintiffs Fail to Allege Unlawful, Unfair or Fraudulent Acts .. 11

     C.   Plaintiffs Fail to Allege Reliance or Causation ......................... 12

     D.   Plaintiffs Fail to Allege Injury ................................................. 12

V.      Plaintiffs Fail to State a "Claim" for Unjust Enrichment / Restitution under California Common Law.........................................13

VI.     Plaintiffs Fail to Plead a Basis for an Injunction Against Mr. Hart.....14

CONCLUSION....................................................................................................14

CERTIFICATE OF COMPLIANCE (L.R. 11-6.2) ...........................................15

CERTIFICATE OF SERVICE.............................................................................16

ADDENDUM ......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)........................................................ 12

*Alesick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012)..................................................................... 12

*Bowen v. Ziasun Techs., Inc.*,
116 Cal. App. 4th 777 (2004)....................................................................... 10

*Brady v. Delta Energy & Commc'ns, Inc.*,
598 F. Supp. 3d 865 (C.D. Cal. 2022)........................................................... 5

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002).......................................................................... 7

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)....................................................................... 4

*In re Cisco Sys. Inc. Sec. Litig.*,
2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ............................................. 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................................... 14

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1102 (N.D. Cal. 2007) ..................................................... 14

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010)..................................................................... 11

*In re Ethereummax Inv. Litig.*,
2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ........................... 4, 12

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
600 F. Supp. 3d 1099 (C.D. Cal. 2022)...................................................... 13

*Grundstrom v. Wilco Life Ins. Co.*,
2022 WL 2390992 (N.D. Cal. July 1, 2022) ............................................... 13

*In re Intuitive Surgical Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014)................................................................4

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ...........................................................10

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ...............................................................................7, 11

*Knapp v. Hogan*,
   738 F.3d 1106 (9th Cir. 2013)......................................................................4

*Knuttel v. Omaze, Inc.*,
   2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) .....................................................12

*Kwikset Corp v. Superior Court*,
   51 Cal.4th 310 (20011)...............................................................................13

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021)..............................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................5

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004)........................................................................14

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
   54 F.4th 82 (2d Cir. 2022) ...........................................................................9

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
   2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) .....................................................7

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021).......................................................................8

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .....................................................12

*Reed v. Amira Nat. Foods Ltd.*,
   2016 WL 6571281 (C.D. Cal. July 18, 2016) ......................................................10

*Reed v. NBTY, Inc.*,
   2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) ....................................................12

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)................................................................................. 8

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009)............................................................................... 13

*Sharp v. Arena Pharms., Inc.*,
    2013 WL 12094819 (S.D. Cal. Mar. 29, 2013).................................................. 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .......................................................................................... 14

*Taylor v. Costco Wholesale Corp.*,
    2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) ..................................................... 11

*Walker v. Equity 1 Lenders Grp.*,
    2009 WL 1364430 (S.D. Cal. May 14, 2009)................................................... 13

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015)............................................................ 12

*Weston Family P'ship LLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)............................................................................ 6, 7

*Yu v. Design Learned, Inc.*,
    2016 U.S. Dist. LEXIS 54374 (N.D. Cal. Apr. 22, 2016) ................................. 6

*Zakinov v. Ripple Labs, Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020)..................................................... 10

*ZL Technologies, Inc. v. Gartner, Inc.*,
    2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)..................................................... 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................3, 11, 12, 13

Cal. Corp. Code §§ 25401 and 25501 .............................................................. 3, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The First Amended Class Action Complaint ("FAC") added three new named plaintiffs and 126 pages.  But 394 additional paragraphs of muddled, conclusory allegations did not make Plaintiffs' claims any more plausible than when initially pled—particularly as to Kevin Hart who, even in Plaintiffs' hyperbolic telling of events, did not actually say or do *anything* deceptive.

The Complaint tells an elaborate tale of a vast conspiracy between Yuga Labs, Inc. and its executives, MoonPay USA LLC and its founder, noted talent manager Guy Oseary, a highly respected auction house, and an assortment of public figures to inflate the price of Yuga's various digital products ("Products") through misleading celebrity promotions, among other purported "schemes."

