1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shon Morgan (SBN 187736)
John B. Quinn (SBN 90378)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
shonmorgan@quinnemanuel.com
johnquinn@quinnemanuel.com

Kevin P.B. Johnson (SBN 177129)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
kevinjohnson@quinnemanuel.com

[*Additional Counsel on Signature Page*]

*Counsel for Defendant Paris Hilton*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>     v.<br><br>YUGA LABS, INC., et al.,<br><br>                    Defendants. | Case No.: 2:22-cv-08909-FMO-PLA<br><br>**DEFENDANT PARIS HILTON'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**[PROPOSED] ORDER GRANTING MOTION**<br><br>Date: November 30, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Complaint Filed: December 8, 2022<br>Amended Complaint Filed: August 4, 2023 |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 30, 2023, at 10:00 am, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Fernando M. Olguin, Courtroom 6D, defendant Paris Hilton will and does hereby move the Court for an order dismissing the First Amended Class Action Complaint (Dkt. 114) (the "Complaint") brought by plaintiffs Johnny Johnson, Ezra Boekweg, Mario Palombini, and Adam Titcher.

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on the grounds that the purported claims fail to state a claim upon which relief can be granted.

This motion is based upon this Notice of Motion and the Memorandum of Points and Authorities in Support filed herewith, the pleadings and documents on file in this case, other such arguments as may be presented by counsel at the hearing on this motion, and such other matters of which this Court may take judicial notice.

## LOCAL RULE 7-3 CERTIFICATION

This motion is made following the conference of counsel pursuant to Local Rule 7-3 on September 1, 2023, during which counsel for the parties discussed in good faith the substance of the contemplated motion and any potential resolution.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................1

BACKGROUND ........................................................................................1

ARGUMENT..............................................................................................5

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B)
        AND RULE 10B-5 AGAINST MS. HILTON (COUNT 8) ........................5

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS
        25401 AND 25501 OF THE CALIFORNIA CORPORATIONS CODE
        (COUNT 10)...............................................................................12

III.    PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER THE UCL
        (COUNTS 1–3)..........................................................................13

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
        ENRICHMENT (COUNT 13) ....................................................15

CONCLUSION .........................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*AB Inv. LLC v. Regal One Corp.*,
  2009 WL 10675242 (C.D. Cal. Sept. 9, 2009) ................................................11

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019).............................................................14

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)..........................................................................................11

*Apollo Cap. Fund, LLC v. Roth Cap. Partners*,
  158 Cal. App. 4th 226 (2007)...........................................................................12

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017)................................................................8

*Chiarella v. United States*,
  445 U.S. 222 (1980)............................................................................................8

*Cowan v. Goldcorp*,
  2017 WL 5495734 (C.D. Cal. Sept. 6, 2017) ...............................................9, 10

*In re DirecTV Early Cancellation Litig.*,
  738 F. Supp. 2d 1062 (C.D. Cal. 2010) ............................................................15

*EEOC v. 98 Starr Rd. Operating Co.*,
  2023 WL 4557751 (D. Vt. July 17, 2023).........................................................2

*Engineer.AI Corp. v. Kaufman*,
  2022 WL 17886022 (C.D. Cal. Dec. 2, 2022) ...................................................5

*In Re Ethereummax Investor Litigation*,
  2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022)...............................12

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
  600 F. Supp. 3d 1099 (C.D. Cal. 2022) .............................................................6

*Goodman v. Bouzy*,
  2023 WL 3296203 (S.D.N.Y. May 8, 2023) ......................................................2

*Hashem v. NMCHealth PLC*,
2021 WL 5926133 (C.D. Cal. Nov. 1, 2021) .................................................12

*Jackson v. Fischer*,
2013 WL 1089860 (N.D. Cal. Mar. 15, 2013) ..............................................12

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) .............................................12

*Knuttel v. Omaze, Inc.*,
2022 WL 1843138 (C.D. Cal. Feb. 22, 2022).............................................15

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .............................................................9

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) ...................................................13

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) ...........................................7

*Masterson v. Cheetah Mobile Inc.*,
2018 WL 5099505 (C.D. Cal. June 27, 2018) ...........................................6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)..........................................................10

*OCG Energy, LLC v. Shen*,
2023 WL 2628689 (C.D. Cal. Jan. 11, 2023) ...........................................13

