**MCDERMOTT WILL & EMERY LLP**
Jason D. Strabo (SBN 246426)
jstrabo@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 551-9335
Facsimile: (310) 277-4730

Sarah P. Hogarth (*pro hac vice*)
shogarth@mwe.com
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

Nathan Bull (*pro hac vice*)
nbull@mwe.com
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

*Attorneys for Defendant*
*Wardell Stephen Curry II*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC. et al.,<br><br>Defendants. | CASE NO. 2:22-cv-08909-FMO (PLAx)<br><br>**DEFENDANT WARDELL STEPHEN CURRY II'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        November 30, 2023<br>Time:        10:00 AM<br>Judge:      Hon. Fernando Olguin<br>Place:       Courtroom 6D<br><br>Action Filed: December 8, 2022<br>Trial Date:    TBD |

TO PLAINTIFF AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 30, 2023, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6D of the Honorable Fernando M. Olguin, Defendant Wardell Stephen Curry II (Curry) will and hereby does move pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8, 9(b), and the Private Securities Litigation Reform Act of 1995 (PSLRA), for an order dismissing the claims in the First Amended Class Action Complaint (Dkt. 114) brought against Mr. Curry (Counts 1-3, 8, 10, and 13).

This Notice of Motion and Motion is and will be based on the following grounds: With respect to Count 8, plaintiffs fail to allege any deceptive or manipulative act by Mr. Curry in furtherance of any "scheme," fail to allege any scienter on Mr. Curry's part, and fail to allege any reliance on Mr. Curry's conduct. Plaintiffs lack standing to pursue California state-law claims against Mr. Curry (Counts 1-3, 10, and 13). With respect to Count 10, plaintiffs fail to allege any violation of the California Corporations Code sections 25401 and 25501 by Mr. Curry because there is no direct privity between Mr. Curry and plaintiffs. With respect to Counts 1-3, plaintiffs have not alleged any violation of the California Unfair Competition Law by Mr. Curry because they have not alleged any unlawful, unfair, or fraudulent practice on his part; they lack statutory standing to pursue these claims against him, and they fail to plead recoverable remedies against him. With respect to Count 13, plaintiffs cannot bring an unjust-enrichment claim nor state any of the elements as against Mr. Curry.

This Motion is based on this Notice of Motion and Motion; the accompanying memorandum of points and authorities; the Yuga memorandum of points and authorities (Dkt. 153), which we incorporate as authorized by the Court (Dkt. 125); the pleadings and papers filed in this action; and such argument and matters as may be offered at the time of hearing this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 1, 2023.

CURRY'S MOTION TO DISMISS

1  Dated: September 12, 2023          **MCDERMOTT WILL & EMERY LLP**

2

3                                      By:  /s/ *Jason D. Strabo*
                                            Jason D. Strabo

4                                           *Attorneys for Defendant*
                                            *Wardell Stephen Curry II*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

CURRY'S MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 1

Argument ................................................................................................................... 3

I.    Plaintiffs fail to allege participation in any securities "scheme" by
      Mr. Curry (Count 8) ........................................................................................ 4

      A.    Plaintiffs allege no deceptive or manipulative act by Mr. Curry
            in furtherance of any "scheme." ......................................................... 5

      B.    Plaintiffs fail to allege any scienter on Mr. Curry's part. ................ 7

      C.    Plaintiffs fail to allege any reliance on Mr. Curry's conduct. ......... 8

II.   Plaintiffs' California state law claims fail too. .............................................. 9

      A.    No plaintiff has Article III standing to pursue California state-law
            claims against Mr. Curry. .................................................................. 9

      B.    Plaintiffs fail to allege any violation of sections 25401 and 25501
            of the California Corporations Code by Mr. Curry (Count 10). ....... 9

      C.    Plaintiffs fail to allege any violation of the California UCL by
            Mr. Curry (Counts 1-3). .................................................................. 10

            1.    Plaintiffs do not allege any violative acts by Mr. Curry. ......... 10

            2.    Plaintiffs lack statutory standing to bring claims against
                  Mr. Curry. ............................................................................... 12

