DEAN S. KRISTY (CSB No. 157646)
dkristy@fenwick.com
JENNIFER C. BRETAN (CSB No. 233475)
jbretan@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ETHAN M. THOMAS (CSB. No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

MELISSA L. LAWTON (CSB No. 225452)
mlawton@fenwick.com
FENWICK & WEST LLP
228 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401
Telephone: 310.554.5400

REBECCA MATSUMURA (*admitted pro hac vice*)
rmatsumura@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:  206.389.4510

Attorneys for Defendants Alexis Ohanian,
Amy Wu, and Maaria Bajwa

FENWICK & WEST LLP
ATTORNEYS AT LAW

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., et al.,<br><br>Defendants. | Case No.: 2:22-cv-08909-FMO-PLA<br><br>**NOTICE OF MOTION AND MOTION OF ALEXIS OHANIAN, AMY WU, AND MAARIA BAJWA TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 30, 2023<br>Time: 10:00 AM<br>Courtroom:  6D<br>Judge: Hon. Fernando M. Olguin |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on November 30, 2023, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Fernando M. Olguin, United States District Court Judge for the Central District of California, at 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 6D, defendants Alexis Ohanian, Amy Wu, and Maaria Bajwa (collectively, the "Special Council"), will, and hereby do, move to dismiss with prejudice the First Amended Class Action Complaint (ECF No. 114, the "FAC").[1]  The Special Council move to dismiss the FAC in its entirety pursuant to Fed. R. Civ. P. 9(b) and 12(b)(2)  and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as follows:

(1) all claims due to plaintiffs' use of "group" pleading rather than alleging and identifying conduct by the Special Council as required by applicable pleading standards; (2) failure to plead that the Special Council controlled other defendants (Claims 5, 9 and 12); (3) failure to state a claim under §10(b) of the Securities Exchange Act of 1934 (Claims 7 and 8) and Cal. Corp. Code §§25401 and 25501(Claims 10 and 11) as to the Special Council; (4) failure to state a claim under §§ 5 and 12(a)(1) of the Securities Act of 1933 (Claim 4) or under parallel provisions of Cal. Corp. Code §§25110 and 25503 (Claim 6) as to the Special Council; (5) failure to state a claim against the Special Council for the violation of the California Unfair Competition Law (Claims 1-3); (6) failure to state an unjust enrichment claim as to the Special Council (Claim 13); and (7) because the federal securities claims fail, personal jurisdiction over Mr. Ohanian is absent.

This motion is based on the Memorandum of Points and Authorities that follows, the arguments set forth in the Yuga Defendants' separate Motion, which motion the Special Council members have joined and all of which are incorporated by reference herein, the arguments of counsel, and any other matters properly

---

[1] Unless otherwise noted, citations to "¶" are to the paragraphs of the FAC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  before the Court.

2     This motion is made following a conference of counsel pursuant to Local

3  Rule 7-3 which took place on September 1, 2023.

4  Dated: September 12, 2023          FENWICK & WEST LLP

5                                     By: /s/   *Jennifer C. Bretan*
                                              Jennifer C. Bretan
6
7                                     *Attorneys for Defendants Alexis Ohanian,
                                       Amy Wu, and Maaria Bajw*a

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS.........................................i

TABLE OF AUTHORITIES..................................................................iv

I.  INTRODUCTION .................................................................1

II.  FACTUAL BACKGROUND...................................................1

    A.  The ApeCoin DAO And The Ape Foundation ..............................1

    B.  The Special Council.........................................................2

III.  SPECIAL COUNCIL SERVICE IS NOT A BASIS FOR ANY CLAIM .......................................................................3

    A.  Improper Group Pleading...................................................3

    B.  Baseless "Control" Allegations.............................................4

IV.  SECTION 10(b) CLAIMS FAIL AS TO THE SPECIAL COUNCIL.........5

    A.  The FAC Alleges No False Statement By The Special Council .........6

        1.  No Statement by Ohanian Is Challenged .............................6

        2.  Wu's March 16, 2022 Tweet .................................................6

        3.  Bajwa's January 2, 2022 Tweet ........................................7

        4.  The @ApeCoin Tweets .....................................................7

    B.  The Scienter Allegations Are Equally Deficient...........................8

    C.  No Reliance .................................................................8

    D.  No Loss Causation .........................................................9

    E.  No "Fraudulent Scheme".................................................9

    F.  The Parallel California Claims Likewise Fail..............................10

V.  THE FAC STATES NO CLAIM AGAINST THE SPECIAL COUNCIL UNDER THE 1933 ACT OR CALIFORNIA LAW...............10

    A.  The 1933 Act Claim Fails ................................................10

    B.  The Parallel California Claim Likewise Fails.............................11

VI.  THE UCL CLAIMS FAIL AS TO THE SPECIAL COUNCIL...............12

VII.  THERE IS NO PERSONAL JURISDICTION OVER MR. OHANIAN....13

VIII.  CONCLUSION..................................................................14

FENWICK & WEST LLP
ATTORNEYS AT LAW

CERTIFICATE OF COMPLIANCE .............................................................. 15

Fenwick & West LLP
Attorneys at Law

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 9, 2013) ...............................................5

