1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MCDERMOTT WILL & EMERY LLP**
TALA JAYADEVAN (SBN 288121)
tjayadevan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 284-6148
Facsimile: (310) 317-7398

JOSEPH B. EVANS (*pro hac vice* application pending)
jbevans@mwe.com
TODD HARRISON (admitted *pro hac vice*)
tdharrison@mwe.com
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5767
Facsimile: (212) 547-5444

*(Additional counsel listed on signature page)*

Attorneys for Defendant
SOTHEBY'S HOLDINGS INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-08909-FMO-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Filed concurrently herewith:<br>Notice of Motion and Motion, Request for Judicial Notice, Declaration of Tala Jayadevan, and [Proposed] Order<br><br>DATE: October 19, 2023<br>TIME:  10:00 a.m.<br>CTRM: 6D<br><br>Judge: Hon. Fernando M. Olguin<br>Complaint Filed: December 8, 2022 |

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

Introduction .................................................................................................................. 1

Background .................................................................................................................... 1

    A.   Factual allegations .................................................................................... 1

    B.   Procedural background ............................................................................ 2

Argument ...................................................................................................................... 2

I.    All of Plaintiffs claims against Sotheby's fail for threshold reasons. .............. 4

    A.   Plaintiffs lack standing for their misrepresentation-based claims (Counts 1-3, 7-8, 10 & 13). ........................................................... 4

    B.   Plaintiffs lack standing for any California-law claims. ........................... 6

    C.   The unregistered-securities claims are time-barred. ............................... 8

II.   Plaintiffs' claims fail on the merits ........................................................... 9

    A.   The Rule 10b-5 claims fail on multiple grounds (Counts 7-8). ............... 9

        1.   Materiality and loss causation are lacking. .................................. 9

        2.   Plaintiffs do not allege scienter. .................................................. 12

        3.   Plaintiffs do not plead scheme liability. ...................................... 15

    B.   Sotheby's is not a statutory seller (Count 4). ........................................ 16

    C.   The federal claims fail to allege a domestic transaction (Counts 4, 7-8). ........................................................................................................ 17

    D.   The California misrepresentation claim fails (Count 10). ...................... 18

    E.   The California unregistered-securities claim fails (Count 6) ................. 18

    F.   Plaintiffs do not plead active trading (Count 11). .................................. 19

    G.   The UCL claims fail (Counts 1-3). ....................................................... 19

    H.   The unjust enrichment count fails (Count 13). ..................................... 20

III.  The Court should decline pendent jurisdiction ........................................... 21

Conclusion .................................................................................................................. 21

i

1

# TABLE OF AUTHORITIES

2

3

**Cases**

4
*Aleksick v. 7–Eleven, Inc.*,
5
205 Cal. App. 4th 1176 (2012) ............................................................. 21

6
*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
7
158 Cal. App. 4th 226 (2007) .................................................................. 7

8
*In re Apple Processor Litig.*,
9
2022 WL 2064975 (N.D. Cal. June 8, 2022) ...................................... 21

10
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 2, 19

11
*Astiana v. Hain Celestial Grp., Inc.*,
12
783 F.3d 753 (9th Cir. 2015) ............................................................... 21

13
*Bowden v. Robinson*,
14
67 Cal. App. 3d 705 (1977) ................................................................... 7

15
*Bowen v. Ziasun Techs., Inc.*,
116 Cal. App. 4th 777 (2004) ............................................................. 20

16
*Bronson v. Johnson & Johnson, Inc.*,
17
2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ................................... 20

18
*Carol Gamble Tr. 86 v. E-Rex, Inc.*,
19
84 F. App'x 975 (9th Cir. 2004) ............................................................ 3

20
*Chu v. Fay Serv., LLC*,
21
2016 WL 5846990 (N.D. Cal. Oct. 6, 2016) ..................................... 20

22
*In re Cooper Sec. Litig.*,
23
691 F. Supp. 2d 1105 (C.D. Cal. 2010) .............................................. 11

24
*Fabian v. LeMahieu*,
25
2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) ........................................ 8

26
*Fenerjian v. Nongshim Co.*,
72 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................. 4, 6

27

28

Aleksick v. 7–Eleven, Inc., 205 Cal. App. 4th 1176 (2012) .... 21
Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC, 158 Cal. App. 4th 226 (2007) .... 7
In re Apple Processor Litig., 2022 WL 2064975 (N.D. Cal. June 8, 2022) .... 21
Ashcroft v. Iqbal, 556 U.S. 662 (2009) .... 2, 19
Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753 (9th Cir. 2015) .... 21
Bowden v. Robinson, 67 Cal. App. 3d 705 (1977) .... 7
Bowen v. Ziasun Techs., Inc., 116 Cal. App. 4th 777 (2004) .... 20
Bronson v. Johnson & Johnson, Inc., 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) .... 20
Carol Gamble Tr. 86 v. E-Rex, Inc., 84 F. App'x 975 (9th Cir. 2004) .... 3
Chu v. Fay Serv., LLC, 2016 WL 5846990 (N.D. Cal. Oct. 6, 2016) .... 20
In re Cooper Sec. Litig., 691 F. Supp. 2d 1105 (C.D. Cal. 2010) .... 11
Fabian v. LeMahieu, 2019 WL 4918431 (N.D. Cal. Oct. 4, 2019) .... 8
Fenerjian v. Nongshim Co., 72 F. Supp. 3d 1058 (N.D. Cal. 2014) .... 4, 6

ii

1

**Cases—continued**

2

3

*In re Galena Biopharma, Inc., Sec. Litig.,*
    117 F. Supp. 3d 1145 (D. Or. 2015)............................................................15, 16

4

5

*Glazer Capital Mgmt, LP v. Magistri,*
    549 F.3d 736 (9th Cir. 2008)...................................................................12, 13

6

7

*Goldberg v. Rome McGuigan, P.C.,*
    2021 WL 3520725 (C.D. Cal. Apr. 23, 2021).....................................................21

8

9

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) ...........................................................................................21

10

11

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014) .........................................................................................9, 10

12

*Harris v. CVS Pharmacy, Inc.,*
    2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ..........................................................6

13

14

*Jackson v. Med. Bd. of Cal.,*
    2012 WL 13019955 (C.D. Cal. Apr. 19, 2012).......................................................9

15

16

*Kang v. PayPal Holdings, Inc.,*
    620 F. Supp. 3d 884 (N.D. Cal. 2022)..................................................................16

17

18

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ...............................................................................15

