Renée E. Rothauge, Bar No. 271239
RRothauge@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  +1.503.727.2000
Facsimile:   +1.503.727.2222

Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone:  +1.310.788.9900
Facsimile:   +1.310.788.3399

Attorneys for Defendants
adidas AMERICA INC. and
adidas VENTURE B.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., et al,<br><br>Defendants. | Case No. 2:22-cv-08909 FMO-PLA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ADIDAS AMERICA INC. AND ADIDAS VENTURE B.V.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  November 30, 2023<br>Time:  10:00 am<br>Courtroom:  6D<br>Judge:  Hon. Fernando M. Olguin<br><br>Complaint Filed: December 8, 2022 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.  THE COURT LACKS PERSONAL JURISDICTION OVER ADIDAS VENTURES .................................................................................................... 5

II. THE CALIFORNIA STATE LAW CLAIMS AGAINST THE ADIDAS DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION IF THE COURT DISMISSES THE FEDERAL SECURITIES LAW CLAIMS .................................................... 6

III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS IMPERMISSIBLE SHOTGUN AND PUZZLE PLEADING ...................... 6

IV. THE FEDERAL SECURITIES LAW CLAIMS AGAINST THE ADIDAS DEFENDANTS SHOULD BE DISMISSED. ............................... 8

   A.  Plaintiffs Do Not Plead A Domestic Transaction Under *Morrison* ........................................................................................................ 8

   B.  Count 4, Plaintiffs' Claims Under Sections 5 And 12(a)(1) Of The Securities Act Against adidas America, Should Be Dismissed ........................................................................................................ 8

   C.  Count 8, Plaintiffs' Section 10(b) Scheme Liability Claim Against The adidas Defendants, Should Be Dismissed .................... 10

   D.  Counts 5 And 9, The Control Person Claims Against adidas Ventures, Should Be Dismissed .......................................................... 12

V.  COUNTS 1 – 3, 6, 10, AND 13, THE CALIFORNIA STATE LAW CLAIMS AGAINST THE ADIDAS DEFENDANTS, SHOULD BE DISMISSED ............................................................................................................ 13

   A.  Plaintiffs Lack Standing For All State Law Claims Against The adidas Defendants ............................................................................ 13

   B.  Counts 1 – 3, The Unfair Competition Law Claims, Should Be Dismissed For Failure To State a Claim ............................................. 13

      1.  Plaintiffs Fail To Plead Any Unlawful, Unfair, Or Fraudulent Acts By The adidas Defendants, Let Alone With Sufficient Particularity .................................................. 14

      2.  Plaintiffs Do Not Plead Actual Reliance ............................... 14

-i-

C.   Count 6, The California Corporate Securities Law Claim Against adidas America, And Count 10, The California Corporations Code Claim Against Both adidas Defendants, Should Be Dismissed For Failure To State A Claim .......................... 15

D.   Count 13, The Unjust Enrichment Claim, Should Be Dismissed For Failure To State A Claim ............................................................. 15

CONCLUSION ................................................................................................ 16

WORD COUNT CERTIFICATION .................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) .................................................................... 5

*Cullen v. Shutterfly Lifetouch, LLC*,
   2021 WL 2000247 (N.D. Cal. May 19, 2021) ............................................ 6

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1017, 1025 (2021) ..................................................................... 5

*Goldberg v. Rome McGuigan, P.C.*,
   2021 WL 3520725 (C.D. Cal. Apr. 23, 2021) ........................................... 6

*Hovey v. F.S.B.*,
   2022 WL 18216093 (C.D. Cal. Nov. 15, 2022) ....................................... 14

*In re Surebeam Corp. Secs. Litig.*,
   2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ............................................ 12

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) .................................................. 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................. 14

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021) .................................................... 13

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010) ................................................................................... 8

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ................................................................... 12

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ................................................................... 14

*Schmitt v. Younique LLC*,
   2017 WL 10574060 (C.D. Cal. Dec. 4, 2017) ........................................ 13

-iii-

*Sharp v. Arena Pharms., Inc.*,
  2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) ................................................. 15

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023)................................................... 14

STATUTES

Cal. Corp. Code § 25110 ........................................................................................ 15

Cal. Corp. Code § 25401 ........................................................................................ 15

Cal. Corp. Code § 25501 ........................................................................................ 15

