1   LATHAM & WATKINS LLP
2   Perry J. Viscounty (Bar No. 132143)
      *perry.viscounty@lw.com*
3   650 Town Center Drive, 20th Floor
    Costa Mesa, CA 92626-1925
4   Telephone: +1.714.540.1235

5   Colleen C. Smith (Bar No. 231216)
      *colleen.smith@lw.com*
6   12670 High Bluff Drive
7   San Diego, CA 92130-3086
    Telephone: +1.858.523.5400
8
9   Douglas K. Yatter (Bar No. 236089)
      *douglas.yatter@lw.com*
10  1271 Avenue of the Americas
    New York, NY 10020
11  Telephone: +1.212.906.1200

12  *Attorneys for Defendants MoonPay USA LLC,*
    *and Ivan Soto-Wright*
13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16  JOHNNY JOHNSON, EZRA              Case No. 2:22-cv-08909 FMO (PLAx)
17  BOEKWEG, MARIO PALOMBINI,
    and ADAM TITCHER, Individually   **MOONPAY DEFENDANTS' NOTICE**
18  and on Behalf of All Others Similarly  **OF MOTION AND MOTION TO**
    Situated,                         **DISMISS FIRST AMENDED CLASS**
                                      **ACTION COMPLAINT;**
19                                    **MEMORANDUM OF POINTS AND**
                 Plaintiffs,         **AUTHORITIES**
20
         v.                          Date:        November 30, 2023
21                                   Time:        10:00 a.m.
    YUGA LABS, INC., et al.          Courtroom: 6D
22                                   Judge:       Hon. Fernando M. Olguin
                 Defendants.
23                                   Complaint Filed: December 8, 2022
24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on November 30, 2023 at 10:00 a.m., or at

3   such later date and time as the Court may order, in the Courtroom of the Honorable

4   Fernando M. Olguin, Courtroom 6D, United States District Court, Central District

5   of California, located at 350 W. 1st Street, 6th Floor, Los Angeles, California

6   90012, Defendants MoonPay USA LLC ("MoonPay USA") and Ivan Soto-Wright

7   ("Soto-Wright") (collectively, the "MoonPay Defendants") will, and hereby do,

8   move for an Order dismissing the First Amended Class Action Complaint ("AC"

9   or "Complaint"), dated August 4, 2023 (ECF 114).  This Motion is made pursuant

10  to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Complaint

11  fails to state a claim upon which relief can be granted.

12       This Motion is made following the conference of counsel pursuant to Local

13  Rule 7-3, which took place on September 1, 2023, and is based on this Notice of

14  Motion and Motion, the accompanying Memorandum of Points and Authorities,

15  Defendants' Request for Judicial Notice, the Declaration of Colleen C. Smith and

16  exhibits, the Court's record on this matter, the arguments of counsel, and other

17  evidence and argument that may be presented prior to the Court's decision.

18       Pursuant to the Court's Order dated August 14, 2023 (ECF 125), Defendants

19  Yuga Labs, Inc. ("Yuga Labs"), Wylie Aronow ("Aronow"), Greg Solano

20  ("Solano"), Kerem Atalay ("Atalay"), Zeshan Ali ("Ali"), Nicole Muniz

21  ("Muniz"), Jasmin Shoemaker ("Shoemaker"), Patrick Ehrlund ("Ehrlund"),

22  Christopher Lyons ("Lyons") and Guy Oseary ("Oseary") (collectively, "Yuga

23  Labs Defendants"); Alexis Ohanian ("Ohanian"); Amy Wu ("Wu"); Maaria Bajwa

24  ("Bajwa"); Mike Winkelmann ("Winkelmann"); Madonna Louise Ciccone

25  ("Ciccone"); Paris Hilton ("Hilton"); James Fallon ("Fallon"); Electric Hot Dog,

26  Inc. ("EHD"); Universal Television, LLC ("Universal"); Justin Bieber ("Bieber");

27  Kevin Hart ("Hart"); Wardell Stephen Curry II ("Curry"); adidas America Inc.

28  ("adidas America"); adidas Ventures B.V. ("adidas Ventures"); and Sotheby's

1    Holdings Inc. ("Sotheby's") are concurrently filing Motions to Dismiss and, to the

2    extent set forth in their respective Memoranda of Points and Authorities, join in

3    some or all of the MoonPay Defendants' arguments herein.  The MoonPay

4    Defendants likewise join in other Defendants' arguments to the extent they apply

5    to the MoonPay Defendants.  The MoonPay Defendants, together with all the

6    foregoing defendants, are referred to herein as the "Moving Defendants."

7

8    Dated:  September 12, 2023                Respectfully submitted,

9                                             LATHAM & WATKINS LLP

10

11                                           By /s/ Colleen C. Smith

12                                              Colleen C. Smith

13                                           *Attorneys for Defendants MoonPay USA*
                                             *LLC, and Ivan Soto-Wright*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND .................................................................................... 3

    A.    MoonPay USA and Soto-Wright ................................................ 3

    B.    Plaintiffs Allegedly Purchased the Products, But Not
          From MoonPay .......................................................................... 3

III.  ARGUMENT ......................................................................................... 4

    A.    Plaintiffs Fail to State UCL Claims Against the MoonPay
          Defendants (Counts 1-3) ........................................................... 4

        1.    The UCL Claims Fail Because They Are Based on
              Alleged Securities Transactions ..................................... 4

        2.    Plaintiffs Lack Standing Because They Fail to
              Plead Reliance ................................................................ 5

        3.    Plaintiffs Lack Standing Because They Fail to
              Plead Injury-in-Fact Caused by the MoonPay
              Statements ...................................................................... 9

        4.    Plaintiffs' "Unlawful" UCL Claim Also Fails for
              Absence of Underlying Statutory Violation ..................... 9

        5.    Plaintiffs' "Unfair" UCL Claim Is Duplicative .............. 10

    B.    Plaintiffs Fail to State an Exchange Act Claim (Counts 7
          & 8) ......................................................................................... 10

        1.    Three of the Plaintiffs Lack Standing Under the
              Purchaser-Seller Rule ................................................... 11

        2.    Plaintiffs Fail to Plead Falsity ..................................... 12

        3.    Plaintiffs Fail to Plead Scheme Liability ...................... 15

        4.    Plaintiffs Fail to Plead Scienter ................................... 16

        5.    Plaintiffs Fail to Plead Loss Causation ....................... 18

        6.    Plaintiffs Fail to Plead Reliance .................................. 19

    C.    Plaintiffs Fail to State a Securities Act Claim Against the
          MoonPay Defendants (Count 4) ............................................... 19

    D.    Plaintiffs Fail to State a Control Person Claim (Counts 5
          and 9) ...................................................................................... 22

E.  Plaintiffs Fail to State a Claim Under California Statutory Law (Counts 6, 10-12) ........................................................... 22

F.  Plaintiffs' Unjust Enrichment Claim Fails (Count 13) ..................... 22

IV. CONCLUSION ............................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ............................................................... 9

*In re Am. Apparel, Inc. S'holder Litig.*,
  2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ......................................... 17

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................... 6

*In re Bank of Am. Corp.*,
  2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ................................... 15, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 21

