COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:  (310) 883-6527
Facsimile:   (310) 883-6500

ROBBY L.R. SALDAÑA (*pro hac vice* pending)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 776-2109
Facsimile:   (202) 842-7899

*Attorneys for Defendants Justin Bieber, Madonna Louise Ciccone, and Mike Winkelmann*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., WYLIE ARONOW, GREG SOLANO, KEREM ATALAY, ZESHAN ALI, NICOLE MUNIZ, JASMIN SHOEMAKER, PATRICK EHRLUND, CHRISTOPHER LYONS, ALEXIS OHANIAN, AMY WU, MAARIA BAJWA, SOTHEBY'S HOLDINGS INC., GUY OSEARY, MIKE WINKELMANN, MADONNA LOUISE CICCONE, PARIS HILTON, JAMES FALLON, ELECTRIC HOT | Case No. 2:22-cv-08909-FMO-PLA<br><br>**DEFENDANT MADONNA LOUISE CICCONE'S NOTICE OF JOINDER, NOTICE OF MOTION, AND MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      November 30, 2023<br>Time:      10:00 a.m.<br>Dept:      6D<br>Judge:    Hon. Fernando M. Olguin<br><br>Trial Date: Not Scheduled<br>Complaint Filed:  December 8, 2022 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DOG, INC., UNIVERSAL TELEVISION, LLC, JUSTIN BIEBER, AUSTIN RICHARD POST, CALVIN BROADUS JR., KEVIN HART, WARDELL STEPHEN CURRY II, ADIDAS AMERICA INC., ADIDAS VENTURE B.V., IVAN SOTO-WRIGHT, and MOONPAY USA LLC,

Defendants.

## NOTICE OF JOINDER, NOTICE OF MOTION, MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Fernando M. Olguin, United States District Judge, Central District of California Western Division, located at 350 West First Street, Los Angeles, California 90012, Defendant Madonna Louise Ciccone will, and hereby does, move the Court for an order dismissing Plaintiffs' Amended Class Action Complaint (the "AC") (ECF No. 114).

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 9(b), and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of this Motion.

Pursuant to Civil Local Rule 7-3, on September 1, 2023, Defendant's counsel met and conferred with Plaintiffs' counsel regarding this Motion.

Pursuant to the Court's August 14, 2023, Order (ECF No. 125), Ms. Ciccone joins in the Yuga Lab Defendants' Motion to Dismiss ("Yuga's Motion").

## STATEMENT OF RELIEF REQUESTED

Defendant Madonna Louise Ciccone requests that the Court dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1), 9(b), and 12(b)(6).

## ISSUES TO BE DECIDED

Whether the AC should be dismissed pursuant to: (1) Federal Rule of Civil Procedure Rule 12(b)(1) due to Plaintiffs' failure to plead Article III standing for injunctive relief, and (2) Rules 9(b) and 12(b)(6) due to Plaintiffs' failure to adequately plead fraud and failure to state any claim upon which relief may be granted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. CICCONE'S MOT. TO DISMISS
CASE NO. 2:22-CV-08909-FMO-PLA

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.      INTRODUCTION ................................................................................ 1

II.     PLAINTIFFS' ALLEGATIONS AGAINST MS. CICCONE ...................... 1

III.    LEGAL STANDARDS .......................................................................... 4

IV.     ARGUMENT ....................................................................................... 4

    A.      Ms. Ciccone's Alleged Products "Promotions" Are Non-Actionable. ................................................................................. 5

    B.      Plaintiffs Do Not State Any Securities Claims Against Ms. Ciccone (Counts 8, 10). ............................................... 6

        1.      Plaintiffs fail to plead a federal "scheme liability" claim against Ms. Ciccone (Count 8). ................................... 7

        2.      Plaintiffs fail to plead a violation of the California Corporations Code against Ms. Ciccone (Count 10)................. 9

    C.      Plaintiffs Fail to State a UCL Claim Against Ms. Ciccone (Counts 1, 2, 3)...................................................... 10

        1.      Plaintiffs cannot pursue UCL claims premised on alleged securities transactions. ............................................. 11

        2.      Plaintiffs do not plead facts showing they suffered economic injury from Ms. Ciccone's alleged statements—or that they relied on her alleged statements. ...................... 11

