COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:  (310) 883-6527
Facsimile:   (310) 883-6500

ROBBY L.R. SALDAÑA (*pro hac vice* pending)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 776-2109
Facsimile:   (202) 842-7899

*Attorneys for Defendants Justin Bieber, Madonna Louise Ciccone, and Mike Winkelmann*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., WYLIE ARONOW, GREG SOLANO, KEREM ATALAY, ZESHAN ALI, NICOLE MUNIZ, JASMIN SHOEMAKER, PATRICK EHRLUND, CHRISTOPHER LYONS, ALEXIS OHANIAN, AMY WU, MARIA BAJWA, SOTHEBY'S HOLDINGS INC., GUY OSEARY, MIKE WINKELMANN, MADONNA LOUISE CICCONE, PARIS HILTON, JAMES FALLON, ELECTRIC HOT | Case No. 2:22-cv-08909-FMO-PLA<br><br>**DEFENDANT MIKE WINKELMANN'S NOTICE OF JOINDER, NOTICE OF MOTION, AND MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       November 30, 2023<br>Time:      10:00 a.m.<br>Dept:       6D<br>Judge:     Hon. Fernando M. Olguin<br><br>Trial Date: Not Scheduled<br>Complaint Filed:  December 8, 2022 |

DOG, INC., UNIVERSAL TELEVISION, LLC, JUSTIN BIEBER, AUSTIN RICHARD POST, CALVIN BROADUS JR., KEVIN HART, WARDELL STEPHEN CURRY II, ADIDAS AMERICA INC., ADIDAS VENTURE B.V., IVAN SOTO-WRIGHT, and MOONPAY USA LLC,

Defendants.

## NOTICE OF JOINDER, NOTICE OF MOTION, AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Fernando M. Olguin, United States District Judge, Central District of California Western Division, located at 350 West First Street, Los Angeles, California 90012, Defendant Mike Winkelmann will, and hereby does, move the Court for an order dismissing Plaintiffs' Amended Class Action Complaint (the "AC" or "Complaint") (ECF No. 114).

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(1), 9(b), and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of this Motion.  Pursuant to Civil Local Rule 7-3, on September 1, 2023, Defendant's counsel met and conferred with Plaintiffs' counsel regarding this Motion.

Pursuant to the Court's August 14, 2023 Order (ECF No. 125), Mr. Winkelmann joins in the Yuga Lab Defendants' Motion to Dismiss ("Yuga Defendants' Motion" or "Yuga's Motion").

### STATEMENT OF RELIEF REQUESTED

Defendant Mike Winkelmann requests that the Court dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 9(b), and 12(b)(6).

### ISSUES TO BE DECIDED

Whether the AC should be dismissed pursuant to: (1) Rule 12(b)(2) for lack of personal jurisdiction as to Mr. Winkelmann as to the claims asserted in the AC; (2) Rule 12(b)(1) due to Plaintiffs' failure to plead Article III standing for injunctive relief, and (3) Rules 9(b) and 12(b)(6) due to Plaintiffs' failure to adequately plead fraud and failure to state any claim upon which relief may be granted.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES................................................. 1

I.     Introduction ......................................................................................... 1

II.    Plaintiffs' Allegations Against Mr. Winkelmann .............................. 1

III.   Legal Standards ................................................................................... 5

IV.    Argument ............................................................................................. 5

       A.     Plaintiffs' Claims Sounding in Fraud Must be Particularly Pled. ........ 5

       B.     Mr. Winkelmann's PRODUCTS "Promotions" Are Non-Actionable Puffery. ....................................................................... 6

       C.     Plaintiffs Do Not State Any Securities Claims Against Mr. Winkelmann (Counts 8, 10). ....................................................... 7

              1.     Plaintiffs fail to plead a federal "scheme liability" claim against Mr. Winkelmann (Count 8). ........................................... 8

              2.     Plaintiffs fail to plead a violation of the California Corporations Code against Mr. Winkelmann (Count 10). ......... 9

       D.     Plaintiffs Fail to State a UCL Claim Against Mr. Winkelmann (Counts 1, 2, 3). .......................................................... 10

              1.     Plaintiffs cannot pursue UCL claims premised on alleged securities transactions. ..................................................... 11

              2.     Plaintiffs do not plead facts showing they suffered economic injury from Mr. Winkelmann's alleged statements—or that they relied on his alleged statements........ 11

              3.     Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Mr. Winkelmann with the requisite particularity......... 12

       E.     Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/ Restitution" Against Mr. Winkelmann (Count 13) ............................ 12

