COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:   (415) 693-2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:  (310) 883-6527
Facsimile:   (310) 883-6500

ROBBY L.R. SALDAÑA (*pro hac vice* pending)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 776-2109
Facsimile:   (202) 842-7899

*Attorneys for Defendants Justin Bieber, Madonna
Louise Ciccone, and Mike Winkelmann*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, and ADAM TITCHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., WYLIE ARONOW, GREG SOLANO, KEREM ATALAY, ZESHAN ALI, NICOLE MUNIZ, JASMIN SHOEMAKER, PATRICK EHRLUND, CHRISTOPHER LYONS, ALEXIS OHANIAN, AMY WU, MAARIA BAJWA, SOTHEBY'S HOLDINGS INC., GUY OSEARY, MIKE WINKELMANN, MADONNA LOUISE CICCONE, PARIS HILTON, JAMES FALLON, ELECTRIC HOT | Case No. 2:22-cv-08909-FMO-PLA<br><br>**DEFENDANT JUSTIN BIEBER'S NOTICE OF JOINDER, NOTICE OF MOTION, AND MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       November 30, 2023<br>Time:      10:00 a.m.<br>Dept:      6D<br>Judge:     Hon. Fernando M. Olguin<br><br>Trial Date: Not Scheduled<br>Complaint Filed:  December 8, 2022 |

1  |  DOG, INC., UNIVERSAL
2  |  TELEVISION, LLC, JUSTIN BIEBER, AUSTIN RICHARD POST, CALVIN
3  |  BROADUS JR., KEVIN HART, WARDELL STEPHEN CURRY II,
4  |  ADIDAS AMERICA INC., ADIDAS VENTURE B.V., IVAN SOTO-
5  |  WRIGHT, and MOONPAY USA LLC,

         Defendants.

**<u>NOTICE OF JOINDER, NOTICE OF MOTION, AND MOTION</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Fernando M. Olguin, United States District Judge, Central District of California Western Division, located at 350 West First Street, Los Angeles, California 90012, Defendant Justin Bieber will, and hereby does, move the Court for an order dismissing Plaintiffs' Amended Class Action Complaint (the "AC" or "Complaint"). (ECF No. 114.)

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 9(b), and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of this Motion. Pursuant to Civil Local Rule 7-3, on September 1, 2023, Defendant's counsel met and conferred with Plaintiffs' counsel regarding this Motion.

Pursuant to the Court's August 14, 2023, Order (ECF No. 125), Mr. Bieber joins in the Yuga Lab Defendants' Motion to Dismiss ("Yuga's Motion").

**<u>STATEMENT OF RELIEF REQUESTED</u>**

Defendant Justin Bieber requests that the Court dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1), 9(b), and 12(b)(6).

**<u>ISSUES TO BE DECIDED</u>**

Whether the AC should be dismissed pursuant to: (1) Federal Rule of Civil Procedure Rule 12(b)(1) due to Plaintiffs' failure to plead Article III standing for injunctive relief, and (2) Rules 9(b) and 12(b)(6) due to Plaintiffs' failure to adequately plead fraud and failure to state any claim upon which relief may be granted.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.     INTRODUCTION .................................................................................1

II.    PLAINTIFFS' ALLEGATIONS AGAINST MR. BIEBER ...............1

III.   LEGAL STANDARDS .........................................................................3

IV.    ARGUMENT ........................................................................................3

     A.    Mr. Bieber's Alleged Products "Promotions" Are Non-Actionable Vague and Humorous Statements. ....................4

     B.    Plaintiffs Do Not State Any Securities Claims Against Mr. Bieber (Counts 8, 10). ..................................................5

          1.    Plaintiffs fail to plead a federal "scheme liability" claim against Mr. Bieber (Count 8). .................................6

          2.    Plaintiffs fail to plead a violation of the California Corporations Code against Mr. Bieber (Count 10). ...................9

     C.    Plaintiffs Fail to State a UCL Claim Against Mr. Bieber (Counts 1, 2, 3). ................................................................10

          1.    Plaintiffs cannot pursue UCL claims premised on alleged securities transactions. ..........................................10

          2.    Plaintiffs do not plead facts showing they suffered economic injury from Mr. Bieber's alleged statements—or that they relied on his alleged statements..........................11

          3.    Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Mr. Bieber with the requisite particularity. ...................11

     D.    Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/Restitution" Against Mr. Bieber (Count 13)...................12