Of the many allegations describing this purported conspiracy of 29 unrelated defendants to "rake in millions," **not one specifically alleges that Mr. Hart himself actually promoted anything**—not Yuga, not MoonPay, not even his Bored Apes Yacht Club (BAYC) non-fungible token (NFT).  Disregarding conclusory group allegations, the Complaint alleges only that *MoonPay* reportedly transferred a BAYC NFT to Mr. Hart; *MoonPay* tweeted a picture of Mr. Hart and his NFT; and, *MoonPay* announced a list of purported MoonPay investors, including Mr. Hart.

Not only does the Complaint fail to allege any fraudulent or deceptive conduct by Mr. Hart, it contains no specifically-pled allegations of scienter, reliance, or loss causation as to Mr. Hart.  These omissions, among other significant pleading defects, compel dismissal of Plaintiffs' securities fraud claims against Mr. Hart, as well as their unfair competition claims under state law.

Even if all the Complaint's specific factual allegations against Mr. Hart were true, *and they are not*, he should never have been named as a defendant in this case. Respectfully, the claims against Mr. Hart should be dismissed—with prejudice.

# PROCEDURAL BACKGROUND

In a 221-page complaint brimming with accusations of various schemes in furtherance of a vast conspiracy to inflate the price of Yuga's Products, Plaintiffs allege that various celebrities made false or misleading statements in promoting BAYC NFTs because they failed to disclose (i) financial interests in Yuga and/or MoonPay and/or (ii) that they were paid to promote Yuga's Products.  FAC ¶¶ 4-5. As to Mr. Hart's supposed role in this alleged conspiracy, these are the only allegations specific to Mr. Hart and pled with any particularity:

- According to a third-party blog posted on January 24, 2022, Mr. Hart obtained BAYC NFT #9258 from MoonPay, which "snagged the NFT" below floor price, but unlike his "celebrity friends" who changed their social media profile pictures to their BAYC NFTs, Mr. Hart "chose to approach his purchase more subtly …" (FAC ¶203, n. 152; Addendum);

- According to a post on The Bored Ape Gazette's website on January 24, 2022, MoonPay allegedly posted a picture of Mr. Hart "on its Twitter account with the caption 'Someone funny aped in today!'" (*id.* at n. 153);



- Several months later, on April 13, 2022, MoonPay announced a "list," which included Mr. Hart, of "60 influential figures and organizations from the worlds of music, sports, media and entertainment [who] have collectively invested $87M in the company" (FAC ¶97);

In addition to these specific allegations, the Complaint lumps Mr. Hart into group allegations against so-called "Promoter Defendants." For example, Plaintiffs allege that along with other celebrities, Mr. Hart was an "early investor[]" in, a "backer" of, or had some other "financial interest" in MoonPay, which would allow him to benefit from "promotional efforts" for Yuga's Products. FAC ¶5, ¶83, ¶114.

But just when, where, or how Mr. Hart supposedly promoted his BAYC NFT is not alleged. Nor is it alleged how he "promoted" MoonPay and/or its "Concierge service" and/or Yuga's Products generally. Also unalleged is just what "ownership and/or financial interests" Mr. Hart supposedly had in Yuga and/or MoonPay. *Id*. ¶485(b). Still further unalleged is precisely what "undisclosed payments" Mr. Hart supposedly received from Yuga and/or MoonPay and/or the Executive Defendants and/or Mr. Oseary. *Id*. ¶485(e). And nowhere is it alleged how Mr. Hart actively participated in the alleged "celebrity endorsement" conspiracy scheme.

Carefully parsed, the factual allegations specific to Mr. Hart plead only that: ***MoonPay*** allegedly acquired a BAYC NFT and transferred it to Hart; ***MoonPay*** allegedly tweeted a picture of Mr. Hart and his BAYC NFT; and ***MoonPay*** allegedly announced a list of investors in the company that included Mr. Hart.