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)........................................................................8

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ............................................................9

*Punian v. Gillette Co.*,
2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ..........................................14

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) ...........................................15

*Reed v. Amira Nat. Foods Ltd.*,
2016 WL 6571281 (C.D. Cal. July 18, 2016) ......................................9, 10

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017)...........................................................................8

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)............................................................................9

*Semi-Materials Co. v. SunPods, Inc.*,
  2012 WL 3962487 (N.D. Cal. Sept. 10, 2012) ................................................14

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013)...........................................................................5

*Sharp v. Arena Pharms., Inc.*,
  2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) ................................................12

*Smith v. LG Elecs. U.S.A., Inc.*,
  2014 WL 989742 (N.D. Cal. Mar. 11, 2014)....................................................15

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015) ......................................................14, 15

*Weston Fam. P'Ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022)..............................................................................7

## **Statutes**

Cal. Corp. Code § 25401..........................................................................................12

Cal. Corp. Code § 25501..........................................................................................12

Cal. Corp. Code § 25504.1.......................................................................................13

DEFENDANT PARIS HILTON'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
CASE NO. 2:22-CV-08909-FMO-PLA

## Preliminary Statement

Plaintiffs are dissatisfied speculators in an emerging art medium. Their allegations of a broad scheme to defraud buyers and holders of Bored Ape Yacht Club NFTs do not state claims, even as to the core defendants, for the reasons articulated in Yuga Labs' concurrent motion to dismiss.

Even more attenuated are plaintiffs' efforts to extend their theories to peripheral defendants that include celebrities such as Paris Hilton. Plaintiffs' allegations concerning Ms. Hilton rest on conjecture or outright mischaracterization of public facts and fail to identify any plausible basis to impose liability. In fact, plaintiffs do not even allege that Ms. Hilton profited from her Bored Ape Yacht Club NFT—nor can they. She never sold it. Fairly characterized, Ms. Hilton did no more than discuss enthusiastic possession of one of the artworks, innocuous statements that are not actionable under the securities statutes or any asserted state law theory.

Ms. Hilton thus both joins Yuga Labs' motion and seeks dismissal of all claims against her[1] for the independent reasons discussed below.

## Background

**Alleged Misstatements.** Plaintiffs allege Ms. Hilton made three false statements during and after appearing on the *Tonight Show*. *See* FAC ¶¶ 188, 190, 192-93. The core allegations are that Ms. Hilton misled "investors" into believing she had "actually bought the BAYC NFT" (which, they allege, she had not) and that she was "enthusiastically 'hanging out in the metaverse'" with her "BoredApeBestie[]," Mr. Fallon (which they contend was also untrue). *Id.* ¶¶ 193-94. As detailed below, these statements are neither false nor material.

### A.    *Tonight Show* Segment

On January 24, 2022, Ms. Hilton appeared on the *Tonight Show*. During that segment, the FAC alleges Ms. Hilton stated "she had 'saw' [sic] Fallon's previous

---

[1]    The FAC alleges claims against Ms. Hilton in Counts 1–3, 8, 10 and 13.

BAYC segment[] and 'copied' Fallon's use of MoonPay to 'buy an ape.'"  FAC ¶ 188.  Plaintiffs contend this statement is misleading because, on "information and belief," Ms. Hilton received the BAYC NFT in exchange for its promotion.  *Id.* ¶¶ 166, 198.

The only misstatement discernable from the quotation above is by plaintiffs. During the *Tonight Show* segment (which is readily viewable online and not subject to dispute) Ms. Hilton never claimed she "bought" an ape via MoonPay or otherwise. Rather, Ms. Hilton told Mr. Fallon: "I *got* an ape, too . . . you said you got on MoonPay, so I went and I copied you and did the same thing." (emphasis added).[2] The segment lasted under two minutes.  *Id.* ¶ 191.