            3.    Plaintiffs fail to plead recoverable remedies as to Mr. Curry. ..... 13

      D.    Plaintiffs fail to allege any unjust enrichment as to Mr. Curry
            (Count 13). ....................................................................................... 13

Conclusion ............................................................................................................... 14

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

CURRY'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
158 Cal. App. 4th 226 (2007) .................................................................. 9

*In re Apple Processor Litig.*,
2022 WL 2064975 (N.D. Cal. June 8, 2022)......................................... 13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ................................................................ 13

*Borteanu v. Nikola Corp.*,
2023 WL 1472852 (D. Ariz. Feb. 2, 2023) ......................................... 5, 6

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ................................................................... 6

*Bronson v. Johnson & Johnson, Inc.*,
2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ....................................... 12

*Chiarella v. United States*,
445 U.S. 222 (1980)................................................................................. 6

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ................................................................ 11

*In re Diasonics Securities Litig.*,
599 F. Supp. 447 (N.D. Cal. 1984) ....................................................... 10

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) .................................................................. 10

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*,
532 F. Supp. 3d 956 (S.D. Cal. 2021) ................................................... 13

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017)................................................. 11

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ................................................................ 11

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................... 10

CURRY'S MOTION TO DISMISS

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**Cases—continued**

*Jackson v. Fischer*,
  2013 WL 1089860 (N.D. Cal. Mar. 15, 2013) ........................................ 9

*Klaehn v. Cali Bamboo LLC*,
  2022 WL 1830685 (9th Cir. June 3, 2022) ............................................ 13

*Kwikset Corp. v. Superior Ct.*,
  246 P.3d 877 (Cal. 2011) ......................................................................... 12

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) .................................................................. 12

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d 901 (C.D. Cal. 2021) ....................................................... 9

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ...................................................................................... 6

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ............................................................... 7, 8

*Rabin v. Google LLC*,
  2023 WL 4053804 (N.D. Cal. June 15, 2023) ........................................ 13

*Rabkin v. Lion Biotechs., Inc.*,
  2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ............................................. 4

*Rentea v. Janes*,
  2011 WL 5822255 (C.D. Cal. Nov. 16, 2011) ........................................... 8

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ..................................................................... 7

*Schmitt v. Younique LLC*,
  2017 WL 10574060 (C.D. Cal. Dec. 4, 2017) ........................................... 9

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (2020) .................................................................. 10

*Sharp v. Arena Pharms., Inc.*,
  2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) ....................................... 10

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

CURRY'S MOTION TO DISMISS

**Cases—continued**

*Sugarman v. Brown*,
    73 Cal. App. 5th 152 (2021) ................................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................. 7

*In re Tibco Software, Inc. Sec. Litig.*,
    2006 WL 1469654 (N.D. Cal. May 25, 2006)..................................... 8

*WPP Luxemburg Gamma Three Sarl v. Spot Runner Inc.*,
    2009 WL 10675234 (C.D. Cal. Sept. 14, 2009) ................................ 7

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................ 3, 10

Cal. Corp. Code § 25401 .................................................................... 3, 9

Cal. Corp. Code § 25501 .................................................................... 3, 9

Securities & Exchange Act § 10(b),
    15 U.S.C. § 78j .................................................................................. 3, 9

**Other Authorities**

SEC Rule 10b–5(b),
    17 C.F.R. § 240.10b-5 ......................................................................... 6

U.S. Const. art. III.................................................................................. 9

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

CURRY'S MOTION TO DISMISS

**INTRODUCTION**

Plaintiffs, individuals who allegedly purchased an array of non-fungible tokens and cryptocurrencies, seek to hold 29 separate defendants—from the creator of the NFTs and its executives, to apparel companies, auction houses, and professional entertainers and athletes, many of whom have no discernible connection to each other—responsible for their NFT purchases.