*In re Am. Principals Holdings, Inc. Sec. Litig.*,
1987 WL 39746 (S.D. Cal. July 9, 1987) ...................................................12

*ASM Assembly Sys. Switzerland GmbH v. QTS Eng'g, Inc.*,
2016 WL 278734 (S.D. Cal. Jan. 22, 2016) ................................................14

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) .....................................................11

*Brady v. Delta Energy & Commc'ns, Inc.*,
2022 WL 3643659 (C.D. Cal. Aug. 5, 2022) ...............................................8

*Brady v. Delta Energy & Commc'ns, Inc.*,
598 F. Supp. 3d 865 (C.D. Cal. 2022) ........................................................3

*Bronson v. Johnson & Johnson, Inc.*,
2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ........................................ 12, 13

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir.1984) .....................................................................3

*Cowan v. Goldcorp*,
2017 WL 5495734 (C.D. Cal. Sept. 6, 2017) ...............................................9

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ..................................................................13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ...............................................................................9

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) ....................................................................12

*Gerritsen v. Warner Bros. Ent., Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .......................................................4

*Guo v. Robl*,
2023 WL 2683473 (C.D. Cal. Mar. 2, 2023) ...............................................5

FENWICK & WEST LLP
ATTORNEYS AT LAW

*United States ex. rel. Gvalevech v. Kroger Specialty Pharmacy, Inc.*,
2023 WL 3552113 (C.D. Cal. Mar. 24, 2023) ................................................. 4

*Jackson v. Fischer*,
2013 WL 1089860 (N.D. Cal. Mar. 15, 2013) .......................................... 10

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ............................................................... 6, 9

*Lantz Ret. Inv., LLC v. Glover*,
2020 WL 528890 (E.D. Cal. Jan. 31, 2020) ............................................. 5

*Lantz Ret. Invs., LLC v. Glover*,
2023 WL 3533892 (9th Cir. May 18, 2023) ............................................. 6

*Linear Tech. Corp. v. Applied Materials, Inc.*,
152 Cal. App. 4th 115 (2007) ....................................................... 13

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ........................................................ 9

*McVicar v. Goodman Glob., Inc.*,
1 F. Supp. 3d 1044 (C.D. Cal. 2014) ............................................... 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................................................... 5

*Moradpour v. Velodyne Lidar, Inc.*,
2022 WL 2391004 (N.D. Cal. July 1, 2022) ........................................ 10

*In re Nat'l Golf Props., Inc.*,
2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) ................................... 3, 5

*OCG Energy, LLC v. Shen*,
2023 WL 4681640 (C.D. Cal. June 7, 2023) ......................................... 7

*In re Okta, Inc. Sec. Litig.*,
2023 WL 2749193 (N.D. Cal. Mar. 31, 2023) ...................................... 8

*Openwave Sys. Inc. v. Fuld*,
2009 WL 1622164 (N.D. Cal. June 6, 2009) ....................................... 10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
774 F.3d 598 (9th Cir. 2014) ..................................................... 5, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ................................................................ 12

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ..................................................................... 10, 11

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-
  Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ............................................................... 5

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) *abrogated on other grounds in Glazer
  Capital Mgmt., L.P v. Forescout Techs., Inc.*, 2023 WL 2532061 (9th Cir.
  Mar. 16, 2023) .................................................................................... 8

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................... 6

*Salameh v. Tarsadia Hotels*,
  2010 WL 2839013 (S.D. Cal. July 20, 2010) ........................................ 11

*Schaffer Family Inv'rs, LLC v. Sonnier*,
  120 F. Supp. 3d 1028 (C.D. Cal. 2015) .................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .............................................................. 14

*Sharp v. Arena Pharms., Inc.*,
  2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) ...................................... 10

*In re SolarCity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ............................................... 6, 7

*State Treasurer of Mich. v. Countrywide Fin. Corp.*,
  2011 WL 13220150 (C.D. Cal. Aug. 22, 2011) ..................................... 12

*Tellabs, Inc. v. Makor Isaacs & Rights, Ltd.*,
  551 U.S. 308 (2008) ...................................................................... 5, 8

*In re Tibco Software, Inc. Sec. Litig.*,
  2006 WL 1469654 (N.D. Cal. May 25, 2006) .......................................... 8

*In re Tobacco Cases II*,
  46 Cal. 4th 298 (2009) ..................................................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) .......................................................9

*Vignola v. FAT Brands, Inc.*,
  2019 WL 6888051 (C.D. Cal. Dec. 17, 2019)...........................................11

*Wanetick v. Mel's of Modesto, Inc.*,
  811 F. Supp. 1402 (N.D. Cal. 1992).............................................................4

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018)........................................................................5

*Xyience Beverage Co. v. Statewide Beverage Co.*,
  2015 WL 13333486 (C.D. Cal. Sept. 24, 2015).........................................4

**Statutes and Rules**

California Business and Professions Code ("UCL")
  §17200 ...................................................................................................12, 13