19

20

*Mandalevy v. Bofl Holding, Inc.,*
    2018 WL 3032588 (S.D. Cal. June 19, 2018) ......................................................12

21

22

*McGee v. Am. Oriental Bioengineering, Inc.,*
    2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)...............................................12, 14

23

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008)........................................................................3, 5, 10

24

25

*Monster, LLC v. Beats Elecs., LLC,*
    2020 WL 5014610 (Cal. App. 2020)....................................................................19

26

27

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010) ...........................................................................................18

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FAC

CASE NO. 2:22-CV-08909-FMO-PLA

**Cases—continued**

*Nghiem v. Santa Clara Univ.*,
2023 WL 3012494 (N.D. Cal. 2023)................................................................9

*Nolfi v. Ohio Kent. Oil Corp.*,
675 F.3d 538 (6th Cir. 2012)..........................................................................8

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)......................................................................13

*OCG Energy, LLC v. Shen*,
2023 WL 4681640 (C.D. Cal. June 7, 2023)...............................................18

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*,
2023 WL 3781645 (N.D. Tex. June 2, 2023)................................................6

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010)........................................................................10

*Pino v. Cardone Capital, LLC*,
55 F.4th 1253 (9th Cir. 2022).................................................................16, 17

*Pinter v. Dahl*,
486 U.S. 622 (1988) ................................................................................16, 17

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021) ..................................................................5, 8, 15

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021).............................................12, 13, 14, 15

*Rieckborn v. Jefferies LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015)...........................................................17

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015)..................................................10, 11

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946) ........................................................................................3

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*,
733 F.3d 1251 (9th Cir. 2013)........................................................................8

iv

**Cases—continued**

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) .................................................................. 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................ 3, 13, 14

*Underwood v. Coinbase Global, Inc.*,
2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ................................. 17

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ........................................................ 11

*Yan v. ReWalk Robatics, Ltd.*,
973 F.3d 22 (1st Cir. 2020) ............................................................. 6

*Zakinov v. Ripple Labs, Inc.*,
2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ............................... 7

**Statutes and Rules**

15 U.S.C.
§ 12(a)(1) ...............................................................8, 16, 17
§ 12(a)(2) ..............................................................................17
§ 77e(a) ...................................................................................8
§ 77e(c) ....................................................................................8
§ 77l(a)(1) ...............................................................................8
§ 77m .......................................................................................8
§ 78u-4 .........................................................................*passim*
§ 78u-4(a)(2)(A)(iv) ..............................................................5
§ 78u-4(b)(1).................................................................3, 5
§ 78u-4(b)(2)...............................................................3, 12

Cal. Bus. & Prof. Code §17200 ........................................ 20

**Statutes and Rules—continued**

Cal. Corp. Code
    § 25110 ..............................................................................6, 7, 8, 19
    § 25400 ....................................................................................7, 19
    § 25400(b)...........................................................................19, 20
    § 25401 ........................................................................................18
    § 25500 ......................................................................................7, 8
    § 25501 ....................................................................................7, 18
    § 25503 ..............................................................................6, 7, 8, 19
    § 25507(a) ....................................................................................8

17 C.F.R.
    § 240.10b-5 .........................................................................4, 9, 18
    § 240.10b-5(a) ...........................................................................15
    § 240.10b-5(b) ...........................................................................16
    § 240.10b-5(c) ...........................................................................15

Fed. R. Civ. P. 9(b)...........................................................3, 15, 20

Fed. R. Civ. P. 15(c)(1)(B) .......................................................9

Fed. R. Civ. P. 15(c)(1)(C) .......................................................9

## INTRODUCTION

In this sprawling putative securities class action, Plaintiffs—purchasers of Bored Ape Yacht Club ("BAYC") non-fungible tokens ("NFTs"), other NFTs, and cryptocurrencies (the "Products")—have sued everyone from the NFTs' creators; to the sports apparel company Adidas; to Justin Bieber, Snoop Dogg, and Madonna, among many, many others.

Now, in a First Amended Complaint ("FAC"), Plaintiffs have added last-minute allegations against Sotheby's Holdings Inc. ("Sotheby's"). Plaintiffs' slapdash pleading against Sotheby's contains multiple fatal deficiencies, each of which requires dismissal. Sotheby's has nothing to do with the crux of Plaintiffs' claim—the drop in value, in the Summer of 2022, of the NFTs and cryptocurrencies they purchased. Sotheby's did not issue the NFTs or cryptocurrencies or sell them to any of the Plaintiffs. Accordingly, Sotheby's should be dismissed.

## BACKGROUND

### A.   Factual allegations.

The FAC's allegations against Sotheby's have been tacked on to an existing complaint addressing entirely different conduct. *See generally* Dkt. 1 (original complaint). Although Plaintiffs attempt to draw Sotheby's into other alleged schemes via innuendo and vague group pleading, the actual allegations against Sotheby's are limited to the circumstances surrounding a single event: an auction on September 9, 2021, in which Plaintiffs did not participate. *See generally* FAC ¶¶ 117-150.

As the FAC alleges, Sotheby's—a "storied arts dealer" with a "277-year history" (FAC ¶ 120)—auctioned a lot of 101 BAYC NFTs on September 9, 2021. *Id.* ¶ 130. Sotheby's representatives are alleged to have made unremarkable statements on Twitter and elsewhere regarding the auction both before and during the event. *See id.* ¶¶ 118-130.

Plaintiffs' claims against Sotheby's rest on a single unrecorded oral statement

1

allegedly made by a Sotheby's employee during a live Twitter Space[1] immediately after the auction closed. *See* FAC ¶¶ 132-134, 142. Plaintiffs allege that, "following the final bid," a "Sotheby's representative affirmed … that the winning bidder was a 'traditional' collector." *Id.* ¶ 132; *see id.* ¶¶ 133, 134.

The FAC alleges that this statement was false, however, because "it was not a 'traditional' buyer that made the winning bid in the BAYC NFT auction, but rather the now-defunct cryptocurrency exchange FTX." FAC ¶ 142. According to Plaintiffs, this alleged "traditional collector" statement gave a "boost" to "the price of BAYC NFTs." *Id.* ¶ 141-142. The FAC asserts that the floor price for BAYC NFTs "fell … when news that FTX was the Sotheby's auction's real winning bidder was revealed to the market," which it alleges occurred "on November 23, 2021." *Id.*[2]

## B.   Procedural background.

Plaintiffs filed their original complaint—which did not include any allegations regarding Sotheby's—on December 8, 2022. Dkt. 1. Eight months later, on August 4, 2023, Plaintiffs filed the FAC, bringing thirteen separate counts against twenty-nine defendants. Dkt. 114. Sotheby's was served on August 23, 2023, resulting in a motion-to-dismiss deadline of September 13. Dkt. 129.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even under this baseline standard, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

---

[1]   "Spaces is a way to have live audio conversations on Twitter." Twitter, *About Twitter Spaces*, https://help.twitter.com/en/using-twitter/spaces.