Cal. Corp. Code § 25503 ........................................................................................ 15

Fed. R. Civ. P. 9(b) .......................................................................................... 10, 14

1

**INTRODUCTION**

2      The few allegations in the First Amended Class Action Complaint

3   ("Complaint" or "FAC") specific to adidas America Inc. ("adidas America") and

4   adidas Venture B.V. ("adidas Ventures"; together with adidas America, the "adidas

5   Defendants") concern a digital entertainment product that is not the subject of this

6   litigation.  The Complaint therefore fails to state any claim that the adidas

7   Defendants played a part in the alleged scheme to defraud purchasers of the digital

8   products at issue in this case.

9      The Complaint tells a convoluted story alleging that Yuga Labs, Inc. ("Yuga

10  Labs") purportedly worked with Guy Oseary and MoonPay USA LLC

11  ("MoonPay") to allegedly defraud Plaintiffs who bought Yuga Labs non-fungible

12  tokens ("NFTs") and a cryptocurrency called ApeCoin by allegedly manipulating

13  the price of those products, allegedly misleading Plaintiffs about the results of a

14  Sotheby's auction, and allegedly obtaining celebrity endorsements of Yuga Labs

15  products without disclosing that those celebrities were allegedly compensated.

16  These claims are deficient and should be dismissed for the reasons set forth in the

17  separate briefing of the other defendants.  The Complaint does not and cannot

18  explain how the adidas Defendants fit into any of this morass because the adidas

19  Defendants were not involved in the sale of Yuga Labs' NFTs and had nothing to

20  do with ApeCoins.

21     The few allegations specifically against the adidas Defendants do not support

22  any of Plaintiffs' claims.  Plaintiffs make a handful of irrelevant allegations related

23  to the adidas Metaverse NFT—which is not at issue in the litigation.  They also

24  allege that "celebrity jeweler and social media influencer Ben 'Baller' Yang" said

25  in a recording that "I've had Adidas hit me up in my DMs on Instagram" and ask

26  "Hey Ben, do you want to co-host a space with us? Oh do you own a Bored Ape?"

27  And finally, Plaintiffs allege that adidas Ventures invested in Yuga Labs (along

28  with Samsung, Google, and many others).

1   These allegations are not enough to sustain Plaintiffs' federal securities and
2   California state law claims against the adidas Defendants.  The adidas Defendants
3   join the Yuga Lab Defendants' motion and the arguments therein and seek
4   dismissal of all claims for the reasons below.[1]

5   ## BACKGROUND

6   The adidas Defendants are adidas America, an Oregon corporation with its
7   headquarters in Oregon, FAC ¶39, and adidas Ventures, a Dutch company
8   headquartered in the Netherlands.  *Id.* ¶40.

9   Plaintiffs' specific allegations against adidas America relate to the alleged
10  collaboration between adidas America and Yuga Labs to launch adidas America's
11  "own NFT" called the adidas Originals Into The Metaverse NFT (the "adidas
12  Metaverse NFT").  While Plaintiffs bring no claims related to the adidas Metaverse
13  NFT, they apparently believe their allegations about the adidas Metaverse NFT
14  show that Yuga Labs and its products enjoyed the imprimatur of adidas America,
15  and that Plaintiffs were thereby misled.  *Id.* ¶461.  To that end, Plaintiffs cite a few
16  tweets from the adidas Originals Twitter account and a YouTube video that they
17  erroneously claim "promoted" Yuga Labs products.

18  • On December 2, 2021, the adidas Originals account tweeted, "gm
19    [good morning] @gmoneyNFT @BoredApeYC @punkscomic, Are
20    you ready to dive Into The Metaverse? 11am EST / 5pm CET.  Be here
21    to find out if the rumors are true…" *Id.* ¶196, n.147.  Later that day, it
22    tweeted an image of a bored ape bought from the Bored Ape Yacht
23    Club ("BAYC") NFT collection and dressed in adidas gear, *id*. ¶183,
24    n.123, and "It's just the beginning 🚀 ," *id.* ¶196, n.148.
25  • On December 11, 2021, a 28-second video was released on YouTube

26  _____

27  [1] The Complaint alleges claims against both adidas Defendants in Counts 1-
   3, 8, 10, and 13.  It alleges additional claims against adidas America in Counts 4
28  and 6 and against adidas Ventures in Counts 5 and 9.