*Betz v. Trainer Wortham & Co.*,
  829 F. Supp. 2d 860 (N.D. Cal. 2011) .................................................... 4

*Bowen v. Ziasun Technologies, Inc.*,
  116 Cal. App. 4th 777 (2004) ................................................................. 4

*Burnstein v. Graves*,
  110 F.3d 67 (9th Cir. 1997) .................................................................. 14

*In re CarLotz, Inc. Sec. Litig.*,
  2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ...................................... 11

*In re Century City Aluminum Co. Sec. Litig.*,
  749 F. Supp. 2d 964 (N.D. Cal. 2010) .................................................. 22

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ...................................... 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
  Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................................ 13

*Cowan v. Goldcorp*,
  2017 WL 5495734 (C.D. Cal. Sept. 6, 2017) (Olguin, J.) ................... 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 2:22-CV-08909-FMO-PLA
MOONPAY DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010)................................................................. 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010)............................................................... 6, 7

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005)............................................................... 20

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)....................................... 17

*EnSource Invs. LLC v. Willis*,
  2019 WL 6700403 (S.D. Cal. Dec. 6, 2019)............................................ 4

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019)..................................................... 15

*Falkowski v. Imation Corp.*,
  309 F.3d 1123 (9th Cir. 2002)............................................................... 12

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008)............................................................... 17

*Granfield v. Nvidia Corp.*,
  2012 WL 2847575 (N.D. Cal. July 11, 2012)........................................... 5

*Great Pac. Sec. v. Barclays Cap., Inc.*,
  743 F. App'x 780 (9th Cir. 2018)............................................................. 9

*Grundstrom v. Wilco Life Ins. Co.*,
  2022 WL 2390992 (N.D. Cal. July 1, 2022)............................................ 23

*Gutierrez v. Carmax Auto Superstores Cal.*,
  19 Cal. App. 5th 1234 (2018)............................................................ 9, 10

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................ 6, 10

*Hall v. Sea World Ent., Inc.*,
  2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)......................................... 6, 7, 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ................................................................................ 19

*Haskins v. Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ........................................................ 8

*Hollifield v. Resolute Capital Partners Ltd., LLC*,
  2023 WL 4291524 (C.D. Cal. May 12, 2023).................................................... 22

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) ............................................................ 22

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).......................................................................... 10

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)........................................................................................ 9

*Lavin v. Virgin Galactic Holdings*,
  No. 2:21-CV-03070, ECF 90 (E.D.N.Y Aug. 16, 2023)................................... 11

*Le Kun Wu v. Swabplus, Inc.*,
  2009 WL 10673199 (C.D. Cal. Apr. 3, 2009)................................................... 20

*In re LeapFrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................................ 15

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014)............................................................................. 19

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009)................................................................ 6

*McCasland v. FormFactor, Inc.*,
  2009 WL 2086168 (N.D. Cal. July 14, 2009).................................................... 18

*Menora Mivtachim Ins. v. Frutarom Indus.*,
  54 F.4th 82 (2d Cir. 2022)................................................................................. 11

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993)......................................................................................... 8

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020)............................................................................. 22

*Nozak v. N. Dynasty Minerals Ltd.*,
  804 F. App'x 732 (9th Cir. 2020)...................................................................... 18

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ................................................................ 14

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
    2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ........................................ 14

*Pino v. Cardone Cap., LLC*,
    55 F.4th 1253 (9th Cir. 2022) ........................................................ 20, 21

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ........................................................................ 20, 21

*Reed v. NBTY, Inc.*,
    2014 WL 12284044 (C.D. Cal. Nov. 18, 2014) .................................... 5

*In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019) .............................................. 15

*Risley v. Universal Navigation, Inc.*,
    2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) .................................... 21

*Romero v. Flowers Bakeries, LLC*,
    2015 WL 2125004 (N.D. Cal. May 6, 2015) ........................................ 5

*Sandoz Inc. v. Amgen Inc.*,
    582 U.S. 1 (2017) .................................................................................. 9

*Scognamillo v. Credit Suisse First Boston LLC*,
    2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) .................................... 22

*SEC v. Howey Co.*,
    328 U.S. 293 (1946) ............................................................................ 10

*Sharp v. Arena Pharms., Inc.*,
    2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) .................................. 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................ 10, 16, 17

*In re Tezos Securities Litigation*,
    2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ...................................... 21

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................ 18

*Vignola v. FAT Brands, Inc.*,
  2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) ................................................. 20

*Walker v. Equity 1 Lenders Grp.*,
  2009 WL 1364430 (S.D. Cal. May 14, 2009) .................................................. 22

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018) ............................................................ 16

*Weston Family P'ship LLLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) .............................................................................. 13

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................ 17

*Zakinov v. Ripple Labs, Inc.*,
  2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ...................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ............................................................................. 18

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ........................................................................................ 12

Cal. Bus. & Prof. Code
  § 17204 ................................................................................................................ 9
  § 17500 ................................................................................................................ 9

Cal. Corp. Code
  § 25403(b) ........................................................................................................... 22
  § 25504.1 ............................................................................................................ 22

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................... 2, 6, 10

**REGULATIONS**

17 C.F.R. § 240.10b-5 ........................................................................................... 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

vii

CASE NO. 2:22-CV-08909-FMO-PLA
MOONPAY DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

## I.   INTRODUCTION

Plaintiffs are four individuals who decided to buy digital artwork (or non-fungible tokens ("NFTs") created and issued by Yuga Labs, or a crypto token called ApeCoin (collectively the "Products").  Disappointed with these purchases, Plaintiffs now seek to recover their claimed losses by asserting a hodgepodge of claims against a litany of defendants—including MoonPayUSA LLC ("MoonPay USA") and its co-founder Ivan Soto-Wright (together, "MoonPay Defendants")—who had nothing to do with Plaintiffs' purchases.  The MoonPay Defendants ***did not create*** any of the Products (or any other NFTs or tokens).  Plaintiffs do not allege that the MoonPay Defendants sold any of the Products to Plaintiffs.  The MoonPay Defendants ***did not solicit*** Plaintiffs' purchases of the Products.  Plaintiffs do not allege that they ever used MoonPay or had any relationship with the MoonPay Defendants.  ***The MoonPay Defendants had no involvement with Plaintiffs' purchases of the Products.***  For these reasons, all of Plaintiffs' claims must fail.

Plaintiffs' only alleged connection to the MoonPay Defendants are conclusory allegations that they supposedly relied on commentary about MoonPay's services to buy the products created and issued by Yuga and others entirely ***without using MoonPay's services***.  These allegations do not come close to stating a viable claim.

*First*, Plaintiffs' claims under California's Unfair Competition Law (the "UCL") (Counts 1-3) fail because they are premised on alleged securities transactions.  While the MoonPay Defendants disagree that the Products are securities (and reserve the right to argue that they are not), Plaintiffs' insistence that they are securities doom their UCL claims under long-standing California law.  Setting aside this glaring defect, the UCL claims also fail for the independent reason that no alleged facts establish that Plaintiffs actually relied on any statement

attributed to the MoonPay Defendants when making their purchases.[1]  Plaintiffs do not plead any facts—as they must—establishing that they actually *saw* any such statement.  The conclusory refrain that they relied on *statements they do not allege to have ever seen* is far from sufficient.  Further, Plaintiffs do not explain how they could possibly have relied on the challenged statements about MoonPay—a service they did not use to purchase the Products.  And while some of the MoonPay challenged statements relate tangentially to the Bored Ape Yacht Club ("BAYC") Yuga Product, the one Plaintiff who purchased a BAYC product does not allege that he saw or relied on any MoonPay statements.