        3.      Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Ms. Ciccone with the requisite particularity. .............. 12

    D.      Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/Restitution" Against Ms. Ciccone (Count 13). ................................... 12

    E.      Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Ms. Ciccone—Another Basis to Dismiss their UCL Claims............. 13

    F.      Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Ms. Ciccone.......................................................................... 13

V.      CONCLUSION .................................................................................. 14

CERTIFICATE OF COMPLIANCE............................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
  158 Cal. App. 4th 226 (2007) ................................................................................. 10

*In re Apple Processor Litig.*,
  2022 WL 2064975 (N.D. Cal. June 8, 2022) ......................................................... 12

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) ................................................................................. 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................ 14

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .................................................................................. 6

*In re Diasonics Securities Litig.*,
  599 F. Supp. 447 (N.D. Cal. 1984) ......................................................................... 10

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1102 (N.D. Cal. 2007) ................................................................. 13

*In Re Ethereummax Investor Litigation*,
  No. CV 22-00163-MWF, ECF No. 99 (C.D. Cal. Dec. 6, 2022) ............................ 9

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
  600 F. Supp. 3d 1099 (C.D. Cal. 2022) ................................................................. 12

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019) ..................................................................... 6

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ............................................................ 5

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
  343 F.3d 1000 (9th Cir. 2003) .................................................................................. 5

*Hadley v. Kellogg Sales Co.*,
  243 F.Supp.3d 1074 (N.D. Cal. 2017) ................................................................... 12

*Hovey v. F.S.B.*,
  2022 WL 182160693 (C.D. Cal. Nov. 15, 2022) ................................... 12

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) ............................................. 10

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
  1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ..................................... 10

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................... 6

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
  2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) ........................................ 8

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ......................................................... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ........................................................... 9

*In re Napster, Inc. Copyright Litigation*,
  354 F. Supp. 2d 1113 (N.D. Cal. 2005) ............................................. 13

*Pirozzi v. Apple, Inc.*,
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ............................................... 11

*In re Restoration Robotics, Inc. Sec. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. 2019) ............................................... 5

*Robinson v. HSBC Bank USA*,
  732 F. Supp. 2d 976 (N.D. Cal. 2010) ............................................... 13

*San Francisco Residence Club, Inc. v. Amado*,
  773 F. Supp. 2d 822 (N.D. Ill. 2011) ................................................ 11

*Sollberger v. Wachovia Secs., LLC*,
  2010 WL 2674456 (C.D. Cal. June 30, 2010) ........................................ 5

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................... 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..................................................................... 14

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023).....................................................12

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................1

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...............................................................................5

*Young v. Oakland Unified Sch. Dist.*,
  2020 WL 6684844 (N.D. Cal. Nov. 12, 2020).....................................................14

*ZL Technologies, Inc. v. Gartner, Inc.*,
  2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)........................................................13

**Statutes**

Cal. Bus. & Prof. Code
  § 17200 .................................................................................................................4
  § 17203 ...............................................................................................................13
  § 17204 ...............................................................................................................11
  § 17535 ...............................................................................................................13

Cal. Corp. Code
  § 25401 ......................................................................................................5, 6, 10
  § 25501 ......................................................................................................5, 6, 10

Private Securities Litigation Reform Act of 1995 ........................................................4

Securities Exchange Act of 1934...........................................................................5, 6, 10

**Other Authorities**

Fed. R. Civ. P.
  8(a)........................................................................................................................5
  9(b)...................................................................................................................4, 5
  9(b)........................................................................................................................5
  12(b)(1) ................................................................................................................4
  12(b)(6) ................................................................................................................4

Cooley LLP
Attorneys at Law
San Francisco

iii

Def. Ciccone's Mot. to Dismiss
Case No. 2:22-cv-08909-FMO-PLA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION**[1]

Defendant Madonna Louise Ciccone joins in full the Yuga Defendants' Motion, concurrently filed with the Court. (ECF No. 153.) Ms. Ciccone files the present Motion to provide additional arguments specific to the allegations and claims raised against her. For the reasons in Yuga's Motion, and the reasons herein, the Court should dismiss all claims against Ms. Ciccone.