       F.     Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Mr. Winkelmann—Another Basis to Dismiss their UCL Claims. ..... 13

       G.     Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Mr. Winkelmann. ................................................................................ 14

       H.     Upon Dismissal of the Federal Claims, the Court Should Decline to Exercise Pendent Jurisdiction Over the California State Law Claims Against Mr. Winkelmann. ................................... 14

V.     Conclusion......................................................................................... 16

CERTIFICATE OF COMPLIANCE........................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apodaca v. Whirlpool Corp.*,
    2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ........................................................... 7

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
    158 Cal. App. 4th 226 (2007) ................................................................................ 10

*In re Apple Processor Litig.*,
    2022 WL 2064975 (N.D. Cal. June 8, 2022) ........................................................ 12

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ................................................................................ 5

*Bowen v. Ziasun Techs., Inc.*,
    116 Cal. App. 4th 777 (2004) ................................................................................ 11

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
    582 U.S. 255 (2017) .............................................................................................. 15

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .............................................................................................. 14

*Court of Master Sommeliers, Americas v. Pilkey*,
    2019 WL 9443609 (N.D. Cal. Dec. 9, 2019) ....................................................... 16

*Cullen v. Shutterfly Lifetouch, LLC*,
    2021 WL 2000247 (N.D. Cal. May 19, 2021) ..................................................... 15

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) ................................................................................ 7

*In re Diasonics Securities Litig.*,
    599 F. Supp. 447 (N.D. Cal. 1984) ...................................................................... 10

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................................................... 13

*In Re Ethereummax Investor Litigation*,
    No. CV 22-00163-MWF, ECF No. 99 (C.D. Cal. Dec. 6, 2022) .......................... 9

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
   600 F. Supp. 3d 1099 (C.D. Cal. 2022) ................................................................. 12

*In re Facebook, Inc. Sec. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) ................................................................... 7

*In re Fusion-io, Inc. Sec. Litig.*,
   2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ........................................................ 6

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ............................................................................. 6

*Goldberg v. Rome McGuigan, P.C.*,
   2021 WL 3520725 (C.D. Cal. Apr. 23, 2021) ..................................................... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................................ 15

*Hadley v. Kellogg Sales Co.*,
   243 F.Supp.3d 1074 (N.D. Cal. 2017) ................................................................ 12

*Hovey v. F.S.B.*,
   2022 WL 182160693 (C.D. Cal. Nov. 15, 2022) ................................................ 12

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ............................................................. 10

*Kahn v. City of Orange*,
   2018 WL 1721731 (C.D. Cal. April 4, 2018) ..................................................... 14

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
   1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ................................................... 10

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................................... 7

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005) ............................................................................. 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ............................................................................. 9

*In re Napster, Inc. Copyright Litigation*,
    354 F. Supp. 2d 1113 (N.D. Cal. 2005)................................................................ 13

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013)................................................................ 11

*In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019)................................................................ 6

*Robinson v. HSBC Bank USA*,
    732 F. Supp. 2d 976 (N.D. Cal. 2010)................................................................ 13

*San Francisco Residence Club, Inc. v. Amado*,
    773 F. Supp. 2d 822 (N.D. Ill. 2011)................................................................ 11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)................................................................ 15

*Sollberger v. Wachovia Secs., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010)................................................................ 6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001)................................................................ 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................ 14

*Tristan v. Bank of Am.*,
    2023 WL 4417271 (C.D. Cal. June 28, 2023)................................................................ 12

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)................................................................ 1

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)................................................................ 6

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................ 15

*Werner v. Dowlatsingh*,
    818 F. App'x 671 (9th Cir. 2020)................................................................ 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Young v. Oakland Unified Sch. Dist.*,
   2020 WL 6684844 (N.D. Cal. Nov. 12, 2020) ..................................................... 14

*ZL Technologies, Inc. v. Gartner, Inc.*,
   2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) ........................................................ 13

**Statutes**

Cal. Bus. & Prof. Code
   § 17200 ....................................................................................................................... 5
   § 17203 ..................................................................................................................... 13
   § 17204 ..................................................................................................................... 11
   § 17535 ..................................................................................................................... 13

Cal. Corp. Code
   § 25401 ........................................................................................................... 5, 7, 9, 10
   § 25501 ............................................................................................................. 7, 9, 10
   § 25502 ....................................................................................................................... 5

Private Securities Litigation Reform Act of 1995 ........................................................ 5

Securities Exchange Act of 1934 ......................................................................... 5, 7, 10

**Other Authorities**

Fed. R. Civ. P.
   9(b) .......................................................................................................................... 5, 6
   12(b)(1) ....................................................................................................................... 5
   12(b)(2) ....................................................................................................................... 5
   12(b)(6) ....................................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION[1]

Defendant Mike Winkelmann joins in full the Yuga Defendants' Motion, concurrently filed with the Court. (ECF No. 153.)  Mr. Winkelmann files the present Motion to provide additional arguments specific to the allegations and claims raised against him.  For the reasons in Yuga's Motion, and the reasons articulated herein, the Court should dismiss all claims against Mr. Winkelmann.