     E.    Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Mr. Bieber—Another Basis to Dismiss their UCL Claims. ...............12

     F.    Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Mr. Bieber. ...................................................................13

V.     CONCLUSION ...................................................................................13

CERTIFICATE OF COMPLIANCE............................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005)................................................................4

*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) .....................................................5

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
   158 Cal. App. 4th 226 (2007) .............................................................................9

*In re Apple Processor Litig.*,
   2022 WL 2064975 (N.D. Cal. June 8, 2022) ...................................................11

*Bowen v. Ziasun Techs., Inc.*,
   116 Cal. App. 4th 777 (2004) ...........................................................................10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .........................................................................................13

*In re Diasonics Securities Litig.*,
   599 F. Supp. 447 (N.D. Cal. 1984) ....................................................................9

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007).............................................................12

*In Re Ethereummax Investor Litigation*,
   No. CV 22-00163-MWF, ECF No. 99 (C.D. Cal. Dec. 6, 2022).......................9

*Eur. Travel Agency Corp. v. Allstate Ins. Co.*,
   600 F. Supp. 3d 1099 (C.D. Cal. 2022).............................................................12

*In re Facebook, Inc. Sec. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019)................................................................5

*In re Fusion-io, Inc. Sec. Litig.*,
   2015 WL 661869 (N.D. Cal. Feb. 12, 2015).......................................................4

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ............................................................................4

*Hadley v. Kellogg Sales Co.*,
243 F.Supp.3d 1074 (N.D. Cal. 2017)................................................................12

*Hovey v. F.S.B.*,
2022 WL 182160693 (C.D. Cal. Nov. 15, 2022) .............................................11

*Jackson v. Fischer*,
931 F. Supp. 2d 1049 (N.D. Cal. 2013)..............................................................9

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
1998 WL 2016634 (N.D. Cal. Sept. 14, 1998)................................................10

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007)..............................................................5

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) .....................................................7

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005)............................................................................13

*Masterson v. Cheetah Mobile Inc.*,
No. CV 17-8141-R, 2018 WL 5099505 (C.D. Cal. June 27, 2018)...................7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ............................................................................8

*In re Napster, Inc. Copyright Litigation*,
354 F. Supp. 2d 1113 (N.D. Cal. 2005)............................................................13

*Pirozzi v. Apple, Inc.*,
966 F. Supp. 2d 909 (N.D. Cal. 2013)..............................................................11

*Robinson v. HSBC Bank USA*,
732 F. Supp. 2d 976 (N.D. Cal. 2010)..........................................................12, 13

*San Francisco Residence Club, Inc. v. Amado*,
773 F. Supp. 2d 822 (N.D. Ill. 2011)................................................................10

*Sollberger v. Wachovia Secs., LLC*,
2010 WL 2674456 (C.D. Cal. June 30, 2010)....................................................4

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001)..............................................................6

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ....................................................................... 13

*Tristan v. Bank of Am.*,
  2023 WL 4417271 (C.D. Cal. June 28, 2023)................................... 11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ............................................................. 1

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................... 4

*Young v. Oakland Unified Sch. Dist.*,
  2020 WL 6684844 (N.D. Cal. Nov. 12, 2020)................................... 13

*ZL Technologies, Inc. v. Gartner, Inc.*,
  2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)..................................... 12

**Statutes**

Cal. Bus. & Prof. Code
  § 17200 .............................................................................................. 3
  § 17203 ............................................................................................ 12
  § 17204 ............................................................................................ 11
  § 17535 ............................................................................................ 12

Cal. Corp. Code
  § 25401 ...................................................................................... 4, 5, 9
  § 25501 ...................................................................................... 4, 5, 9

Private Securities Litigation Reform Act of 1995 ...................................... 3

Securities Exchange Act of 1934.............................................. 4, 5, 7, 10

**Other Authorities**

Federal Rules of Civil Procedure
  9(b)................................................................................................. 3, 4
  12(b)(1) ............................................................................................... 3
  12(b)(6) ........................................................................................... 3, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION[1]

Defendant Justin Bieber joins in full the Yuga Defendants' Motion, concurrently filed with the Court.  (ECF No. 153 ("Yuga's Mot.").)  In the present Motion, Mr. Bieber provides additional arguments to address specific allegations raised against him.  For the reasons in Yuga's Motion, and the reasons herein, the Court should dismiss all claims against Mr. Bieber with prejudice.