These allegations cannot support liability against Mr. Hart under any legal theory, much less the six claims pled against him in the Complaint for: **(i)** Section 10(b) "scheme liability" under federal law (Claim 8); **(ii)** violation of state securities law under Cal. Corp. Code §§25401 and 25501 (Claim 10); **(iii)** unfair competition under Cal. Bus. & Prof. Code §17200 (Claims 1-3); and **(iv)** "unjust enrichment / restitution" under California common law (Claim 13). These claims should be dismissed in their entirety for the reasons discussed in Yuga's motion to dismiss.

But particularly as pled against Mr. Hart, the claims lack any factual allegations that, if proven, could support liability under any statute, law, or theory.  The claims pled against him should be dismissed and, because further amendment of the already voluminous complaint would be futile, they should be dismissed with prejudice.

## LEGAL ARGUMENT

Plaintiffs have alleged a fanciful tale full of deceit and market manipulation. But what they have *not* alleged are *facts* sufficient to support their fraud-based claims—even after adding over a hundred pages of allegations to their complaint. Certainly they have failed to allege facts to state a claim against Mr. Hart who is not alleged to have actually done or said ***anything*** to violate any federal or state law.

## I.   Plaintiffs Cannot Satisfy Their Heightened Pleading Burden with Conclusory, Scattershot, and Group Allegations

### A.   Plaintiffs' Fraud-Based Claims Must Be Particularly Pled

Each of Plaintiffs' securities and unfair competition claims sounds in fraud. And, as Plaintiffs concede, fraud-based claims must be pled with particularity under Rule 9(b), including the "'who, what, when, where, and how'" of any alleged fraud. FAC ¶483 (citation omitted); *see also In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *59 (C.D. Cal. Dec. 6, 2022) (applying Rule 9(b) to UCL claim). The Complaint falls far short of this pleading standard, particularly as to Mr. Hart.

### B.   Plaintiffs' Complaint Is an Improper Puzzle Pleading

A complaint may be dismissed if it "says too little," but also if it "says too much." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).  A pleading that is verbose, confusing, redundant, rambling or unintelligible is appropriately dismissed. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011). A complaint is a "puzzle pleading" when it "forces the defendants and/or court to sort out the alleged statements and match them with the corresponding adverse facts in order to solve the puzzle of interpreting Plaintiff's claims." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (cleaned up).  That is exactly

what the Complaint here requires—sorting out allegations lumped against "Defendants" in 699 paragraphs and 13 claims.

While the much of the Complaint lumps lump "Defendants" together, even as to the more narrowly defined "Promoter Defendants," Plaintiffs fail to distinguish between the various celebrities. Allegedly, Mr. Hart, along with other "promoters," received "fiat or cryptocurrency from MoonPay and/or Yuga" (FAC ¶166); received Yuga Products "and/or other forms of consideration" (¶198); received "undisclosed payments" from Yuga executives or Guy Oseary "for misleadingly promoting" Yuga's Products (¶513); "promoted" MoonPay's "Concierge" service, which was "a front" for "undisclosed payments" to celebrities (¶513); and otherwise conspired with the other defendant-groups to manipulate the market for Yuga Products.

Such group pleading is improper. *See Brady v. Delta Energy & Commc'ns, Inc.*, 598 F. Supp. 3d 865, 871 (C.D. Cal. 2022). No defendant should be forced to sort through Plaintiffs' conclusory allegations to solve the puzzle of why they allege any particular claim against any particular defendant. *See In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *6 (N.D. Cal. Mar. 29, 2013).

## II. Plaintiffs Fail to Plead Standing to Assert the Claims Against Mr. Hart

Standing under Article III requires Plaintiffs to allege facts showing "a causal connection between the injury and the conduct complained of" such that their injury is "'fairly traceable to the challenged action of the defendant.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). But Plaintiffs do not allege that they relied on anything *Mr. Hart* did or said that caused them to purchase Yuga Products. Indeed, their "Additional Reliance Allegations" in §VI (FAC ¶¶454-464) make no reference to Mr. Hart whatsoever. For this reason alone, the claims against Mr. Hart should be dismissed for failure to allege jurisdictional standing.