### B.   "Loves It!" Tweet

The day after the *Tonight Show* segment aired, on January 25, 2022, an anonymous user tweeted, "Wait @ParisHilton bought my ape?!" FAC ¶ 190.  Ms. Hilton's account responded by tweeting two emojis and her signature phrase from *The Simple Life*, "Loves it!"  *Id.*



---

[2]   The Court may consider the full video, which plaintiffs have hyperlinked and incorporated by reference into their Complaint (FAC ¶ 188 n.137).  *See Goodman v. Bouzy*, 2023 WL 3296203, at *10 n.7 (S.D.N.Y. May 8, 2023) (in defamation case, incorporating phone call hyperlinked in complaint); *EEOC v. 98 Starr Rd. Operating Co.*, 2023 WL 4557751, at *2 (D. Vt. July 17, 2023) ("When a plaintiff includes a hyperlink in their complaint, courts have found the linked item is incorporated by reference[.]") (collecting cases).

As on the *Tonight Show* appearance, nowhere in Ms. Hilton's tweet does she state that *she* purchased her BAYC NFT. Plaintiffs nonetheless cite this tweet as a supposed basis for their understanding that Ms. Hilton bought the BAYC NFT. However, plaintiffs omit a key fact—the tweet thread to which Ms. Hilton was responding clearly stated that *MoonPay,* not Ms. Hilton, bought the BAYC NFT being discussed. *See id.* n.140 (hyperlinking to tweet).[3]



Moreover, plaintiffs do not allege facts showing Ms. Hilton did not purchase the BAYC NFT through the MoonPay platform.

### C.   *Tonight Show* Animation

On January 31, 2022, Ms. Hilton posted a "message on Twitter with an animated cartoon version of" her interview with Mr. Fallon. FAC ¶¶ 192, 193. The animation depicted Ms. Hilton and Mr. Fallon as their respective BAYC NFT

---

[3]   The Court may consider the full Twitter thread at issue. *See* n.1.

personas.  *See id.* n.143.[4]  Ms. Hilton commented that she was "hanging out in the metaverse" with Mr. Fallon, noting the two were "BoredApeBesties."  *Id.* ¶ 192. Nowhere in this tweet does Ms. Hilton discuss, or even suggest, *how* she received her BAYC NFT.  Moreover, the end of the animation expressly discloses that the video was sponsored, stating it was "brought to you by Bored Ape Studios, a metaverse company."  *See id.* ¶ 192 n.143.



**Alleged Omission.**  Plaintiffs also contend Ms. Hilton had an undisclosed "direct financial interest in MoonPay" *at the time* she made the challenged statements.  *See, e.g.*, FAC ¶ 194.  Plaintiffs' only apparent basis for this allegation is that several months *later*, on April 13, 2022, MoonPay announced that Ms. Hilton—along with almost 60 other celebrities—had invested in the company.  *See id.* ¶ 97 n.39.  This announcement preceded Titcher's and Palombini's alleged purchases of Yuga Labs' NFTs purportedly made "in reliance" on Ms. Hilton's

---

[4]  The Court may consider the full contents of the "animated cartoon" in assessing this motion.  *See* n.1.

January statements.  *See id.* ¶¶ 455, 460; *see also* Dkts. 1-2, 74-2 (PSLRA certifications).  No well-pleaded facts establish (or suggest) a financial interest in MoonPay at the time she made the alleged statements; nor do plaintiffs allege Ms. Hilton ever had any financial interest—undisclosed or otherwise—in Yuga Labs.

**Argument**

**I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b) AND RULE 10b-5 AGAINST MS. HILTON (COUNT 8)**

**A.   Plaintiffs Fail To Allege Ms. Hilton Committed Material Misstatements Or Deceptive Acts In Furtherance of A Scheme**

In furtherance of one of several ill-described "schemes" in the FAC, plaintiffs claim Ms. Hilton provided the false impression she had bought a BAYC NFT; was "hanging out in the metaverse" with Mr. Fallon; and failed to disclose she had a financial interest in MoonPay.  Plaintiffs' claim fails because (1) Ms. Hilton's alleged statements were not actually false or misleading; (2) Ms. Hilton had no duty to disclose whether she had a financial interest in MoonPay; and (3) none of the alleged misstatements and omissions would be material to a reasonable investor.