Stephen Curry is one of those professional athletes. But the First Amended Class Action Complaint (FAC) says almost nothing about him. The total of plaintiffs' allegations is that Mr. Curry owns an NFT—a "Bored Ape" NFT that is part of the widely popular Bored Ape Yacht Club (BAYC) collection—and he appeared in a commercial for a separate cryptocurrency exchange in which he "brush[ed] off flakes of ice" from a Bored Ape ice sculpture. Mr. Curry said nothing about the BAYC NFTs during the commercials (or otherwise), did not sell his sole BAYC NFT, and, aside from the mere act of owning that BAYC NFT, which he briefly used on social media, did nothing with respect to that NFT.

Plaintiffs nevertheless attempt to spin these allegations into securities fraud and violations of a potpourri of state laws. But plaintiffs do not allege *anything* deceptive or misleading about Mr. Curry's actions. Ownership of a BAYC NFT and using it on social media does not violate the securities laws, nor does alleged brushing off a Bored Ape ice sculpture in a commercial for a separate non-party.

The claims against Mr. Curry should be dismissed.

**BACKGROUND**

Over 218 pages and 699 paragraphs, the FAC alleges that a conglomeration of "Defendants" engaged in various purported "schemes" to "artificially" inflate the price of assorted digital entertainment products. *See* Yuga Br. 8-9.

As pertains to Mr. Curry's role in these wholly implausible "schemes," plaintiffs have little to say. Indeed, plaintiffs include only four factual allegations specific to Mr.

CURRY'S MOTION TO DISMISS

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Curry[1]:

(1)    Mr. Curry (or his company, SC30) owns BAYC NFT #7990, Mr. Curry used it as a social media profile picture for an unspecified period (FAC ¶ 282), and Mr. Curry made a "post in the BAYC Discord" (FAC ¶ 459). Plaintiffs allege no facts suggesting that Mr. Curry did not purchase his BAYC NFT, nor do they allege any connection between Mr. Curry's acquisition of the BAYC NFT and Yuga, MoonPay, or Guy Oseary. *See* FAC ¶ 282 & n.253.

(2)    In response to separate entity FTX's tweet of a video announcing its expansion of its NFT marketplace that included BAYC NFTs (after it had been publicly revealed that FTX acquired BAYC NFTs (FAC ¶ 147)), Mr. Curry replied on December 3, 2021: "Cool announcement video, but my editing skills are missed 😂." (FAC ¶ 145 & n.80);

(3)    Mr. Curry appeared in a FTX commercial teaser released on February 18, 2022, in which Mr. Curry "can be seen brushing off flakes of ice" from a Bored Ape ice sculpture (FAC ¶¶ 216-217); and

(4)    Mr. Curry appeared in the full FTX commercial released on March 29, 2022, in which he "can be seen working on an ice sculpture of a Bored Ape" (FAC ¶¶ 280-281).

Although plaintiffs allege a scattershot scheme in which Yuga and Oseary purportedly arranged for "celebrity influencers" to "deceptively promote the artificially inflated BAYC NFTs" in exchange for "receiv[ing] a BAYC NFT and /or other fiat or cryptocurrency from MoonPay and/or Yuga as compensation" (FAC ¶¶ 152, 166), plaintiffs never allege *any* facts connecting Mr. Curry to MoonPay, Yuga, or Mr. Oseary at all, let alone receiving an NFT or other payment. *See* FAC. And Mr.

---

[1]    For purposes of this motion only, we assume the truth of well-pleaded factual allegations but reserve all rights to challenge their accuracy in further proceedings.

CURRY'S MOTION TO DISMISS

Curry is not alleged to have owned, purchased, or otherwise engaged in any conduct with respect to the MAYC NFTs, ApeCoin, or any other alleged product.

Nonetheless, the crux of plaintiffs' theory against Mr. Curry is that

- certain plaintiffs got the "false impression" that he "was a legitimate purchaser of BAYC NFTs with a genuine interest in the Bored Ape ecosystem" (FAC ¶¶ 459-460)—yet there are no well-pled allegations that he was not a legitimate purchaser or did not have a genuine interest in the Bored Ape ecosystem—or that Mr. Curry "made his purchase of the BAYC NFT as part of his multi-million dollar investment strategy"(FAC ¶¶459-460)—another allegation that is nowhere refuted by any well-pleaded allegations; and

- as part of an FTX commercial, there was no "disclosure or disclaimer concerning the connection between FTX and Yuga (via Defendants Wu or Sotheby's)" (FAC ¶ 281)—even though by that time it was public knowledge that FTX owned BAYC NFTs (FAC ¶ 147).