California Corporations Code
  §25110 .........................................................................................................11
  §25400 .........................................................................................................10
  §25401 .........................................................................................................10
  §25403(b) ......................................................................................................5
  §25500 .........................................................................................................10
  §25501 .........................................................................................................10
  §25503 ...................................................................................................11, 12
  §25504.1 .......................................................................................................5

Private Securities Litigation reform Act ("PSLRA").......................................5

Securities Exchange Act of 1933
  Section 12(a)(1), 15 U.S.C. § 77l(a)(1)......................................................10

Securities and Exchange Act of 1934
  Section 10(b), 15 U.S.C. § 78j(b) ............................................................5, 9
  Section 21D(b)(1)(B), 15 U.S.C. § 78u-4(b)(1)(B).....................................6

Federal Rules of Civil Procedure
  Rule 9(b)......................................................................................................5, 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   INTRODUCTION

Plaintiffs sweep into this case three individuals, Alexis Ohanian, Amy Wu, and Maaria Bajwa, simply because they, as web3 enthusiasts and respected thought leaders, agreed to serve briefly on a Special Council of the Ape Foundation (the entity that administratively supports the ApeCoin DAO).[2]  The Ape Foundation (a non-defendant), which **did not exist** before 2022, is *not* Yuga.  Acting as advisors to that separate foundation does not transform the Special Council into advisors *to Yuga*, and there is no credible allegation that the Special Council controlled Yuga (which has its own board of directors) or dictated its actions. To state a claim, plaintiffs cannot conflate time periods and indiscriminately group defendants together; they needed to plead facts concerning the **actual conduct** of the Special Council members (not others) showing that they violated the federal securities laws or California law.  The FAC does not do so.  Thus, regardless of whether claims against others could stand (Yuga's papers demonstrate they cannot), the claims against the Special Council should be dismissed.

## II.   FACTUAL BACKGROUND

### A.   The ApeCoin DAO And The Ape Foundation

The ApeCoin DAO (the "DAO") (a Decentralized Autonomous Organization open to and run at the direction of ApeCoin holders), launched March 16, 2022. ¶¶220; 253; 256; 258. ApeCoin functions as a governance token, allowing holders to submit and vote on proposals benefitting the ApeCoin community.  ¶256.  The Ape Foundation, a non-party Cayman entity, was founded in parallel to handle "day-to-day DAO administration, bookkeeping, project management, and other tasks that ensure the DAO community's ideas have the support they need to become a reality." ¶¶256; 259 n.232.  Plaintiffs allege a variety of control relationships, flowing in different directions and irrespective of time, among the DAO, Ape

---

[2] The FAC inaccurately calls this the "Ape DAO Board," but the Special Council is not a Board in the conventional sense. *See* Section II.

Foundation, Yuga (a Delaware entity founded in 2021 - ¶14), and their respective advisors (*e.g.*, ¶¶23-25, 253), but allege no actual facts to support those claims.

## B.     The Special Council

When the DAO launched, a Special Council was formed to "administer DAO proposals and serve the vision of the [ApeCoin] community."  ¶¶258 n.231, 259 n.232.  While future advisors would be elected annually, the first Special Council served an inaugural six-month term (later extended three months by DAO vote), and included Mr. Ohanian, Ms. Wu, and Ms. Bajwa. ¶¶221-22, 253, 294-95.  Other than as DAO members, the Special Council had no relationship to the Ape Foundation prior to joining, and none held a position at Yuga at any time.  The FAC makes no allegation to the contrary.

*Alexis Ohanian* is the co-founder of Reddit and an active innovator and investor in technology.  He is not alleged to have made any statement that forms the basis of any claim here.  Instead, the FAC points to tweets showing he wore ApeCoin cufflinks to the Oscars (¶279) and announcing his Special Council role (¶221).  While the FAC lobs in irrelevant allegations about Mr. Ohanian's wife, non-party tennis great Serena Williams (*e.g.*, ¶¶97, 197 n.149, 236), the significance of these averments is unexplained.  If anything, the fact that he *bought* her a Bored Ape NFT (¶236) undermines plaintiffs' central premise about celebrity "giveaways."

*Amy Wu* is a prominent venture capital investor in the web3 gaming space.  ¶214.  After a history of success at Lightspeed Ventures, Ms. Wu was recruited to lead a new venture arm of FTX, which she did for a short period (mid-January to November 11, 2022). ¶¶214, 296.  Like other Special Council members, she joined in her personal capacity, and served through December 2022.  ¶297.  The FAC attributes the following allegedly culpable conduct to Ms. Wu:

- A tweet noting that Yuga "led innovation on IP frameworks, like giving NFT holders full commercial rights to their IP without a royalty."  ¶603(h);

FENWICK & WEST LLP
ATTORNEYS AT LAW

- Unsupported claims that she used unspecified "relationships" at FTX to "recruit" Steph Curry "to solicit sales" of BAYC NFTs.  ¶197 n.149; and

- The time-bending claim that she somehow participated in Sotheby's September 2021 auction (¶¶596-98), which FTX allegedly won (¶¶143-44), despite acknowledging she did not work at FTX at the time (¶214).