[2]   If this case progresses, Sotheby's will prove this allegation factually incorrect. FTX was not the winning bidder of the BAYC NFT auction, and even if a Sotheby's employee did make a "traditional collector" statement, it would have been accurate.

2

This "putative securities fraud class action" is additionally "subject to the pleading requirements of the [Private Securities Litigation Reform Act, or] PSLRA." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Plaintiffs must both "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading;' and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u-4(b)(1), (2)). Moreover, all the FAC's claims are "grounded in fraud" and must satisfy Rule 9(b)'s particularity requirement. *Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F. App'x 975, 978 (9th Cir. 2004).

Plaintiffs' claims do not satisfy these standards as to Sotheby's. For the Court's convenience, we offer this summary of the myriad overlapping reasons why each of the ten claims against Sotheby's fails:[3]

- **Counts 1-3 (California UCL):** Plaintiffs lack standing (pages 4-8); the UCL does not apply and its elements are not met (pages 20-21).

- **Count 4 (federal unregistered securities):** The claim is time-barred (pages 8-9); Sotheby's is not a statutory seller (pages 16-18); lack of domestic transaction (page 18).

- **Count 6 (California unregistered securities):** Plaintiffs lack standing (pages 6-8); the claim is time-barred (pages 8-9); privity is lacking (page 19).

- **Count 7-8 (federal securities fraud):** Plaintiffs lack standing (pages 4-6); materiality, loss causation, and scienter are lacking (pages 9-15); plaintiffs do not plead an actionable scheme (pages 15-16); lack of domestic transaction (page 18).

- **Count 10 (California securities fraud):** Plaintiffs lack standing (pages 4-8); privity is lacking (page 7 n.5); materiality is lacking (page 18).

- **Count 11 (California active trading):** Plaintiffs lack standing (pages 6-8); active trading is not pleaded (pages 19-20).

- **Count 13 (Unjust Enrichment):** Plaintiffs lack standing (pages 4-8); there is no quasi-contract (page 21).

---

[3]  Sotheby's reserves the right to later argue that the securities claims fail because the Products are not securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

3

**I.**     **All of Plaintiffs claims against Sotheby's fail for threshold reasons.**

    **A.**     **Plaintiffs lack standing for their misrepresentation-based claims (Counts 1-3, 7-8, 10 & 13).**

Plaintiffs lack standing to bring any of their misrepresentation-based claims against Sotheby's, because no named Plaintiff made any relevant purchases during the period Plaintiffs claim Sotheby's employee's statement affected prices.

"[A]t least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082 (N.D. Cal. 2014). Under Ninth Circuit law, "where it is clear from the pleadings that class representatives lack standing to assert class claims, courts … routinely dismiss[] those claims at the pleadings stage." *Id.* (collecting cases).

Plaintiffs' theory of injury with respect to each of the misrepresentation-based claims against Sotheby's is that they "acquired [Products] at artificially high prices" due to "false [or] misleading … statements that … Sotheby's made and approved." FAC ¶ 614; *see id.* ¶ 474. It follows that Plaintiffs did *not* suffer any harm if they did not make relevant purchases during the time prices were allegedly inflated.

The only specific misrepresentation alleged to have been made by Sotheby's is the alleged "traditional collector" remark regarding the successful purchaser of the BAYC auction, which took place on September 9, 2021. *See* FAC ¶¶ 132-134, 142; *see also id.* ¶ 603(a) (listing this alleged statement by Sotheby's, alone, as an "untrue statement[] and omission[] of material facts" for Plaintiffs' Rule 10b-5 claim). And the FAC alleges that "news that FTX was the Sotheby's auction's real winning bidder was revealed to the market" "on November 23, 2021" (*id.* ¶ 147)—making September 9 through November 23, 2021, the only period during which Sotheby's supposed misrepresentation could have led to "artificially high prices" (*id.* ¶ 614) in

4

what Plaintiffs allege to be an efficient market (*see id.* ¶¶ 474-475).[4]

The named Plaintiffs, however, do not contend that they made relevant purchases during this period of alleged price inflation. Plaintiffs allege that Titcher and Palombini purchased Products "on August 29, 2021" and "on April 30, 2021," respectively—both of which were *before* Sotheby's alleged traditional collector statement was made. FAC ¶ 454. Indeed, their PSLRA certifications, which must "set[] forth all of the transactions of the plaintiff" (15 U.S.C. § 78u-4(a)(2)(A)(iv)), affirmatively demonstrate that no named Plaintiff purchased a BAYC NFT between September 9 and November 23, 2021—the period during which Plaintiffs allege "Sotheby's representations" were affecting "the market for BAYC NFTs." FAC ¶ 141-142; *see* Dkt. 1-2 (Titcher certification); Dkt. 74-2 (Boekweg, Johnson, and Palombini certifications).

Because no named Plaintiff purchased a BAYC NFT during the period when Sotheby's alleged "traditional collector" statement was supposedly inflating the price of BAYC NFTs, no named Plaintiff has standing to bring a claim against Sotheby's premised on that supposed misrepresentation. *See Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104 (2d Cir. 2021) ("Plaintiffs alleging that they were damaged by purchasing securities at an inflated price cannot

---

[4]   Plaintiffs allege without explanation that other statements by Sotheby's—largely promoting the September 9, 2021, auction in advance—were also "misleading[]." FAC ¶ 118; *see also id.* ¶¶ 119-131, 135-139. But the FAC alleges nothing to "specify … the reason or reasons *why* [these other] statement[s] [are] misleading;" they are therefore insufficiently pleaded under the PSLRA. 15 U.S.C. § 78u-4(b)(1) (emphasis added); *see, e.g.*, *Metzler*, 540 F.3d at 1070 ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet" the PSLRA's "exacting requirements for pleading 'falsity.'"). To the contrary, the additional alleged statements are legitimate promotion of an art auction, which is the core of Sotheby's business. *See, e.g.*, FAC ¶ 120 (tweet simply announcing the auction). Similarly, while Plaintiffs passingly assert that the "auction" itself was "deceptive" (*id.* ¶ 117), they plead no facts remotely suggesting that the auction was anything but bona fide.