Case No. 2:22-cv-08909 FMO-PLA
ADIDAS DEFENDANTS' MEMO IN SUPPORT OF MOTION TO DISMISS

showing a cartoon version of the adidas-gear-wearing bored ape skydiving alongside two characters affiliated with companies called GMoney and Punks Comics to land on an adidas logo with Louis Armstrong's rendition of "Wonderful World" playing in the background. *Id.* ¶184 n.124. The version Plaintiffs cite was loaded to BAYC's YouTube channel. *Id.*

- On December 17, 2021, adidas America "launched" the adidas Metaverse NFT. *Id.* ¶184. The adidas Metaverse NFT was also created with intellectual property from GMoney and Punks Comics. *Id.*, n.128. It is a rotating digital image of the same three characters from the skydiving video, one of which is the bored ape dressed in adidas gear from the BAYC NFT purchased allegedly by adidas America. *Id.*, n.128. Later that day, the adidas Originals account tweeted that all the adidas Metaverse NFTs "have now been minted" and provided a link to the OpenSea secondary market. *Id.*

- On December 20, 2021, the adidas Originals account tweeted about the adidas Metaverse NFT: "In the metaverse, challenging the impossible is the reality. On Friday we landed in the world of Web3 with one of the most widely-distributed NFT drops in history." *Id.* ¶185, n.133. Another tweet that day stated, "This NFT drop is the beginning of Into the Metaverse, not the end. We have more in store to share in the new year. In the meantime, if you're exploring the secondary marketplace, make sure to only use the verified Opensea link" with the link provided. *Id.* ¶185, n.134. And then later: "Finally, thank you to all the pioneers in the space. Thank you for the constructive feedback. Thank you to our partners and their communities in the @BoredApeYC, @punkscomic, @coinbase, @TheSandboxGame,

@pixelvault_ and @gmoneyNFT." *Id.* ¶185, n.135.

On their face, none of these social media posts can reasonably be read to "promote" anything other than possibly the adidas Metaverse NFT, but Plaintiffs claim that the "promotions by adidas and its collaborations with BAYC throughout December 2021 caused the floor price of the BAYC NFT collection to spike, rising from approximately 47 ETH on December 1, 2021 before the promotion, to approximately 58.6 ETH by December 31, 2021." *Id.* ¶186.  This allegation defies logic.  The adidas Metaverse NFT sold for 0.2 ETH in primary sales and on December 19, 2021 had topped out at 0.78 ETH in the secondary marketplace, *id.* ¶184, n.130, just a tiny fraction of the floor prices of the BAYC NFTs.

Plaintiffs also allege that adidas America was involved in the alleged scheme to mislead the public by having celebrities endorse Yuga Labs products without disclosing that the celebrities were compensated.  The only thing cited in the Complaint that allegedly supports this claim is a recording of "celebrity jeweler and social media influencer Ben 'Baller' Yang" saying that he had been invited to collaborate: "I've had Adidas hit me up in my DMs on Instagram" and ask "Hey Ben, do you want to co-host a space with us? Oh do you own a Bored Ape?" *Id.* ¶271 at 50:50.

Finally, Plaintiffs allege that adidas Ventures made an investment in Yuga Labs in March 2022 (along with Google, Samsung, and others), erroneously that adidas America is the parent of adidas Ventures, and that "by virtue" of adidas Ventures' investment, the adidas Defendants acted as some combination of "agent and direct or indirect spokesperson" for the Company and "directed and/or authorized, directly or indirectly, the solicitations of the Yuga Financial Products." *Id.* ¶¶39-40.  Plaintiffs allege no facts supporting these conclusory statements.

# ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER ADIDAS VENTURES

Plaintiffs do not claim that adidas Ventures, which is headquartered in the Netherlands, FAC ¶40, is subject to this Court's general jurisdiction.  The burden is on Plaintiffs to make a showing of specific personal jurisdiction.  *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).  Plaintiffs must therefore allege facts showing that adidas Ventures established meaningful contacts with the relevant jurisdiction and the claims must "arise[] out of or relate[] to" those contacts.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).  For adidas Ventures, the relevant jurisdiction is the United States because of nationwide service of process for the federal securities law claims and pendent personal jurisdiction for the California state law claims.[2] *Action Embroidery*, 368 F.3d at 1181.