*Second*, Plaintiffs claims under the Securities Exchange Act of 1934 ("Exchange Act") (Counts 7-9) fail because they do not remotely meet the heightened pleading standards required under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  These claims fail for two threshold reasons: (1) Plaintiffs do not allege purchases of securities in the US as required under the Supreme Court's *Morrison* test; and (2) Plaintiffs do not connect the challenged MoonPay statements to the Products they purchased, as required for standing to bring these claims.  Plaintiffs offer no specific allegations explaining how or why any of the challenged statements—non-actionable statements of puffery or corporate optimism, at most—were false or misleading.  Nor do Plaintiffs plead scienter—intent to deceive or deliberate recklessness; indeed, they fail to identify any motivation (much less a plausible one) for the MoonPay Defendants to make false statements.  And even if Plaintiffs had cleared these pleading hurdles (they have not), they cannot benefit from a presumption of reliance and so must identify facts showing they actually relied on the MoonPay statements.  They have not.  And Plaintiffs offer no allegations connecting any of their purported losses to the MoonPay statements, so they also fail to plead loss causation.

---

[1] The MoonPay challenged statements are listed in Appendix A.

*Third*, Plaintiffs' claims under the Securities Act of 1933 ("Securities Act") (Counts 4 & 5) should be dismissed because they are likewise barred by both *Morrison* and time-barred.  Further, no alleged facts establish the MoonPay Defendants solicited Plaintiffs' purchases of the Products.  Indeed, Plaintiffs allege no facts showing that the MoonPay Defendants actively sought to induce Plaintiffs to make purchases of *any* digital products at all, much less the Products created by Yuga and others.

*Fourth*, Plaintiffs' claims based on California's statutory and common law (Counts 6, 10-12) also fail.  Plaintiffs do not adequately allege privity between the buyer (Plaintiffs) and the sellers (unknown counterparties).

*Fifth*, Plaintiffs' unjust enrichment claim (Count 13) fails because no such claim is recognized in California and no equitable remedy is warranted.

The claims against the MoonPay Defendants should be dismissed.

## II.   BACKGROUND

### A.   MoonPay USA and Soto-Wright

MoonPay USA is headquartered in Florida and was co-founded by Mr. Soto-Wright.  ¶¶ 41-42, 90.[2]  MoonPay is a technology company that builds payment processes for digital product transactions.  *MoonPay does not create any digital products*.  Instead, it provides certain services related to digital products, enabling users to buy and sell them using payment methods such as debit and credit cards. MoonPay also offers a version of its services called "Concierge" for high-net-worth clients.  *Id.*

### B.   Plaintiffs Allegedly Purchased the Products, But Not From MoonPay

None of the Plaintiffs claims to have used MoonPay's services.  ¶¶ 10-13; ECF 74-2 & -3.  Nor do they claim to have had any relationship or direct contact with MoonPay or Mr. Soto-Wright.

---

[2] References to "¶" are to paragraphs of the Amended Complaint (ECF No. 114).

1      Instead, Plaintiffs allege that they were harmed because they bought the

2  Products after MoonPay and Mr. Soto-Wright (and the other myriad defendants)

3  made statements relating to one particular Product: the Bored Ape Yacht Club

4  ("BAYC") non-fungible token or "NFT."   ¶ 603.   Each BAYC NFT is a unique

5  collectible with distinct traits, with its value based primarily on rarity and

6  popularity.   ¶¶ 54, 66.

7      Plaintiffs do not allege with particularity that they saw the MoonPay

8  challenged statements.   ¶¶ 179, 246-247, 454-464.   Nor do they allege that they

9  bought BAYC NFTs—the only Product mentioned in the MoonPay Defendants'

10  statements—based on any of those statements.   Indeed, three of the four Plaintiffs

11  never purchased a BAYC NFT at all.   ¶ 10, ECF 74-2 at 4-8 (Johnson); ¶ 12, ECF

12  74-2 at 26 (Palombini); ¶ 13, ECF 1-2 (Titcher).   And the only Plaintiff (Boekweg)

13  who claims to have purchased a BAYC NFT does not allege that he saw, let alone

14  relied on, any of the challenged statements.

15  **III.    ARGUMENT**

16    **A.    Plaintiffs Fail to State UCL Claims Against the MoonPay
            Defendants (Counts 1-3)**

17        **1.    The UCL Claims Fail Because They Are Based on Alleged
18             Securities Transactions**

19      The UCL "does not apply to securities transactions."   *Bowen v. Ziasun*

20  *Technologies, Inc.*, 116 Cal. App. 4th 777, 788 (2004).   Accordingly, claims

21  premised on the offer, purchase, or sale of alleged securities must be dismissed.

22  *See EnSource Invs. LLC v. Willis*, 2019 WL 6700403, at *16-17 (S.D. Cal. Dec. 6,

23  2019) (rejecting UCL claim where claim involved "the purchase and sales of

24  securities"); *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866 (N.D. Cal.

25  2011) (UCL claim cannot proceed where "the predicate acts are securities

26  transactions").

27      Plaintiffs purport to assert UCL claims based on their purchases of products

28  they characterize as securities.   ¶ 1 n.1 (defining "Yuga securities"); *id.* ¶¶ 400-

453.  While the MoonPay Defendants disagree that the Products are securities (and

intend to present these arguments later, if necessary), Plaintiffs' position that they

are is fatal to their UCL claims.  *See Zakinov v. Ripple Labs, Inc.*, 2020 WL

922815, at *22 (N.D. Cal. Feb. 26, 2020) ("*Bowen* bars" UCL claim "premise[d]

on the theory that XRP is a security.").

### 2.  Plaintiffs Lack Standing Because They Fail to Plead Reliance

The UCL claims should also be dismissed for failure to plead facts sufficient

to establish standing, which requires that "the named plaintiff [] demonstrate actual

reliance."  *Reed v. NBTY, Inc.*, 2014 WL 12284044, at *7 (C.D. Cal. Nov. 18,

2014).  Nor can Plaintiffs invoke a presumption of reliance.

### a.  No Plaintiffs Relied on a Challenged Statement

The only products referenced in the MoonPay challenged statements are

BAYC NFTs, and no Plaintiff alleges that he purchased a BAYC NFT in reliance

on any of those statements.

### (1)  No Plaintiff Relied on MoonPay Statements to Purchase a BAYC NFT

Plaintiffs' certifications establish that three named Plaintiffs never purchased

a BAYC NFT.  ¶¶ 10-13; ECF 1-2, 74-2 at 4-8, 26.  So they cannot plausibly claim

to have relied on the MoonPay statements.  *Cf. Granfield v. Nvidia Corp.*, 2012

WL 2847575, at *6 (N.D. Cal. July 11, 2012) (no standing to assert claims based

on "products … she did not purchase"); *see also Romero v. Flowers Bakeries,

LLC*, 2015 WL 2125004, at *5 (N.D. Cal. May 6, 2015) (dismissing UCL claims

where "nothing link[ed] the identified products to the alleged misrepresentations").