### II. **PLAINTIFFS' ALLEGATIONS AGAINST MS. CICCONE**

Ms. Ciccone (Madonna) is one of the most innovative and successful musical artists of our generation. Plaintiffs allege that Ms. Ciccone publicly "promoted" Bored Apes Yacht Club Non-Fungible Tokens ("BAYC NFTs") and MoonPay as part of a larger "scheme" by the Yuga Labs and MoonPay Defendants to "artificially increase" the price of BAYC NFTs and four other digital entertainment products (collectively, the "Products"). (*See* AC ¶¶ 6, 29, 226–234, 485.) In short, Plaintiffs' allegations against Ms. Ciccone concern one Twitter post dated March 24, 2022, a statement published in *Variety* Magazine on July 27, 2022 (and later republished in *The Independent* on July 28, 2022),[2] and her relationship with her manager, Defendant Guy Oseary. (*See* AC ¶¶ 80, 223–234.)

Plaintiffs allege that Ms. Ciccone made statements printed in *Variety* and *The Independent* that she was "hellbent" on obtaining a specific BAYC NFT, but ultimately was unable to do so because it was "too expensive," and she was "mad" about "being beaten to a bid for Bored Ape No. 3756." (AC ¶¶ 232–234.) There are

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] Ms. Ciccone's post as well as the *Variety* Magazine article and *The Independent* article, which form the basis of Plaintiffs' claims against her, are incorporated by reference into the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (incorporation by reference doctrine allows the court to consider material not attached to the complaint, "without converting the motion to dismiss into a motion for summary judgment," if "the document forms the basis of the plaintiff's claim").

otherwise no allegations in the AC about the nature of Ms. Ciccone's statements in these articles.[3]  Plaintiffs do not explain why or how the alleged statements in these articles are false or misleading, or led any member of the putative class taking any specific action in reliance on them.  The AC does not allege that Ms. Ciccone did not in fact attempt to obtain the BAYC NFT in question, nor that she was not "mad" about "being beaten to a bid"—nor that she did not ultimately deem the BAYC NFT to be "too expensive" by her standards.

Plaintiffs allege that Ms. Ciccone "promot[ed]" the BAYC NFTs and "related metaverse" in a March 24, 2022, Twitter post.  (AC ¶ 227.)  This post is reproduced below.



---

[3] The *Variety* and *The Independent* articles are available at the links cited in the complaint:  https://variety.com/2022/music/news/guy-oseary-nft-madonna-u2-manager1235325286/;  https://www.independent.co.uk/arts-entertainment/music/news/Madonna-angry-bored-ape-nft-b2132950.html.

The March 24, 2022 post features digital artwork depicting a pink "Ape" with an "evil eye" pattern on its fur, set alongside a picture of Ms. Ciccone wearing sunglasses.  The caption reads: "I finally entered the Metaverse . . . . My very own Ape! Thanks @moonpay We all need protection from the Evil Eye."[4]  Plaintiffs allege that this post was a "promotion," and that Ms. Ciccone "failed to include an 'ad' disclaimer in this post to disclose to investors that this was a paid advertisement" for the Products and MoonPay.  (AC ¶ 229.)  Plaintiffs do not explain in what sense the post was meant to solicit Products sales, nor the basis on which Ms. Ciccone supposedly required to include an "ad" disclaimer.  The AC instead speculates that a "wallet owned/controlled by [Ms.] Ciccone received BAYC NFT #4988 directly from MoonPay," as well as an Otherdeed NFT on May 16, 2022, and "100 plots of virtual land in Otherside on August 5, 2022[]" as "pay[ment]" for Ms. Ciccone to "promote and/or solicit [Products] sales." (AC ¶¶ 223–227.)[5]  Plaintiffs do not allege, however, that Ms. Ciccone ever sold this BAYC NFT for any personal profit.  Furthermore, Plaintiffs' theory that Ms. Ciccone received either the BAYC NFT or other "virtual land" as valuable consideration for her post cuts against their fundamental underlying theory—that the Products were in fact worthless due to the alleged pump-and-dump scheme.