### II.    PLAINTIFFS' ALLEGATIONS AGAINST MR. WINKELMANN

Mr. Winkelmann is a celebrated digital artist.  Plaintiffs allege that Mr. Winkelmann publicly "promoted" Bored Apes Yacht Club Non-Fungible Tokens ("BAYC NFTs") and MoonPay as part of a larger "scheme" by the Yuga Labs and MoonPay Defendants to "artificially increase" the price of BAYC NFTs and four other digital entertainment products (collectively, the "Products").  (*See* AC ¶¶ 27, 160–162, 164, 188, 243, 455, 460.)  In short, Plaintiffs' allegations against Mr. Winkelmann concern his appearance on the November 11, 2021 episode of the *Tonight Show*, three Twitter posts dated November 3, 2021, March 12 2022,[2] and August 22, 2022,[3] and his alleged relationship with Defendant Guy Oseary.  (*See* AC ¶¶ 82, 160, 219, 243.)

Plaintiffs allege that during the November 11, 2021 *Tonight Show* episode where he appeared as a guest, Mr. Winkelmann "expressed approval" of Defendant James Fallon's statements about the Products and MoonPay.  (AC ¶ 160.)  There are

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] In paragraph 219 of the complaint, Plaintiffs mistakenly refer to this second post as having appeared on May 12, 2022.  The link to the Twitter post included in the footnote, however, confirms that Plaintiffs intend to refer to Mr. Winkelmann's March 12, 2022 post. (*See* AC ¶ 219, n. 179.)

[3] Mr. Winkelmann's posts, which form the basis of Plaintiffs' claims against him, are incorporated by reference into the complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (incorporation by reference doctrine allows the court to consider material not attached to the complaint, "without converting the motion to dismiss into a motion for summary judgment," if "the document forms the basis of the plaintiff's claim").

otherwise no allegations in the AC about the nature of Mr. Winkelmann's statements during the *Tonight Show* interview.[4]

Mr. Winkelmann's three Twitter posts allegedly promoting the Products are reproduced below (AC ¶¶ 219, 243).



//

//

---

[4] The *Tonight Show* interview is available to view at the link cited in the complaint: https://www.instagram.com/p/CWJI-cJp5Fu/?hl=en.   (AC ¶ 160, n. 101.)   The alleged expression of "approval" that Mr. Winkelmann offers in response to Defendant Fallon's generic statements about the Products and MoonPay is: "Good stuff."



ok after last weeks onslaught of retaliatory GM's wanted to try something a bit different...

a GM contest where the first 200 people to ignore this GM and just go about their day wins 1000 $APE. to enter, do not reply to this GM in any way!!

good luck everyone!!!! ❤️❤️❤️

6:16 AM · Aug 22, 2022

182 Reposts    22 Quotes    1,804 Likes    3 Bookmarks

//

//

1    The November 3, 2021 post is an image of a musical performance that Mr.

2    Winkelmann describes as "going hard af."  The March 12, 2022 post depicts digital

3    art that Mr. Winkelmann created, with a caption reading: "YUGA LABS."  The third

4    post, on August 22, 2022, jokes that the "first 200 people to ignore this GM and just

5    go about their day wins 1000 $APE."  Plaintiffs allege that this third Twitter post

6    "went so far as to offer 1,000 ApeCoin tokens" as part of a "promotional contest."

7    (AC ¶ 219.)  But it is clear from the context of the message that Mr. Winkelmann—

8    well-known for his humor online—was not in fact promoting any promotional

9    contest related to the Products.  Indeed, there are no allegations in the AC about a

10   contest where people could supposedly win "1000" ApeCoin for "ignor[ing]"

11   something that Mr. Winkelmann posted online (let alone explaining how persons

12   could enter a promotional contest by "just go[ing] about their day").  In essence,

13   Plaintiffs are alleging that First Amendment protected humor and sarcasm about

14   online activity are actionable public statements on which an ordinary consumer could

15   rely – an absurd proposition.