### II.   PLAINTIFFS' ALLEGATIONS AGAINST MR. BIEBER

Mr. Bieber is a world-renowned musical artist and cultural icon.  Plaintiffs allege that he publicly "promoted" Bored Apes Yacht Club Non-Fungible Tokens ("BAYC NFT") and payment platform MoonPay as part of a larger "scheme" by the Yuga Labs and MoonPay Defendants to "artificially increase" the price of BAYC NFTs and four other digital entertainment products (the "Products").  (*See* AC ¶¶ 5, 30, 199–200.)

"[U]pon information and belief," Plaintiffs assert (falsely, as the evidence will show) that Mr. Bieber was "paid to promote (or had a vested financial interest in the promotion of) the Yuga Financial Products . . ."  (*See* AC ¶ 513; *see also id.* ¶¶ 199, 200, 485(c).)  Their allegations against Mr. Bieber concern (1) one Instagram post on January 31, 2022, (2) one Twitter post allegedly made on February 7, 2022,[2] and (3) Mr. Bieber's purported investment in MoonPay, which MoonPay announced on April 13, 2022—well after both alleged statements.  (AC ¶¶ 97, 199, 200, 457.)

Plaintiffs first allege that on January 31, 2022, Mr. Bieber "promoted his purported purchase of BAYC NFT # 3001" on Instagram.  (AC ¶ 199.)  The post is

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] Mr. Bieber's posts form the basis of Plaintiffs' claims against him and are incorporated by reference into the complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (incorporation by reference doctrine allows the court to consider material not attached to the complaint, "without converting the motion to dismiss into a motion for summary judgment," if "the document forms the basis of the plaintiff's claim").

reproduced below.  (AC ¶ 199 n.150.)



This post concerns a piece of digital artwork depicting an "Ape" wearing a black shirt with a sad expression.  The caption reads "[w]hat if you had it all, but nobody to call, maybe then you'd know me.  Cuz I've had everything but noones listening and that's just fuckin' lonely. #lonelyboredape." (One of Mr. Bieber's more famous songs is titled, "Lonely.")

Mr. Bieber did not tag anyone in this post, let alone any other Defendant.  No allegations explain how this post is a "promotion," or how the post evidences how Mr. Bieber acquired the artwork.  On its face, the post makes **_no representations_** about how Mr. Bieber acquired the artwork.  Crucially, Plaintiffs admit that any representation that Mr. Bieber purchased the piece and at what price is from an **_unidentified third-party_**—not Mr. Bieber.  (AC ¶ 199 (referencing "[r]eports indicated that Bieber paid approximately $1.29M" for the piece "which was upwards of five times the floor price with similar characters.").)

Additionally, Plaintiffs allege that, on February 7, 2022, Mr. Bieber "announced that he had 'purchased' a second NFT from the Bored Ape Collection . . . for around $470,000." (AC ¶ 200.)  The purported basis for this allegation is Mr. Bieber's "personal Twitter account."  (AC ¶ 457.)  The alleged Twitter post is not reproduced in-line because Plaintiffs did not provide an image of the post, nor did they plead a link to it or otherwise identify the specific post in the AC.  The only language Plaintiffs purport to quote from Mr. Bieber's alleged statement is a single word—"purchased."  This single word without any context can hardly be deemed a statement by Mr. Bieber, let alone the basis for keeping him in this case.

Beyond two social media posts, Plaintiffs do not allege any other relevant Products "promotion" by Mr. Bieber.  The AC is devoid of any allegations that Mr. Bieber owned any other Products, or that he purportedly publicly represented that he sold, or offered to sell one.  The AC does not allege that Mr. Bieber offered or sold any Products in California, or that he offered to buy any Yuga Product in California.  Nor does the AC allege that Mr. Bieber ever directed his social media posts to consumers in California (or to any state).

## III.   LEGAL STANDARDS

The Rule 9(b), Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), and Rule 12(b)(6) dismissal standards in Yuga's Motion apply. (Yuga Mot. at 1–5.)  In addition, Rule 12(b)(1) allows a defendant to move for dismissal on grounds that the court lacks subject-matter jurisdiction under Article III. Fed. R. Civ. P. 12(b)(1).