**III.  Plaintiffs Fail to State a Claim for Securities Fraud Under Federal or State Law Against Mr. Hart**

Plaintiffs allege a claim for "scheme liability" under the Exchange Act and a "similar" state securities claim (FAC ¶658).  Neither claim mentions Mr. Hart—*at all*.  In just a handful of conclusory paragraphs (¶¶639-644, ¶¶659-668), Plaintiffs allege that "Defendants" engaged in "schemes" and "conspired" to manipulate the price of Yuga's Products (¶644).  But by "grouping multiple defendants together in a broad allegation," Plaintiffs fail to state a claim against Mr. Hart individually.  *Yu v. Design Learned, Inc.*, 2016 U.S. Dist. LEXIS 54374, at *11-13 (N.D. Cal. Apr. 22, 2016).  Moreover, Mr. Hart should not have to speculate as to which acts, practices, plans, false statements, schemes, misrepresentations, omissions, and/or other "wrongful conduct" alleged in 475 paragraphs (incorporated in ¶633 and ¶655) violate federal or state securities laws.

**A.  Plaintiffs Fail to State a Claim for "Scheme Liability" under the Exchange Act Against Mr. Hart (Claim 8)**

To state a claim for "scheme liability" under Section 10(b), Plaintiffs must allege (1) "a material misrepresentation or omission by the defendant"; (2) scienter; (3) reliance; and (4) loss causation.[3]  *Weston Family P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022).  These elements must be pled with particularity, including "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Frustere v. Wells Fargo Bank*, N.A., 2012 WL 4514066, at *1 (N.D. Cal. Oct. 2, 2012).

Of the "schemes" alleged in the Complaint, the only one relevant to Mr. Hart concerns allegedly misleading "celebrity endorsements."  FAC ¶¶ 151-248.  But Plaintiffs fail to allege the particularized facts required to state a claim for scheme liability—including the threshold requirement of an actual representation.

---

[3] Plaintiffs do not allege facts sufficient to plead a market manipulation "scheme." *In re Bank of Am. Corp.*, 2011 WL 740902, at *9 (N.D. Cal. Feb. 24, 2011).

### 1.   Plaintiffs Fail to Allege a False or Misleading Statement

Section 10(b) permits liability only against one who "make[s]" an untrue statement of material fact.  17 CFR §240.10b–5(b).  The "maker of a statement" is the actual speaker or "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011).  Plaintiffs do not allege that Mr. Hart is the "maker" of any alleged misstatement.

The only allegations specific to Mr. Hart refer to statements supposedly made by a third-party blogger and MoonPay.  FAC ¶203.  Plaintiffs do not allege Mr. Hart is the "maker" of a single misrepresentation alleged in the Complaint.  *Cf.* ¶603(g) ("*MoonPay's* statement … misleadingly suggested Kevin Hart actually paid for his Ape"; emphasis added).

Even as to the blogger post and MoonPay tweet, Plaintiffs do not allege any facts that they are false or misleading.  Certainly tweeting a picture of Mr. Hart and his BAYC NFT—with the caption "Someone funny aped in today!"—does not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Far from false or misleading, the description of a world-famous actor and comedian as "[s]omeone funny" cannot be objectively disputed and, in any case, would be non-actionable puffery or opinion.

Absent any allegations "to establish a contradiction between the alleged materially misleading statements and reality," the claims against Mr. Hart should be dismissed.[4]  *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016).

---

[4] Because Plaintiffs fail to allege any statement made *by* Mr. Hart, the Court need not consider if he had a duty to disclose an alleged interest in MoonPay and/or Yuga to state a fraud-by-omission claim against him.  But this, too, would be a further basis to dismiss the Section 10(b) claim against Mr. Hart, as Plaintiffs fail to allege any facts showing such a duty.