***No Falsity.***  Plaintiffs first allege Ms. Hilton provided the false impression she had purchased a BAYC NFT.  *See* FAC ¶ 193.  Contrary to plaintiffs' allegation, Ms. Hilton did not state on the *Tonight Show* that she bought her BAYC NFT.  Ms. Hilton merely tells Mr. Fallon she "***got*** one [an ape] too," after "[getting] on MoonPay."[5]  At no point did Ms. Hilton disclose how she obtained it.  Further, plaintiffs do not allege (nor could they) that Ms. Hilton did not receive a BAYC NFT

---

[5]   "[W]hen ruling on a Rule 12(b)(6) motion," the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint[.]"  *Engineer.AI Corp. v. Kaufman*, No. 22-cv-03552-SPG-KS, 2022 WL 17886022, at *3 (C.D. Cal. Dec. 2, 2022) (*quoting Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013)).  Here, the *Tonight Show* segment was incorporated into the FAC by reference.  *See* n.1.  The Court can disregard allegations contradicted by that segment.

from MoonPay or otherwise.  Accordingly, plaintiffs have failed to plead that any of Ms. Hilton's **actual** statements on the *Tonight Show* were false.

Similarly, contrary to plaintiffs' allegations, Ms. Hilton's Twitter exchange with the prior owner of the BAYC NFT does not support an inference that Ms. Hilton purchased the BAYC NFT.  In the full relevant Twitter thread, an anonymous user noted that MoonPay had purchased his BAYC NFT and "wonder[ed] if they bought it for someone special."  FAC ¶ 190 n.140  In response to that thread and after the *Tonight Show* aired, that same anonymous user noted that Ms. Hilton had received his BAYC NFT, to which she responded, "Loves it!"—a phrase she made popular during her time on *The Simple Life*.  During that exchange, Ms. Hilton did not state one way or another how she obtained the BAYC NFT, and the only arguable statement contained in this tweet is an assertion by Ms. Hilton that she "loves" the BAYC NFT referenced in the anonymous user's prior tweet. *See id*.  That statement is neither actionable nor alleged to be false.

Even assuming Ms. Hilton's statements could be construed as suggesting she had "purchased" a BAYC NFT (and they should not be), plaintiffs fail to allege sufficiently any plausible, non-conclusory reason those statements were false. Plaintiffs' assertions that Ms. Hilton did not "purchase" a BAYC NFT rest only on (1) general allegations concerning "defendants" collectively, made only on information and belief; and (2) the alleged account of CW1.  Such speculation is not enough.  First, general allegations based on "information and belief" must "state with particularity all facts on which that belief is formed." *Masterson v. Cheetah Mobile Inc.*, 2018 WL 5099505, at *2 (C.D. Cal. June 27, 2018) (dismissing Section 10(b) claim under PSLRA's heightened pleading standards).  Plaintiffs do no such thing.  Second, the allegations concerning Ms. Hilton in CW1's "account" do not specify whether Ms. Hilton purchased the BAYC NFT in question.  Although plaintiffs allege CW1 is a "former MoonPay employee," they fail to specify when during 2022 CW1 was employed by that company and what specific searches CW1

conducted with respect to Ms. Hilton that supposedly informed CW1's "account." *See* FAC ¶¶ 99, 106. Put simply, these anonymous allegations do not come close to "directly contradict[ing]" any statement by Ms. Hilton and thus are insufficient to plead falsity. *Weston Fam. P'Ship v. Twitter*, 29 F.4th 611, 619 (9th Cir. 2022).[6]

Finally, plaintiffs also allege that Ms. Hilton provided the false impression that she was "hanging out in the metaverse" with Mr. Fallon. FAC ¶ 193. Plaintiffs fail to allege that any part of this statement was false or misleading. As a threshold matter, what plaintiffs understood these statements to mean and why plaintiffs believe them to be false remains unclear. What is apparent, however, is that Ms. Hilton's comment that she was "hanging out in the Metaverse" and "BoredApeBesties" with Mr. Fallon was a reference to the embedded "animated cartoon version" of the *Tonight Show* segment where Ms. Hilton and Mr. Fallon were depicted as cartoon versions of their respective BAYC NFTs. *See id.* ¶ 192 n.143. To the extent Ms. Hilton's statement contained any arguable factual assertion, it was indisputably true: the video ***does*** depict Ms. Hilton and Mr. Fallon "hanging out in the Metaverse" in the form of their BAYC NFTs (*i.e.*, as "BoredApeBesties").