Plaintiffs bring (at most)[2] six of the thirteen claims against Mr. Curry arising from these alleged actions: violation of Cal. Bus. & Prof. Code § 17200 through "unlawful" (Count 1), "unfair" (Count 2), and "fraudulent" (Count 3) acts and practices; "scheme liability" under Securities & Exchange Act § 10(b) (Count 8); violation of sections 25401 and 25501 of the California Corporations Code (Count 10); and unjust enrichment (Count 13).

## ARGUMENT

As the sparsity of factual allegations about Mr. Curry reflects, plaintiffs' claims against him are hopelessly flawed. He was not a participant in some alleged "scheme" to artificially inflate the price of any products, and he did not engage in any deception

---

[2]   In many instances, it is entirely unclear whether plaintiffs are asserting claims against the "Executive Defendants," all defendants, or some other group of defendants. These errors and uncertainty alone merit dismissal. Yuga Br. 10-11, 18.

CURRY'S MOTION TO DISMISS

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

by the combined acts of owning a single BAYC NFT and appearing in commercials for entirely separate company FTX. Plaintiffs fail to allege any facts that show any interaction between Mr. Curry and Yuga, MoonPay, or Mr. Oseary, vitiating plaintiffs' efforts to implicate him in some "scheme."

The Yuga brief explains in detail why plaintiffs' entire FAC must be dismissed. Mr. Curry joins in and incorporates by reference those arguments and the arguments by any other defendant that apply to him.[3] And, for the independent reasons set forth below, the claims against him fail.

## I.  PLAINTIFFS FAIL TO ALLEGE PARTICIPATION IN ANY SECURITIES "SCHEME" BY MR. CURRY (COUNT 8).

The FAC alleges that Mr. Curry was part of a "scheme" to promote the BAYC NFTs to artificially inflate its price. FAC ¶¶ 152, 166. To allege scheme liability, plaintiffs must allege "(1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation." *Rabkin v. Lion Biotechs., Inc.*, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018).

As explained in the Yuga brief (at 10-15), the FAC should be dismissed because plaintiffs rely on impermissible shotgun and puzzle pleading and because they have not alleged any actionable schemes whatsoever. As pertains to Mr. Curry and plaintiffs' three "schemes," plaintiffs have not alleged his participation in any way in the alleged Sotheby's auction[4] or trading manipulation schemes. As for the celebrity-promotions scheme, plaintiffs fail to allege any actionable "scheme" liability against Mr. Curry.

---

[3]  This includes Yuga's arguments supporting dismissal of any claims that are also brought against Mr. Curry. Yuga Br. 10-15, 19-25 (Count 8), 33-36 (Counts 1-3), 38 (Count 10), 39 (Count 13), 40-41 (California claims).

[4]  Plaintiffs allege Mr. Curry replied to an FTX tweet with a video that supposedly shows Sotheby's-auction-related BAYC NFTs. FAC ¶ 145 & n.80. But Mr. Curry's reply occurred in December 2021, well after the alleged Sotheby's auction *and* after FTX was publicly revealed as the purchaser. *Id.*

### A. Plaintiffs allege no deceptive or manipulative act by Mr. Curry in furtherance of any "scheme."

Plaintiffs' attempt to insert Mr. Curry into some celebrity-promotion "scheme" fails out of the gate. Although plaintiffs must "allege that *each defendant* committed their own deceptive act in furtherance of the scheme," the FAC nowhere alleges that Mr. Curry "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *22 (D. Ariz. Feb. 2, 2023).

For starters, plaintiffs do not allege that Mr. Curry made any statements, much less statements that were false or misleading by omission. Instead, plaintiffs' allegations as to Mr. Curry's involvement appear to rest entirely on tenuous and muddled theories of nondisclosure that created "false impression[s]" of unbelievable facts to further the "scheme" of allegedly inflating the price of BAYC NFTs.