**Maaria Bajwa** is a web3 enthusiast, NFT holder, and active community member.  The only allegedly culpable conduct ascribed to her is a tweet, months before the Special Council existed, reporting ""@Eminem purchased a @BoredApeYC NFT for 123.45 ETH" and that MAYC NFTs "saw $71M in trading volumes the last week." ¶¶187, 603(i).

The FAC also alleges tweets in March 2022 by the @ApeCoin Twitter account, announcing: (1) ApeCoin, the DAO launch, and the role of the Ape Foundation (¶¶256, 268); and (2) that various entities would accept ApeCoin (¶¶303-04).  While the FAC asserts that the Special Council "sold Yuga Financial Products to retail investors," it never identifies *what* they purportedly sold (or any particulars - *when*, *to whom*, at *what price*? - *e.g.*, ¶¶404, 587-88, 664).  This is unsurprising.  Yuga's NFT collections, which were created and sold well before the DAO existed, have nothing to do with the Special Council.

## III.  SPECIAL COUNCIL SERVICE IS NOT A BASIS FOR ANY CLAIM

### A.   Improper Group Pleading

Individuals are only responsible for their own acts (or those they control).  *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir.1984); *In re Nat'l Golf Props., Inc.*, 2003 WL 23018761, at *9 (C.D. Cal. Mar. 19, 2003).  The FAC disregards that fundamental precept.  Instead, the vast majority of the allegations regularly lump together "Yuga, Oseary, the Executive Defendants, and the Ape DAO Board," never distinguishing among them.  *E.g.*, ¶¶7-8, 113, 286, 406, 417-20, 429, 441, 447, 462.  Such group pleading is improper.  *Brady v. Delta Energy & Commc'ns, Inc.*, 598 F. Supp. 3d 865, 871 (C.D. Cal. 2022).

FENWICK & WEST LLP
ATTORNEYS AT LAW

### B.   Baseless "Control" Allegations

In Claims 5, 9 and 12, plaintiffs seek to hold the Special Council liable as "controllers" of Yuga or other defendants.  That allegation is specious.  The law respects corporate separateness.  *United States ex. rel. Gvalevech v. Kroger Specialty Pharmacy, Inc.*, 2023 WL 3552113, at *6 (C.D. Cal. Mar. 24, 2023).  The FAC ignores such distinctions, and instead alleges a vague series of control relationships that are not even internally consistent.  Alternately, plaintiffs claim, Yuga (a Delaware corporation formed in 2021) controls the Ape Foundation and DAO (¶¶255, 453); the Ape Foundation controls Yuga (¶¶23-25, 664); the DAO controls the Ape Foundation (¶ 256); and the Ape Foundation controls the DAO (¶¶251, 253).  Elsewhere, the FAC ***admits*** the Ape Foundation and Yuga are separate entities, with distinct purposes, and separate management and Boards.  ¶¶220 & n.181, 256-58.  Conclusory allegations that the Ape Foundation was a "shell entity" or the DAO a "pure legal fiction . . . by Yuga" (¶¶453, 611) are legally insufficient.  *See Xyience Beverage Co. v. Statewide Beverage Co.*, 2015 WL 13333486, at *9 (C.D. Cal. Sept. 24, 2015) (claim that company "is a sham and fiction, and should be disregarded" insufficient to disregard corporate form); *Gerritsen v. Warner Bros. Ent., Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015) (conclusory allegations insufficient).

Lacking needed facts, plaintiffs lapse to vague generalities, asserting that the Special Council, as a group, "were responsible for making high-level decisions for the Company that would normally be carried out by [Yuga's] directors," when no facts conceivably evidence that a Special Council ***of the Ape Foundation*** (a separate entity that did not exist until March 2022) somehow reached back in time to control Yuga, rather than ***Yuga's*** own executives and Board.  *E.g.*, ¶¶651; 570-72.  Nor does the FAC explain precisely how Mr. Ohanian, Ms. Wu, or Ms. Bajwa actually exercised control.  *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1406-07 (N.D. Cal. 1992) ("allegations . . . must inform the defendants who they

FENWICK & WEST LLP
ATTORNEYS AT LAW

are alleged to control and what acts . . . indicate such control . . . [m]ere titles are not adequate indicators of control authority.").

Further, "control person" liability only attaches if there is an underlying violation by the controlled party.[3]  *See Nat'l Golf Props.*, 2003 WL 23018761, at *9.  No such predicate violation is alleged.   But even ignoring that defect, plaintiffs tether their control person claims to acts by Yuga, Moonpay, and/or Sotheby's.  ¶¶572-75, 650-52, 691.  The Special Council were not executives, officers, or controlling shareholders of those entities.  Rather, they were advisors to the Ape Foundation, starting in March 2022 (¶¶220-22, 256), and control liability does not defy time or reach beyond the bounds of that limited undertaking.[4]