5

maintain a securities fraud claim premised exclusively on statements made *after* the plaintiff's final purchase of securities."); *Yan v. ReWalk Robotics, Ltd.*, 973 F.3d 22, 35 (1st Cir. 2020) (similar); *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.*, 2023 WL 3781645, at *3 (N.D. Tex. June 2, 2023) ("A plaintiff who buys stock after a corrective disclosure cannot suffer an injury in fact."). As such, no named Plaintiff may represent a class bringing such claims, and the claims must be dismissed. *Fenerjian*, 72 F. Supp. 3d at 1082.

### B. Plaintiffs lack standing for any California-law claims.

The named Plaintiffs similarly lack standing to bring *any* California-law claims against Sotheby's, whether premised on misrepresentation or state securities law.

"'Courts routinely dismiss claims' … 'where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce' because the named plaintiff lacks standing to invoke the foreign statute." *Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (collecting cases). As the FAC tacitly acknowledges, only Titcher—the sole California resident of the named Plaintiffs— even potentially could have standing to bring the California claims. *See, e.g.*, FAC ¶ 578. But Titcher also lacks standing to bring the California claims against Sotheby's (Counts 1-3, 6, 10-11 & 13), for multiple reasons.

First, as discussed above, Titcher has no standing to bring any claim premised on alleged misrepresentation by Sotheby's, because he is not alleged to have made any purchases during the period Plaintiffs claim Sotheby's statement was inflating prices. *See* pages 4-6, *supra*; Dkt. 1-2 (PSLRA certification). This failing requires the dismissal of Counts 1-3, 10 & 13 with respect to Sotheby's.

That leaves Counts 6 & 11. Count 6 alleges the sale of unregistered securities under California Corporations Code §§ 25110 and 25503. *See* FAC ¶¶ 577-591. But Section 25503 creates liability only "to any person acquiring from [the defendant] the security sold in violation of" Section 25110. Cal. Corp. Code § 25503. The

6

California statute therefore requires transactional privity—that is, the plaintiff must have purchased a security directly from the defendant. *Bowden v. Robinson*, 67 Cal. App. 3d 705 (1977) ("[S]ection 25503, by the words 'any person acquiring from him' has required privity, with some exceptions, as a condition of recovery."); *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *15 (N.D. Cal. Feb. 26, 2020) ("Based on *Bowden*, the court concludes that plaintiff must allege privity to state a claim under § 25503.").

Titcher, however, does not allege that he purchased Products from Sotheby's. Indeed, the only sale of Products by Sotheby's alleged with any specificity is the September 9, 2021, BAYC auction in which no Plaintiff is alleged to have participated. *See* FAC ¶¶ 130, 142. Titcher thus cannot maintain a claim under Sections 25110 and 25503.[5]

Count 11, for alleged manipulative trading in violation of California Corporations Code §§ 25400 & 25500, similarly fails. *See* FAC ¶ 676. Those sections permit suit only by a "person who purchases or sells any security at a price which was affected by [the defendant's allegedly manipulative] act or transaction." Cal. Corp. Code § 25500. Again, Titcher is alleged to have made purchases only (a) *before* the Sotheby's auction, and (b) long *after* Plaintiffs allege the truth surrounding the auction "was revealed to the market." FAC ¶ 147; *see* Dkt. 1-2 (PSLRA certification); pages 4-6, *supra*. The prices at which Titcher purchased thus cannot have been "affected by" any alleged manipulation by Sotheby's in connection with the auction. Cal. Corp. Code § 25500; *see, e.g.*, *Plumber & Steamfitters*, 11 F.4th at 104.

---

[5] The same is true of Count 10, which alleges California-law securities fraud. This statute, too, requires transactional privity. *See* Cal. Corp. Code § 25501 (imposing liability on a defendant "to the person who purchases a security from" that defendant); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253 (2007) ("Section 25501 on its face requires privity between the plaintiff and the defendant."). Titcher therefore lacks standing to bring Count 10 for this independent reason as well. *See also* page 6, *supra*.

7

### C.     The unregistered-securities claims are time-barred.

Finally, two of Plaintiffs' claims against Sotheby's are time-barred. *See Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss.").

Counts 4 and 6 allege the sale of unregistered securities under federal and state law, respectively. *See generally* FAC ¶¶ 559-568 (citing 15 U.S.C. §§ 77e(a), (c), 77*l*(a)(1)); *id.* ¶¶ 577-591 (citing Cal. Corp. Code §§ 25110, 25503). The federal claim carries a one-year statute of limitation that runs from the date of the sale, does not include a discovery rule, and cannot be tolled. 15 U.S.C. § 77m ("No action shall be maintained to enforce any … liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation."); *see Nolfi v. Ohio Kent. Oil Corp.*, 675 F.3d 538, 553 (6th Cir. 2012) (rejecting a "discovery rule for § 12(a)(1) claims," and holding that "equitable tolling does not apply"); *Fabian v. LeMahieu*, 2019 WL 4918431, at *8 (N.D. Cal. Oct. 4, 2019) (collecting cases). The California statute also carries a one-year bar, running from the date of discovery. Cal. Corp. Code § 25507(a).

The only alleged sale by Sotheby's pleaded in the FAC is the September 9, 2021 BAYC auction. *See* FAC ¶ 130.[6] Plaintiffs affirmatively allege that they were aware of the auction contemporaneously. *Id.* ¶ 454. The statute of limitations for both claims therefore expired on September 9, 2022—nine months before Plaintiffs filed the FAC, naming Sotheby's for the first time.[7]

---

[6]   Moreover, Titcher—the sole California Plaintiff—alleges no purchase (even from other sellers) within the limitations period, thus lacking standing. Dkt. 1-2 (PSLRA certification).

[7]   Nor does the FAC relate back to the original complaint as to Sotheby's. "[A]n amended complaint that seeks to add new defendants will relate back … if either: (1) [it] relates back under applicable state law; or (2) [it] satisfies the requirements of

8

**II.    Plaintiffs' claims fail on the merits.**

In addition to these threshold defects, which collectively infect each of Plaintiffs' claims against Sotheby's, each claim also fails on the merits.

**A.    The Rule 10b-5 claims fail on multiple grounds (Counts 7-8).**

The elements of Plaintiffs' Rule 10b-5 claim are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (quotation marks omitted). Several of these elements are absent here.