Plaintiffs allege no suit-related contact of adidas Ventures with the United States.  Plaintiffs allege only that adidas Ventures, "having participated in the Yuga seed funding round," in March 2022 "acted as an agent" for Yuga Labs "and directed and/or authorized, directly or indirectly, the solicitations of Yuga securities to the public." FAC ¶40.  But they do not support that boilerplate allegation with any factual allegations specific to adidas Ventures that would explain how adidas Ventures' investment relates to or gives rise to the federal securities claims.  Absent any suit-related contacts, the Complaint against adidas Ventures should be dismissed in its entirety for lack of personal jurisdiction.

---

[2] The adidas Defendants join the argument made by the Yuga Labs Defendants that the Court should decline to exercise pendent subject matter jurisdiction over the state law claims should it dismiss the federal securities law claims.

Case No. 2:22-cv-08909 FMO-PLA
ADIDAS DEFENDANTS' MEMO IN SUPPORT OF MOTION TO DISMISS

## II.  THE CALIFORNIA STATE LAW CLAIMS AGAINST THE ADIDAS DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION IF THE COURT DISMISSES THE FEDERAL SECURITIES LAW CLAIMS

If the Court dismisses the federal securities law claims, there is no basis for the application of pendent personal jurisdiction over the adidas Defendants.[3] *Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *4-5 (N.D. Cal. May 19, 2021); *Goldberg v. Rome McGuigan, P.C.*, 2021 WL 3520725, at *3-4 (C.D. Cal. Apr. 23, 2021).  In that event, because Plaintiffs have not plead suit-related contacts with California by the adidas Defendants, the California state law claims should be dismissed for lack of personal jurisdiction.

Neither adidas Defendant is incorporated or headquartered in California.  *Id.* ¶¶39-40.  The handful of Twitter posts and the YouTube video Plaintiffs attribute to adidas America relate to the adidas Metaverse NFT, not the Yuga Labs products at issue in the litigation, and therefore are not suit-related contacts.  As noted above, adidas Venture's investment in Yuga Labs is not a suit-related contact, but it has no connection to California regardless.  Absent any suit-related contacts to California, the state law claims should be dismissed.[4]

## III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS IMPERMISSIBLE SHOTGUN AND PUZZLE PLEADING

As explained by the Yuga Labs Defendants, the Complaint should be dismissed because, in grouping together defendants, it fails to identify alleged misconduct by specific defendants, and because it lumps together several Yuga Labs products without making any effort to distinguish the claims related to each.

The adidas Defendants are frequently lumped with other defendants as

---

[3] As noted above, there is no personal jurisdiction over adidas Ventures for any of the claims.

[4] The adidas Defendants also join the Yuga Lab Defendants' argument that the Court should dismiss the California state law claims on behalf of a nationwide class because adidas Ventures and adidas America are not residents of California.

Case No. 2:22-cv-08909 FMO-PLA
ADIDAS DEFENDANTS' MEMO IN SUPPORT OF MOTION TO DISMISS

"Defendants" or so-called "Promoter Defendants" without any specific differentiating allegations.  For example, Plaintiffs make the blanket allegation that "the Promoter Defendants had undisclosed financial interests in Yuga and MoonPay." FAC ¶490.  Similarly, Plaintiffs allege that certain defendants "actively conceal[ed] the true nature of the Promoter Defendants' business relationship with the Company, MoonPay, and the insiders of both." *Id.* ¶491.  Nowhere do Plaintiffs allege for the adidas Defendants (who Plaintiffs define as among the "Promoter Defendants") what those allegedly "undisclosed financial interests" were or what the "true nature" of the adidas Defendants' "business relationship with the Company, MoonPay, and the insiders of both" was.

The only specific financial interest or business relationship plead in the Complaint with respect to the adidas Defendants is that adidas Ventures made a *publicly* disclosed investment in Yuga Labs in March 2022, *id.* ¶40; that adidas America had a "capital investment in the Company," *id.* ¶39, improperly imputing adidas Ventures' investment to adidas America[5]; and that adidas America and Yuga Labs publicly "collaborated" on the adidas Metaverse NFT.  Plaintiff Titcher for one concedes that he must have been aware of these facts because "he follows, directly or indirectly . . . news reports on . . . Adidas." *Id.* ¶493.  News of adidas Ventures' investment in Yuga Labs, along with investments by numerous others, was published in March 2022[6], and news of the "collaboration" is cited in the Complaint.