Boekweg is the only Plaintiff claiming to have purchased a BAYC NFT.

¶ 11, ECF 74-2 at 23.  But there are no allegations that he ever saw—much less

relied on—any of the MoonPay statements.  The only reliance allegation specific

to Boekweg is the conclusory allegation that he purchased "Yuga securities in

1   reliance on" statements by "*the Company* [Yuga Labs] and the *Promoter*

2   *Defendants*" only, *not the MoonPay Defendants*.  *Id.* (emphasis added).

3                                    **(2)    Plaintiffs Do Not Adequately Allege That They
                                         Saw—Much Less Relied on—the MoonPay**

4                                    **Statements for *Any* Purchases**

5           Even if purchases of products other than BAYC NFTs could ground a UCL

6   claim against the MoonPay Defendants (they cannot), Plaintiffs still fail to plead

7   reliance.  Because Plaintiffs' UCL claims sound in fraud, they are governed by

8   Rule 9(b).  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D.

9   Cal. 2017) (applying Rule 9(b) to UCL claims).

10          To plead reliance on a misrepresentation or omission, Plaintiffs must allege

11  facts showing that they ***actually saw*** the allegedly misleading MoonPay

12  statements.  *See Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *5 (S.D. Cal.

13  Dec. 23, 2015) (no standing where failure to allege plaintiff "saw and relied on"

14  statements); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014)

15  (no reliance because no facts showing "that [plaintiffs] saw, read, or relied on any

16  representations").  They have not done so here.

17          *First*, Plaintiffs do not allege that any of them ever saw the Q&A published

18  on The Block's website.  *See* ¶¶ 246-247.  If Plaintiffs never saw the Q&A, they

19  could not possibly have relied on it.  *See Sea World*, 2015 WL 9659911, at *5.

20          *Second*, Plaintiffs do not allege that any of them saw the TikTok post of

21  Wilburn Cash on the "moonpayhq" account, nor do they allege that they even

22  followed the moonpayhq account.  *See* ¶¶ 179, 4d54-464.  Instead, Plaintiffs

23  vaguely allege they "saw or were aware of MoonPay's joint promotion with

24  Wilburn Cash" and were "induced to purchase and/or continue to hold Yuga

25  securities as a result."  ¶ 179.  That is plainly insufficient, particularly under the

26  controlling Rule 9(b) standard.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992,

27  1001 (N.D. Cal. 2009) (Rule 9(b) applies to reliance allegations); *Daniels-Hall v.*

28

ATTORNEYS AT LAW

                                                              CASE NO. 2:22-CV-08909-FMO-PLA
                                            6    MOONPAY DEFENDANTS' MOTION TO DISMISS
                                                              FIRST AMENDED COMPLAINT

1   *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts do not accept as true

2   "allegations that are merely conclusory").

3        *Third*, Plaintiffs fail to allege that they saw or relied on any of the MoonPay

4   tweets relating to BAYC NFTs.  Indeed, in contrast to some of the other

5   celebrities, none of the Plaintiffs alleges that he followed MoonPay or Mr. Soto-

6   Wright on Twitter.  *See, e.g.*, ¶¶ 455-57.[3]  Nor do Plaintiffs allege that they

7   "regularly saw posts from and about" MoonPay and Mr. Soto-Wright "via the

8   trending or discovery features of the platform" as they alleged for some

9   defendants.  *Id.*

10       Plaintiffs are left with only unsupported conclusory allegations that

11  (1) Titcher, Johnson, and Palombini were "aware of" MoonPay's tweet regarding

12  Fallon's BAYC NFT; (2) Palombini "saw" MoonPay's statement about Post's

13  video; and (3) Titcher and Palombini "saw" MoonPay's tweet regarding Hilton's

14  BAYC NFT.  *Id.*  Because the Complaint contains no details supporting how or

15  when these Plaintiffs supposedly "saw" or became "aware" of these tweets, it fails

16  to plead reliance.  *Sea World*, 2015 WL 9659911, at *5.

17               **(3)   Plaintiffs' Allegations Undercut Any Reliance
18                       on the MoonPay Statements**

19       Plaintiffs' allegations actually undercut their theory of reliance.  Plaintiffs'

20  claim against the MoonPay Defendants is premised on the presumption that they

21  would not have purchased the Products if they had known that certain celebrities

22  were affiliated with MoonPay.  ¶¶ 456-457.  But, without having read and relied on

23  the MoonPay challenged statements, Plaintiffs cannot plausibly allege they would

24  have acted differently had this information been made public.  *See, e.g.*, *Sea World*,

25

26  ---
    [3] Titcher's unsupported claims of reliance ring hollow given that he started
27  purchasing Products **months before** any of the MoonPay statements.  *Compare*
    ¶ 454 (Titcher purchased MAYC NFT on 8/29/21), *with* ¶ 162 (MoonPay first
    statement on 11/11/21).  *See Sea World*, 2015 WL 9659911, at *5 (dismissing
28  UCL claims where plaintiffs "did not see (and could not have seen) the alleged
    false advertising before purchasing" the products).

1    2015 WL 9659911, at *6 (finding "Plaintiffs have failed to plead with specificity

2    that they relied on any omissions" where "the FAC does not specifically allege that

3    Plaintiffs saw or heard" the statements); *Mirkin v. Wasserman*, 5 Cal. 4th 1082,

4    1093 (1993) (pleading reliance on omission requires allegations showing that "had

5    the omitted information been disclosed [Plaintiffs] would have been aware of it

6    and behaved differently").

7          Further, Plaintiffs admit that on April 13, 2022, MoonPay announced that

8    many celebrities—including several of the defendants—invested in MoonPay.

9    ¶ 97.  Yet, Plaintiffs continued to buy the Products ***after*** this disclosure.  *See* ECF

10   74-2; ECF 1-2.  Boekweg continued purchasing the Products as late as December

11   27, 2022—months after Plaintiffs allege that the Products "suffered diminution in

12   value" in August 2022 (¶ 389), and a further "drop[] in value" after the "disclosure

13   of the SEC investigation" of Yuga Labs in October 2022 (¶ 392).  The notion that

14   Plaintiffs would have acted differently if they had known these alleged facts is both

15   implausible and contradicted by their purchases.

16              **b.    Plaintiffs Cannot Rely on a Presumption of Reliance**

17         Plaintiffs state that they "will rely, in part, upon [a] presumption of

18   reliance."  ¶ 474.  But Plaintiffs cannot save their *UCL claims* by purporting to

19   invoke any such presumption.  In the UCL context, reliance is rarely presumed and

20   only where plaintiffs "viewed numerous statements and advertisements during a

21   decades-long advertising campaign." *Sea World*, 2015 WL 9659911, at *4;

22   *Bronson*, 2013 WL 1629191, at *3 (no presumption of reliance without misleading

23   "advertising campaign that is … extensive and lengthy"); *Haskins v. Symantec*

24   *Corp.*, 2013 WL 6234610, at *5(N.D. Cal. Dec. 2, 2013) (six-year advertising

25   campaign insufficient).  Here, Plaintiffs challenge statements over a four month

26   period—a far cry from the repeated and pervasive statements sufficient to presume

27   reliance.