Plaintiffs further allege that Ms. Ciccone's "promotion of the BAYC NFTs and its related metaverse implied to investors that she personally selected her BAYC NFT because she was genuinely interested in the BAYC ecosystem and wanted to be a part of its growing future." (AC ¶ 231.)  According to Plaintiffs, because MoonPay later responded to Ms. Ciccone's post stating that it had selected the BAYC NFT for

---

[4] Emojis included in original post omitted.
[5] All NFT transactions require a "wallet" therefore by nature of the digital asset wallet transactions must occur and Plaintiffs allege nothing as to how or why these alleged transactions (as a necessary part of any NFT transaction) suggest the kind of associational guilt the Complaint alleges.

Ms. Ciccone, she must not have in fact "chose[n]" her own "Ape," demonstrating her "enthusiasm" for the digital artwork was "fake."  (AC ¶¶ 230–231.)

Plaintiffs do not allege any other relevant Products "promotion" by Ms. Ciccone.  The AC is devoid of any allegations that Ms. Ciccone, sold, or offered to sell any Products.  The AC also does not allege that Ms. Ciccone ever directed her Twitter post or article statements to consumers in California (or to any state in particular).  The AC likewise does not allege that Ms. Ciccone offered or sold any Products in California; nor does it allege that Ms. Ciccone offered to buy any Product in California.

Instead, Plaintiffs allege (falsely), "upon information and belief," that Ms. Ciccone was paid "to promote and/or solicit sales and re-sales of the [Products.]" (*See* AC ¶¶ 226, 485, 513.)  Plaintiffs do not substantiate this conclusion with facts, but instead point to vague, group-pled allegations regarding the "web of interconnectivity amongst the Defendants," including concerning Ms. Ciccone's unrelated business relationships with Defendants Mr. Oseary and Mr. Winkelmann. (*See* AC ¶¶ 80, 161 n. 102, 197.)

## III.   LEGAL STANDARDS

The Rule 9(b), Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), and 12(b)(6) dismissal standards articulated in Yuga's Motion apply.  (Yuga's Mot. at 1–5.)  In addition, Rule 12(b)(1) allows a defendant to move for dismissal on grounds that the court lacks subject-matter jurisdiction under Article III. Fed. R. Civ. P. 12(b)(1).

## IV.   ARGUMENT[6]

Plaintiffs assert five claims against Ms. Ciccone under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")), federal

---

[6] Ms. Ciccone joins in full, but does not further address, arguments in the Yuga Defendants' Motion that do not require additional analysis regarding the allegations raised against Ms. Ciccone.

securities law (Section 10(b) of the Securities Exchange Act of 1934), and California securities law (Cal. Corp. Code §§ 25401, 25501).  (AC ¶¶ 476–558; 633–646; 655–669).  Plaintiffs also bring a cause of action, "in the alternative," for "Unjust Enrichment/Restitution."  (AC ¶¶ 694–699.)  These claims, like the entire AC, are grounded in fraud.

Fraud-based claims must be pled with particularity under Rule 9(b), including the "'who, what, when, where, and how'" of any alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiffs concede this in the AC.  (AC ¶ 483.)  Despite their concession, Plaintiffs' claims fall far short of this heightened pleading burden.  Plaintiffs continually refer to purported "schemes" involving groups of "Defendants" or "Promoter Defendants," without distinguishing amongst Defendants and their alleged conduct.  (*See, e.g.*, AC ¶¶ 250, 270, 520, 524.)  This improper group pleading is routinely dismissed.  *See, e.g.*, *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  The AC otherwise fails to state any claim against Ms. Ciccone that passes muster under Rule 9(b) or even Rule 8(a)'s plausibility threshold.

## A.  Ms. Ciccone's Alleged Products "Promotions" Are Non-Actionable.

Ms. Ciccone's alleged statements concerning the Products amount, at most, to immaterial puffery or statements of opinion that are not likely to deceive investors given common sense and context.  "[G]eneralized assertions of . . . optimism or statements of mere puffing" are not actionable under the securities laws or UCL.  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) (deeming generalized, positive discussion as nonactionable and immaterial because no reasonable investor would rely on such statements); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (similar).

Ms. Ciccone's alleged statements in *Variety* and *The Independent*—that she was "hellbent" on trying to obtain a particular BAYC NFT, but couldn't because she

was outbid for it (*see* AC ¶¶ 232–234)—is at most an expression of generic optimism about the Products. The March 24, 2022 Twitter post cited by Plaintiffs is even more innocuous. In the post, Ms. Ciccone expresses enthusiasm for joining the new world of digital art, and "[t]hanks" for receiving her own "Ape." (AC ¶ 227.)