16   Plaintiffs do not allege any other relevant Yuga Products "promotion" by Mr.

17   Winkelmann.  The AC is also devoid of any allegations that Mr. Winkelmann owned

18   any Products, let alone publicly represented that he purchased, bought, sold, or

19   offered to sell any.  The AC does not allege that Mr. Winkelmann ever directed his

20   Twitter posts to consumers in California (or to any state in particular).  The AC

21   likewise does not allege that Mr. Winkelmann offered or sold any Yuga Products in

22   California; nor does it allege that Mr. Winkelmann offered to buy any Yuga Product

23   in California.

24   Instead, Plaintiffs allege, "upon information and belief," that Mr. Winkelmann

25   was "recruited and paid . . . to promote both MoonPay and the BAYC collection of

26   NFTs." (*See* AC ¶¶ 160, 485(c), 513.)  Plaintiffs attempt to substantiate this

27   conclusory allegation by pointing to vague group allegations of the "web of

28   interconnectivity amongst the Defendants," including specifically with Defendant

Mr. Oseary.  (*See* AC ¶¶ 82, 160, 161, n 102.)  The AC claims Mr. Oseary "used" Mr. Winkelmann to "facilitate a meeting with the Yuga and the Executive Defendants," so that Mr. Oseary allegedly "could pitch his plan to promote Yuga and the BAYC NFT collection."  (AC ¶¶ 82.)  There are no allegations about where or when this meeting took place let alone what was said that connects the meeting to the matters alleged in this case.  And there are otherwise no allegations about Mr. Winkelmann's role in the meeting.

## III.   LEGAL STANDARDS

The Rule 9(b), Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), 12(b)(6) dismissal standards articulated in Yuga's Motion apply. (*See* Yuga's Mot. at 1–5.)  The court may dismiss for lack of personal jurisdiction under Rule 12(b)(2).  The plaintiff bears the burden of establishing such jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  In addition, Rule 12(b)(1) allows a defendant to move for dismissal on grounds that the court lacks subject-matter jurisdiction under Article III.  Fed. R. Civ. P. 12(b)(1).

## IV.   ARGUMENT[5]

Plaintiffs assert five claims against Mr. Winkelmann under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")), federal securities law (Section 10(b) of the Securities Exchange Act of 1934), and California securities law (Cal. Corp. Code §§ 25401, 25501).  (AC ¶¶ 476–558; 633–646; 655–669).  Plaintiffs also bring a cause of action, "in the alternative," for "Unjust Enrichment/Restitution."  (AC ¶¶ 694–699.)  The AC falls well short of stating a claim under any of these theories.

### A.   Plaintiffs' Claims Sounding in Fraud Must be Particularly Pled.

As Plaintiffs concede, all fraud-based claims must be pled with particularity

---

[5] Mr. Winkelmann joins in full, but does not further address, arguments in the Yuga Defendants' Motion that do not require additional analysis regarding the allegations raised against Mr. Winkelmann.

under Rule 9(b), including the "'who, what, when, where, and how'" of any alleged fraud.  (AC ¶ 483) (citation omitted).  The complaint falls far short of this heightened pleading burden—especially as to the allegations regarding Mr. Winkelmann. Plaintiffs continually refer to purported "schemes" involving "Defendants" or "Promoter Defendants," without any attempt to distinguish among the various defendants and their alleged conduct.  (*See, e.g.*, AC ¶¶ 250, 270, 431, 520.)  This kind of group pleading is routinely dismissed, *see, e.g.*, *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010), and is especially insufficient here given Plaintiffs' claims sounding in fraud.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### B.    Mr. Winkelmann's Alleged "Promotions" of Yuga Products Are Non-Actionable Puffery.

Mr. Winkelmann's alleged statements concerning the Yuga Products amount, at most, to immaterial puffery that was not likely to deceive investors given common sense and context.  "[G]eneralized assertions of . . . optimism or statements of mere puffing" are not actionable under the securities laws or UCL.  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) (deeming generalized, positive discussion as nonactionable and immaterial because no reasonable investor would rely on such statements); *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (non-actionable puffery also includes statements that are "generalized, vague and unspecific").

Even affording Mr. Winkelmann's statements the most plaintiff-friendly interpretation, they are at most generic expressions of "optimism" about the prospects of the Products.  In fact, multiple of the posts cited by Plaintiffs make no specific "statement" whatsoever concerning the Products.  (*See supra* Part II.)   Mr. Winkelmann's statements also included humor, sarcasm, or playful language, further underscoring that they are not actionable statements under securities laws or

consumer protection statutes. *See, e.g., Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (concluding that advertising statements were non-actionable puffery considering their humor).