## IV.   ARGUMENT[3]

Plaintiffs assert five claims against Mr. Bieber under California's Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")), federal

---

[3] Mr. Bieber joins in full, but does not further address, arguments in the Yuga Defendants' Motion that do not require additional analysis regarding the allegations raised against Mr. Bieber.

securities law (Section 10(b) of the Securities Exchange Act of 1934), and California securities law (Cal. Corp. Code §§ 25401, 25501).  (AC ¶¶ 476–558; 663–646; 655–669).  Plaintiffs also bring an "alternative" claim of "Unjust Enrichment/Restitution." (AC ¶¶ 694–699.)  These claims, like the entire AC, are grounded in fraud.

Fraud-based claims must be pled with particularity under Rule 9(b), including the "'who, what, when, where, and how'" of any alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiffs concede this in the AC. (AC ¶ 483.)  Despite their concession, Plaintiffs' claims fall far short of this heightened pleading burden.  Plaintiffs continually refer to purported "schemes" involving groups of "Defendants" or "Promoter Defendants," without distinguishing amongst Defendants and their alleged conduct.  (*See, e.g.*, AC ¶¶ 250, 270, 431, 520.) This improper group pleading is routinely dismissed.  *See, e.g.*, *Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).  The AC otherwise fails to state any claim against Mr. Bieber that passes muster under Rule 9(b) or Rule 12(b)(6)'s plausibility threshold.

### A.    Mr. Bieber's Alleged Products "Promotions" Are Non-Actionable Vague and Humorous Statements.

Mr. Bieber's alleged "statements" concerning the Products amount, at most, "[g]eneralized, vague, and unspecified assertions . . . upon which a reasonable consumer could not rely, and hence are not actionable."  *Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) (deeming generalized, positive discussion as nonactionable and immaterial because no reasonable investor would rely on such statements); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (non-actionable puffery also includes statements that are "generalized, vague and unspecific").

Even taking the most plaintiff-friendly interpretation, Mr. Bieber's January 31, 2022 post reflects humor, sarcasm and playful language (and an indirect reference to

one of his songs) that cannot form the basis of a violation of federal or state securities laws, or consumer protection statutes.  (AC ¶ 199.)  Such "humorous" statements "do not reflect specific, actionable representations."  *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (concluding that advertising statements were non-actionable puffery considering their humor);  *In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague statements like "[w]e are pleased with our progress" are not actionable); *In re Facebook, Inc. Sec. Litig.,* 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) (statements like the Facebook community "continues to grow" held non-actionable).   Thus, the Court should dismiss Plaintiffs' claims against Mr. Bieber for failure to plead any actionable statement.

### B.     Plaintiffs Do Not State Any Securities Claims Against Mr. Bieber (Counts 8, 10).

The AC alleges a federal securities claim for "scheme liability" under Section 10(b) of the Securities Exchange Act (and Rule 10b-5(a) and (c) promulgated thereunder) (AC ¶¶ 633–646), and a similar securities claim under California Corporations Code Sections 25401 and 25501.  (AC ¶¶ 655–669.)

Neither claim specifically alleges any conduct by Mr. Bieber *at all*.  Instead, in a handful of conclusory paragraphs, Plaintiffs again make bald group allegations that "Defendants" engaged in "schemes" and "conspired" to manipulate the price of the Products and did so "knowingly or recklessly."  (*See* AC ¶¶ 639–644, 659–668.)  The AC fails to indicate any supposed acts, omissions, and/or other "wrongful conduct" by Mr. Bieber alleged in paragraphs 1–475 that allegedly violated the law.  Even as to the so-called "Promoter Defendants," it is entirely unclear whether the AC is alleging that Mr. Bieber received "fiat or cryptocurrency from MoonPay and/or Yuga," "and/or other forms of consideration" from another unspecified source.  (AC ¶¶ 166, 198.)  This is precisely the type of "puzzle" pleading courts routinely reject, particularly when applying the strict pleading standards under the PLSRA and for

fraud-based securities claims. *See, e.g., In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–1075 (N.D. Cal. 2001) (dismissing complaint with prejudice).

> **1.** **Plaintiffs fail to plead a federal "scheme liability" claim against Mr. Bieber (Count 8).**

Plaintiffs' "scheme liability" claim fails for the numerous independent reasons outlined in the Yuga Defendants' Motion.[4] (Yuga's Mot. at 10–25.) Additionally, Plaintiffs have not pled any particularized facts sufficient to show that (i) Mr. Bieber is responsible for any deceptive or manipulative act in furtherance of the alleged scheme, (ii) Mr. Bieber possessed the requisite scienter, or (iii) Plaintiffs relied on Mr. Bieber's statements. Thus, Plaintiffs have not alleged that Mr. Bieber participated in the alleged celebrity promotion scheme.