### 2.     Plaintiffs Fail to Allege Scienter

Under the PSLRA, a complaint must allege that the defendant made "false or misleading statements," or orchestrated a scheme to defraud, with an 'intent to deceive, manipulate, or defraud,' or with deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (citation omitted).  But because Plaintiffs fail to allege Mr. Hart made any statement that was false or misleading, or any "scheme," they necessarily cannot plead scienter.  Indeed, Plaintiffs allege no facts to support an inference that Mr. Hart engaged in intentionally misleading or deliberately reckless conduct.

Although scienter requires more than "mere motive and opportunity," *id.* at 1108, Plaintiffs fail to allege any plausible motive for Mr. Hart to engage in a scheme to increase the price of Yuga Products.  Certainly the mere alleged ownership of a single BAYC NFT does not provide a plausible explanation of motive, particularly when Plaintiffs do not allege that Mr. Hart sold the NFT at an inflated price.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012) (alleged motive to conceal the truth to increase value of stock options did not support inference of scienter, particularly where defendant did not sell the asset).

Plaintiffs' failure to allege any plausible motive for Mr. Hart to help inflate the price of Yuga Products precludes any inference of scienter.  *See Prodanova*, 993 F.3d at 1107 (assertion that defendant "had an interest in 'generat[ing] buying activity at an artificially inflated price" did not permit inference of scienter where alleged motive was implausible).  Because Plaintiffs allege no "clear financial incentive" for Mr. Hart to participate in the alleged celebrity "promotion" scheme, their Section 10(b) claim fails.  *Id.*

### 3.     Plaintiffs Fail to Allege Reliance

Because Plaintiffs fail to allege that Mr. Hart made any false or misleading statement, Plaintiffs necessarily cannot plead reliance.  Indeed, Plaintiffs' specific reliance allegations in §VI (¶¶454-464) make no mention of Mr. Hart at all.

Even those allegations specific to Mr. Hart fail to plausibly allege reliance. In their Complaint, and following a picture of MoonPay's tweet captioned "Someone funny aped in today!", Plaintiffs repeat their boilerplate reliance allegation against other celebrity defendants: "Plaintiffs saw the promotions from Defendants Hart and Soto-Wright regarding the Company's collection of BAYC NFTs and were induced to purchase and/or continued to hold Yuga [Products] as a result of these misleading promotions." FAC ¶204. On its face, the allegation in is nonsensical. Nowhere in the preceding paragraph (or 73 pages) do Plaintiffs identify any "promotions from Defendants Hart and Soto-Wright" regarding a "collection of BAYC NFTs."

Moreover, the conclusory reliance allegation does not satisfy Rule 9(b), as it fails to identify (i) *who* (which Plaintiff) saw (ii) *what* representation (iii) *where* (in which alleged "promotion") (iv) *when* they saw such alleged "promotion" or (v) *why* they relied on it (materiality and causation). The failure to allege such specific facts is particularly problematic in light of what *is* alleged in the complaint: that Plaintiffs Titcher, Johnson, and Palombini purchased Yuga Products *months* after MoonPay's tweet in January 2022 (FAC ¶203), and even then did not purchase BAYC NFTs (¶460, ¶462). To assert a Section 10(b) claim, Plaintiffs must have "bought or sold the security about which [an alleged] misstatement was made." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022). Only Plaintiff Boekweg claims to have purchased a BAYC NFT, and even he does not specifically allege that he saw much less relied on any of statement made by Mr. Hart.

### 4.     Plaintiffs Fail to Plead Loss Causation

Even if Plaintiffs had properly alleged deceptive conduct (and they did not), their claim would still fail for the further reason they do not adequately plead "a causal connection between the material misrepresentation and the loss." *Reed v. Amira Nat. Foods Ltd.*, 2016 WL 6571281, at *12 (C.D. Cal. July 18, 2016).

**B.      Plaintiffs Fail to Allege Facts to State a Claim under California Securities Law Against Mr. Hart (Claim 10)**

Plaintiffs cannot state a claim under California Corporations Code §§ 25401 and 25501, which require "strict privity" between buyers and sellers of securities, because Plaintiffs have not alleged Mr. Hart sold Yuga Products directly to them. *Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013).