Plaintiffs seem to suggest that this post should have contained a disclaimer that it was an advertisement for the BAYC collection. Even accepting that to be true (which Ms. Hilton does not), the video in that post clearly states that it is sponsored. The animation ends with several slides stating in large letters that the animation is "brought to you by Bored Ape Studios, a metaverse company." *Id.* Regardless, whether the video's sponsorship was apparent to plaintiffs or not, none of Ms. Hilton's statements regarding the cartoon were false.

[6] *Cf. M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635425, at *9 (C.D. Cal. Oct. 30, 2017) (finding confidential witness statements that were "explicitly speculative and based on nothing more than the confidential witnesses' suspicions" insufficient).

-7-

***No Duty to Disclose*.**  Plaintiffs allege Ms. Hilton furthered a deceptive scheme by not disclosing a financial interest in MoonPay.  *See, e.g.*, FAC ¶¶ 83, 112, 114.  However, plaintiffs fail to allege any duty under federal securities laws to disclose this information.  *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (affirming dismissal where defendants had no duty to disclose); *Chiarella v. United States*, 445 U.S. 222, 234-35 (1980) (holding that, as to Section 10(b), "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak").  Nor do their allegations give rise to an inference that an investor in the at-issue products (the "Products") would be misled without this information.  *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) (*citing Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)) ("A statement is misleading only if a reasonable investor, reading the statement fairly and in context, would be misled.")

***Not Material*.**  Plaintiffs fail to allege how a statement concerning how Ms. Hilton obtained the BAYC NFT would be material to a reasonable investor.  That Ms. Hilton possessed a BAYC NFT, regardless of how it was obtained, does not make the BAYC NFT less exclusive or render other owners any less part of that same club.  Nor do plaintiffs explain why an investor would consider relevant whether Ms. Hilton had a financial interest in MoonPay—especially where plaintiffs could and did purchase Products from other platforms.  In fact, plaintiffs' own allegations prove the alleged existence of this financial interest was immaterial to both Titcher and Palombini, the only plaintiffs who allegedly relied upon Ms. Hilton's statements, as they ***continued*** to purchase Products ***after*** Ms. Hilton's alleged interest was disclosed.  *See* FAC ¶¶ 97, 455, 460.

## B.    Plaintiffs Fail To Plead Scienter

Group allegations of scienter directed at defendants generally (*see, e.g.*, FAC ¶ 644) fail to give rise to a "strong inference" that Ms. Hilton herself acted with

scienter.  *See, e.g.*, *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021) (under the PSLRA, a complaint must allege that the defendant made "false or misleading statements with an 'intent to deceive, manipulate, or defraud,' or with deliberate recklessness").  Plaintiffs fail to allege any plausible motive Ms. Hilton would have to engage in a scheme to increase the price of the Products.  This is underscored by plaintiffs' failure to allege that Ms. Hilton has profited from the increase in price of the Products, especially because plaintiffs do not allege that Ms. Hilton has sold her BAYC NFT (she has not).  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012) (supposed motive to "conceal the [truth]" to obtain stock options and increase their value did not support inference of scienter, particularly where defendant did not engage in any sales of the asset).

And although plaintiffs make much of Ms. Hilton being an investor in MoonPay, plaintiffs fail to articulate any non-conclusory reason she would benefit from increased sales of Products to the public.  Because plaintiffs advance no theory of "a clear financial incentive" for Ms. Hilton to engage in the conduct at issue, their claim under Section 10(b) fails.  *Prodanova*, 993 F.3d at 1106.

## C.   Plaintiffs Fail To Plead Loss Causation

Even assuming plaintiffs had properly alleged deceptive conduct (which they have not), plaintiffs' Section 10(b) claim against Ms. Hilton fails because plaintiffs have not adequately pleaded "a causal connection between the material misrepresentation and the loss[.]"  *Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *12 (C.D. Cal. July 18, 2016) (Olguin, J.).  In other words, plaintiffs do not plead that "the defendant's fraud was revealed to the market and caused the resulting losses," i.e., loss causation.  *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

*First*, as to each of Ms. Hilton's alleged misrepresentations, plaintiffs fail to plead a "corrective disclosure" was issued that could be attributed to their losses. *See Cowan v. Goldcorp*, 2017 WL 5495734, at *3 (C.D. Cal. Sept. 6, 2017) (Olguin,