As described above, plaintiffs allege that Mr. Curry owns a BAYC NFT. According to plaintiffs, this gave the "false impression" that Mr. Curry "was a legitimate purchaser of BAYC NFTs with a genuine interest in the Bored Ape ecosystem." FAC ¶¶ 459-460. But plaintiffs have not alleged anything—no facts at all—to support any "false appearance of fact." Plaintiffs have not alleged any facts showing that Mr. Curry did not actually purchase the BAYC NFT, or any facts to support the conclusory assertion that Mr. Curry "received a BAYC NFT and/or other fiat or cryptocurrency from MoonPay and/or Yuga." FAC ¶ 166.

As for Mr. Curry's appearance in an FTX commercial in which he brushed off a Bored Ape ice sculpture, plaintiffs have likewise not alleged anything remotely particularized to show the commercial created a false appearance of fact. Mr. Curry already owned his BAYC NFT, and he appeared in a commercial for FTX, which publicly owned BAYC NFTs and an NFT platform. Plaintiffs include no allegations to explain what about Mr. Curry's conduct was deceptive. Again, plaintiffs have not alleged any facts tending to show that Mr. Curry did not "legitimately purchase[]" his

CURRY'S MOTION TO DISMISS

BAYC NFT rather than get it from MoonPay or Yuga. Nor do they allege that there was some duty to provide a "disclosure or disclaimer concerning the [alleged] connection between FTX and Yuga (via Defendants Wu or Sotheby's)" as part of the FTX commercial. By that point, it was already public knowledge that Mr. Curry owned a BAYC NFT and that FTX owned BAYC NFTs, and it is facially evident that Mr. Curry is appearing in an FTX commercial. Plaintiffs have not alleged what "false appearance of fact" Mr. Curry's appearance in the FTX commercial possibly created.

What's more, "[Section] 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235 (1980). Plaintiffs do not allege that Mr. Curry had a duty to disclose tangential, publicly available information about the alleged "connection between FTX and Yuga (via Defendants Wu or Sotheby's)" because nothing about the commercial "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]" at the time. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). At that point, FTX itself publicly owned BAYC NFTs and an NFT platform, and Mr. Curry appeared in an FTX commercial.

Plaintiffs have also not alleged that Mr. Curry "engaged in [this] conduct" for "the principal *purpose and effect* of creating a false appearance of fact in furtherance of the scheme," independently compelling dismissal. *Borteanu*, 2023 WL 1472852, at *22 (emphasis added). Plaintiffs allege nothing about Mr. Curry's principal purpose, let alone that his principal purpose in brushing off an ice sculpture in an FTX commercial was to advance the supposed "scheme" that no facts alleged show he knew anything about—again, there are no alleged connections to MoonPay, Yuga, or Oseary—such that he even could have had the purpose of creating the allegedly "false" appearance that he "legitimately purchased" his own BAYC NFT.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**B.      Plaintiffs fail to allege any scienter on Mr. Curry's part.**

For similar reasons, plaintiffs have failed to allege scienter on Mr. Curry's part. Plaintiffs have not alleged any facts that give rise to any inference, let alone a "strong inference," that Mr. Curry engaged in intentionally misleading or deliberately reckless conduct. *WPP Luxemburg Gamma Three Sarl v. Spot Runner Inc.*, 2009 WL 10675234, at *5 (C.D. Cal. Sept. 14, 2009). To meet their burden, plaintiffs "cannot rely on 'mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent.'" *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). And a complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 1106 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, (2007)).