## IV.   SECTION 10(b) CLAIMS FAIL AS TO THE SPECIAL COUNCIL

Section 10(b) (Claim 7) is subject to the "formidable" pleading requirements of the PSLRA and Rule 9(b).  *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1055 (9th Cir. 2008).  Plaintiff must "allege a [misstatement] with particularity and explain why it is misleading."  *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.,* 845 F.3d 1268, 1274 (9th Cir. 2017).  The specific facts, *as to each defendant*, must also raise a strong inference of scienter - an intent to defraud or deliberate recklessness so egregious as to be tantamount to actual intent. *See Webb v. SolarCity Corp.,* 884 F.3d 844, 850-51 (9th Cir. 2018); *Tellabs, Inc. v. Makor Isaacs & Rights, Ltd.,* 551 U.S. 308, 314 (2008); *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.,* 774 F.3d 598, 607 (9th Cir. 2014).  The alleged misstatements forming the basis for plaintiffs' claim are

---

[3] The secondary liability claim under Cal. Corp. Code §25403(b) fails, as there is no private right of action (Claim 12).  *See Lantz Ret. Inv., LLC v. Glover*, 2020 WL 528890, at *10 (E.D. Cal. Jan. 31, 2020). As for § 25504.1 (Claim 12), the vague assertion that unidentified "conduct" by the Special Council materially aided "the Company, MoonPay, and Sotheby's" (¶691) falls far short of what must be alleged. *Guo v. Robl*, 2023 WL 2683473, at *6-7 (C.D. Cal. Mar. 2, 2023).

[4] Claims that Mr. Ohanian's venture firm invested in Yuga (¶23) or that he invested in a social media company founded by Mr. Oseary (¶80) do not establish control. "[M]inority stock interest" does not suffice. *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *33 (C.D. Cal. Aug. 9, 2013).

FENWICK & WEST LLP
ATTORNEYS AT LAW

purportedly identified in ¶603.  *See* 15 U.S.C. § 78u-4(b)(1)(B).  Nothing alleged comes close to satisfying these pleading requirements.

### A.   The FAC Alleges No False Statement By The Special Council

### 1.   No Statement by Ohanian Is Challenged

Conspicuously absent from ¶603 is any allegation challenging a statement by Mr. Ohanian.  ***Not one***.  Because Section 10(b) imposes liability only on the "maker" of a ***challenged*** statement, the claim against him fails for this reason alone.  *See Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011) (the "maker" is the speaker or the "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."); *In re SolarCity Corp. Sec. Litig.,* 274 F. Supp. 3d 972, 1006-07 (N.D. Cal. 2017).

### 2.   Wu's March 16, 2022 Tweet

Nor do plaintiffs plead any false statement by Ms. Wu.  In ¶603(h), plaintiffs appear to reference a tweet from Ms. Wu's personal account on March 16, 2022.  The tweet expressed that she was honored to join the Special Council and noted that "@BoredApeYC has led innovation on IP frameworks, like giving NFT holders full commercial rights to their IP without a royalty."  ¶222.  After quoting that tweet, plaintiffs make the conclusory averment (***113 pages later***) that it was false "because NFT holders did not have full commercial rights to the IP." ¶603(h).  Nothing is cited to support that conclusion – no confidential witness, news article, or anything else.  It cannot be credited.  *See Lantz Ret. Invs., LLC v. Glover,* 2023 WL 3533892, at *2 (9th Cir. May 18, 2023) (conclusory allegations on unspecified "information and belief" insufficient); *Rubke v. Capitol Bancorp Ltd.,* 551 F.3d 1156, 1164 (9th Cir. 2009) (same).  If anything, the FAC undermines that premise.  *See* ¶443 (discussing "the intellectual property rights granted to Yuga NFT owners"); ¶208 (BAYC holder "acquired intellectual property rights" in his NFT to "personally profit from it").

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 3. Bajwa's January 2, 2022 Tweet

The ¶603(i) claim as to Ms. Bajwa is equally unavailing. Plaintiffs reference a January 2, 2022 tweet by Ms. Bajwa (¶187), months *before* the Special Council existed. As part of her "Crypto Weekly" newsletter aggregating various public news reports, Ms. Bajwa tweeted  "@Eminem purchased a @BoredApeYC NFT for 123.45 ETH" and that MAYC NFTs "saw $71M in trading volumes the last week." ¶603(i).  Citing nothing, plaintiffs conclude the tweet was "false."  But plaintiffs needed contemporaneous, adverse facts, not empty conclusions.  Nothing shows that Eminem did not purchase a BAYC NFT (he did) or that MAYC trading volume was not $71M that week (it was).  Where no alleged facts suggest a statement was false, the claim fails.  *OCG Energy, LLC v. Shen*, 2023 WL 4681640, at *4 (C.D. Cal. June 7, 2023).  Moreover, tweeting news headlines, which is all she did, does not convert Mr. Bajwa into the "maker" of those statements.  *See Schaffer Family Inv'rs, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1043 (C.D. Cal. 2015).

### 4. The @ApeCoin Tweets

While unclear to which defendant(s) the averments are directed (a fatal defect itself), in ¶603(m), plaintiffs also assail tweets by the @ApeCoin account (reporting that ApeCoin would be accepted by Gucci, Tag Heuer, and OpenSea). ¶¶303-04.  The claim cannot survive.