*1.    Materiality and loss causation are lacking.*

Plaintiffs' securities-fraud theory is that Sotheby's alleged misrepresentation regarding the identity of the BAYC auction buyer caused the price of BAYC NFTs to be artificially inflated between September 9, 2021 (the date of the alleged misstatement) and November 23, 2021 (the date of the alleged corrective disclosure). *See* FAC ¶¶ 130, 141-142, 147; *see also id.* ¶ 603(a). But Plaintiffs fail adequately to plead either materiality or loss causation, because the price of BAYC NFTs did not drop when the supposed misrepresentation "was revealed to the market." *Id.* ¶ 147.

The FAC uses the "floor price" of the BAYC NFT collection—that is, "the lowest price an NFT in the collection can be purchased for" (FAC ¶ 54)—to represent the market price for BAYC NFTs. *See, e.g., id.* ¶ 147 (alleging that "[t]he floor price

_____

Rule 15(c)(1)(C)." *Jackson v. Med. Bd. of Cal.*, 2012 WL 13019955, at *7 (C.D. Cal. Apr. 19, 2012). Under California law, "an amended complaint that adds a new defendant does not relate back." *Nghiem v. Santa Clara Univ.*, 2023 WL 3012494, at *3 (N.D. Cal. 2023). And Rule 15(c)(1)(C) only permits an amendment to add a party where that party's omission from the original complaint resulted from "a mistake concerning the proper party's identity"; it does not allow relation back where a plaintiff adds new claims against new defendants based on new conduct. Fed. R. Civ. P. 15(c)(1)(C), (B); *Nghiem*, 2023 WL 3012494, at *4.

for BAYC NFTs fell" between November 19 and November 23, 2021); *id.* ¶¶ 621-626 (similar reliance on floor price). Assuming *arguendo* that floor price is equivalent to the market price of a traditional security (a necessary precondition for Plaintiffs' invocation of the fraud-on-the-market presumption of reliance, *see* FAC ¶¶ 474-475; *Halliburton Co.*, 573 U.S. at 268),[8] the BAYC floor price history affirmatively *disproves* multiple elements of Plaintiffs' claim as it relates to Sotheby's.

As noted, Plaintiffs allege that "news that FTX was the Sotheby's auction's real winning bidder was revealed to the market" "on November 23, 2021." FAC ¶ 147. But as judicially noticeable historical price data establish, the floor price in dollars of the BAYC NFT collection actually ***went up*** by over 5% on November 23, 2021, the day of the supposed corrective disclosure. *See* Request for Judicial Notice (RJN) Ex. A (showing a rise in floor price from $182,341 on November 22, 2021, to $192,176 on November 23, 2021).[9]

That is fatal to both loss causation and materiality. To plead loss causation, "the complaint must allege that the defendant's 'share price fell significantly after the truth became known.'" *Metzler*, 540 F.3d at 1062; *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 393 (9th Cir. 2010). Indeed, the Ninth Circuit recently explained that loss causation cannot be sufficiently pleaded even where the price *does* drop "modest[ly]" upon "the disclosure of certain news," so long as it "'recover[s]

---

[8]    In fact, the fraud-on-the-market theory does not apply to the Products (including the NFT Products, which are by definition non-fungible and vary widely in price within the collection), because Plaintiffs have not adequately pleaded that the Products traded in an efficient market. *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1249-1258 (C.D. Cal. 2015); *see also* Yuga Br. 24-25.

[9]   To the extent relevant, the floor price of MAYC NFTs also rose from $24,181 on November 22, 2021, to $25,647 on November 23, 2021. RJN Ex. B. When measured in ETH rather than dollars, the MAYC floor price remained precisely flat, at 5.9 ETH. *Id.*

10

very shortly after.'" *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197-1198 (9th Cir. 2021) (holding that "quick and sustained price recovery after [a] modest [price] drop" precludes adequate pleading of loss causation). It follows *a fortiori* that if—as here—the price of a Product *does not* drop, loss causation is similarly impossible to establish.[10]

The lack of a drop in the floor price similarly precludes Plaintiffs from pleading materiality. "If the disclosure of certain information has no effect on stock prices, it follows that the information disclosed was immaterial as a matter of law." *In re Cooper Sec. Litig.*, 691 F. Supp. 2d 1105, 1115 (C.D. Cal. 2010). The absence of a price drop upon the disclosure of FTX's alleged purchase thus demonstrates that the alleged "traditional collector" statement cannot have been material.

Nor can Plaintiffs contend that the market for BAYC NFTs somehow did not immediately digest the alleged November 23, 2021, disclosure. Plaintiffs' theory against Sotheby's is premised on the fraud-on-the-market presumption of reliance, and "the foundation for the fraud on the market theory" is that "unexpected corporate events or financial releases" result in "an immediate response in the stock price." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1256 (C.D. Cal. 2015). In other words, "Plaintiffs 'cannot contend that the market is efficient for purposes of reliance and then cast the theory aside when it no longer suits their needs for purposes of loss causation." *Mandalevy v. Bofl Holding, Inc.*, 2018 WL 3032588,

---

[10]  Under *Wochos*, the same result obtains if the Court analyzes the floor price expressed in ETH rather than dollars. On an ETH basis, the BAYC floor price dropped less than 1% between November 22 and November 23, from 44.49 to 44.21. RJN Ex. A. But it immediately recovered to 44.89 ETH on November 24, and continued to trend sharply upward thereafter, reaching 60 ETH by December 31. *Id.* As in *Wochos*, "[t]he quick and sustained price recovery after the modest [November 23] drop refutes the inference that … this particular fact caused any material drop in the [floor] price" (*Wochos*, 985 F.3d at 1198)—thus requiring dismissal for lack of loss causation if analyzed by the ETH price, too.

at *14 (S.D. Cal. June 19, 2018). Because the market for BAYC NFTs was unaffected when the truth of Sotheby's purported misrepresentation "was revealed to the market" (FAC ¶ 147), Plaintiffs do not—and cannot—plead materiality or loss causation.

### 2.    *Plaintiffs do not allege scienter.*

Plaintiffs also fail to adequately plead scienter with respect to the only alleged misstatement by Sotheby's: the alleged traditional-collector remark. *See* page 5 n.4, *supra* (no other Sotheby's statements sufficiently pleaded to be misleading).