Similarly, the Complaint's use throughout of the term "Yuga Financial Products" or "Yuga Securities" to describe four different Yuga Labs NFTs plus the ApeCoin cryptocurrency and the absence of product-specific allegations make it

---

[5] Plaintiffs make no veil piercing allegations.  In any event, adidas America is not the parent company of adidas Ventures.

[6] *$450M Yuga Labs Seed Round Funded by Google, Samsung, Adidas* (March 23, 2022), https://www.investing.com/news/cryptocurrency-news/450m-yuga-labs-seed-round-funded-by-google-samsung-adidas-2790077.

Case No. 2:22-cv-08909 FMO-PLA
ADIDAS DEFENDANTS' MEMO IN SUPPORT OF MOTION TO DISMISS

1  impossible to discern what conduct by the adidas Defendants allegedly gives rise to

2  their liability.  For example, Plaintiffs allege that "[a]t the time of the launch of

3  each of the Yuga Financial Products . . . Adidas actively marketed the launch and

4  the tokens' growth and utilization prospects." *Id.* ¶439.  But the Complaint fails to

5  allege any conduct by either adidas Defendant specific to any of the so-called

6  "Yuga Financial Products."  The only specific product Plaintiffs actually point to in

7  relation to the adidas Defendants—the adidas Metaverse NFT collection, *id.* ¶¶184-

8  85—is *not* one of the products at issue in this litigation, *id.* ¶1, n.1, and none of the

9  Plaintiffs claim to have bought it.

10  Plaintiffs should not be permitted to proceed based on their shotgun, puzzle-

11  pled complaint.

12  **IV.  THE FEDERAL SECURITIES LAW CLAIMS AGAINST THE
13  ADIDAS DEFENDANTS SHOULD BE DISMISSED.**

14  Plaintiffs' primary violator claims (Count 4 against adidas America and

15  Count 8 against both adidas Defendants) and control person claims (Counts 5 and 9

16  against adidas Ventures) should be dismissed for failure to state a claim and

17  because Plaintiffs do not allege facts showing that their federal securities law

18  claims arise from securities traded on a domestic exchange or from domestic

19  transactions.

20  **A.  Plaintiffs Do Not Plead A Domestic Transaction Under *Morrison***

21  The adidas Defendants join the argument made by the Yuga Labs Defendants

22  that Plaintiffs have not pled facts sufficient to satisfy *Morrison v. National*

23  *Australia Bank Ltd.*, 561 U.S. 247 (2010).

24  **B.  Count 4, Plaintiffs' Claims Under Sections 5 And 12(a)(1) Of The
25  Securities Act Against adidas America, Should Be Dismissed**

26  Plaintiffs' claim under Sections 5 and 12(a)(1) of the Securities Act against

27  adidas America should be dismissed for the reasons argued by the Yuga Labs

28  Defendants:  Plaintiffs cannot show that adidas America is a "statutory seller"

because they do not claim that title for any alleged security passed from adidas
America to Plaintiffs and they have not alleged that adidas America successfully
solicited the purchase of any of the products at issue in the litigation.

　　　　None of the social media posts allegedly by adidas America cited by
Plaintiffs constitute solicitation of the so-called "Yuga Financial Products."  Some
of the posts simply show a bored ape wearing adidas-branded clothing with no
mention of any product whatsoever.  *See* FAC ¶183 n.123 (tweet of bored ape in
adidas gear); *id.* ¶184 n.124 (28-second video including bored ape in adidas gear).
Others show an ape in adidas clothing and/or reference the adidas Metaverse NFT,
which is not at issue in this litigation.  *See id.* ¶184 n.128 (tweet with rotating ape
image and stating "WEN [sic]? EARLY ACCESS MINTING STARTS NOW" and
providing a link to a shoe sales site); *id.* ¶185 n.133 (tweet stating "In the
metaverse, challenging the impossible is the reality. On Friday we landed in the
world of Web3 with one of the most widely distributed NFT drops in history.") *id.*
¶185 n.135 (tweet thanking "pioneers in the space" and "partners and their
communities in the @BoredApeYC, @punkscomic, @coinbase,
@TheSandboxGame, @pixelvault_ and @gmoneyNFT," and for "the constructive
feedback").  Still others relate to adidas America's alleged purchase of a BAYC
NFT with the image of an ape outfitted in adidas-branded clothing.  *Id.* ¶196 n.147
(tweet stating "gm @gmoneyNFT @BoredApeYC @punkscomic, Are you ready to
dive Into The Metaverse? 11am EST / 5pm CET.  Be here to find out if the rumors
are true…"); *id.* ¶196 n.148 (tweet stating "it's just the beginning 🚀").