28

### 3. Plaintiffs Lack Standing Because They Fail to Plead Injury-in-Fact Caused by the MoonPay Statements

Plaintiffs' UCL claims also fail because Plaintiffs fail to allege that they suffered an "injury-in-fact" caused by the MoonPay Defendants. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (UCL requires "economic injury" "caused by" defendants).  Having failed to plead actual reliance, Plaintiffs have necessarily failed to plead that the MoonPay Defendants caused them any economic injury.  *Id.* at 326-27 (plaintiffs must show they "actual[ly] reli[ed]" on the "allegedly deceptive or misleading statements" and that doing so "was an immediate cause" of the injury).

### 4. Plaintiffs' "Unlawful" UCL Claim Also Fails for Absence of Underlying Statutory Violation

Plaintiffs' "unlawful" UCL claim also fails because they have not pled an underlying statutory violation.  *See Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 12 (2017) ("unlawful" prong requires violation of "some other state or federal statute").  Plaintiffs must plead the predicate statutory violation with "reasonable particularity."  *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1261 (2018).

The only statutory claims Plaintiffs assert are securities law claims.  *See* AC, COA Nos. 4-12.  By asserting those claims, Plaintiffs confirm the applicability of the *Bowen* doctrine, requiring dismissal of the UCL claims.  Moreover, because the securities claims fail, they cannot support a derivative UCL claim.  *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails.").

Plaintiffs likewise cannot avoid dismissal by pointing to California's false advertising law, Cal. Bus. & Prof. Code § 17500, as a basis for the UCL claim (¶ 482), because here again reliance—which Plaintiffs have not established—is required.  *See, e.g., Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783

1   (9th Cir. 2018) (holding that plaintiffs "alleging claims under the FAL and UCL

2   are required to plead and prove actual reliance").  And while Plaintiffs say that a

3   "violation of other state consumer protection laws" could potentially serve as a

4   predicate offense for an "unlawful" UCL claim (¶ 482), they do not allege any such

5   violations, much less plead them with  "reasonable particularity." *Gutierrez*, 19

6   Cal. App. 5th at 1261.

7   **5.      Plaintiffs' "Unfair" UCL Claim Is Duplicative**

8       Because all of Plaintiffs' UCL claims are based on the same conduct,

9   Plaintiffs' claim under the "unfair" prong cannot survive independently of the

10  others.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D.

11  Cal. 2017) (where UCL claims overlap "the unfair prong of the UCL cannot

12  survive if the claims under the other two prongs of the UCL do not survive").

13  **B.      Plaintiffs Fail to State an Exchange Act Claim (Counts 7 & 8)[4]**

14      To state a claim under the Exchange Act, Plaintiffs must plead *with*

15  *particularity* (1) a material misrepresentation or omission or "scheme" to defraud;

16  (2) scienter; (3) reliance; and (4) loss causation.  *Tellabs, Inc. v. Makor Issues &*

17  *Rts., Ltd.,* 551 U.S. 308, 318 (2007) (citing 17 C.F.R. § 240.10b-5).  Plaintiffs must

18  also meet the heightened pleading standards of Rule 9(b) and the PSLRA, which

19  require "an account of the time, place, and specific content of the false

20  representations." *Frustere v. Wells Fargo Bank*, N.A., 2012 WL 4514066, at *1

21  (N.D. Cal. Oct. 2, 2012); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124

22  (9th Cir. 2009) (requiring plaintiffs plead "'the who, what, when, where, and how'

23  of the misconduct charged") (citations omitted).  Plaintiffs' allegations fall far

24  short of these standards.

25

26

27

28

---

[4] MoonPay Defendants do not concede and reserve all rights to argue that any of
the Products are not securities under the Supreme Court's *Howey* test.  *See SEC v.
Howey Co.*, 328 U.S. 293 (1946).

1

### 1.      Three of the Plaintiffs Lack Standing Under the Purchaser-Seller Rule

2

3      Section 10(b) claims are subject to the "purchaser-seller" rule which

4 "requires plaintiffs to have bought or sold the security *about which a misstatement*

5 *was made* to have standing. *Menora Mivtachim Ins. v. Frutarom Indus.*, 54 F.4th

6 82, 86 (2d Cir. 2022) (emphasis added); *see also In re CarLotz, Inc. Sec. Litig.*,

7 2023 WL 2744064, at *4 (S.D.N.Y. Mar. 31, 2023) (10(b) requires "plaintiffs to

8 have bought or sold the security *about which* [the alleged] misstatement was

9 made"). While the MoonPay Defendants dispute that the Products are securities in

10 the first place,  Plaintiffs cannot pursue Section 10(b) claims based on purchases of

11 other securities—or *other digital products*—that were not the subject of the

12 statements they challenge.

13      Here, *all* of the MoonPay challenged statements relate to MoonPay's

14 services or BAYC NFTs.  So Plaintiffs cannot pursue securities fraud claims based

15 on their purchases of *other* digital products.  Johnson, Palombini, and Titcher's

16 claims should be dismissed on this basis alone because none of them bought a

17 BAYC NFT.  ¶ 10, ECF 74-2 at 4-8; ¶ 12, ECF 74-2 at 26; ¶ 13, ECF 1-2.  As to

18 the sole remaining Plaintiff—Boekweg—while he alleges he purchased a BAYC

19 NFT, the only challenged statements made by MoonPay or Mr. Soto-Wright

20 relating in any way to BAYC are Statements 1-3.  Appendix A (citing ¶ 603(e)-

21 (g)).[5]  The other statements had nothing to do with that product, so the claims

22 premised on those statements should be dismissed.  *Lavin v. Virgin Galactic*

23 *Holdings,* No. 2:21-CV-03070, ECF 90 at 15-17 (E.D.N.Y Aug. 16, 2023)

24 (dismissing statements that "were not 'about' the only entity plaintiffs purchased

25 shares in").

26

27 [5] The Complaint is an example of classic puzzle pleading that merits dismissal on that basis alone.  *See* Yuga Labs Motion to Dismiss ("Yuga Br.") § III.A.1; *In re*

28 *Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *6 (N.D. Cal. Mar. 29, 2013) (dismissing complaint for puzzle-pleading.

**2.      Plaintiffs Fail to Plead Falsity**

**a.      Plaintiffs Do Not Plead Facts That Render the Challenged Statements False**

Plaintiffs allege five statements made by MoonPay or Mr. Soto-Wight from November 2021 to March 2022, were false or misleading because they failed to disclose that: (1) celebrities "had been gifted" Bored Apes by MoonPay; and (2) MoonPay was engaging in manipulative trading.  ¶ 601.  But Plaintiffs have not established that any statement was false or contradicted by undisclosed facts.

*First*, Plaintiffs do not plead facts establishing that the MoonPay Defendants' statements about the Concierge service were false.

- "So I helped one artist figure it out.  They told another who then asked for help.  Word started to spread."  "A really happy accident I'd say. 100% organic."  Stmt. 4.
- "Everyone that uses MoonPay Concierge has a commercial relationship with the company in the sense that this is a commercial service we offer our clients.  We provide the support and then we invoice for services rendered."  Stmt. 5.