Courts routinely dismiss securities fraud claims premised on the kinds of statements Ms. Ciccone is alleged to have made here. *See, e.g., In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("mildly optimistic, subjective assessment[s] . . . [do not] amount[ ] to a securities violation"); *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague statements like "[w]e are pleased with our progress" are not actionable); *In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) (similar).

## B. Plaintiffs Do Not State Any Securities Claims Against Ms. Ciccone (Counts 8, 10).

Plaintiffs allege a federal securities claim for "scheme liability" under Section 10(b) of the Securities Exchange Act (and Rule 10b-5(a) and (c) promulgated thereunder) (AC ¶¶ 633–646), and a similar securities claim under California Corporations Code Sections 25401 and 25501. (AC ¶¶ 655–669.)

Neither of these causes of action specifically allege any conduct by Ms. Ciccone *at all*. Instead, in just a handful of conclusory paragraphs, Plaintiffs make bald group allegations that "Defendants" engaged in "schemes" and "conspired" to manipulate the price of Products and did so "knowingly or recklessly." (*See* AC ¶¶ 639–644, 659–668.) The complaint leaves Ms. Ciccone to speculate as to which of the panoply of allegations set forth in paragraphs 1–475, if any, are alleged to constitute her supposed acts, misrepresentations, omissions, and/or other "wrongful conduct" that violated the law. Even as to the so-called "Promoter Defendants," it is entirely unclear whether the AC is alleging that Ms. Ciccone received "fiat or cryptocurrency from MoonPay and/or Yuga," "and/or other forms of consideration" from another unspecified source. (AC ¶¶ 166, 198.) This is precisely the type of

"puzzle" pleading courts routinely reject, particularly when applying the strict pleading standards under the PLSRA and for fraud-based securities claims.  *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–1075 (N.D. Cal. 2001) (dismissing complaint with prejudice).

### 1.   Plaintiffs fail to plead a federal "scheme liability" claim against Ms. Ciccone (Count 8).

Plaintiffs' "scheme liability" claim fails for the numerous independent reasons outlined in the Yuga Defendants' Motion.[7]  (Yuga's Mot. at 10–25.)  Additionally, Plaintiffs have not pled particularized facts sufficient to allege (i) that Ms. Ciccone is responsible for any allegedly deceptive or manipulative act in furtherance of the alleged scheme (which is not itself adequately pled), (ii) that Ms. Ciccone possessed the requisite scienter, or (iii) that Plaintiffs relied on Ms. Ciccone's statements. Plaintiffs thus fall far short of alleging Ms. Ciccone's participation in the alleged celebrity promotion scheme.

*No falsity.*  At bottom, Plaintiffs allege that Ms. Ciccone's Twitter post and article statements mislead them into believing that she purchased a Product with her own money, when it was in fact gifted; and that she was unable to purchase a second because it was "in such high demand" and "exclusive." (AC ¶¶ 227–234.) However, as discussed above, Ms. Ciccone's March 24, 2022 Twitter post makes no affirmative representation as to how Ms. Ciccone obtained the artwork.  (*See supra* Part II.)  Ms. Ciccone's post "thanks" MoonPay, but Plaintiffs fail to allege how that expression of gratitude would be false or misleading to any consumer.   As to Ms. Ciccone's alleged statements printed in *Variety* and *The Independent*, Plaintiffs allege that they misled investors into believing that the Products were "so exclusive that even a highly-connected celebrity like [Ms.] Ciccone could not get any specific NFT that she wanted," and that her statement that the "Ape" was "'too expensive' indicated to investors that the Products were "highly valuable[.]" (AC ¶ 234.)   But the AC

---

[7] The only alleged "scheme" implicating Ms. Ciccone is the "[c]elebrity [p]romotion" scheme.  (*See* AC ¶¶ 151–248.)

contains no allegations that these statements were in fact false given the market for the Products at the time.  Plaintiffs also do not allege that Ms. Ciccone was not in fact "hellbent" (non-actionable, hyperbolic puffery) on obtaining the BAYC NFT referred to in the articles, or that Ms. Ciccone did not indeed determine that the NFT was "too expensive" by her standards.  Nor could they—these are non-actionable and subjective statements of generic opinion.  (*See supra* Section IV.A.)