Courts routinely dismiss securities fraud claims premised on the kinds of statements Mr. Winkelmann is alleged to have made here. *See, e.g., In re Cutera Sec. Litig.,* 610 F.3d 1103, 1111 (9th Cir. 2010) ("mildly optimistic, subjective assessment[s] . . . [do not] amount[ ] to a securities violation"); *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague statements like "[w]e are pleased with our progress" are not actionable); *In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) (statements like the Facebook community "continues to grow" held non-actionable).

## C.   Plaintiffs Do Not State Any Securities Claims Against Mr. Winkelmann (Counts 8, 10).

The complaint alleges a federal securities claim for "scheme liability" under Section 10(b) of the Securities Exchange Act (and Rule 10b-5(a) and (c) promulgated thereunder) (AC ¶¶ 633–646), and a similar securities claim under California Corporations Code Sections 25401 and 25501. (AC ¶¶ 655–669.)

Neither of these causes of action specifically allege any conduct by Mr. Winkelmann—***at all***. Instead, in just a handful of conclusory paragraphs, Plaintiffs make group allegations that "Defendants" engaged in "schemes" and "conspired" to manipulate the price of the Products and did so "knowingly or recklessly." (*See* AC ¶¶ 639–644, 659–668.)  The complaint leaves Mr. Winkelmann to speculate as to which of his supposed acts, misrepresentations, omissions, and/or other "wrongful conduct" alleged in paragraphs 1–475 allegedly violated the law.  Even as to the so-called "Promoter Defendants," it is entirely unclear whether the AC is alleging that Mr. Winkelmann specifically received "fiat or cryptocurrency from MoonPay and/or Yuga," "and/or other forms of consideration" for another unspecified source.  (AC ¶¶ 166, 198.)  This is precisely the type of "puzzle" pleading courts routinely reject,

particularly when applying the strict pleading standards under the PLSRA and for fraud-based securities claims. *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–1075 (N.D. Cal. 2001) (dismissing complaint with prejudice).

> **1.    Plaintiffs fail to plead a federal "scheme liability" claim against Mr. Winkelmann (Count 8).**

Plaintiffs' "scheme liability" claim fails for the numerous independent reasons outlined in the Yuga Defendants' Motion.[6] (Yuga's Mot. at 11–25.)  Additionally, Plaintiffs have not pled particularized facts sufficient to allege (i) that Mr. Winkelmann is responsible for any false statements, or deceptive or manipulative act in furtherance of the alleged scheme, (ii) that Mr. Winkelmann possessed the requisite scienter, or (iii) that Plaintiffs relied on Mr. Winkelmann's statements. Plaintiffs thus fall far short of alleging Mr. Winkelmann's participation in the alleged celebrity promotion scheme.

*No Falsity.* For the reasons discussed above in Section IV.B. Plaintiffs have not adequately alleged a false or misleading statement or omission by Mr. Winkelmann.

*No Deceptive or Manipulative Act(s)*.  Plaintiffs have not alleged with the requisite particularity any deceptive or manipulative act by Mr. Winkelmann.  For the reasons explained above, Mr. Winkelmann's appearance on the *Tonight Show* and his social media posts allegedly "promoting" (a real stretch) the Yuga Products were not "deceptive" or "manipulative" in any way.  Plaintiffs also do not allege that Mr. Winkelmann received any Products in exchange for the alleged "promotions," or otherwise had a financial interest in Yuga Labs or MoonPay.  (*See generally* AC.)

*No Scienter*.  The AC is devoid any allegations, let alone particularized ones, that Mr. Winkelmann engaged in intentionally misleading or deliberately reckless

---

[6] The only alleged "scheme" implicating Mr. Winkelmann is the "celebrity promotion scheme." (*See* AC ¶¶ 151–248.)

conduct.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (explaining that plaintiffs must allege facts supporting a strong scienter inference that is both "cogent and at least as compelling as any opposing inference of nonfraudulent intent").  Furthermore, because the AC contains no allegations that Mr. Winkelmann owned, bought, or sold the Products or had some other financial interest in the defendant entities, there can be no plausible inference that he stood to benefit from an increase in the price of the Products.  *See id.* ("a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind") (cleaned up).