*No Falsity.* Plaintiffs allege that Mr. Bieber's two social media posts mislead them into believing that he purchased two BAYC NFTs with his own money. (AC ¶¶ 199–200, 457.) Plaintiffs, however, plead no facts showing that Mr. Bieber made any misrepresentation in either post. Mr. Bieber's January 31, 2022 Instagram post makes *no representation* about how he obtained the artwork. (*See supra* Part II.) As to Mr. Bieber's alleged February 7, 2022 Twitter post, Plaintiffs merely allege that the missing and unidentified post "announced that he had 'purchased' a second NFT." (AC ¶ 200.) Plaintiffs' use of quotations in reference to the word "purchased" could easily be Plaintiffs' own characterization of how they read the purported post or a direct quote from the post. But Plaintiffs plead no factual allegations that eliminate this *fatal ambiguity* in their theory that Mr. Bieber made a false or misleading "statement" of fact that could form the basis of a violation of federal and state securities law, or state consumer protection laws.

Putting aside that Mr. Bieber's two social media posts are not alleged to make any "statements" that he purchased BAYC NFT, Plaintiffs also fail to allege any

---

[4] The only alleged "scheme" implicating Mr. Bieber is the "[c]elebrity [p]romotions" scheme. (*See* AC ¶¶ 151–248.)

plausible, non-conclusory allegations showing that these (non) "statements" were false.

*First*, Plaintiffs' theory of falsity is based merely on "information and belief" that Mr. Bieber "received" or "was given" the BAYC NFTs for his alleged promotions.  (AC ¶¶ 199–200.)  These allegations are patently insufficient (and in fact, false).  Furthermore, as the allegation is based on information and belief, Plaintiffs must "state with particularity all facts on which that belief is formed." *Masterson v. Cheetah Mobile Inc.*, No. CV 17-8141-R, 2018 WL 5099505, at *2 (C.D. Cal. June 27, 2018) (dismissing Section 10(b) claim under PSLRA's heightened pleading standards).  Plaintiffs do not plead any facts showing the basis on which they formed their purported beliefs.

*Second*, Plaintiffs also engage in pure speculation when they allege that a confidential witness ("CW1") purportedly did an "investigation" of "the MoonPay Dashboard to try to identify any compliance checks that might have been conducted on Concierge clients" and "did not identify" results "for [CW1]'s entire tenure at MoonPay" for Mr. Bieber.  (AC ¶ 106.)  These allegations say nothing about whether Mr. Bieber purchased the BAYC NFTs.  And while Plaintiffs allege that CW1 is a "former MoonPay employee," they do not specifically allege when CW1 was employed by MoonPay, what "targeted searches" CW1 conducted as to Mr. Bieber that allegedly informed CW1's account, or when those searches were conducted. (AC ¶¶ 99–112.)  Therefore, the anonymous confidential witness allegations are simply speculative allegations that cannot support Plaintiffs' conclusory allegations that Mr. Bieber's statements were false or misleading.  *See M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635425, at *9 (C.D. Cal. Oct. 30, 2017) (finding confidential witness statements that were "explicitly speculative and based on nothing more than the confidential witnesses' suspicions" insufficient).

***No Deceptive or Manipulative Act(s)***.  Plaintiffs have not alleged with requisite particularity any deceptive or manipulative act by Mr. Bieber.  For the

1    reasons explained above, Mr. Bieber's January 31, 2022 Instagram post and alleged
2    February 7, 2022 Twitter post allegedly "promoting" the Products were not plausibly
3    "deceptive" or "manipulative."  Plaintiffs also do not allege that Mr. Bieber had any
4    financial interest in Yuga Labs (nor would that support a scheme theory in any event);
5    their allegations that Mr. Bieber invested in MoonPay are conclusory.  (*See generally*
6    AC; AC ¶ 97 ("On April 13, 2022 MoonPay announced that . . . entertainment VIPs
7    invested [] in the company" including Mr. Bieber).)  Indeed, Plaintiffs allege that Mr.
8    Bieber's purported "promotions" occurred **before** he allegedly had any "financial
9    interest" in MoonPay, and Plaintiffs do not allege any "promotions" by Mr. Bieber
10   after that point. (*See* AC ¶¶ 97, 199, 200.)