Additionally, as with their Section 10(b) "scheme liability" claim, Plaintiffs' state securities fraud claim fails against Mr. Hart for the simple reason that they have not alleged Mr. Hart made a false and misleading statement.  *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013) (dismissing §25401 claim when plaintiff failed to plead false or misleading statement with respect to §10(b) claim). And, having failed to allege any false or misleading statement of fact, Plaintiffs necessarily cannot plead the requisite reliance, materiality or causation.

**IV.      Plaintiffs Fail to State Claims Under California's Unfair Competition Law Against Mr. Hart (Claims 1-3)**

Plaintiffs face two threshold hurdles in pleading UCL claims that cannot be solved by amendment: lack of standing and the fact that the UCL "does not apply to securities transactions."  *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004).  Plaintiffs assert UCL claims based on alleged purchases of what they characterize as "securities."  FAC ¶400 ("Yuga Financial Products Are Securities"). Although Mr. Hart disputes this, Plaintiffs' allegations that NFTs are, in fact, securities under *Howey* defeats their UCL claims as a matter of law.  *See Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *22 (N.D. Cal. Feb. 26, 2020).

Additionally, although all Plaintiffs purport to seek relief under the UCL (FAC ¶¶500-502), only Titcher is California resident and only Titcher alleges reliance on the "acts and practices" challenged under the UCL (¶¶492-493).  Titcher, however, does not allege he purchased any BAYC NFTs.  *Id.* ¶13 (alleging purchases of MAYC and Otherdeed NFTs).  Thus, Titcher lacks standing to pursue UCL claims

against Mr. Hart for the alleged "promotion" of his BAYC NFT. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (because plaintiff "bought only one of the eight Products" at issue, she "did not suffer any injury—economic or otherwise—related to the other seven Products … and lack[ed] standing to assert these unrelated claims").

## A. Plaintiffs Fail to Allege Personal Participation or Control

To state a claim under California's UCL, Plaintiffs must allege that Mr. Hart had "personal participation" or "unbridled control" over the challenged conduct. *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *3 (E.D. Cal. Oct. 8, 2020). Indeed, even Plaintiffs concede that their UCL claims require "'affirmative acts … in hiding, concealing or covering up." FAC ¶¶491, 547 (citations omitted). But Plaintiffs allege no facts of active participation, "affirmative acts," or "unbridled control" by Mr. Hart and thus cannot state a §17200 claim against him.

## B. Plaintiffs Fail to Allege Unlawful, Unfair or Fraudulent Acts

The California UCL requires an "unlawful, unfair or fraudulent business act or practice," plaintiff's reliance on the unlawful conduct, and "injury in fact," *viz.*, "loss of money or property caused by unfair competition." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359, 1364 (2010). But Plaintiffs fail to allege any that Mr. Hart himself engaged in any unlawful, unfair or fraudulent conduct.

*First*, as to Plaintiff's UCL claim under the "fraudulent" prong, Plaintiffs do not identify a false or misleading statement made by Mr. Hart, as discussed above. Rather, their UCL claims allege as "actionable" only purported "statements from Executive Defendants and Promoter Defendants Sotheby's, Fallon, Hilton, Post, Bieber, and Broadus." FAC ¶495. And it is those alleged "promotions" that Plaintiff Titcher supposedly saw and relied upon. *Id.* ¶462, ¶493 ¶513, ¶523, ¶525.

Even if MoonPay's alleged tweet concerning Mr. Hart and his BAYC NFT is considered, Plaintiffs fail to allege how it "is false or misleading." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. 2019). Nor do Plaintiffs allege how

"members of the public were likely to be deceived" by the tweet. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1092 (C.D. Cal. 2015) (cleaned up). "[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived dismissal is appropriate." *Id*; *see also Punian v. Gillette Co.*, 2016 WL 1029607, at *8 (N.D. Cal. Mar. 15, 2016) (noting courts may find "as a matter of law that a representation is not likely to deceive a reasonable consumer").