-9-

J.) (no loss causation where plaintiffs "do not allege specific statements made by the [d]efendants that were made untrue or called into question by subsequent public disclosures"). Although the FAC alleges Ms. Hilton claimed she bought the BAYC NFT, plaintiffs do not allege "a subsequent revelation of the inaccuracy of that misrepresentation[.]" *Reed*, 2016 WL 6571281, at *12. In fact, plaintiffs do not point to a single statement demonstrating that Ms. Hilton's alleged statement was untrue, and instead rely only on "information and belief" (FAC ¶¶ 166, 198) and a confidential witness who drew inferences from his/her inability to identify Ms. Hilton on the MoonPay Dashboard (*id*. ¶¶ 106-07). Similarly, although the FAC alleges Ms. Hilton provided "investors the false impression that Hilton . . . was enthusiastically 'hanging out in the metaverse' with Fallon and that they were 'BoredApeBesties[,]'" (*id.* ¶ 193), it again fails to point to any revelation of an inaccuracy in that alleged misrepresentation.

*Second*, as to the alleged omission of Ms. Hilton's financial interest in MoonPay, plaintiffs fail to adequately plead causation. "[T]he plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations." *See Cowan*, 2017 WL 5495734, at *6. Although plaintiffs assert that "the price of the [Products] dropped significantly as [] the market discovered the truth concerning the celebrity promotions" (FAC ¶ 616), the pricing chart in the FAC contradicts such a conclusion. *See id.* ¶ 141. Plaintiffs contend the market became aware that Ms. Hilton invested in MoonPay on April 13, 2022. *See id.* ¶ 97. Based on plaintiffs' allegations, one would expect to see the price of BAYC NFTs drop. Instead, the price of BAYC NFTs continued to increase, reaching an ***all-time high*** on April 30, 2022. Plaintiffs fail to allege causation. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1062 (9th Cir. 2008) (complaint "must allege that the defendant's share price fell significantly after the truth became known").



### D.   Plaintiffs Fail To Plead Reliance

Despite that the FAC alleges three broad schemes (two in which they concede Ms. Hilton had no role), plaintiffs contend the statements attributed to Ms. Hilton induced Titcher to hold his MAYC NFT[7] and Titcher and Palombini to purchase other (different) Products.  The transactions by these plaintiffs belie an inference that they "engaged in a relevant transaction" based on those statements, as required under Section 10(b).  *See Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 461 (2013).  Palombini purchased a different Product three months after the challenged statements and two weeks after Ms. Hilton's investment in MoonPay (the allegedly omitted fact) became public.  Titcher purchased ApeCoin (not an NFT) over a month after the *Tonight Show* segment—and did not purchase a Product until three months after the segment.  Additionally, the FAC pleads that reports at the time characterized the *Tonight Show* segment as "profoundly unsettling" and "forced."

---

[7]  "Plaintiffs who rely on a forbearance theory of fraud for holding on to stock that they allegedly would have sold but for the defendants' fraudulent conduct must plead how many shares they would have sold and when they would have sold them."  *AB Inv. LLC v. Regal One Corp.*, 2009 WL 10675242, at *3 n.5 (C.D. Cal. Sept. 9, 2009) (citation omitted).  Plaintiffs fail to do so.

FAC ¶ 194. Both articles linked to in the FAC discuss a deep skepticism towards NFTs; one notes, "NFTs can go down in value too, leading to comparisons to a virtual casino." *Id.* ¶ 194 n.145. This public discussion refutes any notion that the market interpreted Ms. Hilton's statements the way plaintiffs allege. *See In Re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *2 (C.D. Cal. Dec. 6, 2022) ("the law . . . expects investors to act reasonably before basing their bets on the zeitgeist of the moment").

Plaintiffs further fail to plead "fraud-on-the-market" because they provide no factual context about the trading volume of the Products or the other factors that courts assess when evaluating market efficiency at the pleading stage. *See Hashem v. NMCHealth PLC*, 2021 WL 5926133, at *4 (C.D. Cal. Nov. 1, 2021) (dismissing where plaintiff "failed to plead facts to support sufficient volume was pleaded with particularity"); Yuga Br. at 25.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTIONS 25401 AND 25501 OF THE CALIFORNIA CORPORATIONS CODE (COUNT 10)

Plaintiffs fail to state a claim for violations of Sections 25401 and 25501 of the California Corporations Code because plaintiffs were not in "strict privity" with—*i.e.*, purchased securities (or anything else) from—Ms. Hilton, as required under both sections. *See, e.g.*, *Apollo Cap. Fund, LLC v. Roth Cap. Partners*, LLC, 158 Cal. App. 4th 226, 253-55 (2007); *Sharp v. Arena Pharms., Inc*., 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013).