Plaintiffs have not made any attempt to allege "specific facts" that are so "compelling" as to strongly suggest intent by Mr. Curry to manipulate or deceive. Indeed, nowhere in the specific allegations against Mr. Curry do plaintiffs even mention the words "scienter" or "intent," much less provide the specific facts necessary to plead that element. *See* FAC ¶¶ 608-612 (alleging scienter without mentioning Mr. Curry); FAC ¶¶ 216-218, 280-282, 459 (describing Mr. Curry's conduct without mentioning scienter). Nothing suggests that Mr. Curry stood to benefit from increased sales of BAYC NFTs or sales at allegedly artificially inflated prices. Indeed, he owns a BAYC NFT, there are no allegations the NFT was given to him or that he sold it, and the FAC's source reflects he *still* owns it. FAC ¶ 281 n.253 (citing *Bored Ape Yacht Club #7990*, OpenSea (as of Sept. 12, 2023), tinyurl.com/BAYC7990, still showing "SC30" ownership). All this strongly suggests the opposite: that Mr. Curry had no motive to "artificially" or "deceptively" inflate the value of BAYC NFTs—a product he bought and still owns—(let alone other products, with which he had no connection). *E.g.*, *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th

CURRY'S MOTION TO DISMISS

Cir. 2012) (no strong inference of scienter where defendant's conduct was inconsistent with plaintiff's theory); *In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006) (rejecting scienter allegations when plaintiff had "not even shown that [d]efendants were motivated to commit fraud"); *accord Prodanova*, 993 F.3d at 1108 ("the lack of a plausible motive . . . makes it much less likely that a plaintiff can show a strong inference of scienter").

### C.     Plaintiffs fail to allege any reliance on Mr. Curry's conduct.

Plaintiffs have also not alleged any reasonable reliance on Mr. Curry's conduct.

The only product with which Mr. Curry is alleged to have been involved is the BAYC NFT. According to plaintiffs, the "deception" was that certain plaintiffs were allegedly led to believe that Mr. Curry "purchased the BAYC NFTs as [an] investor[]" and had a "genuine" interest in Bored Apes. FAC ¶¶ 459-460. But only a single named plaintiff (Boekweg) claims to have ever purchased a BAYC NFT (*see* Dkt. 74-2)—and the FAC does not allege that Boekweg relied on anything associated with Mr. Curry when choosing to buy BAYC NFTs. *See* FAC ¶¶ 459-460. (The facts confirm as much, as he bought them months after Mr. Curry's alleged conduct. Dkt. 74-2.) Regardless, even as to the plaintiffs who "saw" Mr. Curry's FTX teaser commercial (Titcher, Johnson, and Palombini), their asserted reliance on this FTX commercial to drive their investment decisions into *other* products is not plausible. No reasonable investor would rely on an advertisement for FTX—an entity allegedly launching an NFT trading platform—showing a Bored Ape ice sculpture to make supposed investment decisions about *other* products. *Rentea v. Janes*, 2011 WL 5822255, at *4 (C.D. Cal. Nov. 16, 2011) (reliance not established "where a plaintiff's reliance on a misstatement or omission is unreasonable in light of the facts of the case").

Plaintiffs also cannot rely on a "fraud-on-the-market" presumption for the reasons set forth in the Yuga brief (at 25) and the Universal brief.

CURRY'S MOTION TO DISMISS

## II.   PLAINTIFFS' CALIFORNIA STATE LAW CLAIMS FAIL TOO.

### A.   No plaintiff has Article III standing to pursue California state-law claims against Mr. Curry.

"In order to satisfy the constitutional requirement of Article III standing for each claim asserted, [p]laintiffs must allege that they made a purchase or were injured in a particular state in order to bring a claim under that state's laws." *Schmitt v. Younique LLC*, 2017 WL 10574060, at *4 (C.D. Cal. Dec. 4, 2017). As the Yuga brief explains (at 38-39), only one of the plaintiffs—Titcher—can pursue California state law claims and only for claims related to MAYC and Otherdeed NFTs, the only products he allegedly purchased. Because Mr. Curry's conduct is only alleged to relate to BAYC NFTs, products Titcher did not purchase, plaintiffs cannot pursue any of their California claims against Mr. Curry because they lack standing. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021); *Schmitt*, 2017 WL 10574060, at *4.

### B.   Plaintiffs fail to allege any violation of sections 25401 and 25501 of the California Corporations Code by Mr. Curry (Count 10).

Plaintiffs confusingly allege in the heading to Count 10 and at other points that it is against "all defendants" but also that they are only bringing the claim "against the Executive Defendants." *See* FAC ¶¶ 646-657. For the avoidance of doubt, to the extent this claim is brought against Mr. Curry, it must be dismissed.