First, plaintiffs never link any Special Council member to the tweets.  No facts suggest any of them drafted, reviewed, or authorized the tweets. The wholly unspecified "information and belief" claim that the account is "owned and/or controlled by" the Special Council "and/or" Yuga (¶463) does not suffice.  *See SolarCity*, 274 F. Supp. 3d at 1006-07.

Second, no contemporaneous facts show falsity.  Indeed, the FAC admits the Gucci and Tag Heuer tweet was ***true***. ¶305 (both were "onboarded").  Falsity hinges, instead, on the notion that "the promotions were never followed up with by either brand." *Id.* Whatever that means, it does not establish falsity ***at the time the***

FENWICK & WEST LLP
ATTORNEYS AT LAW

*tweets were made*.  *See Brady v. Delta Energy & Commc'ns, Inc.,* 2022 WL 3643659, at *6 (C.D. Cal. Aug. 5, 2022).  Likewise, that OpenSea no longer listed ApeCoin as a core currency in August 2023, when the FAC was filed, does not render a statement sixteen months earlier false.  *See id.*

## B.    The Scienter Allegations Are Equally Deficient

Also absent are particularized facts regarding any Special Council members' intent, let alone facts showing that they knew (or were deliberately reckless in not knowing) any statement (or @ApeCoin tweet) was false at the time.  *See Ronconi v. Larkin,* 253 F.3d 423, 432 (9th Cir. 2001) (adverse facts must be known at time statement is made); *In re Okta, Inc. Sec. Litig.,* 2023 WL 2749193, at *17 (N.D. Cal. Mar. 31, 2023) (rejecting fraud where "complaint fails to allege sufficient facts showing what, if anything, the [] defendants knew").  Nor do the "scienter" allegations (¶¶608-12) suggest any motive to commit fraud by the Special Council. *See In re Tibco Software, Inc. Sec. Litig.,* 2006 WL 1469654, at *21 (N.D. Cal. May 25, 2006) (rejecting scienter where no showing that "[d]efendants were *motivated* to commit fraud").

Nothing in ¶611's vague allegations salvages plaintiffs' claims – the topics are wholly untethered to any *actual* statements by the Special Council, and hence have no bearing on deliberate falsity by them.  They are also mere conclusions, lacking the particularity the law demands.  How would a Special Council member, who agreed to advise on community proposals to benefit the DAO, know whether celebrities paid for their NFTs at any point in time?  Or about alleged "secret" loans involving Yuga and third parties?  Who told them?  When?  The FAC makes no effort to fill in the gaps.  Missing entirely are the "compelling," "persuasive," and "powerful" particularized facts needed to plead fraud.  *See Tellabs,* 551 U.S. at 323.

## C.    No Reliance

Reliance is an essential element of Section 10(b).  *E.g., Apollo,* 774 F.3d at 603.  Yet, plaintiffs never say they relied on (or even saw) alleged misstatements by

the Special Council. To the contrary, the FAC's "Reliance, Economic Loss, and Loss Causation" section makes no reference to them. ¶¶613-32; *see In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) (reliance must be pleaded with particularity).  And while the FAC strains to invoke the "fraud-on-the-market" theory of reliance, those allegations do not even try to invoke that theory with respect to the Special Council or allege that any of their statements affected a market price.  *See* ¶¶614-15, 628-29.  The claim therefore fails.

### D.    No Loss Causation

Plaintiffs fail to plead loss causation in connection with the Special Council, *i.e.*, that a "fraud was revealed to the market" causing losses.  *Loos v. Immersion Corp.,* 762 F.3d 880, 887 (9th Cir. 2014); *see Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342-43 (2005).  No loss causation allegations are directed to the Special Council.  ¶¶614-29.  And no effort whatsoever is made to allege a "corrective disclosure" of an earlier misstatement ***by them*** (or anyone else) resulting in a drop in the price of a security. *See Cowan v. Goldcorp*, 2017 WL 5495734, at *3 (C.D. Cal. Sept. 6, 2017).

### E.    No "Fraudulent Scheme"

Plaintiffs' Section 10(b) "scheme" claim (Claim 8) fails for similar reasons. No particularized facts establish that the Special Council engaged in any scheme, much less with fraudulent intent.  Yuga's brief sets forth the legal standards and addresses why the claim fails overall, but there are a few points to underscore for the Special Council.  *First*, the Special Council did not exist at the time of Sotheby's September 2021 auction, so that "scheme" allegation fails. ¶130. *Second*, no one on the Special Council is alleged to have engaged in "wash trading" (most of which also allegedly occurred before the Special Council existed). ¶¶307-86.  *Third*, plaintiffs' MoonPay theory (the deficiently pleaded claim that it gave NFTs to celebrities at Yuga's behest), has ***nothing to do*** with the Special Council;

FENWICK & WEST LLP
ATTORNEYS AT LAW

no facts show Special Council members knew of supposed "giveaways" or played any role in them. *See Moradpour v. Velodyne Lidar, Inc.,* 2022 WL 2391004, at *18 (N.D. Cal. July 1, 2022) (refusing to draw unwarranted deductions of fact).