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" (15 U.S.C. § 78u-4(b)(2) (emphasis added))—that is, that "the defendant made false or misleading statements with an 'intent to deceive, manipulate, or defraud,' or with deliberate recklessness," meaning "an *extreme* departure from the standards of ordinary care." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021). Therefore, "the court … 'must take into account plausible opposing inferences," and "[t]he complaint will survive … 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *9 (C.D. Cal. Sept. 23, 2014) (Olguin, J.).

First, Plaintiffs have a collective pleading problem. Generally, in order to plead scienter for a corporation, "the PSLRA requires [a plaintiff] to plead scienter with respect to those individuals who actually made the false statements." *Glazer Capital Mgmt, LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008); *Prodanova*, 993 F.3d at 1108 ("[B]ecause a corporation can only act through its employees and agents, it can only have scienter through them."). But the FAC contains *no* allegation that the individual Sotheby's representative who supposedly made the alleged "traditional collector" remark even *knew* of the alleged falsity of that statement at the time it was

12

1  made, much less that he acted with "intent to deceive, manipulate, or defraud, or with

2  deliberate recklessness." *Id.* at 1106; *see* FAC ¶¶ 132-134. Instead, it asserts scienter

3  only with respect to Sotheby's, the entity. *Id.* ¶¶ 143, 612.

4        But such a "corporate scienter" allegation can only even potentially satisfy the

5  PSLRA's requirements if the "statements were … 'so dramatically false'—as in [an]

6  example posed by the Seventh Circuit [of an automaker reporting sales of one million

7  vehicles, when it actually sold zero]—to create an inference of scienter that at least

8  some corporate officials knew of the falsity upon publication." *In re NVIDIA Corp.*

9  *Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014). The allegation here—that there was

10  a fleeting misstatement as to the identity of the buyer of a single one of the hundreds

11  of multi-million dollar auctions Sotheby's conducted in 2021—is not remotely close

12  to an automaker selling zero SUVs, but claiming one million sales; it is thus not "so

13  important and so dramatically false that [it] would create a strong inference that at

14  least *some* corporate officials knew of the falsity." *Id.* Because the corporate scienter

15  doctrine is unavailable to Plaintiffs, their failure to plead scienter of the person who

16  made the alleged misstatement is fatal to their claims. *Id.*; *see also Glazer Capital*

17  *Mgmt*, 549 F.3d at 745.

18        Even setting this problem aside, and accepting *arguendo* Plaintiff's faulty

19  premise that the purchaser was not a traditional collector, Plaintiffs' suggested

20  inference that Sotheby's acted with "intent to deceive, manipulate, or defraud"

21  (*Prodanova*, 993 F.3d at 1106) is much less "cogent" and "compelling" than the

22  "opposing inference one could draw from the facts alleged" (*Tellabs*, 551 U.S. at

23  324)—specifically, that the Sotheby's representative who made the alleged statement

24  was simply mistaken about the characteristics of the winning bidder, or misspoke

25  during live, off-the-cuff, unrecorded remarks.

26        Importantly, materials incorporated into the FAC demonstrate that the alleged

27  statement about the winning bidder was made no more than *three minutes* after the

28  end of the auction. *See* RJN Exs. D, E (showing 10:01 a.m. end time for the auction),

13

Ex. C (tweet reproduced at FAC ¶ 133 reporting alleged traditional collector remark, timestamped 10:04 a.m.). More, the FAC alleges that, when discussing the auction later that day with more time to collect the facts, Sotheby's explained that "legacy art collectors were heavily *involved in the bidding*," not that one had *won* the auction. FAC ¶ 136 (emphasis added). And, critically, plaintiffs do *not* allege that this second statement—that traditional art collectors "were heavily involved in the bidding" for the BAYC NFTs—was false; nor could they.

Given all of these facts, the more "compelling … inference" to be drawn from the FAC's allegations (*Tellabs*, 551 U.S. at 324) is that a Sotheby's representative—speaking at most three minutes after the winning bidder was determined, and therefore with almost no time to confirm the relevant facts—simply misspoke or misunderstood the identity of the winning bidder among all the "legacy art collectors" who were "heavily involved in the bidding" FAC ¶ 136. Assuming again Plaintiffs' faulty premise that there even was a misstatement, this inference of a fleeting misunderstanding or innocent misstatement is significantly more "compelling" than the "competing inference" Plaintiffs wish to draw: that Sotheby's hatched a scheme to deceive in the three minutes after the auction ended, yet communicated the keystone misrepresentation *only* in a single Twitter Spaces conversation and not in later public statements, all for a nebulous benefit to either the company or the individual speaker. *See McGee*, 2014 WL 12586107, at *15 (Olguin, J.) ("Given the absence of other indicia of scienter, the lack of an alleged motive is particularly significant."); *cf. Prodanova*, 993 F.3d at 1107 ("[A] company's apparent error—even an embarrassing or inexplicable one—does not establish fraudulent intent.").

In all, Plaintiff's farfetched allegations of intentional or deliberately reckless deceit are not "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Prodanova*, 993 F.3d at 1108. The FAC does not "meet the PSLRA's high burden for pleading scienter." *Id.*.

14

### 3.    *Plaintiffs do not plead scheme liability.*

Count 8 brings a scheme-liability claim under Rule 10b-5(a) and (c). *See* 17 C.F.R. § 240.10b-5(a), (c). "To allege a claim for scheme liability, a plaintiff must allege the elements of a securities fraud claim," with an element that "the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme" replacing the element of a material misstatement. *In re Galena Biopharma, Inc., Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). "[T]he conduct underlying claims for scheme liability must be alleged with particularity under Rule 9(b)." *Id.* at 1193.

First, Plaintiffs do not "articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it," and therefore fail the heightened Rule 9(b) pleading standard. *Plumber & Steamfitters*, 11 F.4th at 105. As in *Plumber & Steamfitters*, "[i]nstead, the claim rests upon the incorporation of the previous 140 pages of the pleading paired with the conclusory assertion that" some unknown combination of those acts constitute an actionable scheme. *Id.*; *compare* FAC ¶ 639-641. But "[a]bsent some sort of enumeration of which specific acts constituted an alleged scheme in connection with the purchase or sale of securities, [Plaintiffs'] claim does not comply with the applicable heightened pleading standard and cannot go forward." *Id.; Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1017-1018 (9th Cir. 2018) (similar).