　　　　Plaintiffs claim that tweets that provided "a link that led investors to the
Opensea NFT exchange," a secondary marketplace for NFTs, "solicited sales of the
adidas Metaverse NFTs."  *Id.* ¶184 n.128; *see also id.* ¶185 n.134.  But, even if true
that these tweets constitute solicitation (they do not), it is irrelevant because the
adidas Metaverse NFTs are not at issue in this litigation.  *See id.* ¶1 n.1 (definition

of "Yuga Financial Products" and "Yuga securities" does not include adidas Metaverse NFTs).  The Complaint fails to allege that adidas America is a statutory seller.  Count 4 against it should be dismissed.

### C.    Count 8, Plaintiffs' Section 10(b) Scheme Liability Claim Against The adidas Defendants, Should Be Dismissed

As described in the Yuga Labs Defendants' brief, Plaintiffs allege three different schemes, but they only claim the adidas Defendants were involved in one: an allegedly misleading marketing campaign based on celebrity endorsements.  The inadequate allegations against the adidas Defendants for liability related to this alleged scheme do not state a claim.

The thrust of Plaintiffs' allegations of a celebrity endorsement scheme is that the Yuga Labs Defendants allegedly worked with Oseary and MoonPay to recruit celebrities to promote Yuga Labs products without disclosing that they were compensated for their alleged promotional efforts.  The Complaint pleads no facts supporting this scheme liability theory for the reasons articulated by the Yuga Labs Defendants, the MoonPay Defendants, and the other defendants in their separate briefs, let alone with particularity as mandated by Rule 9(b) and the PSLRA.  The adidas Defendants join these arguments.

Nor does the Complaint attempt to explain how the adidas Defendants allegedly fit into this scheme.  There are no allegations that the adidas Defendants worked with MoonPay.  There are no allegations that the adidas Defendants recruited or arranged the alleged promotional efforts by any of the celebrity defendants.  Nor are there any allegations that the adidas Defendants themselves "promoted" Yuga Labs products.  Similarly, there are no allegations whatsoever supporting a strong inference of scienter by the adidas Defendants.

On their face, the adidas Originals tweets and YouTube video described in the Complaint concern the adidas Metaverse NFT, not any Yuga Labs product. And while the Complaint alleges that the adidas Originals Twitter account tweeted

about the purchase of the BAYC NFT of a bored ape wearing adidas gear, there is no allegation that adidas America's alleged purchase of the BAYC NFT was anything other than a bona fide transaction (which it was).

The only specific factual allegation Plaintiffs offer is that "celebrity jeweler and social media influencer Ben 'Baller' Yang" said that "I've had Adidas hit me up in my DMs on Instagram" and ask "Hey Ben, do you want to co-host a space with us? Oh do you own a Bored Ape?" FAC ¶ 271. Whatever this interaction was—at most, a vague invitation to collaborate with adidas in some way—nothing about it suggests that the adidas Defendants were offering to provide Mr. Yang with a BAYC NFT in exchange for his promoting Yuga Labs products or that they did so with any other celebrity. Nor do Plaintiffs allege how that conduct—even if adequately pled (and it is not)—could amount to securities fraud.