Plaintiffs fail to allege any specific facts establishing "the reason or reasons why" any of these statements are misleading.  15 U.S.C. § 78u-4(b)(1).  The Complaint contains no allegations regarding the genesis of MoonPay's Concierge service, let alone allegations that disprove that Mr. Soto-Wright "helped one artist figure it out" and then "[w]ord started to spread," or that the service grew from a "happy accident."  And, regarding MoonPay's "commercial relationship" with its Concierge clients, Plaintiffs admit that they do not understand the "mechanics of how … transactions" on the MoonPay platform work (¶ 90), and they certainly do not allege any facts that would render false the statement that MoonPay invoices its Concierge clients for "services rendered."  These statements should be dismissed. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002) ("Although

1 the allegations here are voluminous, they do not rise to the level of specificity

2 required.").

3     *Second*, Plaintiffs contend that three other challenged statements were

4 misleading by omission.

5     • Tweet: "So this just happened.  @jimmyfallon reveals to @beeple on the

6       #TheTonightShow that he just bought his first Bored Ape by

7       @BoredApeYC with MoonPay!"  Stmt. 1.

8     • Tweet: "[T]his just happened."  Post Malone "aped into @BoredApeYC

9       by purchasing his first NFT with MoonPay."  Stmt. 2.

10     • Tweet: "Someone funny aped in today!"  Stmt. 3.

11     But Plaintiffs allege no facts directly contradicting any of these tweets.  *See*

12 *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022)

13 ("[f]or a statement to be misleading, it must directly contradict what the defendant

14 knew at the time or omit[] material information") (quotation marks and citation

15 omitted); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*

16 *Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (omitted facts must "conflict with what a

17 reasonable investor would take from" the statement).

18     Plaintiffs' allegation that the BAYC promotion on *The Tonight Show* or in

19 Post Malone's music video did not occur "spontaneously" and was "orchestrated

20 behind the scenes" does not conflict with MoonPay's statements that those events

21 "just happened."  Similarly, Plaintiffs' allegation that Kevin Hart did not pay for

22 his BAYC NFT does not contradict MoonPay's statement that he "aped in today!"

23 Without alleged facts contradicting the challenged statements, Plaintiffs fail to

24 plead falsity.  *Align,* 856 F.3d at 615.

25     *Third*, while Plaintiffs allege that these statements were false because the

26 MoonPay Defendants were engaging in market manipulation by buying digital

27 products, no alleged facts support that conclusion.  Plaintiffs merely allege a series

28 of purchases of various digital products, without any facts establishing

manipulation or wrongdoing in connection with those purchases.  The notion that a defendant must disclose alleged but not proven purported "market manipulation" is regularly rejected.  *See In re Paypal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) (no "duty to disclose uncharged, unadjudicated wrongdoing").[6]

### b. The MoonPay Defendants Did Not Have a Duty to Disclose Any Purported Omission

"Rule 10b-5 is violated by nondisclosure only when there is a duty to disclose."  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996).  Parties "owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other."  *Id.* at 1493.  "[T]he relationship must be substantial, and one which the plaintiff relies upon."  *Burnstein v. Graves*, 110 F.3d 67 (9th Cir. 1997).  Here, aside from vague allegations that some Plaintiffs "saw or were aware of" some social media posts (¶¶ 177, 179, 204, 234), Plaintiffs allege no relationship to MoonPay or Mr. Soto-Wright whatsoever, let alone a "substantial" one.  Plaintiffs do not allege that they used, or even contemplated using MoonPay's services.  *See* ¶¶ 10-13.  They do not allege they ever met or interacted with Mr. Soto-Wright.  Courts routinely dismiss claims based on substantially more significant relationships.  *See Jett*, 840 F.2d at 1493 (lender had no duty to disclose to investor); *Paracor*, 96 F.3d at 1157 (financier who facilitated debt transaction had no duty to investor).

### c. The Challenged Statements Are, at Most, Non-Actionable Puffery

Most of the challenged statements should be dismissed on the additional ground that they constitute "generalized assertions of corporate optimism or

---

[6] *See also* Yuga Br. § III.A.2.

1   statements of mere puffing" that are not actionable.  *See In re Restoration*
2   *Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019).

3   • "So this just happened" and "[Fallon] just bought his first Bored Ape
4      by @BoredApeYC with MoonPay!"  Stmt. 1;
5   • "This just happened" and "[Post] aped into @BoredApeYC by
6      purchasing his first NFT with MoonPay…"  Stmt. 2;
7   • "Someone funny aped in today!"  Stmt. 3.
8   • "So I helped one artist figure it out.  They told another who then asked
9      for help.  Word started to spread." And "A really happy accident I'd
10     say.  100% organic."  Stmt. 5.

11  Courts routinely dismiss claims based on these types of statements.  *See In*
12  *re Cutera Sec. Litig.,* 610 F.3d 1103, 1111 (9th Cir. 2010) ("mildly optimistic,
13  subjective assessment[s]" inactionable); *In re LeapFrog Enters., Inc. Sec. Litig.*,
14  527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (statement that "[w]e are pleased
15  with our progress" inactionable); *In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d
16  809, 836 (N.D. Cal. 2019) (statement that community "continues to grow"
17  inactionable).  This Court should do the same.

18                    **3.    Plaintiffs Fail to Plead Scheme Liability**

19  Plaintiffs' allegations of scheme liability also fail.  Plaintiffs contend that all
20  of the defendants engaged in "market making and price signaling conduct" that
21  "falsely increased" the price for the Products.  ¶¶ 604(e), 641.  To state a fraud
22  claim based on market manipulation, Plaintiffs must state "what manipulative acts
23  were performed, which defendants performed them, when the manipulative acts
24  were performed, and what effect the scheme had on the market for the securities at
25  issue."  *In re Bank of Am. Corp.*, 2011 WL 740902, at *9 (N.D. Cal. Feb. 24,
26  2011).  Plaintiffs do not meet this standard.

27  *First*, there are no allegations of manipulative conduct by the MoonPay
28  Defendants.  Plaintiffs point only to alleged purchases of the Products by Mr. Soto-

1   Wright and MoonPay.  ¶¶ 327-386.  But merely purchasing Products says nothing
2   about a purported fraudulent or manipulative purpose.  *See ATSI*, 493 F.3d at 103
3   (dismissing because "no specific allegations that the defendants did anything to
4   manipulate the market").  Plaintiffs also offer no allegations to refute that the
5   MoonPay Defendants' purchases were made for and at the direction of MoonPay
6   clients, *not* to artificially inflate prices.

7       *Second*, Plaintiffs also fail to show how the purchases impacted the market
8   for the Products.  Plaintiffs' sole contention is that the purchases were "above the
9   floor price" (*e.g.*, ¶ 331), without alleging facts showing that these purchases
10  actually impacted the floor price.  And Plaintiffs themselves acknowledge that the
11  floor price for the Products is not the only price, or even a uniform market price; it
12  is simply the lowest price for a Product in the collection.  ¶ 54.  This is fatal to
13  Plaintiffs' scheme liability claim.  *See Bank of Am.*, 2011 WL 740902, at *10
14  (dismissing scheme liability claim absent particularized facts demonstrating effect
15  on the market).