Additionally, Plaintiffs engage in pure speculation when they allege that a confidential witness ("CW1") purportedly did an "investigation" of "the MoonPay Dashboard to try to identify any compliance checks that might have been conducted on Concierge clients" and "did not identify" results "for [CW1]'s entire tenure at MoonPay" for Ms. Ciccone.  (AC ¶ 106.)  These allegations say nothing about whether Ms. Ciccone purchased any BAYC NFTs.  And while Plaintiffs allege that CW1 is a "former MoonPay employee," they do not specifically allege when CW1 was employed by MoonPay, what "targeted searches" CW1 conducted as to Ms. Ciccone, or when those searches were conducted.  (AC ¶¶ 99–112.)  Therefore, the anonymous confidential witness allegations cannot support conclusory allegations that Ms. Ciccone's statements were false or misleading.  *See M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635425, at *9 (C.D. Cal. Oct. 30, 2017) (finding confidential witness statements that were "explicitly speculative and based on nothing more than the confidential witnesses' suspicions" insufficient).

***No deceptive or Manipulative Act(s)***.  Plaintiffs have not alleged with requisite particularity any deceptive or manipulative act by Ms. Ciccone.  For the reasons explained above, on their face, Ms. Ciccone's alleged statements "promoting" the Products were not false, or otherwise "deceptive" or "manipulative" in any way.  Plaintiffs also do not allege that Ms. Ciccone had any independent financial interest in Yuga Labs or MoonPay.  (*See generally* AC.)  Whether Ms. Ciccone's alleged manager and business partner, Mr. Oseary, had a financial interest in MoonPay (*see*

AC ¶ 229) is irrelevant and insufficient to state an independent claim against Ms. Ciccone as an individual.

*No scienter*.  The AC is devoid any allegations, let alone particularized ones, that Ms. Ciccone engaged in intentionally misleading or deliberately reckless conduct.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (explaining that plaintiffs must allege facts supporting a strong scienter inference that is both "cogent and at least as compelling as any opposing inference of nonfraudulent intent").  Furthermore, because the AC contains no allegations that Ms. Ciccone sold the Products or had some other financial interest in the defendant entities, there can be no plausible inference that she stood to benefit from an increase in the price of the Products.  *See id.* ("a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind") (cleaned up).

*No reliance*.  Plaintiffs' conclusory allegations of reliance (*see, e.g.*, AC ¶ 456 (alleging certain plaintiffs "regularly see[] posts from and about Ciccone on various social media platforms") in no way explain how they relied on Ms. Ciccone's particular statements when they were induced to buy or hold their Products.  How could a reasonable investor be induced to purchase a novel digital product based on a statement thanking MoonPay or stating that a BAYC NFT was subjectively "too expensive"?  *See In Re Ethereummax Investor Litigation*, No. CV 22-00163-MWF (SKx), ECF No. 99 at 1 (C.D. Cal. Dec. 6, 2022) ("the law . . . expects investors to act reasonably before basing their bets on the zeitgeist of the moment").

### 2.   Plaintiffs fail to plead a violation of the California Corporations Code against Ms. Ciccone (Count 10).

Plaintiffs' claim under the California Corporations Code should be dismissed for all the independent reasons set forth in the Yuga Defendants' Motion.  (Yuga's Mot. at 38.)  In addition, as to Ms. Ciccone specifically, Plaintiffs have clearly failed to adequately plead foundational elements of the claim.

To state a claim under Sections 25401 and 25501 of the California Corporations Code, Plaintiffs must allege (i) that Ms. Ciccone offered or sold a security, (ii) in California, (iii) by means of a material misrepresentation or omission. *See Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253-54 (2007). Additionally, it is blackletter law that "Sections 25401 and 25501 impose liability only on the actual seller of the security." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013); *see also In re Diasonics Securities Litig.*, 599 F. Supp. 447, 459 (N.D. Cal. 1984) (requirement of "strict privity" bars claims where the plaintiff did not purchase security directly from defendant).