***No Reliance***.  Plaintiffs' conclusory allegations of reliance (*see* AC ¶ 455 (alleging certain plaintiffs were "aware" of statements made by Mr. Winkelmann on the *Tonight Show* and in social media posts) in no way explain how they relied on Mr. Winkelmann's statements when they were induced to buy or hold their Yuga Products.  Indeed, aside from not being actionable on its face (*see infra* Section IV.B), how could a reasonable investor be induced to purchase a novel digital product based on a statement like "going hard af"?  *See In Re Ethereummax Investor Litigation*, No. CV 22-00163-MWF (SKx), ECF No. 99 at 1 (C.D. Cal. Dec. 6, 2022) ("the law . . . expects investors to act reasonably before basing their bets on the zeitgeist of the moment").

### 2. Plaintiffs fail to plead a violation of the California Corporations Code against Mr. Winkelmann (Count 10).

Plaintiffs' claim under the California Corporations Code should be dismissed for all the independent reasons set forth in the Yuga Defendants' Motion.  (Yuga's Mot. at 38.)  In addition, as to Mr. Winkelmann specifically, Plaintiffs have clearly failed to adequately plead foundational elements of the claim.

To state a claim under Sections 25401 and 25501 of the California Corporations Code, Plaintiffs must allege (i) that Mr. Winkelmann offered or sold a security, (ii) in California, (iii) by means of a material misrepresentation or omission.

*See Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253-54 (2007).  Additionally, it is blackletter law that "Sections 25401 and 25501 impose liability only on the actual seller of the security."  *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013); *see also In re Diasonics Securities Litig.*, 599 F. Supp. 447, 459 (N.D. Cal. 1984) (requirement of "strict privity" bars claims where the plaintiff did not purchase security directly from defendant).

Plaintiffs allege none of these requirements.  Not only do Plaintiffs fail to allege that Mr. Winkelmann offered or sold any Products in California (because he did not), they also do not identify where the offer to sell or purchase any Products was made, received, or accepted.[7]  The AC also does not attempt to plead privity between Plaintiffs and Mr. Winkelmann.  (*See* AC ¶ 665 ("Privity also exists between the issuers of every Yuga NFT collection (i.e.  the Company and Executive Defendants) and all those making purchases[.]").)

For the reasons described above (*see supra* Section IV.B., C.1.), the AC also fails to allege any actionable misstatement, omission, or fraudulent scheme against Mr. Winkelmann, which also defeats Plaintiffs' claim.  *See, e.g., Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998) (dismissing where plaintiff "simply reiterates the factual allegations made in its section 10(b) cause of action" in state claims).

### D.    Plaintiffs Fail to State a UCL Claim Against Mr. Winkelmann (Counts 1, 2, 3).

Based on the same alleged statements concerning the Products and his alleged participation in the "celebrity promotion scheme," the AC asserts claims against Mr. Winkelmann under the three prongs of the UCL.  (AC ¶¶ 476 –502, 503–532, 533–

---

[7] All Plaintiffs except Titcher reside outside California and allege no injury in California.  (*See* AC ¶¶ 10-13.)  Titcher alleges that he purchased one MAYC NFT and one Otherdeed NFT. (AC ¶ 13.)  And Mr. Winkelmann is not alleged to have purchased, been gifted, sold, or otherwise owned any MAYC or Otherdeed NFTs.

558.)   These claims should be dismissed for the reasons outlined in the Yuga Defendants' Motion, as well as those raised herein.

### 1.   Plaintiffs cannot pursue UCL claims premised on alleged securities transactions.

As an initial matter, Plaintiffs' UCL claims should be dismissed insofar as Plaintiffs purport to rely on alleged violations of federal or state securities laws because the UCL does not apply to claims arising from securities transactions.  *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004); *San Francisco Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 834 (N.D. Ill. 2011) (dismissing UCL claims because "plaintiffs' theory unavoidably focuses on the purchase of securities, and Bowen is determinative").  Plaintiffs repeatedly insist that NFTs are securities, which alone requires dismissal of their UCL claims.  But even were the Court not inclined to dismiss on these grounds, the UCL claims should be dismissed against Mr. Winkelmann for additional independent reasons.

### 2.   Plaintiffs do not plead facts showing they suffered economic injury from Mr. Winkelmann's alleged statements—or that they relied on his alleged statements.