11        ***No scienter***.  The AC is devoid of any allegations, let alone particularized ones,
12   that Mr. Bieber engaged in intentionally misleading or deliberately reckless conduct.
13   *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir.
14   2008) (explaining that plaintiffs must allege facts supporting a strong scienter
15   inference that is both "cogent and at least as compelling as any opposing inference
16   of nonfraudulent intent").  Because the AC contains no allegations that Mr. Bieber
17   bought or sold Products or had some other financial interest in Yuga Labs, there can
18   be no plausible inference that he stood to benefit from an increase in the price of the
19   Products.  *See id.* ("a plaintiff must state with particularity facts giving rise to a strong
20   inference that the defendant acted with the required state of mind").

21        Plaintiffs' allegation that MoonPay allegedly announced in April 2022 that Mr.
22   Bieber "and his manager"—along with a laundry list of various "entertainment VIPs"
23   had "invested" in MoonPay is similarly insufficient to give rise to a strong inference
24   of scienter against Mr. Bieber.  (AC ¶ 97.)  Setting aside that no facts are pleaded
25   regarding the nature of any purported investment by Mr. Bieber, Plaintiffs'
26   allegations concern April 2022—months **after** Mr. Bieber's purported "promotional"
27   "statements" in two social media posts.  Plaintiffs plead no allegations showing that
28   Mr. Bieber did anything else to "promote" other than make those two posts—neither

1    of which was even plausibly false or misleading.

2         *No reliance*.  Plaintiffs' conclusory allegations of reliance (*see, e.g.*, AC ¶ 458

3    (alleging certain plaintiffs knew of Mr. Bieber "from [his] successful career[] as [a]

4    pop singer[] and often sees posts from [Mr. Bieber] on social media.") in no way

5    explain in what way they relied on Mr. Bieber's statements.  Indeed, aside from not

6    being actionable on its face (*see infra* Section IV.B), how could a reasonable investor

7    be induced to purchase a novel digital product based on a statement like "[w]hat if

8    you had it all . . . "?  *See In Re Ethereummax Investor Litigation*, No. CV 22-00163-

9    MWF (SKx), ECF No. 99 at 1 (C.D. Cal. Dec. 6, 2022) ("the law . . . expects investors

10   to act reasonably before basing their bets on the zeitgeist of the moment").

11              **2.     Plaintiffs fail to plead a violation of the California
                        Corporations Code against Mr. Bieber (Count 10).**
12

13        Plaintiffs' claim under the California Corporations Code should be dismissed

14   for the reasons in the Yuga Defendants' Motion.  (Yuga's Mot. at 38.)  Plaintiffs have

15   clearly failed to adequately plead basic elements of the claim as to Mr. Bieber.

16        To state a claim under sections 25401 and 25501 of the California

17   Corporations Code, Plaintiffs must allege Mr. Bieber (i) offered or sold a security,

18   (ii) in California, (iii) by means of a material misrepresentation or omission.  *See*

19   *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253-54

20   (2007).  Additionally, it is blackletter law that "Sections 25401 and 25501 impose

21   liability only on the actual seller of the security." *Jackson v. Fischer*, 931 F. Supp.

22   2d 1049, 1063 (N.D. Cal. 2013); *see also In re Diasonics Securities Litig.*, 599 F.

23   Supp. 447, 459 (N.D. Cal. 1984) (requirement of "strict privity" bars claims where

24   the plaintiff did not purchase security directly from defendant).

25        Plaintiffs allege none of these requirements.  Not only do Plaintiffs fail to

26   allege that Mr. Bieber offered or sold any Products in California (because he did not),

27   they also do not identify where the offer to sell or purchase any Product was made,

28

received, or accepted.[5]   The AC also does not attempt to plead privity between plaintiffs and Mr. Bieber.  (*See* AC ¶ 665 ("Privity also exists between the issuers of every Yuga NFT collection (i.e., the Company and Executive Defendants) and all those making purchases[.]").)

For the reasons above, *see supra* Section IV.B.1, the AC also fails to allege any actionable misstatement or omission by Mr. Bieber, which also defeats Plaintiffs' claim.  *See, e.g., Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998) (dismissing where plaintiff "simply reiterates the factual allegations made in its section 10(b) cause of action" in state claims).