*Second*, because Plaintiffs fail to adequately plead any other substantive claim against Mr. Hart, they cannot state a claim under the UCL's "unlawful" prong. *See Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015) ("Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well."); *Alesick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.").

*Third*, as to Plaintiff's claim under the "unfair" prong, because the "practice alleged to be unfair overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the latter prongs do not survive." *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022).

### C. Plaintiffs Fail to Allege Reliance or Causation

To plead their UCL claims, "Plaintiffs must plead that they relied on the misleading materials." *Ethereummax*, 2022 U.S. Dist. LEXIS 220968, at *53. As discussed above, Plaintiffs do not allege that they relied on any false or misleading statement made **by** Mr. Hart. Because Plaintiffs fail to allege particularized facts "demonstrat[ing] actual reliance," their §17200 claims against Mr. Hart should be dismissed. *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *7 (C.D. Cal. Nov. 18, 2014).

### D. Plaintiffs Fail to Allege Injury

The UCL imposes a causation requirement, *viz.*, that the alleged injury "was the result of, i.e., caused by, the unfair business practice." *Kwikset Corp v. Superior Court*, 51 Cal.4th 310, 322 (20011). This requires UCL plaintiffs to allege they

1    "actual[ly] reli[ed]" on the "allegedly deceptive or misleading statements" and that

2    doing so "was an immediate cause" of their purported injury. *Id.* at 326-27.  But

3    Plaintiffs here do not allege that Mr. Hart did or said anything to cause them injury.

4                                          * * *

5         No matter which prong of the UCL they invoke, Plaintiffs fail to allege that

6    Mr. Hart actually engaged in any fraudulent, unlawful, unfair "act" or "practice."

7    Their §17200 claims against Mr. Hart should be dismissed with prejudice.

8  **V.   Plaintiffs Fail to State a "Claim" for Unjust Enrichment / Restitution**

9        **under California Common Law.**

10        Plaintiffs' final claim fails as a matter of law because "there is no cause of

11   action in California for unjust enrichment." *Walker v. Equity 1 Lenders Grp.*, 2009

12   WL 1364430, at *9 (S.D. Cal. May 14, 2009).  Even if such a claim existed,

13   "equitable relief is not appropriate where an adequate remedy exists at law."

14   *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009).  Plaintiffs do not

15   allege that the remedies available on their other claims are inadequate.  Instead

16   Plaintiffs allege they will be deprived of an adequate remedy if do not succeed on

17   those claims.  FAC ¶695 (alleging "Plaintiffs will lack an adequate remedy of law"

18   if their "state consumer or securities law claims are found to be inapplicable to the

19   wrongdoing alleged").  But the "relevant test" is "whether an adequate damages

20   remedy is available," *not* "whether [plaintiffs] will be successful" in obtaining it.

21   *Grundstrom v. Wilco Life Ins. Co.*, 2022 WL 2390992, at *2 (N.D. Cal. July 1, 2022).

22        Moreover, as to Mr. Hart, Plaintiffs fail to allege critical elements for unjust

23   enrichment: "receipt of a benefit and the unjust retention of the benefit at the expense

24   of another."  *Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp. 3d 1099,

25   1104 (C.D. Cal. 2022).  There is *no* allegation that Mr. Hart received a benefit and

26   unjustly retained it at Plaintiffs' expense.  This is fatal to Plaintiffs' claim, whether

27   labeled "unjust enrichment" or "restitution."  *See McBride v. Boughton*, 123 Cal.

28   App. 4th 379, 389 (2004) (explaining restitution requires "unjust enrichment at the

expense of another"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1102, 1103 (N.D. Cal. 2007) (noting restitution cannot be ordered if "plaintiff did not pay any money, even indirectly," to defendant); *ZL Technologies, Inc. v. Gartner, Inc.*, 2009 WL 3706821, at *10, *13 n.7 (N.D. Cal. Nov. 4, 2009) (dismissing UCL claim based on failure to allege money plaintiffs lost was ever possessed by defendant).