Further, plaintiffs do not plead a fraud claim under Sections 25401 and 25501 of the California Corporations Code because, as discussed above, they have not alleged any actionable misstatement, omission, or fraudulent scheme. *See Jackson v. Fischer*, 2013 WL 1089860, at *11 (N.D. Cal. Mar. 15, 2013) (dismissing claim under section 25401 where plaintiff failed to plead false or misleading statements under Section 10(b)); *Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc*., 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998) (dismissing where plaintiff "simply

reiterates the factual allegations made in its [S]ection 10(b) cause of action" in state claims).

Last, even assuming plaintiffs intended to allege that Ms. Hilton violated Section 25401.1—which prohibits "materially assisting" a violation of Section 25401, *see* Cal. Corp. Code § 25504.1—plaintiffs still fail to allege facts sufficient to state a claim. Section 25401.1 requires allegations of a primary violation and that the defendant had an intent to defraud—*i.e.*, **actual knowledge** of the predicate violation. *See, e.g.*, *OCG Energy, LLC v. Shen*, 2023 WL 2628689, at *7 (C.D. Cal. Jan. 11, 2023). Here, the FAC fails to identify any alleged predicate or primary violation plaintiffs could seek to hold Ms. Hilton liable for assisting. The FAC similarly does not allege Ms. Hilton had actual knowledge of any primary violation or took any specific steps to "materially assist" such a violation. These failures doom plaintiffs' California Securities laws claim against Ms. Hilton.

## III. PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER THE UCL (COUNTS 1–3)

### A. Lead Plaintiffs Lack Standing

Because (i) all plaintiffs other than Titcher reside outside California and do not allege injury in California, and (ii) Titcher only has standing as to Products he bought, no lead plaintiff has standing to assert UCL claims against Ms. Hilton. *See, e.g.*, *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (plaintiff lacked standing under California consumer protection laws for products she did not purchase). The FAC does not allege Ms. Hilton made statements about the Products that Titcher bought.[8] Because no plaintiff has standing to pursue a UCL claim against Ms. Hilton, the Court must dismiss those claims.

---

[8] Ms. Hilton obtained and made statements concerning a BAYC NFT. Titcher has not alleged he ever purchased a BAYC NFT. *See* Dkt. 74–2.

-13-

1

### B.    The UCL Claims Fail The "Fraudulent" Prong

2

The UCL claims also fail substantively.  To assert violation of the UCL's

3

"fraudulent" prong (*see* FAC ¶ 538), plaintiffs must "plead how an alleged

4

misrepresentation is false or misleading." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541,

5

559 (N.D. Cal. 2019).  Plaintiffs must also plausibly plead that "members of the

6

public were likely to be deceived" by the misrepresentation or omission at issue.

7

*Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1092 (C.D. Cal. 2015) (cleaned up).

8

"[W]here a court can conclude as a matter of law that members of the public are not

9

likely to be deceived dismissal is appropriate." *Id.* (cleaned up); *see also Punian v.*

10

*Gillette Co.*, 2016 WL 1029607, at *8 (N.D. Cal. Mar. 15, 2016) ("[N]umerous

11

courts have found as a matter of law that a representation is not likely to deceive a

12

reasonable consumer.").

13

*First*, plaintiffs do not identify any statement by Ms. Hilton that was false or

14

misleading, for the reasons explained above. *See* pp. 5-8.[9]

15

*Second*, any omission theory is similarly unsupported.  The UCL makes

16

nondisclosure actionable only where "the defendant is in a fiduciary relationship

17

with the plaintiff; [] when the defendant had exclusive knowledge of material facts

18

not known to the plaintiff; [] when the defendant actively conceals a material fact

19

from the plaintiff; and [] when the defendant makes partial representations but also

20

suppresses some material facts." *Warner*, 105 F. Supp. 3d at 1094.  Plaintiffs do not