For starters, plaintiffs have not alleged any actionable securities violations against Mr. Curry for reasons already explained. *Jackson v. Fischer*, 2013 WL 1089860, at *11 (N.D. Cal. Mar. 15, 2013) (dismissing claim under section 25401 when plaintiff failed to plead false or misleading statements under section 10(b)).

Regardless, "[s]ections 25401 and 25501 impose liability only on the actual seller of the security." *Jackson*, 931 F. Supp. 2d at 1063 (citing *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253-254 (2007)). This "strict privity" bars claims where the plaintiff did not purchase the security directly

CURRY'S MOTION TO DISMISS

from the defendant. *In re Diasonics Securities Litig.*, 599 F. Supp. 447, 459 (N.D. Cal. 1984); *Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013). Plaintiffs do not allege that Mr. Curry ever sold any product and certainly not to any plaintiff.

## C. Plaintiffs fail to allege any violation of the California UCL by Mr. Curry (Counts 1-3).

The FAC fails to allege that Mr. Curry engaged in any violation of California's Unfair Competition Law (UCL). As a threshold matter, plaintiffs cannot maintain a claim for alleged violations of the securities laws under the UCL. *See* Yuga Br. 36. Counts 1-3 thus do not get out of the gate. But they also fail on substance too.

### 1. Plaintiffs do not allege any violative acts by Mr. Curry.

Because "[a] defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate sections 17200 or 17500" (*In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011) (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)), the UCL claims against Mr. Curry must be dismissed in view of plaintiffs' wholesale failure to allege any violative acts on his part.

***Unlawful/fraudulent.*** Plaintiffs fail to identify any "unlawful" or "fraudulent" act Mr. Curry allegedly committed. *See* FAC ¶¶ 476-502. "To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California 'statute or regulation.'" *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020) (citation omitted). As already explained above (at section I) and in the Yuga brief (at 11-15, 19-25), Mr. Curry did not violate any securities laws.

The only thing alleged in these counts about Mr. Curry is that "Defendants engaged in deceptive acts and practices" by "failing to disclose that the promotions … were the result of … being paid to promote (or having a vested financial interest in the promotion of) the [Products] instead of an organic interest/support of the Bored Ape

CURRY'S MOTION TO DISMISS

ecosystem." FAC ¶ 485(c). But plaintiffs have not alleged any facts—let alone with the required particularity—that show Mr. Curry's conduct was either unlawful or fraudulent.

Again, plaintiffs allege that Mr. Curry owns BAYC NFT #7990, which he used on social media for an unalleged period (FAC ¶ 282). Mr. Curry also appeared in an FTX commercial in which he brushed ice from a Bored Ape ice sculpture. FAC ¶¶ 216-217, 280-281. Plaintiffs do not allege how any of this was "unlawful." Nor do plaintiffs identify any statement by Mr. Curry that was false or misleading.

To the extent plaintiffs are relying on generalized deception with some duty to disclose, of course, "[a] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)). Plaintiffs do not allege any duty to disclose anything with respect to Mr. Curry's acquisition of a BAYC NFT and, indeed, plaintiffs do not allege any facts to show *what* there was to disclose; Mr. Curry is not alleged to have received his BAYC NFT from MoonPay, Yuga, or Oseary or to have gotten anything from them at all. Plaintiffs suggest that the FTX commercial "did not include any disclosure or disclaimer concerning the connection between FTX and Yuga (via Defendants Wu or Sotheby's)." FAC ¶ 281. But plaintiffs do not offer any factual enhancement to explain why Mr. Curry had any duty to disclose this exceptionally specific yet tenuous alleged information as part of an FTX commercial. What is more, it had already been public knowledge for months that FTX owned BAYC NFTs, making such a disclosure pointless. *See* FAC ¶ 147.