### F.    The Parallel California Claims Likewise Fail

The claims under California Corp. Code §§25401/25501 (misrepresentation) and §§25400/25500 (scheme) (Claims 10 and 11) fail for the same reasons as Section 10(b). *See, e.g.*, *Jackson v. Fischer,* 2013 WL 1089860, at *11 (N.D. Cal. Mar. 15, 2013).   They also fail because both statutes require strict privity between buyer and seller.   *Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013) (under §25401, "defendant must have sold the security directly to the plaintiff"); *Openwave Sys. Inc. v. Fuld,* 2009 WL 1622164, at *9 (N.D. Cal. June 6, 2009) (same under §25400). Privity with the Special Council is not alleged.

## V.    THE FAC STATES NO CLAIM AGAINST THE SPECIAL COUNCIL UNDER THE 1933 ACT OR CALIFORNIA LAW

### A.    The 1933 Act Claim Fails

Liability under Section 12(a)(1) of the 1933 Act (for sale of an unregistered security) (Claim 4) is limited to "statutory sellers":  those who (1) passed title to the security to plaintiff, or (2) successfully solicited plaintiff's purchase, motivated at least in part by personal financial interest (or that of the security's owner). *Pinter v. Dahl,* 486 U.S. 622, 642 (1988).   The Special Council did neither.

*Passing title*. No effort is made to show that a Special Council member sold anything, at any time, let alone passed title to plaintiffs. ¶¶560-68.  *See Pinter,* 486 U.S. at 642 (statute "contemplates a buyer-seller relationship not unlike traditional contractual privity.").

*Solicitation*.   The generic "solicitation" allegation (¶566) also fails.  As *Pinter* holds, the focus is on "defendant's relationship with the plaintiff-purchaser." 486 U.S. at 651.  To establish "solicitation," the FAC must demonstrate defendant's direct and active participation in the solicitation of the immediate sale.  More than

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   just a public statement, "active solicitation of the purchase" is required. *Salameh v.*

2   *Tarsadia Hotels,* 2010 WL 2839013, at *5 (S.D. Cal. July 20, 2010).

3       The FAC can be read in vain for any solicitation by the Special Council.

4   Plaintiffs identify no specific acts of solicitation (indeed, they do not claim contact

5   with anyone on the Special Council), what they supposedly sold, or whether the

6   solicitation was successful. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp.

7   2d 1052, 1073 (N.D. Cal. 2010) (dismissing claim where complaint "fail[ed] to set

8   forth with any degree of detail the means by which defendants actively solicited

9   plaintiffs' purchase"). Tellingly, plaintiff never claims that it saw or relied on ***any***

10   statement (or act) by the Special Council.

11       Indeed, not only do many of the alleged statements predate the Special

12   Council (*e.g.*, ¶¶159, 184, 187, 214), on their face they do not solicit the sale of

13   Yuga products. *E.g.,* ¶¶159 (November 2021 tweet "BoredApeYC party tonight");

14   182 (December 2021 comment on Adidas-Yuga collaboration); 214 (February 2022

15   statements about crypto and gaming). The same is true of the handful of statements

16   made after the Special Council was formed. ¶¶221-22, 295 (Ohanian and Wu tweets

17   about Special Council service); 260 (Bajwa tweet on how to review ApeCoin

18   allocations); 279 (Ohanian wearing ApeCoin cufflinks to the Oscars). All are a far

19   cry from what plaintiffs must plead to establish solicitation of a transaction in any

20   asset by the Special Council, much less for their own financial interest. *See Pinter,*

21   486 U.S. at 654 (even being a "substantial factor" in causing a sale is insufficient);

22   *Vignola v. FAT Brands, Inc.,* 2019 WL 6888051, at *4-6 (C.D. Cal. Dec. 17, 2019).

23   **B.    The Parallel California Claim Likewise Fails**

24       The Cal. Corp. Code §§25110 and 25503 allegations (Claim 6) fail for

25   similar reasons, in addition to failing to allege an "issuer transaction" or sale "in

26   this state," as detailed by Yuga. The only difference, in this claim, is that plaintiffs

27   take a stab at arguing that they acquired ApeCoin from ***some*** defendant (of many

28   named) via a "liquidity pool." ¶588. No specifics are provided, and while pleading

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

(again, on unspecified "information and belief") that defendants contributed a "large portion" of the pool, the FAC ***admits*** the majority by far of total ApeCoin supply was distributed to non-defendants. ¶250. There is no allegation that the Special Council members, who are nowhere to be found in ¶250, received ApeCoin and contributed it to any such pool.  In any event, strict privity is required, and what plaintiffs needed to show is that they purchased ***directly*** from a Special Council member, not from some "pool." *See* Cal. Corp. Code §25503 (defendant "shall be liable to any person *acquiring from them*" the relevant security); *In re Am. Principals Holdings, Inc. Sec. Litig.,* 1987 WL 39746, at *10 (S.D. Cal. July 9, 1987) ("Strict privity is required"); *see also State Treasurer of Mich. v. Countrywide Fin. Corp.,* 2011 WL 13220150, at *6 (C.D. Cal. Aug. 22, 2011) (dismissing §12 claim where plaintiff did not indicate from which particular defendant it purchased).