Setting aside this pleading defect, the scheme-liability claim against Sotheby's (Count 8) is duplicative of the misrepresentation claim (Count 7). As noted, the specific factual allegations against Sotheby's (aside from the alleged "traditional collector" statement) are simply that Sotheby's conducted an auction of digital art in the normal course of its business (FAC ¶¶ 117, 130); advertised that auction beforehand, and celebrated it afterwards, through perfectly legitimate public statements (FAC ¶¶ 119-126, 131, 137-139); and had a business strategy to increase its digital art offerings and thereby attract new customers (FAC ¶¶ 126-129). Nothing about any of that conduct is "deceptive or manipulative" (*Galena*, 117 F. Supp. 3d at

15

1192), and the FAC contains no allegations attempting to suggest otherwise. These allegations thus add nothing of substance to the misrepresentation claim, and Count 8 must be dismissed for the same reasons as Count 7. *See, e.g.*, *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022) (dismissing scheme-liability claim where the "alleged scheme consists entirely of (and fails for the same reasons as) the [affirmative] misstatements analyzed above" under Rule 10b-5(b)).

### B.   Sotheby's is not a statutory seller (Count 4).

A defendant is a statutory seller, as required for a Section 12(a)(1) claim, only if it (i) "passed title, or other interest in the security, to the buyer for value," or (ii) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner." *Pinter v. Dahl*, 486 U.S. 622, 642 (1988). Here, there is no allegation that Sotheby's directly "passed title" to any plaintiff or class member; Plaintiffs instead rely solely on the solicitation prong, asserting that various public statements constitute solicitation. FAC ¶ 566.

But the FAC does not adequately plead that Sotheby's successfully solicited Product purchases by Plaintiffs, much less for financial gain. A solicitation need not be "targeted to a particular plaintiff," but it still "must urge or persuade another to buy a particular security." *Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1258, 1260 (9th Cir. 2022). As noted above, most of the specific allegations regarding Sotheby's involve promotion of the BAYC auction. *See* FAC ¶¶ 119-125. But Plaintiffs affirmatively allege that none of them purchased NFTs at that auction, disentitling them to bring suit with respect to those statements. *See Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 925 (N.D. Cal. 2015) ("A plaintiff has standing to bring a Section 12(a)(2) claim," which is interpreted in parallel to Section 12(a)(1) with respect to the statutory-seller requirement, "only against a 'statutory seller' *from which the plaintiff purchased* the security at issue.") (emphasis added).

Nor do any of Sotheby's other alleged statements—such as those about the

16

overall NFT market (FAC ¶ 137), or expressing "excit[ement]" about "the [BAYC] project" (*id.* ¶ 139)—come close to the affirmative "urg[ing] or persua[sion]" held actionable in other cases. *Pino*, 55 F.4th at 1258; *see id.* at 1256 (social media post asking "[w]ant to double your money[?]," and promising "north of 15% returns," in connection with specific investment opportunity); *Underwood v. Coinbase Global, Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023) (cryptocurrency exchange did not engage in solicitation because its "activities … are of a piece with the marketing efforts, 'materials,' and 'services' that courts, applying *Pinter*'s second prong, have held insufficient to establish active solicitation by a defendant."). Indeed, if simply speaking positively about an asset class—neither targeted toward a particular listener nor in connection with any specific proposed sale—could create statutory-seller liability, Section 12(a)(1) would "impose liability on participants collateral to the offer or sale," in direct contravention of *Pinter*. 486 U.S. at 650. Because the alleged statements by Sotheby's are, at best, "collateral to" any purchase by Plaintiffs (*id.*), the statements are not solicitations.

Second, even if these statements could be construed as solicitations, they would not satisfy the requirement that the statutory "seller must have his own, independent financial interest in the sale." *Pino*, 55 F.4th at 1259; *see also id.* ("[T]he plaintiff must show that the defendants solicited purchase of the security for their own financial gain."). Sotheby's is not alleged to have any financial interest whatsoever in any purchase of NFTs or cryptocurrencies by any plaintiff; it is only alleged to have a financial interest in its own auctions (FAC ¶ 127)—but again, Plaintiffs do not allege that they participated in any Sotheby's auction.

### C.   The federal claims fail to allege a domestic transaction (Counts 4, 7-8).

The federal securities claims also fail to state a claim because they do not adequately allege a domestic transaction, as required by *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).

The federal securities laws cover only conduct "in connection with [i] the purchase or sale of a security listed on an American stock exchange, and [ii] the purchase or sale of any other security in the United States." *Morrison*, 561 U.S. at 273. The first prong is not satisfied here, because the FAC does not plead that Opensea, or any other service through which Plaintiffs purchased Products, is a domestic "exchange" within the meaning of the Exchange Act. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 945-947 (9th Cir. 2018) (holding that over-the-counter market was not an exchange). Nor does the FAC plead non-exchange purchases "in the United States," which would require specific allegations regarding "where the parties to the transaction incurred irrevocable liability." *Id.* at 949. The absence of such allegations here requires dismissal. *See* Yuga Br. 31-32.

### D.    The California misrepresentation claim fails (Count 10).

The California-law securities fraud claim (Count 10) fails on the merits for the lack of materiality discussed above with respect to the Rule 10b-5 claim: Because the price of BAYC NFTs did not drop when the truth about the auction buyer became known, any earlier alleged misrepresentation about the buyer's identity was immaterial as a matter of law. Pages 9-12, *supra*; *see OCG Energy, LLC v. Shen*, 2023 WL 4681640, at *9 (C.D. Cal. June 7, 2023) ("A primary violation under Sections 25401 and 25501 requires … a material misrepresentation or omission.").

### E.    The California unregistered-securities claim fails (Count 6).

As described above, Count 6 alleges the sale of unregistered securities under California Corporation Code §§ 25110 and 25503—but these provisions require transactional privity between the plaintiff and the defendant. *See* pages 6-7, *supra*. Not only does that mean that Titcher lacks standing to bring this class-action claim because *he* did not purchase directly from Sotheby's (*see* page 7, *supra*), it also means that *no* class member has a claim, since the FAC alleges only one sale of Products by Sotheby's—the September 9, 2021, auction—and the allegation is that the buyer there was FTX, not any class member.

18

### F.   Plaintiffs do not plead active trading (Count 11).

Count 11 invokes a California statute prohibiting "transactions in any security creating actual or apparent active trading in any security … for the purpose of inducing the purchase or sale of such security by others." Cal. Corp. Code § 25400. There is only a single allegation directed at Sotheby's with respect to this claim, and that paragraph merely parrots the language of the statute verbatim; it is therefore not pleaded sufficiently under *Iqbal*. *Compare* Cal. Corp. Code § 25400(b) *with* FAC ¶ 676; *see Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.").