Plaintiffs' allegations of reliance are inadequate. Plaintiffs identify two adidas "promotions" that Titcher and Palombini claim to have relied upon (the other plaintiffs are silent)—a 28-second December 11, 2021 video that "featured an animated Bored Ape avatar wearing the trademark adidas jumpsuit and skydiving into an adidas logo" with Louis Armstrong's rendition of "Wonderful World" as background music and an April 27, 2022 OpenSea webpage for secondary trading of the adidas Metaverse NFT. *Id.* ¶461. But Plaintiffs say nowhere what about these two "promotions" is misleading or how they relied on them. Instead, they claim that Titcher and Palombini "reasonably believed" that the adidas Defendants' use of a bored ape avatar wearing adidas clothing "*suggested* the BAYC NFT collection had become mainstream and that future collaborations with an established brand like adidas were imminent" and that therefore they were induced to purchase the Yuga products. *Id.* (emphasis added). That is not a statement of reliance. But regardless, to the extent Titcher and Palombini relied on something about these "promotions" to draw a conclusion about BAYC NFT, this claim

1    should be disregarded because neither bought a BAYC NFT.

2        The adidas Defendants also join the Yuga Labs Defendants' arguments

3    regarding Plaintiffs' failure to plead loss causation and Plaintiffs' allegations

4    concerning the application of the fraud-on-the-market doctrine.  The Section 10(b)

5    scheme liability claim should be dismissed.

6        **D.    Counts 5 And 9, The Control Person Claims Against adidas
7             Ventures, Should Be Dismissed**

8        Although the section heading for the control person claims lists adidas

9    Ventures, Plaintiffs do not include it on their list of so-called "Control Person

10   Defendants" and make no specific allegations regarding it.  On that basis alone, the

11   control person claims should be dismissed.

12       Plaintiffs' allegation elsewhere in the Complaint that "having participated in

13   the Yuga seed funding round on March 22, 2022" and "by virtue of its capital

14   investment," adidas Ventures is liable for Yuga Lab's alleged securities law

15   violations, FAC ¶40, is insufficient to make out a control person claim.  A

16   company's investors do not bear control person liability solely "by virtue" of their

17   investment.  To make out a prima facie case of control against an investor, such as

18   adidas Ventures, Plaintiffs must allege facts such as "majority stock ownership,

19   power to elect the majority of the board, and presence of officers on [the] board."

20   *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West*

21   *Holding Corp.*, 320 F.3d 920, 945-46 (9th Cir. 2003); *In re Surebeam Corp. Secs.*

22   *Litig.*, 2005 WL 5036360, at *25 (S.D. Cal. Jan. 3, 2005) (prima facie case of

23   control made where plaintiffs alleged numerous indicia of control, including

24   majority control and board membership).  Plaintiffs make no such allegations, nor

25   could they.[7]

26   _____

27       [7] Even if Plaintiffs' bare allegations are found to be sufficient, adidas
     Ventures cannot have control person liability for claims of any securities law
28   violations arising from conduct before March 22, 2022, the alleged date of its

-12-

1   The adidas Defendants also join the arguments made by the Yuga Labs
2   Defendants that Plaintiffs have not adequately alleged a primary violation of the
3   securities laws or culpable participation in the Company's alleged misconduct.  The
4   control person claims against adidas Ventures should be dismissed.

5   **V.  COUNTS 1 – 3, 6, 10, AND 13, THE CALIFORNIA STATE LAW**
6   **CLAIMS AGAINST THE ADIDAS DEFENDANTS, SHOULD BE**
    **DISMISSED**

7   **A.  Plaintiffs Lack Standing For All State Law Claims Against The**
8   **adidas Defendants**

9   Plaintiffs lack standing to pursue their state law claims against the adidas
10  Defendants.  The adidas Defendants join the Yuga Lab Defendants' argument that,
11  of the plaintiffs, only Titcher may have standing to pursue the California state law
12  claims and only for claims related to MAYC NFT and Otherdeed NFT, the only
13  Yuga Labs products he is alleged to have purchased.  Even Titcher, however, lacks
14  standing against the adidas Defendants because none of the alleged promotional
15  statements by the adidas Defendants concern those products—indeed they do not
16  concern any products at all other than the adidas Metaverse NFTs, which, as noted
17  above, are not the subject of this litigation.  Plaintiffs therefore lack standing for
18  their state law claims against the adidas Defendants.  *See Lorentzen v. Kroger Co.*,
19  532 F. Supp. 3d 901, 909 (C.D. Cal. 2021); *Schmitt v. Younique LLC*, 2017 WL
20  10574060, at *4 (C.D. Cal. Dec. 4, 2017).  Counts 1-3, 6, 10, and 13 against the
21  adidas Defendants should be dismissed for lack of standing.