16              **4.      Plaintiffs Fail to Plead Scienter**

17      Plaintiffs also fail to plead with particularity facts supporting a strong
18  inference of scienter, that is, an "intent to deceive, manipulate, or defraud."
19  *Tellabs,* 551 U.S. at 319.  To meet this "exacting" burden, Plaintiffs must allege
20  facts that demonstrate that defendants "made false or misleading statements either
21  intentionally or with deliberate recklessness."  *Waterford Twp. Police & Fire Ret.*
22  *Sys. v. Mattel, Inc.,* 321 F. Supp. 3d 1133, 1151, 1156 (C.D. Cal. 2018).  Here,
23  Plaintiffs devote only two conclusory sentences of their 216-page complaint to
24  scienter allegations specific to the MoonPay Defendants.  ¶ 610 (stating MoonPay
25  Defendants "knew" that celebrities "had not paid for their Bored Apes" and "that
26  they were making manipulative outlier transactions").

27      Because these two conclusory sentences fail to plead "with particularity …
28  ***facts*** evidencing scienter," Plaintiffs' Section 10(b) claims should be dismissed.

*Tellabs*, 551 U.S. at 308 (emphasis added).  Plaintiffs' scienter allegations fail for other reasons as well.

*First*, Plaintiffs have not alleged that the MoonPay Defendants had any motive to engage in fraud.  Plaintiffs allege that the MoonPay Defendants made a series of transactions, but do not allege any sales at allegedly inflated prices (resulting in profit to the MoonPay Defendants) or any other tangible benefit to them.  *See* ¶¶ 327-386.  This negates any inference of scienter.  *See In re Downey Sec. Litig.*, 2009 WL 2767670, at *13 (C.D. Cal. Aug. 21, 2009) ("absence of stock sales" negates inference of scienter); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177-78 (C.D. Cal. 2007) ("the lack of any tangible, personal benefit here further weighs against [] scienter").

*Second*, Plaintiffs' scienter allegations do not show that the MoonPay challenged statements were false or misleading and thus cannot show that the MoonPay Defendants "knew the statements were false."  *See In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *17 (C.D. Cal. Jan. 16, 2013).  Although Plaintiffs allege that the MoonPay Defendants knew their purchases of certain Products would "boost floor prices" (¶ 610), they offer no allegations establishing that fact.  Nor do they explain how the purported scheme would work given that the "floor price" is the lowest price for which an NFT in a given collection can be purchased (¶ 54), and purchases of other NFTs at higher prices say nothing about the lowest-valued NFT (the floor price).  Three of the five challenged statements are silent about whether the celebrities purchased their BAYC NFTs.  *Compare* ¶ 610 (alleging that MoonPay Defendants "knew that the Promoter Defendants had not paid for their Bored Apes"), *with* Stmts. 3-5.  And three MoonPay statements (Stmts. 1-3) are attributed to MoonPay's Twitter account, yet Plaintiffs say nothing about who ran or controlled the account, or who made the posts at issue.  For these statements, Plaintiffs have failed to plead "scienter with respect to [the] individuals who actually made the false statements," *Glazer Cap. Mgmt., LP v. Magistri*, 549

F.3d 736, 745 (9th Cir. 2008); *see also Nozak v. N. Dynasty Minerals Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) (stating the Ninth Circuit "has not adopted the corporate scienter doctrine").

*Third*, Plaintiffs' attempt to use allegations from a Confidential Witness (the "CW") (¶ 680) fares no better.  The CW, purportedly a former member of MoonPay's compliance department, allegedly "ran targeted searches within the MoonPay Dashboard for all the highly publicized Concierge celebrity clientele," and when she did not find any information about them became concerned that "celebrities were promoting" the Products "without disclosing their own financial interests in those very same products."  ¶¶ 106, 112.  But Plaintiffs fail to explain how the CW's purported concerns about *celebrity disclosures* says anything about MoonPay or Mr. Soto-Wright's state of mind or knowledge about the purportedly false statements.  Indeed, the CW allegations do not mention Soto-Wright at all. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (rejecting CW allegations that did not reflect any contact with the individual defendants).  Tellingly, the CW admits she did not have access to information about MoonPay's Concierge clients; the only dashboard she had access to did not contain *any* information about MoonPay's Concierge clients.  *See* ¶¶ 101-102, 106-107, 111.  So the CW allegations do not meet the requirements of "reliability and personal knowledge."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *see also McCasland v. FormFactor, Inc.*, 2009 WL 2086168, at *6 (N.D. Cal. July 14, 2009) (granting motion to dismiss where CW allegations did not "(1) identify any specific information [] received or communicated by any defendant, or (2) contradict[] any public statement").

## 5.     Plaintiffs Fail to Plead Loss Causation

Plaintiffs fail to plead loss causation—*i.e.*, that they suffered losses resulting from the MoonPay challenged statements.  *See Cowan v. Goldcorp*, 2017 WL 5495734, at *7 (C.D. Cal. Sept. 6, 2017) (Olguin, J.) (no loss causation where

1  plaintiffs "do not allege specific statements made by the Defendants that were

2  made untrue or called into question by subsequent public disclosures").[7]  Plaintiffs

3  fail to tie any alleged floor price decline to the MoonPay statements.  And while

4  they allege that "celebrity endorsements had dried up" by August 2022, as

5  reflected in an article they cite (¶ 618), the article says no such thing.  Indeed, it

6  says absolutely nothing about celebrity endorsements, and instead reports that

7  BAYC sales prices have "suffered as a result of the unfavorable market attitude

8  that damaged worldwide NFT market sales and unique consumers."  Smith Decl.

9  Ex. 1.  These alleged facts reflect "changing market conditions," not the revelation

10  of fraud, and cannot support loss causation.  *Loos v. Immersion Corp.*, 762 F.3d

11  880, 887 (9th Cir. 2014).

12  **6.      Plaintiffs Fail to Plead Reliance**

13  Plaintiffs have not pled facts sufficient to invoke the *Basic* classwide

14  presumption of reliance.  *See* Yuga Br. § III.A.6.  So Plaintiffs must plead actual

15  reliance by showing that they were aware of the MoonPay statements and

16  "engaged in a relevant transaction" as a direct result of those statements.

17  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  But as

18  discussed above (Section III.A.2), Plaintiff's allegations fail to establish that any of

19  them relied on any challenged statement.  This failure provides yet another

20  independent ground for dismissal of the Exchange Act claims.

21  **C.      Plaintiffs Fail to State a Securities Act Claim Against the
              MoonPay Defendants (Count 4)**
22

23  Plaintiffs' Securities Act claim is both time barred and subject to dismissal

24  under *Morrison*.  Yuga Br. § III.B.2 & D.  Further, this claim also fails against the

25  MoonPay Defendants because they neither "(1) transferred title of securities, or

26  (2) solicited the purchase of securities motivated at least in part by a desire to serve

27  its own financial interests or those of the securities owner," as required under the

28  _____

[7] *See also* Yuga Br. § III.A.5.

Securities Act.  *Le Kun Wu v. Swabplus, Inc.*, 2009 WL 10673199, at *4 (C.D. Cal. Apr. 3, 2009) (citing *Pinter v. Dahl*, 486 U.S. 622, 642-44 (1988)).