Plaintiffs allege none of these requirements. Not only do Plaintiffs fail to allege that Ms. Ciccone offered or sold any Products in California (because she did not), they also do not identify where the offer to sell or purchase any Product was made, received, or accepted. The AC also does not attempt to plead privity between Plaintiffs and Ms. Ciccone. (*See* AC ¶ 665 ("Privity also exists between the issuers of every Yuga NFT collection (*i.e.* the Company and Executive Defendants) and all those making purchases[.]").)

For the reasons described above (*see supra* Section IV.A, B.1.), the AC also fails to allege any actionable misstatement, omission, or fraudulent scheme against Ms. Ciccone, which also defeats Plaintiffs' claim. *See, e.g., Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998) (dismissing where plaintiff "simply reiterates the factual allegations made in its section 10(b) cause of action" in state claims).

### C.   Plaintiffs Fail to State a UCL Claim Against Ms. Ciccone (Counts 1, 2, 3).

Based on the same alleged statements concerning the Products and her alleged participation in the "celebrity promotion" "scheme," the AC asserts claims against Ms. Ciccone under the three prongs of the UCL. (AC ¶¶ 476–502, 503–532, 533–

558.)  These claims should be dismissed for the reasons outlined in the Yuga Defendants' Motion, as well as those raised herein.

### 1. Plaintiffs cannot pursue UCL claims premised on alleged securities transactions.

As an initial matter, Plaintiffs' UCL claims should be dismissed insofar as Plaintiffs purport to rely on alleged violations of federal or state securities laws because the UCL does not apply to claims arising from securities transactions.  *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004); *San Francisco Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 834 (N.D. Ill. 2011) (dismissing UCL claims because "plaintiffs' theory unavoidably focuses on the purchase of securities, and Bowen is determinative").  Plaintiffs repeatedly insist that NFTs are securities, which alone requires dismissal of their UCL claims.  But even were the Court not inclined to dismiss on these grounds, the UCL claims should be dismissed against Ms. Ciccone for additional independent reasons.

### 2. Plaintiffs do not plead facts showing they suffered economic injury from Ms. Ciccone's alleged statements—or that they relied on her alleged statements.

Under the UCL, a plaintiff must allege facts showing that they suffered economic injury as a result of the defendant's alleged violation of the UCL.  *See* Cal. Bus & Prof. Code § 17204.  When plaintiffs pursue a UCL claim grounded in fraud— as is the case here—the plaintiff's alleged economic injuries must be "a result of the fraudulent conduct," *i.e.*, "the plaintiff must allege 'a causal connection or reliance on the alleged misrepresentation." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013).  Plaintiffs' UCL claims against Ms. Ciccone should be dismissed because Plaintiffs plead no facts showing that they suffered economic injury from reliance on Ms. Ciccone's specific alleged statements.  (*See generally* AC ¶¶ 454 – 464 (grouping plaintiffs' general "aware[ness]" of statements made by Ms. Ciccone with numerous other alleged "promotions" that allegedly induced plaintiff purchases of the Products).)

3. **Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Ms. Ciccone with the requisite particularity.**

Plaintiffs' UCL claims should be dismissed because the AC—which is grounded entirely in fraud—is devoid of particularized allegations sufficient to state a claim under any UCL prong.  Plaintiffs do not attempt to explain how the alleged promotional "statements" by Ms. Ciccone were actually fraudulent, *see Tristan v. Bank of Am.*, 2023 WL 4417271, at *6 (C.D. Cal. June 28, 2023), or how they violated a federal or California statute or regulation, *see Hovey v. F.S.B.*, 2022 WL 182160693, at *5 (C.D. Cal. Nov. 15, 2022).  These failures require dismissal of the UCL fraudulent and unlawful prongs against Ms. Ciccone.

The AC also otherwise contains nothing more than a boilerplate "recitation of the [UCL's] unfair legal standard." *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022).  Such allegations are "conclusory and insufficient to state a claim under the UCL 'unfairness' prong." *Id.*  Moreover, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong . . . cannot survive if the claims under the other two prongs . . . do not survive." *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104–05 (N.D. Cal. 2017).