Under the UCL, a plaintiff must allege facts showing that they suffered economic injury as a result of the defendant's alleged violation of the UCL.  *See* Cal. Bus & Prof. Code § 17204.  When plaintiffs pursue a UCL claim grounded in fraud—as is the case here—the plaintiff's alleged economic injuries must be "a result of the fraudulent conduct," *i.e.*, "the plaintiff must allege 'a causal connection or reliance on the alleged misrepresentation."  *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013).  Plaintiffs' UCL claims against Mr. Winkelmann should be dismissed because Plaintiffs plead no facts showing that they suffered economic injury from reliance on Mr. Winkelmann's specific alleged statements.  (*See generally* AC ¶¶ 454 –464 (grouping plaintiffs' general "aware[ness]" of statements

made by Mr. Winkelmann on the *Tonight Show* with numerous other alleged "promotions" that allegedly induced plaintiff purchases of theProducts).)

> **3.      Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Mr. Winkelmann with the requisite particularity.**

Plaintiffs' UCL claims should be dismissed because the AC—which is grounded entirely in fraud—is devoid of particularized allegations sufficient to state a claim under any UCL prong.  Plaintiffs do not attempt to explain how the alleged promotional "statements" by Mr. Winkelmann were actually fraudulent, *see Tristan v. Bank of Am.*, 2023 WL 4417271, at *6 (C.D. Cal. June 28, 2023), or how they violated a federal or California statute or regulation, *see Hovey v. F.S.B.*, 2022 WL 182160693, at *5 (C.D. Cal. Nov. 15, 2022).  These failures require dismissal of the UCL fraudulent and unlawful prongs against Mr. Winkelmann.

The AC also otherwise contains nothing more than a boilerplate "recitation of the [UCL's] 'unfair' legal standard."  *In re Apple Processor Litig.*, 2022 WL 2064975, at *13 (N.D. Cal. June 8, 2022).  Such allegations are "conclusory and insufficient to state a claim under the UCL 'unfairness' prong."  *Id.*  Moreover, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong . . . cannot survive if the claims under the other two prongs . . . do not survive."  *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104–05 (N.D. Cal. 2017).

> **E.      Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/ Restitution" Against Mr. Winkelmann (Count 13).**

Mr. Winkelmann joins the Yuga Defendants' arguments relevant to Plaintiffs' unjust enrichment claim (Count 13).  (Yuga's Mot. at 39.)  Furthermore, as to Mr. Winkelmann specifically, Plaintiff's claim fails because there is ***no*** allegation that Mr. Winkelmann received any financial benefit at the expense of any plaintiff or putative class member.  *See Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F.

Supp. 3d 1099, 1104 (C.D. Cal. 2022) (requisite element of unjust enrichment/restitution is "the receipt of a benefit and the unjust retention of the benefit at the expense of another.").

### F. Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Mr. Winkelmann—Another Basis to Dismiss their UCL Claims.

Under the UCL, only restitution and injunctive relief are available to private plaintiffs. *See* Cal. Bus. & Prof. Code §§ 17203, 17535; *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 n.9 (N.D. Cal. 2010) ("[U]nder the UCL restitution is the only form of monetary relief available").

Plaintiffs' requests for restitution under the UCL must be dismissed for failure to plead that they paid money to Mr. Winkelmann. Restitution cannot be ordered if "the plaintiff did not pay any money, even indirectly, to the defendant." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1103 (N.D. Cal. 2007). Plaintiffs do not allege any direct or indirect monetary payment to Mr. Winkelmann. Their "'fail[ure] to allege that the money [they purportedly lost] . . . is now, or ever was, in the possession of'" Mr. Winkelmann, therefore dooms their UCL claims—which should be dismissed with prejudice. *ZL Technologies, Inc. v. Gartner, Inc.*, 2009 WL 3706821, at *10, *13 n.7 (N.D. Cal. Nov. 4, 2009); *see also Robinson*, 732 F. Supp. 2d at 989 n.9 ("Plaintiffs, by their own admission, are not and have never been customers of [defendant], therefore, there are no funds to return."); *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (affirming dismissal of UCL claim where nothing suggested defendants were "in possession of funds in which" claimant had "an ownership interest"); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455, 458 (2005) (holding that plaintiff failed to allege a viable claim for restitution).