## C.   Plaintiffs Fail to State a UCL Claim Against Mr. Bieber (Counts 1, 2, 3).

Based on the same alleged statements concerning the Products and his alleged participation in the "celebrity promotion" scheme, the AC asserts claims against Mr. Bieber under the three prongs of the UCL.  (AC ¶¶ 476–502, 503–532, 533–558.) These claims should be dismissed for the reasons outlined in the Yuga Defendants' Motion, as well as those raised herein.

### 1.   Plaintiffs cannot pursue UCL claims premised on alleged securities transactions.

As an initial matter, Plaintiffs' UCL claims should be dismissed insofar as Plaintiffs purport to rely on alleged violations of federal or state securities laws because the UCL does not apply to claims arising from securities transactions.  *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004); *San Francisco Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 834 (N.D. Ill. 2011) (dismissing UCL claims because "plaintiffs' theory unavoidably focuses on the purchase of securities, and Bowen is determinative").  Plaintiffs repeatedly insist that NFTs are securities, which alone requires dismissal of their UCL claims.  But even were the

---

[5] All Plaintiffs except Titcher reside outside California and allege no injury in California.  (*See* AC ¶¶ 10–13.)  Titcher alleges that he purchased one MAYC NFT and one Otherdeed NFT.  (AC ¶ 13.)   And Mr. Bieber is not alleged to have purchased, been gifted, sold, or otherwise owned any MAYC or Otherdeed NFTs.

Court not inclined to dismiss on these grounds, the UCL claims should be dismissed against Mr. Bieber for additional independent reasons.

> **2.     Plaintiffs do not plead facts showing they suffered economic injury from Mr. Bieber's alleged statements—or that they relied on his alleged statements.**

Under the UCL, a plaintiff must allege facts showing that they suffered economic injury as a result of the defendant's alleged violation of the UCL.  *See* Cal. Bus & Prof. Code § 17204.  When plaintiffs pursue a UCL claim grounded in fraud— as is the case here—the plaintiff's alleged economic injuries must be "a result of the fraudulent conduct," *i.e.*, "the plaintiff must allege 'a causal connection or reliance on the alleged misrepresentation." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013).  Plaintiffs' UCL claims against Mr. Bieber should be dismissed because Plaintiffs plead no facts showing that they suffered economic injury from reliance on Mr. Bieber's specific alleged statements.  (*See generally* AC ¶¶ 454 –464 (grouping plaintiffs' general "aware[ness]" of statements made by Mr. Bieber in his alleged social media posts with numerous other alleged "promotions" that allegedly induced plaintiff purchases of the Products).)

> **3.     Plaintiffs fail to plead any unlawful, unfair, or fraudulent acts by Mr. Bieber with the requisite particularity.**

Plaintiffs' UCL claims should be dismissed because the AC—which is grounded entirely in fraud—is devoid of particularized allegations sufficient to state a claim under any UCL prong.  Plaintiffs do not attempt to explain how the alleged promotional "statements" by Mr. Bieber were actually fraudulent, *see Tristan v. Bank of Am.*, 2023 WL 4417271, at *6 (C.D. Cal. June 28, 2023), or how they violated a federal or California statute or regulation, *see Hovey v. F.S.B.*, 2022 WL 182160693, at *5 (C.D. Cal. Nov. 15, 2022).   These failures require dismissal of the UCL fraudulent and unlawful prongs against Mr. Bieber.

The AC is otherwise nothing more than a boilerplate "recitation of the [UCL's] unfair legal standard." *In re Apple Processor Litig.*, 2022 WL 2064975, at *13 (N.D.

Cal. June 8, 2022).  Such allegations are "conclusory and insufficient to state a claim under the UCL 'unfairness' prong." *Id.*  Moreover, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong . . . cannot survive if the claims under the other two prongs . . . do not survive." *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1104–05 (N.D. Cal. 2017).

### D.   Plaintiffs Cannot Plead Any "Claim" for "Unjust Enrichment/Restitution" Against Mr. Bieber (Count 13).

Mr. Bieber joins the Yuga Defendants' arguments relevant to Plaintiffs' unjust enrichment claim (Count 13).  (Yuga's Mot. at 33–35, 39.)  Furthermore, as to Mr. Bieber specifically, Plaintiff's claim fails because there is ***no*** allegation that Mr. Bieber received any financial benefit at the expense of any plaintiff or putative class member.  *See Eur. Travel Agency Corp. v. Allstate Ins. Co.*, 600 F. Supp. 3d 1099, 1104 (C.D. Cal. 2022) (requisite element of unjust enrichment/restitution is "the receipt of a benefit and the unjust retention of the benefit at the expense of another.").