## VI.   Plaintiffs Fail to Plead a Basis for an Injunction Against Mr. Hart

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized … actual and imminent … [and] fairly traceable to the challenged action of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  But Plaintiffs fail to allege any facts that they are "realistically threatened" by repetition of the challenged conduct.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 110 (1983) (affirming dismissal of injunctive relief claim where plaintiff could not show "he was likely to suffer future injury" from police chokehold).  This is particularly true with respect to Mr. Hart, as the Complaint fails to identify *any* wrongful conduct capable of repetition.  Because Plaintiffs cannot allege actual, imminent harm, their claim for injunctive relief under any statute should be dismissed or stricken.  *Id.*

## CONCLUSION

In their voluminous Complaint cataloging alleged wrongdoing, Plaintiffs do not allege that Mr. Hart made any false or misleading representation.  ***Not even one.***  Further amendment cannot cure this foundational defect.  For this reason alone, as well as those discussed above and in Yuga's motion to dismiss, the claims against Mr. Hart should be dismissed with prejudice.

Dated: September 12, 2023             Respectfully submitted,

                                         **VENABLE LLP**

                                         By    /s/ *Laura A. Wytsma*
                                            Laura A. Wytsma
                               Attorneys for defendant Kevin Hart

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

The undersigned, counsel of record for defendant Kevin Hart, certifies that this brief contains 4,356 words, which complies with the word limit set by court order dated August 14, 2023.

By:  /s/ *Laura A. Wytsma*
Laura A. Wytsma

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2023, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which automatically generates a Notice of Electronic Filing ("NEF") at the time said document is filed to all CM/ECF Users and counsel of record who have appeared in this case.

  /s/ *Laura A. Wytsma*
  Laura A. Wytsma

# ADDENDUM

22    203.   Defendant Hart also promoted his joining the BAYC with BAYC NFT

23 #9258:

24     While many of his celebrity friends have decided to change their profile

25     pictures on social media platforms to their BAYC NFTs, Hart chose to
approach his purchase more subtly. . . .

26 _____

27 [151]   Gwyneth Paltrow (@GwynethPaltrow), TWITTER (Jan. 26, 2022, 3:33 PM),
https://twitter.com/GwynethPaltrow/status/1486482496883625984?s=20&t=8mace

28 2uHFGDI0GYb5N0aWg.

72

FIRST AMENDED CLASS ACTION COMPLAINT - CASE NO. 2:22-cv-08909-FMO-PLA

---

1     Interestingly, [Hart] is among the growing list of celebrities who

2 decided to make their first NFT purchases with the help of MoonPay.

3 The crypto firm paid 79.5 ETH or about $200,000 for the NFT and then
transferred it to Hart's wallet.

4

5     Impressively, despite the fact that BAYC #9258 has several of the

6 rarest properties, MoonPay snagged the NFT below the floor price. Of
course, considering the integrity of the crypto firm and the intended final

7 owner, this shouldn't come as much of a surprise.[152]

8 MoonPay also posted the following picture of Defendant Hart on its Twitter account

9 with the caption "Someone funny aped in today!":[153]



24 _____

25 [152]   Hristina Yordanova, *Kevin Hart Joins the Bored Ape Family*, DAPPRADAR

26 (Jan. 24, 2022), https://dappradar.com/blog/kevin-hart-joins-the-bored-ape-family.
[153]   Swensonk7, *Comedian Kevin Hart Joined The Bored Ape Yacht Club,*

27 *According to Moonpay*, THE BORED APE GAZETTE (Jan. 24, 2022),
https://www.theboredapegazette.com/post/comedian-kevin-hart-joined-the-bored-

28 ape-yacht-club-according-to-moonpay.

73

FIRST AMENDED CLASS ACTION COMPLAINT - CASE NO. 2:22-cv-08909-FMO-PLA

---

1     204.   Plaintiffs saw the promotions from Defendants Hart and Soto-Wright

2 regarding the Company's collection of BAYC NFTs and were induced to purchase

3 and/or continue to hold Yuga securities as a result of these misleading promotions.