21

allege Ms. Hilton was in a fiduciary relationship with plaintiffs; that she "actively

22

concealed" a material fact; nor that she made any "partial representation" while

23

suppressing a material fact.  Plaintiffs also do not explain why the particulars of how

24

Ms. Hilton acquired her BAYC NFT or that she allegedly had a financial interest in

25

26

[9]   As with their Section 10(b) falsity claims, "[p]leading based on information and

27

belief is insufficient" to allege a violation of the UCL's "fraudulent" prong. *Semi-*

28

*Materials Co. v. SunPods, Inc.*, 2012 WL 3962487, at *6 (N.D. Cal. Sept. 10, 2012)

(dismissing claim).

-14-

MoonPay (rather than Yuga Labs) would be material to a would-be purchaser of other Products.  Indeed, Titcher and Palombini's allegations that they *continued* to purchase Products *after* apparently learning of Ms. Hilton's investment in MoonPay refutes any suggestion that these facts were material.  *See* FAC ¶¶ 97, 455, 460.

### C.  The UCL Claims Fail Under The "Unlawful" or "Unfair" Prongs

Because plaintiffs have failed to allege any other substantive claim against Ms. Hilton, plaintiffs also fail to state a claim under the UCL's "unlawful" prong. *See, e.g.*, *Warner*, 105 F. Supp. 3d at 1095 ("Where the predicate claims on which a plaintiff's UCL claim are based fail, the UCL claim fails as well."); *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *9-12 (N.D. Cal. Mar. 11, 2014) (dismissing claim brought under "unlawful" prong where claim was "entirely derivative of the other [inadequately pled] consumer protection claims").  *Second*, because the "practice alleged to be unfair overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the latter prongs do not survive."  *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022).  Such is the case here.

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT 13)

California law does not recognize a separate cause of action for unjust enrichment.  *See, e.g.*, *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010).

Even under a quasi-contract theory, the claim would fail because plaintiffs do not (1) plausibly allege why an adequate remedy at law is unavailable, *Rabin v. Google LLC*, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (dismissing unjust enrichment claim where plaintiffs "failed to plausibly allege . . . why legal remedies [were] inadequate" or suggest that "damages would provide an inadequate remedy"); and (2) plead Ms. Hilton received "a benefit and the unjust retention of the benefit"

1  at the plaintiffs' expense. *Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp.
2  3d 1099, 1104 (C.D. Cal. 2022).

3                              **Conclusion**

4          For the foregoing reasons, Ms. Hilton respectfully requests that this Court
5  dismiss all claims asserted against her.

6
7  **DATED**:  September 12, 2023          **QUINN EMANUEL URQUHART &**
                                            **SULLIVAN, LLP**

8                                          */s/ Shon Morgan*
9                                          Shon Morgan (SBN 187736)
10                                         John B. Quinn (SBN 90378)
                                           865 Figueroa Street, 10th Floor
11                                         Los Angeles, California 90017
12                                         Telephone:  (213) 443-3000
                                           shonmorgan@quinnemanuel.com
13                                         johnquinn@quinnemanuel.com

14
15                                         Kevin P.B. Johnson (SBN 177129)
                                           555 Twin Dolphin Dr., 5th Fl.
16                                         Redwood Shores, California 94065
17                                         Telephone:  (650) 801-5000
                                           kevinjohnson@quinnemanuel.com
18
19                                         Valerie Ramos (SBN 307783)
                                           (*pro hac vice* forthcoming)
20                                         1300 I Street NW, Suite 900
                                           Washington, DC 20005
21                                         Telephone:  (202) 538-8000
22                                         valerieramos@quinnemanuel.com

23                                         Ryan Gorman
24                                         (*pro hac vice* forthcoming)
                                           111 Huntington Ave, Suite 520
25                                         Boston, MA 02199
26                                         Telephone:  (617) 712-7100
                                           ryangorman@quinnemanuel.com
27
28                                         *Counsel for Defendant Paris Hilton*

                                    -16-

## **LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendant Paris Hilton, certifies that this brief contains 4,498 words, which complies with the word limit set by court order dated August 14, 2023 (Dkt. 125).

*/s/ Shon Morgan*
Shon Morgan

DEFENDANT PARIS HILTON'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT
CASE NO. 2:22-CV-08909-FMO-PLA