***Unfair.*** Plaintiffs do not allege any additional conduct to support their "unfairness" claims. But "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley*

CURRY'S MOTION TO DISMISS

*v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-1105 (N.D. Cal. 2017). Nor are the actions plaintiffs allege about Mr. Curry at all "unfair." Mr. Curry owns a BAYC NFT, and plaintiffs have not alleged that he did not purchase his BAYC NFT. Mr. Curry appeared in what were openly advertisements for FTX, a known owner of BAYC NFTs. None of this is "unfair" within the meaning of the UCL. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134 (2007) (contemplating violations of "established public policy" or "immoral, unethical, oppressive or unscrupulous" acts causing "injury to consumers").

### 2.    *Plaintiffs lack statutory standing to bring claims against Mr. Curry.*

To bring a claim under the UCL, plaintiffs must allege statutory standing—they must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011). In other words, they "must plead that they relied on the misleading materials" to their economic detriment. *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013).

For reasons similar to their failure to plead reliance (*supra* at 8), plaintiffs have failed to plead that any economic injury they suffered (if any) was "caused by" any of Mr. Curry's conduct. Again, the *only* product with which Mr. Curry is alleged to have been involved is the BAYC NFT. FAC ¶¶ 459-460. But the only named plaintiff that claims to have ever purchased a BAYC NFT (*see* Dkt. 74-2) is not alleged to have relied on anything associated with Mr. Curry. *See* FAC ¶¶ 459-460. And even as to the plaintiffs who "saw" Mr. Curry's FTX teaser commercial (Titcher, Johnson, and Palombini), any injury to them from purchasing *other* products cannot have been plausibly "caused by" the alleged conduct by Mr. Curry, which had nothing to do with other products.

CURRY'S MOTION TO DISMISS

### 3.    *Plaintiffs fail to plead recoverable remedies as to Mr. Curry.*

Plaintiffs' UCL claim also fails because plaintiffs have no injunctive relief or restitution that could possibly be recovered, as explained in the Yuga brief (at 33-35). Plaintiffs have no claim to injunctive relief, as there is no threat of repeated injury in the future, and they likewise fail to allege basis for restitution because they fail to allege any money or property in Mr. Curry's possession that he "took directly from plaintiffs." *Sugarman v. Brown*, 73 Cal. App. 5th 152, 164 (2021).

### D.    **Plaintiffs fail to allege any unjust enrichment as to Mr. Curry (Count 13).**

Plaintiffs have also not alleged an unjust-enrichment claim against Mr. Curry.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *accord Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022) ("Unjust enrichment can be alleged [only] to the extent it represents a remedy for some other valid cause of action."). Plaintiffs' unjust enrichment claim should be dismissed on this basis alone.

Although an "unjust enrichment" claim may be brought in the form of a "quasi-contract claim seeking restitution," such a claim predicated on fraud or consumer protection claims—as here—must nonetheless be dismissed if those predicate claims fail. *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) (citing *Astiana*, 783 F.3d at 762). In addition, plaintiffs do not allege any factual basis suggesting that Mr. Curry "recei[ved] any financial benefit" that he "unjust[ly] ret[ained]" "at the expense of" any plaintiff. *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 532 F. Supp. 3d 956, 970 (S.D. Cal. 2021). Indeed, no allegations suggest that Mr. Curry received anything from the plaintiffs or class members, nor even that he received his BAYC NFT from MoonPay or Yuga.

This claim should also be dismissed because adequate remedies at law exist, and plaintiffs have not alleged otherwise. *Rabin v. Google LLC*, 2023 WL 4053804, at *13

CURRY'S MOTION TO DISMISS

(N.D. Cal. June 15, 2023).

## CONCLUSION

The Court should dismiss all claims as against Mr. Curry.

Dated: September 12, 2023            **MCDERMOTT WILL & EMERY LLP**

By:    /s/ *Jason D. Strabo*
Jason D. Strabo

*Attorneys for Defendant*
*Wardell Stephen Curry II*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Wardell Stephen Curry II, certifies that this brief contains 4,497 words complies with the word limit set by court order dated August 14, 2023 (Dkt. 125).

Dated: September 12, 2023            /s/ *Jason D. Strabo*
Jason D. Strabo

CURRY'S MOTION TO DISMISS