## VI.   THE UCL CLAIMS FAIL AS TO THE SPECIAL COUNCIL

Only one plaintiff (Titcher) purports to proceed under UCL §17200 (Claims 1-3).  Yuga's brief details the defects in those claims.  Addressed here are deficiencies providing an independent basis to dismiss the Special Council.

***Unlawful***.  The UCL's "unlawful" prong treats violations of other federal or state laws as unlawful practices.  *McVicar v. Goodman Glob., Inc.,* 1 F. Supp. 3d 1044, 1053 (C.D. Cal. 2014).  Here, Titcher never pleads with particularity that he "relied on the misleading materials" by any Special Council member, as he must to plead a claim.  *Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013).  All of the statements he identifies (¶¶493, 523, 550) are by others, for which the Special Council cannot be liable.  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007), *citing Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 959-64 (2002).[5]

---

[5] A passing reference to California's false advertising law (¶482) is of no help. Ignoring that the Special Council did not advertise, that too requires reliance. *See In*

*Fraudulent*.  The UCL's "fraud" prong also has no application.  The FAC fails to plead any fraud by the Special Council, and again, concedes the absence of reliance on them (¶550). *See, e.g., Bronson, supra.*

*Unfair*.  As a last resort, the FAC tries to invoke "unfairness" with the conclusory averment that the Special Council "held a significant portion of the Float at the time of the ApeCoin token launch and thus, could (and did) create massive downward pressure on the price of ApeCoin tokens by freely selling their allocations to investors."  ¶513.  This allegation is directly contradicted by the FAC's admission that *no ApeCoin went to the Special Council* at launch. *See* ¶¶250; 220. Ignoring their Rule 9(b) burden (¶519), no facts show how much ApeCoin anyone on the Special Council received or sold (and when), much less that it impacted the price.[6]

Even if the Special Council held "a significant portion of the Float" (and they did not), that is not "unfair" within the meaning of the UCL. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134 (2007) (contemplating violations of "established public policy" or "immoral, unethical, oppressive or unscrupulous" acts causing "injury to consumers").  By contrast, it would be unfair to allow this claim to proceed where *no facts* suggest any Special Council member violated "specific constitutional, statutory, or regulatory provisions" as is required. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).

## VII.  THERE IS NO PERSONAL JURISDICTION OVER MR. OHANIAN

In the absence of any viable federal securities claim, there is no jurisdiction over Mr. Ohanian.  General jurisdiction is not alleged. S*ee* ¶¶45-46 (omitting Mr. Ohanian).  Specific jurisdiction is also lacking.  Plaintiffs needed to plead that Mr. Ohanian directed activities at California and that claims "arise[] out of . . . [those]

*re Tobacco Cases II,* 46 Cal. 4th 298, 326-28 (2009).

[6] Unjust enrichment (Claim 13), predicated on selling Yuga assets at artificially inflated prices (¶697), fails as to the Special Council for the same reasons.

FENWICK & WEST LLP
ATTORNEYS AT LAW

forum-related activities," and the exercise of jurisdiction must also "comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Here, the only arguable contact with California is that Mr. Ohanian wore ApeCoin cufflinks to the Oscars (¶279).  If anything offends notions of fair play, it is the idea that jurisdiction can be premised on a sartorial choice at an awards show.  *See ASM Assembly Sys. Switzerland GmbH v. QTS Eng'g, Inc.*, 2016 WL 278734, at *2 (S.D. Cal. Jan. 22, 2016) (appearance at single trade show insufficient).

## VIII.  CONCLUSION

The Special Council members have no place in this case.  The claims against them should be dismissed.

Dated:  September 12, 2023

**FENWICK & WEST LLP**

By: _/s/ Jennifer C. Bretan_
       Jennifer C. Bretan (CSB No. 233475)

Dean S. Kristy (CSB No. 157646)
Tyler G. Newby  (CSB No. 205790)
Ethan M. Thomas (CSB. No. 338062)
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350
jbretan@fenwick.com
dkristy@fenwick.com
tnewby@fenwick.com
ethomas@fenwick.com

Melissa L. Lawton (CSB No. 225452)
228 Santa Monica Boulevard, Suite 300
Santa Monica, CA 90401
Telephone:  310.554.5400
mlawton@fenwick.com

Rebecca Matsumura (*admitted pro hac vice*)
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:  206.389.4510
rmatsumura@fenwick.com

*Attorneys for Defendants Alexis Ohanian, Amy Wu, and Maaria Bajwa*

FENWICK & WEST LLP
ATTORNEYS AT LAW

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Alexis Ohanian, Amy Wu, and Maaria Bajwa, certifies that this brief contains 4496 words, which complies with the word limit set by court order dated August 14, 2023 (ECF No. 125).

Dated:  September 12, 2023    **FENWICK & WEST LLP**

By: _/s/ Jennifer C. Bretan_
         Jennifer C. Bretan