Moreover, the FAC's allegations of fact do *not* contain "a series of transactions with FTX during the Sotheby's auction that created apparent active trading." *Contra* FAC ¶ 676. Rather, the FAC alleges a *single* transaction during which "Sotheby's transferred the lot of BAYC NFTs" to a wallet "owned/controlled by FTX" *after FTX is alleged to have won the auction*. FAC ¶ 144. That is, Sotheby's is alleged to have delivered the auctioned property to the winning bidder in the normal course, a legitimate transaction necessary for the completion of the auction. *See, e.g.*, *Monster, LLC v. Beats Elecs., LLC*, 2020 WL 5014610, at *11 n.11 (Cal. App. 2020) (Section 25400 claim "fails because the … transaction involved a genuine change in ownership"). Nor is there a plausible allegation that this transaction was performed "for the purpose of inducing the purchase or sale of [BAYC NFTs] by others" (Cal. Corp. Code § 25400(b)), rather than for the purpose of transferring the auction lot to the winning bidder, as Sotheby's was required to do.

### G.   The UCL claims fail (Counts 1-3).

Plaintiffs' claims under the California Unfair Competition Law are defective on multiple grounds. *See* Yuga Br. 32-36.

*First*, the UCL is categorically inapplicable to securities. *See, e.g.*, *Bowen v. Ziasun Techs., Inc*., 116 Cal. App. 4th 777, 786 (2004) ("[S]ection 17200 does not apply to securities transactions."). The UCL claims are therefore incompatible with

19

the fundamental theory of Plaintiffs' case: that the products at issue are allegedly securities.

*Second*, the UCL requires actual reliance by the plaintiffs, which is not alleged here, much less with the particularity required by Rule 9(b). *See, e.g.*, *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013) ("In order to have standing to bring a UCL . . . claim, Plaintiffs must plead that they relied on the misleading materials.") (collecting cases). The only statement by Sotheby's plausibly or specifically alleged to be misleading is the alleged "traditional collector" remark, and Plaintiff Titcher cannot have relied on that remark to make a purchase that occurred before the statement was made. *See* pages 4-6, *supra*.

*Third*, as explained above (at 9-12), Plaintiffs fail to plead loss causation with regard to any conduct or statement by Sotheby's, as the price of the relevant Products did not drop when Sotheby's supposed misrepresentation was revealed; instead, prices continued to skyrocket for months. FAC ¶ 141. That is fatal to their UCL claims, too. *See Chu v. Fay Serv., LLC*, 2016 WL 5846990, at *6 (N.D. Cal. Oct. 6, 2016) ("Plaintiff's UCL case must be dismissed for failure to plead harm resulting from the challenged actions in this case.").

*Fourth*, Plaintiffs do not plead any unlawful, unfair, or fraudulent acts by Sotheby's. Because Plaintiffs' direct claims of illegality fail, their "derivative UCL claim[s]" under the "unlawful" prong do too. *Aleksick v. 7–Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012). Nor, as discussed above, have Plaintiffs pleaded fraudulent conduct by Sotheby's. *See* pages 9-16, *supra*. As for the "unfair" prong, Plaintiffs offer only a "recitation of the 'unfair' legal standard" rather than specific factual allegations, which is "conclusory and insufficient to state a claim." *In re Apple Processor Litig.*, 2022 WL 2064975, at *13 (N.D. Cal. June 8, 2022).

### H.   The unjust enrichment count fails (Count 13).

"[I]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

20

To the extent Count 13 may be "construe[d] … as a quasi-contract claim," the FAC does not plead any "benefit" "unjustly conferred" on Sotheby's by the Plaintiffs (much less an unjustly retained one): Plaintiffs are not alleged to have participated in any auction or interacted with Sotheby's in any way. *Id.* This claim fails as well. *See* Yuga Br. 39.

### III. The Court should decline pendent jurisdiction.

Alternatively, if the Court dismisses the federal claims against Sotheby's, it should decline pendent personal jurisdiction with respect to any remaining state-law claims. *See Goldberg v. Rome McGuigan, P.C.*, 2021 WL 3520725, at *3 (C.D. Cal. Apr. 23, 2021) (declining pendent jurisdiction over state claims after dismissing federal securities claims on the merits); *see also* Yuga Br. 41-42.

Without the federal securities claims, there is no independent basis for personal jurisdiction: Sotheby's is neither incorporated nor headquartered in California, precluding general jurisdiction (FAC ¶ 43), and the FAC alleges no "act by which" Sotheby's "purposefully avail[ed] itself of the privilege of conducting activities within California," as required for specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924-925 (2011). The Court should decline pendent jurisdiction and dismiss Sotheby's.

### CONCLUSION

The Court should dismiss all claims against Sotheby's with prejudice.

Respectfully submitted,

21

1    Dated: September 12, 2023        **MCDERMOTT WILL & EMERY LLP**

2
                                      By: */s/ Tala Jayadevan*
3                                     _____
                                      Tala Jayadevan (SBN 288121)
                                      2049 Century Park East, Suite 3200
4                                     Los Angeles, CA 90067-3206
                                      Telephone: (310) 284-6148
5                                     Facsimile: (310) 317-7398

6                                     Joseph B. Evans (*pro hac vice* application
                                      pending)
7                                     jbevans@mwe.com
                                      Todd Harrison (admitted *pro hac vice*)
8                                     tdharrison@mwe.com
                                      One Vanderbilt Avenue
9                                     New York, NY 10017-3852
                                      Telephone: (212) 547-5767
10                                    Facsimile: (212) 547-5444

11                                    Paul W. Hughes (admitted *pro hac vice*)
                                      phughes@mwe.com
12                                    Andrew A. Lyons-Berg (admitted *pro hac vice*)
                                      alyonsberg@mwe.com
13                                    500 North Capitol Street, NW
                                      Washington, DC 20001-1531
14                                    Telephone: (202) 756-8981
                                      Facsimile: (202) 591-2784

15
                                      *Attorneys for Defendant Sotheby's Holdings*
16                                    *Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

22

1

## **CERTIFICATE OF COMPLIANCE**

2

      The undersigned, counsel of record for Defendant Sotheby's Holdings Inc.,

3

certifies that this brief contains 6,994 words, which complies with the word limit of

4

L.R. 11-6.1.

5

6

Dated: September 12, 2023        By: */s/ Tala Jayadevan*

7

                                 Tala Jayadevan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28