22  **B.  Counts 1 – 3, The Unfair Competition Law Claims, Should Be**
23  **Dismissed For Failure To State a Claim**

24  The adidas Defendants join the Yuga Lab Defendants' arguments that the
25  Unfair Competition Law ("UCL") claims should be dismissed because the UCL
26  does not apply to alleged securities; Plaintiffs have an adequate remedy at law; and
27  
28  investment.

-13-

1  Plaintiffs do not allege that they have suffered direct economic injury.

2                 **1.**      **Plaintiffs Fail To Plead Any Unlawful, Unfair, Or**

3                            **Fraudulent Acts By The adidas Defendants, Let Alone With Sufficient Particularity**

4        Plaintiffs do not explain how any of the alleged promotional statements by

5  the adidas Defendants were fraudulent, *see Tristan v. Bank of Am.*, 2023 WL

6  4417271, at *6 (C.D. Cal. June 28, 2023), violated a federal or California statute or

7  regulation, *see Hovey v. F.S.B.*, 2022 WL 18216093, at *5 (C.D. Cal. Nov. 15,

8  2022), or are even relevant to this litigation.  The alleged promotions make a series

9  of bland statements about adidas's Metaverse NFTs, not about any of the products

10  allegedly underpinning Plaintiffs claims.

11        Plaintiffs' additional conclusory claim that the adidas Defendants are liable

12  for failing to disclose that they "conspired with the Company and MoonPay to

13  facilitate the Yuga promoter payments and then conceal such conduct afterwards,"

14  FAC ¶¶513; 520(f); 485(f) (slightly different formulation), are unsupported by *any*

15  factual allegations, let alone allegations sufficiently particular under Rule 9(b).

16  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies

17  to UCL claims).

18                 **2.**      **Plaintiffs Do Not Plead Actual Reliance**

19        Plaintiffs fail to plead with particularity that they relied on the alleged

20  promotional statements by the adidas Defendants and that "they purchased

21  additional [products] in reliance on" a statement by the adidas Defendants.

22  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012); *see also*

23  *supra*, Section IV.C.

24

25

26

27

28

### C.   Count 6, The California Corporate Securities Law Claim Against adidas America, And Count 10, The California Corporations Code Claim Against Both adidas Defendants, Should Be Dismissed For Failure To State A Claim

The claim under Sections 25110 and 25503 of the California Corporations Code fail because Plaintiffs do not allege they bought any of the so-called "Yuga Financial Products" from adidas America or that they acquired the products in an issuer transaction or in California.  adidas America joins the Yuga Labs Defendants' arguments in support of dismissing Count 6.

The claim under Sections 25401 and 25501 of the California Corporations Code fails because Plaintiffs do not allege they were in "strict privity" with adidas America, *see Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013), and because they have not alleged any actionable misstatement or omission or fraudulent scheme, *see Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063-64 (N.D. Cal. 2013).  The adidas Defendants also join the Yuga Labs Defendants' arguments in support of dismissing Count 10.

### D.   Count 13, The Unjust Enrichment Claim, Should Be Dismissed For Failure To State A Claim

Count 13 should be dismissed for failure to state a claim for the reasons laid out in the Yuga Lab Defendants' brief.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the First Amended Class Action Complaint

against the adidas Defendants should be dismissed in its entirety.


Dated:  September 12, 2023                    **PERKINS COIE LLP**


By: /s/ Renée E. Rothauge
Renée E. Rothauge, Bar No. 271239
RRothauge@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  +1.503.727.2000
Facsimile:   +1.503.727.2222

Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone:  +1.310.788.9900
Facsimile:   +1.310.788.3399

ATTORNEYS FOR DEFENDANTS
adidas AMERICA INC. AND adidas
VENTURE B.V.

Case No. 2:22-cv-08909 FMO-PLA
ADIDAS DEFENDANTS' MEMO IN SUPPORT OF MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### WORD COUNT CERTIFICATION

The undersigned, counsel of record for adidas America Inc. and adidas Venture B.V., certifies that this brief contains 4,466 words and complies with the word limit set by court order dated August 14, 2023.

Dated:  September 12, 2023          **PERKINS COIE LLP**

By: /s/ Renée E. Rothauge
        Renée E. Rothauge, Bar No. 271239

ATTORNEYS FOR DEFENDANTS
adidas AMERICA INC. AND adidas
VENTURE B.V.