*First*, Plaintiffs admit they purchased the Products from secondary market sellers, not from the MoonPay Defendants.  ¶¶ 10-13; ECF 74-3; ECF 74-2 at 9-24; *id.* at 2-8; *id.* at 25-26.  So Plaintiffs have not alleged the MoonPay Defendants "transfer[ed] title" to them.  *Pinter*, 486 U.S. at 642.

*Second*, the MoonPay Defendants did not solicit Plaintiffs' purchases. Plaintiffs allege that MoonPay (1) made social media posts that make reference to BAYC NFTs (¶¶ 162, 172, 203), and (2) hosted a billboard mural in Miami (where none of the Plaintiffs lives or alleges they visited, ¶¶ 10-13) that was subsequently posted on Twitter (which none of the Plaintiffs saw, ¶¶ 244-245).  These facts do not come close to pleading active successful solicitation which requires allegations of *specific* conduct, by *specific* defendants, directed at *specific* investors intended to talk them into buying *specific* securities.  *See, e.g.*, *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *4-6 (C.D. Cal. Dec. 17, 2019) (allegations that company executives pitched shares of another company's securities to investors insufficient for solicitation).  Plaintiffs plead none of those things.  At best, Plaintiffs' allegations establish that MoonPay touted *its services* designed to enable people to purchase BAYC and other digital products.  This is a far cry from active solicitation.  *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) (solicitation requires that defendants "did more than simply urge investors to purchase" securities).[8]

Plaintiffs attempt to liken MoonPay's statements with the "mass communications" that the Ninth Circuit held constituted "solicitation" in *Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1258-59 (9th Cir. 2022)*.*  But in *Pino*, the defendants specifically solicited investments in risky funds, inviting potential investors to "double your money" and touting potential returns "north of 15%,"

---

[8] *See also* Yuga Br. § III.B.1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1  and hosted a "Breakthrough Wealth Summit" at which they presented on the funds
2  and "disseminated material information to would-be investors." *Id.* at 1256, 60.  In
3  contrast, the MoonPay statements focus on MoonPay's services, and the use of
4  those services to acquire digital products, but they did not solicit any particular
5  purchase or investment, or say anything about potential returns.

6       MoonPay's role is much closer to the facts alleged in *In re Tezos Securities*
7  *Litigation,* 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018).  There, the plaintiff
8  sought to pursue Securities Act claims against Bitcoin Suisse (among others),
9  which had provided intermediary services like the conversion of US dollars to
10 cryptocurrency, transfer of cryptocurrency, and the creation of digital wallets.  *Id.*
11 at *3.  The court found that these "ancillary" actions were insufficient to plead
12 solicitation.  *Id.* at *9-10 (quoting *Pinter*, 486 U.S. at 650 n.26).  Judge Failla
13 likewise recently reached the same conclusion, holding that developers of and
14 investors in a decentralized cryptocurrency exchange were not statutory sellers
15 under Section 12(a)(2) and had not solicited the plaintiffs' purchases by virtue of
16 providing a trading platform and tweeting about its services.  *Risley v. Universal*
17 *Navigation, Inc.*, 2023 WL 5609200, at *19 (S.D.N.Y. Aug. 29, 2023) (noting
18 "[a]fter all, no plaintiff would sue the New York Stock Exchange or NASDAQ for
19 tweeting that its exchange was a safe place to trade after that plaintiff had lost
20 money due to an issuer's fraudulent schemes").  While there is no fraudulent
21 scheme here (and MoonPay is not a securities exchange), *Risley* instructs that there
22 is no basis for a claim against the MoonPay Defendants.

23      *Third*, no alleged facts establish that the MoonPay Defendants were
24 motivated by "financial gain" from their purported solicitation.  *Pinter,* 486 U.S. at
25 644 n.21, 648.  Plaintiffs conclude that Defendants had a plan to "financially
26 benefit" (¶ 83), but offer no alleged facts establishing that Defendants had any such
27 plan.  Mere "labels and conclusions" and "formulaic recitation of the elements of a
28 cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**D.     Plaintiffs Fail to State a Control Person Claim (Counts 5 and 9)**

Because Plaintiffs have not pled a predicate violation of the securities laws, their control person claims against Mr. Soto-Wright likewise fail.  *See, e.g.*, *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020); *In re Century City Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 979 (N.D. Cal. 2010).[9]

**E.     Plaintiffs Fail to State a Claim Under California Statutory Law (Counts 6, 10-12)**

Plaintiffs have not alleged "'strict privity' between the parties"—*i.e.*, that any MoonPay Defendant "sold [a Product] directly to [any Plaintiff]." *Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013); *see also Hollifield v. Resolute Capital Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (same).  This defeats Counts 6, 10 and 11 against the MoonPay Defendants.  *See also* Yuga Br. § III.F-G. Count 12 similarly fails because: (1) Plaintiffs have not pled a predicate primary violation, *see Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013); (2) Section 25403(b) of the California Corporations Code does not provide a private right of action, *see Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045807, at *9 (N.D. Cal. Aug. 25, 2005); and (3) Plaintiffs have not pled intent to deceive, *see* Cal. Corp. Code § 25504.1; *supra* Section III.B.4.  *See also* Yuga Br. § III.H.

**F.     Plaintiffs' Unjust Enrichment Claim Fails (Count 13)**

Plaintiffs' unjust enrichment claim (¶¶ 694-699) fails because there is no such claim under California law.  *Walker v. Equity 1 Lenders Grp.*, 2009 WL 1364430, at *9 (S.D. Cal. May 14, 2009) ("[T]here is no cause of action in California for unjust enrichment.").  And while courts may award equitable relief on an unjust enrichment theory when there is no adequate remedy at law, Plaintiffs

---

[9] Plaintiffs also fail to plead *facts* establishing that Mr. Soto-Wright had any control whatsoever of any other defendant.  ¶¶ 572, 573, 650 (vaguely alleging that the control person defendants had the "power to direct or cause the direction of the management and policies of" Yuga).

1  here only contend they will be deprived of an adequate remedy if they **lose** those

2  claims.  That is not the law.  *Grundstrom v. Wilco Life Ins. Co.*, 2022 WL

3  2390992, at *2 (N.D. Cal. July 1, 2022) (the test is "whether an adequate damages

4  remedy is available" not "whether [plaintiffs] will be successful" in pursuing it.).

5  **IV.     CONCLUSION**

6      The MoonPay Defendants request that the Court grant the motion to dismiss.

7

8  Dated:  September 12, 2023                    Respectfully submitted,

9                                                              LATHAM & WATKINS LLP

10

11                                                           By /s/ Colleen C. Smith

12                                                              Colleen C. Smith

13                                                *Attorneys for Defendants MoonPay USA
                                              LLC, and Ivan Soto-Wright*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants MoonPay USA LLC and Ivan Soto-Wright certifies that this brief contains 6,967 words, which [choose one]:

    <u> X </u>  complies with the word limit of L.R. 11-6.1.

    <u>    </u> complies with the word limit set by court order dated [date].


Executed on September 12, 2023, at San Diego, California.


                          LATHAM & WATKINS, LLP


                          By: <u>/s/ Colleen C. Smith</u>
                                 Colleen C. Smith

                          *Attorneys for Defendants MoonPay USA LLC, and Ivan Soto-Wright*