D. **Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/Restitution" Against Ms. Ciccone (Count 13).**

Ms. Ciccone joins the Yuga Defendants' arguments relevant to Plaintiffs' unjust enrichment claim (Count 13).  (Yuga's Mot. at 39.)  Furthermore, as to Ms. Ciccone specifically, Plaintiff's claim fails because there is *no* allegation that Ms. Ciccone received any financial benefit at the expense of any plaintiff or putative class member.  *See Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp. 3d 1099, 1104 (C.D. Cal. 2022) (requisite element of unjust enrichment/restitution is "the receipt of a benefit and the unjust retention of the benefit at the expense of another.").

**E.    Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Ms. Ciccone—Another Basis to Dismiss their UCL Claims.**

Under the UCL, only restitution and injunctive relief are available to private plaintiffs.  *See* Cal. Bus. & Prof. Code §§ 17203, 17535; *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 n.9 (N.D. Cal. 2010) ("[U]nder the UCL restitution is the only form of monetary relief available").

Plaintiffs' requests for restitution under the UCL must be dismissed for failure to plead that they paid money to Ms. Ciccone.  Restitution cannot be ordered if "the plaintiff did not pay any money, even indirectly, to the defendant."  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1102, 1103 (N.D. Cal. 2007).  Plaintiffs do not allege any direct or indirect monetary payment to Ms. Ciccone.  Their "'fail[ure] to allege that the money [they purportedly lost] . . . is now, or ever was, in the possession of'" Ms. Ciccone, therefore dooms their UCL claims—which should be dismissed with prejudice.  *ZL Technologies, Inc. v. Gartner, Inc.*, 2009 WL 3706821, at *10, *13 n.7 (N.D. Cal. Nov. 4, 2009) (cleaned up); *see also Robinson*, 732 F. Supp. 2d 976, 989 n.9 (N.D. Cal. 2010) ("Plaintiffs, by their own admission, are not and have never been customers of [defendant], therefore, there are no funds to return."); *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (affirming dismissal of UCL claim where nothing suggested defendants were "in possession of funds in which" claimant had "an ownership interest"); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455, 458 (2005) (holding that plaintiff failed to allege a viable claim for restitution).

**F.    Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Ms. Ciccone.**

Plaintiffs' requests for injunctive relief must be dismissed for lack of Article III standing because the AC is devoid of factual allegations showing that Plaintiffs face any actual, let alone imminent harm, from Ms. Ciccone.  To establish Article III standing to pursue injunctive relief, Plaintiffs must "show that [they are] under threat of suffering 'injury in fact' that is concrete and particularized . . . actual and imminent

. . . [and] fairly traceable to the challenged action of the defendant" in order to seek injunctive relief.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (noting "threatened injury must be certainly impending" to satisfy Article III).  The AC's allegations regarding Ms. Ciccone's conduct self-evidently cannot support standing for injunctive relief.  The AC only alleges that Ms. Ciccone made statements on social media and in two magazine articles regarding the Products in 2022.  There are otherwise no allegations about potential future conduct as to Ms. Ciccone.  Because the AC plainly does not establish any actual or imminent injury from Ms. Ciccone, Plaintiffs' requests for injunctive relief are defective and should be dismissed.  *See Young v. Oakland Unified Sch. Dist.*, 2020 WL 6684844, at *1 (N.D. Cal. Nov. 12, 2020) (striking request for injunctive relief for lack of standing).

## V.  CONCLUSION

For the foregoing reasons, and those explained in the Yuga Defendants' Motion, the Court should dismiss all claims against Ms. Ciccone with prejudice.

Dated:      September 12, 2023          COOLEY LLP


By: */s/ Michael G. Rhodes*
Michael G. Rhodes (116127)
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
Tel:  415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com

*Attorneys for Defendants Justin Bieber, Madonna Louise Ciccone, and Mike Winkelmann*

1

## CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Defendant Madonna Louise Ciccone,

3 certifies that this brief contains 4,357 words, which, complies with the word limit set

4 by court order dated August 14, 2023 (ECF No. 125).

5

6 Dated:  September 12, 2023  COOLEY LLP

7

8             By:*/s/ Michael G. Rhodes*

9               Michael G. Rhodes (116127)
                3 Embarcadero Center, 20th Fl.

10              San Francisco, CA 94111
                Tel:  415-693-2000

11              Fax: 415-693-2222
                rhodesmg@cooley.com

12
             *Attorneys for Defendants Justin Bieber,*

13            *Madonna Louise Ciccone, and Mike Winkelmann*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28