### G.      Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Mr. Winkelmann.

Plaintiffs' requests for injunctive relief must be dismissed for lack of Article III standing because the AC is devoid of factual allegations showing that Plaintiffs face any actual, let alone imminent harm, from Mr. Winkelmann.   To establish Article III standing to pursue injunctive relief, Plaintiffs must "show that [they are] under threat of suffering 'injury in fact' that is concrete and particularized . . . actual and imminent . . . [and] fairly traceable to the challenged action of the defendant" in order to seek injunctive relief.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (noting "threatened injury must be certainly impending" to satisfy Article III).  The AC's allegations regarding Mr. Winkelmann's conduct self-evidently cannot support standing for injunctive relief.  The AC only alleges that Mr. Winkelmann made statements on television and social media regarding the Yuga Products in 2021 and 2022.  There are otherwise no allegations about potential future conduct as to Mr. Winkelmann.  Because the AC plainly does not establish any actual or imminent injury from Mr. Winkelmann, Plaintiffs' requests for injunctive relief are defective and should be dismissed.  *See Young v. Oakland Unified Sch. Dist.*, 2020 WL 6684844, at *1 (N.D. Cal. Nov. 12, 2020) (striking request for injunctive relief for lack of standing).

### H.      Upon Dismissal of the Federal Claims, the Court Should Decline to Exercise Pendent Jurisdiction Over the California State Law Claims Against Mr. Winkelmann.

There is no basis for the Court to exercise pendent jurisdiction over the California state law claims (Counts 1, 2, 3, and 10) if the Court dismisses the federal securities claim against Mr. Winkelmann, a resident of South Carolina. (AC ¶ 27.) Where "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain," courts routinely decline pendent jurisdiction. *Kahn v.*

*City of Orange*, 2018 WL 1721731, at *1 (C.D. Cal. April 4, 2018); *see also*, *Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *5 (N.D. Cal. May 19, 2021); *Goldberg v. Rome McGuigan, P.C.*, 2021 WL 3520725, at *3 (C.D. Cal. Apr. 23, 2021).  Plaintiffs fail to allege facts to support the exercise of either general or specific personal jurisdiction over Mr. Winkelmann in these circumstances.

Plaintiffs do not allege facts that Mr. Winkelmann—a South Carolina resident—has "continuous and systematic" contacts with California sufficient to support this Court's general jurisdiction.  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 271, (2017); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.")  Instead, lumping dozens of parties together, the AC concludes without factual support that each and every named defendant has sufficient "continuous and systematic contacts with this District" to exercise jurisdiction.  (AC ¶ 47.)  This group pleading approach to jurisdiction is insufficient where Plaintiffs bear the burden of overcoming a motion to dismiss.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (affirming dismissal where plaintiff failed to establish that defendant purposefully directed his activities at California).

There is also no basis for specific jurisdiction based on Plaintiffs' claims against Mr. Winkelmann because those claims do not arise from any alleged specific contacts with California.  A court may exercise specific jurisdiction only where "the defendant's suit-related conduct [] create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (noting "the plaintiff cannot be the only link between the defendant and the forum").  Here, Plaintiffs' allegations regarding Mr. Winkelmann concern one television appearance, sporadic social media posts, and one alleged business meeting.  None of these acts are alleged to have occurred in or been directed to California.  Furthermore, even if Plaintiffs and the potential class viewed Mr. Winkelmann's statements in the state, that would not be

sufficient contact by Mr. Winkelmann to exercise jurisdiction where he is not alleged to have directed any of his statements at California. *Court of Master Sommeliers, Americas v. Pilkey*, 2019 WL 9443609, at *6 (N.D. Cal. Dec. 9, 2019) (finding defendant's social media posts did not establish minimum contacts because they were not purposefully directed at California); *see also Werner v. Dowlatsingh*, 818 F. App'x 671, 673 n.1 (9th Cir. 2020) (merely "[u]ploading a video to YouTube . . . is not an act expressly aimed at California simply because the company is based in the state").

## V.   CONCLUSION

For the foregoing reasons, and those explained in the Yuga Defendants' Motion, the Court should dismiss all claims against Mr. Winkelmann with prejudice.

Dated:  September 12, 2023                COOLEY LLP


By:  */s/ Michael G. Rhodes*

Michael G. Rhodes (116127)
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
Tel:  415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com

*Attorneys for Defendants Justin Bieber,
Madonna Louise Ciccone, and Mike
Winkelmann*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Mike Winkelmann, certifies that this brief contains 4,448 words, which complies with the word limit set by court order dated August 14, 2023 (ECF No. 125).

Dated:  September 12, 2023                COOLEY LLP


By: */s/ Michael G. Rhodes*

Michael G. Rhodes (116127)
3 Embarcadero Center, 20th Fl.
San Francisco, CA 94111
Tel:  415-693-2000
Fax: 415-693-2222
rhodesmg@cooley.com

*Attorneys for Defendants Justin Bieber, Madonna Louise Ciccone, and Mike Winkelmann*