### E.   Plaintiffs Fail to Otherwise Plead Any Basis for Restitution from Mr. Bieber—Another Basis to Dismiss their UCL Claims.

Under the UCL, only restitution and injunctive relief are available to private plaintiffs.  *See* Cal. Bus. & Prof. Code §§ 17203, 17535; *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 n.9 (N.D. Cal. 2010) ("[U]nder the UCL restitution is the only form of monetary relief available").

Plaintiffs' requests for restitution under the UCL must be dismissed for failure to plead that they paid money to Mr. Bieber.  Restitution cannot be ordered if "the plaintiff did not pay any money, even indirectly, to the defendant." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1103 (N.D. Cal. 2007).  Plaintiffs do not allege any direct or indirect monetary payment to Mr. Bieber.  Their "'fail[ure] to allege that the money [they purportedly lost] . . . is now, or ever was, in the possession of'" Mr. Bieber, therefore dooms their UCL claims—which should be dismissed with prejudice. *ZL Technologies, Inc. v. Gartner, Inc.*, 2009 WL 3706821, at *10, *13 n.7

(N.D. Cal. Nov. 4, 2009); *see also Robinson*, 732 F. Supp. 2d at 989 n.9 ("Plaintiffs, by their own admission, are not and have never been customers of [defendant], therefore, there are no funds to return."); *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (affirming dismissal of UCL claim where nothing suggested defendants were "in possession of funds in which" claimant had "an ownership interest"); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455, 458 (2005) (holding that plaintiff failed to allege a viable claim for restitution).

### F.   Plaintiffs' Fail to Plead a Basis for Injunctive Relief Against Mr. Bieber.

Plaintiffs' requests for injunctive relief must be dismissed for lack of Article III standing because the AC is devoid of factual allegations showing that Plaintiffs face any actual, let alone imminent harm, from Mr. Bieber.  To establish Article III standing to pursue injunctive relief, Plaintiffs must "show that [they are] under threat of suffering 'injury in fact' that is concrete and particularized . . . actual and imminent . . . [and] fairly traceable to the challenged action of the defendant" in order to seek injunctive relief.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (noting "threatened injury must be certainly impending" to satisfy Article III).  The AC's allegations regarding Mr. Bieber's conduct self-evidently cannot support standing for injunctive relief.  The AC only alleges that Mr. Bieber made two "statements" on social media regarding the Products in early 2022.  (AC ¶¶ 199–200.)  There are otherwise no allegations about any potential future conduct by Mr. Bieber.  Because the AC plainly does not establish any actual or imminent injury from Mr. Bieber, Plaintiffs' requests for injunctive relief are defective and should be dismissed.  *See Young v. Oakland Unified Sch. Dist.*, 2020 WL 6684844, at *1 (N.D. Cal. Nov. 12, 2020) (striking request for injunctive relief for lack of standing).

## V.   CONCLUSION

For the foregoing reasons, and those explained in the Yuga Defendants'

1  Motion, the Court should dismiss all claims against Mr. Bieber with prejudice.

2

3  Dated:          September 12, 2023               COOLEY LLP

4

5                                                  By:*/s/ Michael G. Rhodes*

6                                                      Michael G. Rhodes (116127)
                                                       3 Embarcadero Center, 20th Fl.
7                                                      San Francisco, CA 94111
                                                       Tel:  415-693-2000
8                                                      Fax: 415-693-2222
                                                       rhodesmg@cooley.com

9                                                  *Attorneys for Defendants Justin Bieber,*
                                                   *Madonna Louise Ciccone, and Mike*
10                                                 *Winkelmann*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Defendant Justin Bieber, certifies that this brief contains 4,271 words, which complies with the word limit set by court order dated August 14, 2023 (ECF No. 125).

Dated:        September 12, 2023                COOLEY LLP

                                                By: */s/ Michael G. Rhodes*
                                                Michael G. Rhodes (116127)
                                                3 Embarcadero Center, 20th Fl.
                                                San Francisco, CA 94111
                                                Tel:  415-693-2000
                                                Fax: 415-693-2222
                                                rhodesmg@cooley.com

                                                *Attorneys for Defendants Justin Bieber,*
                                                *Madonna Louise Ciccone, and Mike*
                                                *Winkelmann*