PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

ALEXANDER C. DRYLEWSKI (admitted *pro hac vice*)
alexander.drylewski@skadden.com
SHAUD G. TAVAKOLI (admitted *pro hac vice*)
shaud.tavakoli@skadden.com
KYLE J. SCHWARTZ (admitted *pro hac vice*)
kyle.schwartz@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:   (212) 735-3000
Facsimile:    (212) 735-2000

*Attorneys for Defendants*
YUGA LABS, INC., WYLIE ARONOW, GREG SOLANO,
KEREM ATALAY, ZESHAN ALI, NICOLE MUNIZ,
JASMIN SHOEMAKER, PATRICK EHRLUND,
CHRISTOPHER LYONS, and GUY OSEARY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, ADAM TITCHER, JONATHAN SMITH, NEAL PATEL, HIREN PATEL, and DAVID GRAND, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

YUGA LABS, INC., et al.,

Defendants.

) CASE NO.: 2:22-cv-08909-FMO-PLA
)
) **YUGA LABS DEFENDANTS' NOTICE OF**
) **MOTION AND MOTION TO DISMISS**
) **THE SECOND AMENDED CLASS**
) **ACTION COMPLAINT; MEMORANDUM**
) **OF POINTS AND AUTHORITIES IN**
) **SUPPORT THEREOF;**
)
) **FILED SEPARATELY:**
) **(1) DECLARATION OF PETER B.**
) **MORRISON;**
) **(2) REQUEST FOR INCORPORATION BY**
) **REFERENCE; and**
) **(3) [PROPOSED] ORDER.**
)
) Date: February 15, 2024
) Time: 10:00 a.m.
) Courtroom: 6D
) Judge: Hon. Fernando M. Olguin
) Complaint Filed: December 8, 2022

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 15, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D, located at 350 West First Street, Los Angeles, California 90012, Defendants Yuga Labs, Inc. ("Yuga Labs"), Wylie Aronow ("Aronow"), Greg Solano ("Solano"), Kerem Atalay ("Atalay"), Zeshan Ali ("Ali"), Nicole Muniz ("Muniz"), Jasmin Shoemaker ("Shoemaker"), Patrick Ehrlund ("Ehrlund"), Christopher Lyons ("Lyons"), and Guy Oseary ("Oseary") (collectively, "Yuga Labs Defendants") will, and hereby do, present for hearing by the Court, the Honorable Fernando M. Olguin presiding, this Motion to Dismiss the Second Amended Class Action Complaint (the "Motion").

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on November 20, 2023. The Motion seeks dismissal with prejudice of the Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC") brought by Lead Plaintiffs Johnny Johnson ("Johnson"), Ezra Boekweg ("Boekweg"), and Mario Palombini ("Palombini"), and Named Plaintiffs Adam Titcher ("Titcher"), Jonathan Smith ("Smith"), Neal Patel ("Neal"), Hiren Patel ("Hiren"), and David Grand ("Grand") (collectively, "Plaintiffs"), for failure to state a claim upon which relief may be granted, lack of standing, and, with respect to certain Defendants, lack of personal jurisdiction.

This Motion is filed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 ("PSLRA"), and is based on the accompanying Memorandum of Points and Authorities, Declaration of Peter B. Morrison, Request for Incorporation by Reference, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

Pursuant to the Court's Order dated October 10, 2023 (ECF No. 178), Defendants Alexis Ohanian ("Ohanian"), Amy Wu ("Wu") and Maaria Bajwa

i

("Bajwa") (collectively, the "Special Council"); Mike Winkelmann ("Winkelmann"); Madonna Louise Ciccone ("Ciccone"); Paris Hilton ("Hilton"); James Fallon ("Fallon"); Electric Hot Dog, Inc. ("EHD"), Universal Television, LLC ("Universal") (collectively, the "Universal Defendants"); Justin Bieber ("Bieber"); Wardell Stephen Curry II ("Curry"); adidas America Inc. ("adidas America") and adidas Ventures B.V. ("adidas Ventures") (collectively, "adidas"); Ivan Soto-Wright ("Soto-Wright"), and MoonPay USA LLC ("MoonPay") (collectively, the "MoonPay Defendants") and Sotheby's Holdings Inc. ("Sotheby's") are concurrently filing Motions to Dismiss and, to the extent set forth in their respective Memoranda of Points and Authorities, join in some or all of the Yuga Labs Defendants' arguments herein. The Yuga Labs Defendants likewise join in the arguments in the Motion to Dismiss briefs of:

- the Special Council at 3:17-5:13, 9:17-10:2, and 11:21-12:13;
- Winkelmann at 7:1-8:26 and 16:17-25;
- Ciccone at 6:1-8:15 and 14:21-15:2;
- Hilton at 5:4-8:3;
- the Universal Defendants at 3:6-4:14, 7:27-28, and 13:18-14:2 (the "Universal Defendants' Brief");
- Bieber at 5:1-7:19, and 14:4-14;
- Curry at 4:6-5:26, and 10:25-11:12;
- adidas at 6:18-8:6, 10:3-11:15, 13:21-26, and 15:11-24;
- the MoonPay Defendants at 3:19-26, 5:18-6:16, 6:26-7:11, 7:23-8:13, 9:19-20:11, and 11:12-12:15 (the "MoonPay Brief"); and
- Sotheby's at 2:12-6:16, 9:14-10:5, 10:26-28, 12:3-11, 12:26-13:20, and 14:8-11 (the "Sotheby's Brief").

The Yuga Labs Defendants, together with all the foregoing defendants, are referred to herein as the "Moving Defendants."

1  DATED:  November 30, 2023

2                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3
4                  By: _____/s/ Peter B. Morrison_____
                              PETER B. MORRISON

5                          *Attorneys for Defendants*
6          Yuga Labs, Inc., Wylie Aronow, Greg Solano,
           Kerem Atalay, Zeshan Ali, Nicole Muniz,
7          Jasmin Shoemaker, Patrick Ehrlund,
           Christopher Lyons, and Guy Oseary

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................vii

I.  PRELIMINARY STATEMENT ...................................................... 1

II.  FACTUAL BACKGROUND .......................................................... 5

    A.  The Parties ............................................................................ 5

    B.  The Products ......................................................................... 6

    C.  The Alleged "Schemes" ...................................................... 6

        1.  The Sotheby's Auction ............................................... 7

        2.  Alleged Trading "Manipulation" ................................ 7

        3.  Celebrity "Promotions" ............................................... 7

    D.  The So-Called "Dump" ........................................................ 8

III.  ARGUMENT ................................................................................ 8

    A.  Plaintiffs Fail To State a Claim Under Section 10(b) of the Exchange Act (Counts 7-8) ............................................... 8

        1.  The SAC Fails Because It Is a "Shotgun Pleading" .................... 9

        2.  Plaintiffs Do Not Plead Any Actionable Misstatement or Omission Against Any Yuga Labs Defendant (Count 7) ............. 9

            (a)  "Members-Only Benefits" Tweets ................................... 10

            (b)  "High School Dropout" Tweet ......................................... 11

            (c)  "Leaked" Pitch Deck ....................................................... 12

            (d)  "Commercial Rights" Statement ...................................... 12

            (e)  Purported Omissions ........................................................ 13

        3.  Plaintiffs Fail To Plead a Fraudulent "Scheme" (Count 8) ......... 13

            (a)  Plaintiffs Do Not Plead a "Manipulative Trading" Scheme ............................................................................... 13

            (b)  Plaintiffs Do Not Plead an "Auction" Scheme ................. 15

            (c)  Plaintiffs Do Not Plead a "Celebrity Promotions" Scheme ............................................................................... 16

        4.  Plaintiffs Do Not Plead Scienter ................................ 17

            (a)  Plaintiffs Impermissibly Rely on Group Pleading ............ 18

(b)    Plaintiffs Do Not Allege Knowledge of Contrary Information .......................................................... 18

(c)    Plaintiffs Do Not Allege Any Motive To Defraud........... 19

5.    Plaintiffs Do Not Plead Loss Causation ..................................... 20

6.    Plaintiffs Do Not Plead Reliance................................................. 22

B.    Plaintiffs Fail To State a Claim Under Section 12(a)(1) of the Securities Act (Count 4) .................................................................... 24

1.    Plaintiffs Do Not Allege That Any Yuga Labs Defendant Is a "Statutory Seller" .......................................................... 24

(a)    No Passing of Title ............................................. 25

(b)    No "Successful Solicitation"............................. 26

(i)    None of Plaintiffs' Allegations Constitutes Solicitation ...................................................... 27

(ii)    Plaintiffs Do Not Allege Any "Successful" Solicitation ............................. 28

(iii)    Plaintiffs Do Not Plead Financial Motivation ......... 30

2.    Plaintiffs' Section 12(a)(1) Claim Is Time-Barred..................... 30

C.    Plaintiffs Fail To State a Claim Under Section 15 of the Securities Act or Section 20(a) of the Exchange Act (Counts 5 and 9) ............... 31

D.    Plaintiffs Do Not Plead a Domestic Transaction Under *Morrison* ........ 31

E.    Plaintiffs Fail To State a Claim for Violations of the California Unfair Competition Law (Counts 1-3).................................................... 33

1.    Plaintiffs Lack Standing................................................................ 33

2.    Plaintiffs Fail To Plead Recoverable Remedies ......................... 33

3.    Plaintiffs Do Not Allege Direct Economic Injury ...................... 34

4.    Plaintiffs Do Not Plead Unlawful, Unfair, or Fraudulent Acts ............................................................................................... 34

5.    The UCL Does Not Apply to Alleged "Securities".................... 35

F.    Plaintiffs Fail To State a Qualification Claim Under Sections 25110 and 25503 of the California Corporations Code (Count 6) ........ 36

1.    No Alleged Acquisition From Any Yuga Labs Defendant ......... 36

2.    No Alleged Acquisition in an "Issuer Transaction" ................... 36

3.    No Alleged Purchases in California ............................................. 36

4.      Plaintiffs' Qualification Claim Is Time-Barred .......................... 37

G.      Plaintiffs Fail To State a Misrepresentation or "Manipulation" Claim Under Sections 25400-01 and 25500-01 of the California Corporations Code (Counts 10 and 11) ...................................... 37

H.      Plaintiffs Fail To State a Secondary Liability Claim Under Sections 25403(b), 25504, and 25504.1 of the California Corporations Code (Count 12) ................................................ 38

I.      Plaintiffs Fail To State a Claim for Unjust Enrichment (Count 13) ...... 38

J.      Plaintiffs Fail to State a Claim for Violation of the FSIPA (Count 14)    38

K.      Plaintiffs Fail to State a Claim for Violation of the FDUTPA (Count 15) ............................................................ 39

L.      Plaintiffs Lack Standing To Pursue California or Florida Claims Regarding BAYC and Meebits and California Claims Regarding BAKC ............................................................. 40

M.      Plaintiffs Cannot Pursue California State Law Claims on Behalf of a Nationwide Class ............................................ 40

N.      The Court Should Decline To Exercise Pendent Personal Jurisdiction Over Plaintiffs' State Law Claims ...................... 41

IV.    CONCLUSION ............................................. 42

CERTIFICATE OF COMPLIANCE ...................................... 43

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) .......................................................... 32

*Acerra v. Trulieve Cannabis Corp.*,
  2021 WL 1269919 (N.D. Fla. Mar. 18, 2021) ................................. 31

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal.App.4th 1176 (2012)........................................................ 35

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F.Supp.3d 1133 (N.D. Cal. 2019) ............................................. 9

*Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*,
  2012 WL 5512466 (C.D. Cal. Nov. 14, 2012)................................. 16

*Anderson v. Binance*,
  2022 WL 976824 (S.D.N.Y. Mar. 31, 2022), *appeal docketed sub nom.*
  *Lee v. Binance*, No. 22-972 (2d Cir. May 2, 2022).............................30, 31, 32

*In re Apple Processor Litigation*,
  2022 WL 2064975 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622
  (9th Cir. Sept. 13, 2023) .......................................................34, 35, 38

*Astiana v. Hain Celestial Group, Inc.*,
  783 F.3d 753 (9th Cir. 2015) ........................................................ 38

*In re Bank of America Corp. Auction Rate Securities (ARS) Marketing
  Litigation*,
  2011 WL 740902 (N.D. Cal. Feb. 24, 2011)..............................13, 14

*Bergeron v. Monex Deposit Co.*,
  2020 WL 3655495 (C.D. Cal. Apr. 29, 2020)................................. 33

*BMA LLC v. HDR Global Trading Ltd.*,
  2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ................................. 15

*Bowden v. Robinson*,
  67 Cal.App.3d 705 (1977) ............................................................ 36

*Bowen v. Ziasun Technologies, Inc.*,
  116 Cal.App.4th 777 (2004) ............................................................... 35

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017) ............................................................................ 42

*Brody v. Homestore, Inc.*,
  2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) ................................... 28

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................. 13

*California Public Employees' Retirement System v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................. 4

*In re Calpine Corp. Securities Litigation*,
  288 F.Supp.2d 1054 (N.D. Cal. 2003) .............................................. 14

*Carol Gamble Trust 86 v. E-Rex, Inc.*,
  84 F.App'x 975 (9th Cir. 2004)................................................ 17, 18, 24

*Carpenter v. PetSmart, Inc.*,
  441 F.Supp.3d 1028 (S.D. Cal. 2020) ............................................... 42

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ............................................................. 33

*Chu v. Fay Servicing, LLC*,
  2016 WL 5846990 (N.D. Cal. Oct. 6, 2016) ..................................... 34

*Cowan v. Goldcorp*,
  2017 WL 5495734 (C.D. Cal. Sept. 6, 2017)........................ 3, 18, 20, 21, 22

*Crago v. Charles Schwab & Co.*,
  2017 WL 2540577 (N.D. Cal. June 12, 2017) ................................... 22

*Cullen v. Shutterfly Lifetouch, LLC*,
  2021 WL 2000247 (N.D. Cal. May 19, 2021) ................................... 41

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017)............................................................ 18

*E. & J. Gallo Winery v. EnCana Corp.*,
  503 F.3d 1027 (9th Cir. 2007).............................................................. 7

YUGA LABS DEFENDANTS' MOTION TO DISMISS                 NO.: 2:22-cv-08909-FMO-PLA

*In re Cutera Securities Litigation*,
    610 F.3d 1103 (9th Cir. 2010)................................................................11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...........................................................................41

*In re Daou Systems, Inc.*,
    411 F.3d 1006 (9th Cir. 2005), *abrogated on other grounds by Matrixx*
    *Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ...........................26

*Defer LP v. Raymond James Financial, Inc.*,
    2010 WL 3452387 (S.D.N.Y. Sept. 2, 2010) ....................................12

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ...........................................................2, 9

*In re Downey Securities Litigation*,
    2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .................................19

*In re Facebook, Inc. Securities Litigation*,
    477 F.Supp.3d 980 (N.D. Cal. 2020), *aff'd in part, rev'd in part*, 84
    F.4th 844 (9th Cir. 2023) ..................................................................11

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Group, Inc.*,
    532 F.Supp.3d 956 (S.D. Cal. 2021) ................................................38

*Ferraro Family Foundation, Inc. v. Corcept Therapeutics Inc.*,
    501 F.Supp.3d 735 (N.D. Cal. 2020)................................................16

*Five for Entertainment S.A. v. Rodriguez*,
    877 F.Supp.2d 1321 (S.D. Fla. 2012)...............................................39

*Friel v. Dapper Labs, Inc.*,
    2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) ...................................1

*Gershman v. Bayer HealthCare LLC*,
    2015 WL 2170214 (N.D. Cal. May 8, 2015) ....................................41

*Goldstein v. General Motors LLC*,
    445 F.Supp.3d 1000 (S.D. Cal. 2020) ..............................................40

*Grundstrom v. Wilco Life Insurance Co.*,
    2022 WL 2390992 (N.D. Cal. July 1, 2022) .....................................34

ix

*Hadley v. Kellogg Sales Co.*,
      243 F.Supp.3d 1074 (N.D. Cal. 2017) ................................................................ 35

*Hall v. SeaWorld Entertainment, Inc.*,
      747 F.App'x 449 (9th Cir. 2018) ....................................................................... 35

*Hashem v. NMC Health PLC*,
      2021 WL 5926133 (C.D. Cal. Nov. 1, 2021) ..................................................... 23

*Hollifield v. Resolute Capital Partners Ltd., LLC*,
      2023 WL 4291524 (C.D. Cal. May 12, 2023) ..................................... 27, 29, 36

*Ibarra v. Pharmagenics LLC*,
      2023 WL 2445397 (C.D. Cal. Mar. 8, 2023) ..................................................... 34

*In re Inogen, Inc. Securities. Litigation*,
      No. CV 19-1643 FMO (AGRx), slip op. (C.D. Cal. Aug. 13, 2021) ......... 17, 18

*J.P. Morgan Securities, LLC v. Geveran Investments Ltd.*,
      224 So.3d 316 (Fla. Dist. Ct. App. 2017) ......................................................... 38

*Jackson v. Fischer*,
      931 F.Supp.2d 1049 (N.D. Cal. 2013) .......................................................... 37, 38

*Janus Capital Group, Inc. v. First Derivative Traders*,
      564 U.S. 135 (2011) ..................................................................................... 11, 15

*Johnson v. Commission on Presidential Debates*,
      2014 WL 12597805 (C.D. Cal. Jan. 6, 2014) ................................................... 42

*Kainos Laboratories, Inc. v. Beacon Diagnostics, Inc.*,
      1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ................................................. 37

*Kalin v. Semper Midas Fund, Ltd.*,
      2021 WL 5906053 (N.D. Cal. Dec. 14, 2021) .................................................. 41

*Kang v. PayPal Holdings, Inc.*,
      620 F.Supp.3d 884 (N.D. Cal. 2022) ................................................................ 17

*Kearns v. Ford Motor Co.*,
      567 F.3d 1120 (9th Cir. 2009) ..................................................................... 33, 35

*Klaehn v. Cali Bamboo LLC*,
      2022 WL 1830685 (9th Cir. June 3, 2022) ....................................................... 38

*Louisiana Pacific Corp. v. Money Market 1 Institional Investment Dealer*,
  2011 WL 1152568 (N.D. Cal. Mar. 28, 2011)................................................23

*In re Lehman Brothers Securities & ERISA Litigation*,
  903 F.Supp.2d 152 (S.D.N.Y. 2012) ..........................................................26

*LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*,
  622 F.Supp.3d 935 (S.D. Cal. 2022) ..........................................................31

*Lombardo v. Johnson & Johnson Consumer Companies, Inc.*,
  124 F.Supp.3d 1283 (S.D. Fla. 2015)..........................................................39

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014)......................................................................21

*Lorenzo v. SEC*,
  139 S.Ct. 1094 (2019) ...............................................................................11

*Lubin v. Sybedon Corp.*,
  688 F.Supp. 1425 (S.D. Cal. 1988) ............................................................37

*McGee v. American Oriental Bioengineering, Inc.*,
  2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)............................................17

*McGovney v. Aerohive Networks, Inc.*,
  367 F.Supp.3d 1038 (N.D. Cal. 2019) ........................................................10

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) .......................................................................4

*MEECO Manufacturing Co. v. True Value Co.*,
  2007 WL 1051259 (W.D. Wash. Apr. 4, 2007)............................................35

*Melot v. JAKKS Pacific, Inc.*,
  2014 WL 12589334 (C.D. Cal. June 6, 2014)..............................................11

*Melvin v. Brayshaw*,
  2019 WL 6482220 (C.D. Cal. Oct. 3, 2019) ...............................................32

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008)...............................................................18, 21

*Minshall v. TD Evergreen*,
  2005 WL 8145046 (M.D. Fla. Aug. 4, 2005)..............................................39

*Mirkin v. Wasserman*,
    5 Cal.4th 1082 (1993) ................................................................. 36

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ............................................................... 4, 31

*Mosqueda v. American Honda Motor Co., Inc.*,
    443 F.Supp.3d 1115 (C.D. Cal. 2020) ........................................ 40

*In re Nektar Therapeutics*,
    2020 WL 3962004 (N.D. Cal. July 13, 2020) ............................ 20

*In re Nektar Therapeutics Securities Litigation*,
    34 F.4th 828 (9th Cir. 2022) ....................................................... 4

*In re NJOY, Inc. Consumer Class Action Litigation*,
    2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) .......................... 33

*In re NVIDIA Corp. Securities Litigation*,
    768 F.3d 1046 (9th Cir. 2014) ................................................... 13

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) ............................................ 8, 18, 20

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F.Supp.2d 1327 (S.D. Fla. 2012) ........................................ 39

*Pino v. Cardone Capital, LLC*,
    55 F.4th 1253 (9th Cir. 2022), *amended and superseded*, 2023 WL
    2158802 (9th Cir. Feb. 22, 2023) ......................................... 25, 28

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ............................................................*passim*

*Pitt v. Metropolitan Tower Life Insurance Co.*,
    2020 WL 1557429 (N.D. Cal. Apr. 1, 2020) ............................. 16

*Plumley v. Sempra Energy*,
    2017 WL 2712297 (S.D. Cal. June 20, 2017) ............................ 10

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ................................................... 11

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) .............................................. 17, 19

*Rain Design, Inc. v. Spinido, Inc.*,
    2018 WL 4904894 (N.D. Cal. Oct. 9, 2018) ....................................................41

*Reed v. Amira Nature Foods Ltd.*,
    2016 WL 6571281 (C.D. Cal. July 18, 2016) ..........................................2, 8, 22

*Retail Wholesale & Department Store Union Local 338 Retirement Fund v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017)............................................................................8

*Rhynes v. Stryker Corp.*,
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ...................................................34

*In re Rigel Pharmaceuticals Inc. Securities Litigation*,
    2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ..................................................14

*In re Rigel Pharmaceuticals Inc. Securities Litigation*,
    697 F.3d 869 (9th Cir. 2012)......................................................................20, 31

*Risley v. Universal Navigation Inc.*,
    2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023), *appeal docketed*, No. 23-
    1340 (2d Cir. Sept. 28, 2023) ...........................................................27, 28, 30

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009)...........................................................................16

*Ryder International Corp. v. First American National Bank*,
    943 F.2d 1521 (11th Cir. 1991).........................................................................27

*In re Sahlen & Associates, Inc. Securities Litigation*,
    773 F.Supp. 342 (S.D. Fla. 1991).....................................................................39

*Schuman v. Microchip Technology Inc.*,
    372 F.Supp.3d 1054 (N.D. Cal. 2019) ..............................................................34

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004).............................................................................41

*Scognamillo v. Credit Suisse First Boston LLC*,
    2005 WL 2045807 (N.D. Cal. Aug. 25, 2005), *aff'd sub nom.*
    *Scognamillo v. Credit Suisse First Boston*, 254 F.App'x 669 (9th Cir.
    2007) .................................................................................................................38

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F.Supp.3d 1213 (C.D. Cal. 2015)...................................................14, 22, 23

*SEC v. Francisco*,
    262 F.Supp.3d 985 (C.D. Cal. 2017).................................................................... 16

*SEC v.Levine*,
    462 F.App'x 717 (9th Cir. 2011)....................................................................... 31

*SEC v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) ................................................................................ 15

*Sharp v. Arena Pharmaceuticals, Inc.*,
    2013 WL 12094819 (S.D. Cal. Mar. 29, 2013).................................................. 37

*Shi v. Le*,
    2022 WL 896963 (E.D.N.Y. Mar. 28, 2022) ..................................................... 32

*Siegal v. Gamble*,
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ............................................. 36, 37

*SIG, Inc. v. AT & T Digital Life, Inc.*,
    971 F.Supp.2d 1178 (S.D. Fla. 2013)................................................................ 39

*Sneed v. AcelRx Pharmaceuticals, Inc.*,
    2022 WL 4544721 (N.D. Cal. Sept. 28, 2022)............................................. 15, 17

*Sollberger v. Wachovia Securities, LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010).............................................. 9, 13

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................... 34

*State Treasurer of Michigan v. Countrywide Financial Corp.*,
    2011 WL 13220150 (C.D. Cal. Aug. 22, 2011)................................................ 25

*Stearns v. Select Comfort Retail Corp.*,
    763 F.Supp.2d 1128 (N.D. Cal. 2010) ............................................................. 33

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ........................................................................... 32

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 4

*Tellone Pro. Ctr. LLC v. Allstate Insurance Co.*,
    2021 WL 1254360 (C.D. Cal. Jan. 26, 2021)................................................... 33

xiv

*In re Terazosin Hydrochloride Antitrust Litigation*,
    160 F.Supp.2d 1365 (S.D. Fla. 2001)...........................................................40

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985) .......................................................................30

*Underwood v. Coinbase Global, Inc.*,
    654 F.Supp.3d 224 (S.D.N.Y. 2023), *appeal docketed*, No. 23-184 (2d
    Cir. Feb. 9, 2023)..............................................................................25, 28

*United States v. Georgiou*,
    777 F.3d 125 (3d Cir. 2015) ........................................................................32

*Varnes v. Home Depot USA, Inc.*,
    2012 WL 5611055 (M.D. Fla. Nov. 15, 2012)............................................39

*In re Violin Memory Securities Litigation*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)..............................................12

*Viterbi v. Wasserman*,
    191 Cal.App.4th 927 (2011)........................................................................36

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .......................................................................19

*Welgus v. TriNet Group, Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017, *aff'd*, 765 F.App'x 239
    (9th Cir. 2019) .........................................................................................26

*Weston Family Partnership LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)..........................................................................9

*Williams v. Block.one*,
    2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022) ............................................33

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017)......................................................................16

*Wilson v. Frito-Lay North America, Inc.*,
    961 F.Supp.2d 1134 (N.D. Cal. 2013) .........................................................40

*Wofford v. Apple Inc.*,
    2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ...............................................34

*Yost v. Nationstar Mortgage, LLC*,
    2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ...................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ...................... 19, 42

**RULES AND REGULATIONS**

17 C.F.R. § 240.10b-5(a) ........................................................................ 15

17 C.F.R. § 240.10b-5(b) ........................................................................ 15

17 C.F.R. § 240.10b-5(c) ........................................................................ 15

Fed. R. Civ. 9(b) .............................................................................. *passim*

**STATUTES**

15 U.S.C. § 77e(a) ............................................................................... 24

15 U.S.C. § 77*l*(a)(1) ......................................................................... 3, 24

15 U.S.C. § 77o ................................................................................. 31

15 U.S.C. § 78j .................................................................................... 8

15 U.S.C. § 78t(a) ............................................................................... 29

15 U.S.C. § 78u-4(b)(1) ........................................................................ 8

15 U.S.C. § 78u-4(b)(2)(A) .................................................................... 8

Cal. Bus. & Prof. Code § 17200 ...................................................... 32, 33

Cal. Bus. & Prof. Code §§ 17200 to 17210 ............................................. 33

Cal. Corp. Code § 25008(a) .................................................................. 37

Cal. Corp. Code § 25110 ...................................................................... 36

Cal. Corp. Code § 25503 ...................................................................... 36

Cal. Corp. Code § 25504.1 .................................................................... 38

Cal. Corp. Code § 25507(a) .................................................................. 37

1

## OTHER AUTHORITIES

*Fast Answers: National Securities Exchanges*, Sec. & Exch. Comm'n (Sept.
     26, 2023), https://www.sec.gov/fast-
     answers/divisionsmarketregmrexchangesshtml ................................................31

Harold W. Marsh & Robert H. Volk, 1 Practice Under the California
     Securities Laws § 14.06 (2018) ........................................................36

*Solicitation*, Black's Law Dictionary (11th ed. 2019) ................................................27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS        NO.: 2:22-cv-08909-FMO-PLA

## I. **<u>PRELIMINARY STATEMENT</u>**[1]

Yuga Labs is a media and technology company devoted to shaping the future of entertainment through storytelling, experiences and community. It is the creator of the "Bored Ape Yacht Club" ("BAYC"), a popular collection of non-fungible tokens ("NFTs")[2]—unique digital art collectibles that provide owners with access to events, interactive games, and membership in an exclusive community of online fans.

On August 4, 2023, Plaintiffs filed a sprawling, 218-page, 699-paragraph Amended Complaint asserting a hodgepodge of conspiracy theories involving Yuga Labs and 27 other defendants, all sounding in fraud and centered around BAYC NFTs and five other digital entertainment products (the "Products"). On September 12, 2023, the Yuga Labs Defendants moved to dismiss the Amended Complaint in its entirety for the reasons conveyed in detail to Plaintiffs' counsel during a Local Rule 7-3 pre-motion meeting. During that meeting, Plaintiffs elected to stand on their Amended Complaint and waited for Defendants to file motions to dismiss before filing their Second Amended Complaint ("SAC"), adding four new plaintiffs and nearly 100 pages of additional speculation and fundamentally flawed allegations.

Put simply, the SAC is the disfavored proverbial "shotgun pleading," where Plaintiffs hope that sheer length, prolix allegations, mischaracterizations, and sensationalism can mask a glaring absence of well-pleaded facts. No amount of ink spilled, however, can transform this shotgun pleading into one that meets the "exacting" heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure (the "Rules"), which govern these claims and require Plaintiffs to state with particularity "the who,

---

[1] Unless otherwise specified, all emphasis is added and internal citations, quotation marks and alterations are omitted.

[2] NFTs are unique digital products whose authenticity and ownership can be verified on a blockchain. *Friel v. Dapper Labs, Inc.*, 2023 WL 2162747, at *4 (S.D.N.Y. Feb. 22, 2023). Generally speaking, a "blockchain platform" is a peer-to-peer network that records and reflects all transactions on a publicly viewable and unalterable system. *Id.* at *3.

YUGA LABS DEFENDANTS' MOTION TO DISMISS                NO.: 2:22-cv-08909-FMO-PLA

1    what, when, where, and how of the misconduct charged." *Reed v. Amira Nature Foods*
2    *Ltd.*, 2016 WL 6571281, at *4 (C.D. Cal. July 18, 2016) (Olguin, J.).

3           Throughout the SAC, Plaintiffs ignore this standard by lumping together 28
4    different Defendants, comprising seven multinational companies and 21 individuals,
5    and asserting that they all conspired to solicit and defraud purchasers of six different
6    Products, without differentiating between Defendants named or the Products at issue.
7    *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (rejecting similar
8    "'everyone did everything' allegations"). The notion that ***hundreds*** of employees and
9    persons comprising the Defendants conspired as alleged defies plausibility. To
10   compound this fatal pleading defect, Plaintiffs' theories are based on an impenetrable
11   tangle of allegations premised "on information and belief." Indeed, more than two
12   dozen unsupported "information and belief" allegations form the core of the SAC.[3]
13   These allegations are patently insufficient under Rule 9(b), the PSLRA, and a line of
14   authority dating back more than two decades. The SAC should be dismissed in its
15   entirety for the following reasons:

16          ***First,*** Plaintiffs' claims under the Securities Exchange Act of 1934 ("Exchange
17   Act") fail because the SAC does not plead with particularity the following essential
18   elements: (i) any materially false or misleading statement, omission or fraudulent
19   scheme; (ii) fraudulent intent as to any of the Yuga Labs Defendants, let alone all of
20   the Defendants collectively; (iii) loss causation; or (iv) reliance. To be clear, the Yuga
21   Labs Defendants unequivocally deny that any of the Products are "securities." But
22   even accepting that false predicate for purposes of this motion, Plaintiffs' claims fail.

23          No Misstatement or Omission (*infra* Part III.A.2). The small handful of alleged
24   misstatements attributed to any Yuga Labs Defendant—such as BAYC holders are
25   entitled to "members-only benefits" and own "commercial rights" to their NFTs—are
26   indisputably true, and Plaintiffs' own allegations and the very documents upon which

27
─────────────────
28   [3] (*See, e.g.*, SAC ¶¶ 90, 119, 132, 137, 148-49, 166, 174, 176, 178 n.116, 180-81, 223, 240, 326, 344, 386, 392, 622, 751, 846.)

they rely contradict Plaintiffs' own claims that those statements are false. They thus
fail as a matter of law.

No Fraudulent "Scheme" (*infra* Part III.A.3). Unable to identify an actionable
misstatement or omission, Plaintiffs fall back on convoluted theories of "scheme"
liability, including supposed "manipulative trading" of certain Products, a purportedly
"deceptive" auction of BAYC NFTs through Sotheby's, and a claim that a disparate
group of celebrities conspired to misleadingly promote their NFT holdings. Plaintiffs
not only fail to plead with particularity any facts supporting these conspiracies, but
also fail to connect such schemes to any Yuga Labs Defendant—flaws that mandate
dismissal.

No Scienter (*infra* Part III.A.4). Plaintiffs also fail to plead that any Yuga Labs
Defendant acted with the requisite "strong inference" of scienter—*i.e.*, intent to
defraud—with respect to any misstatement or "scheme." Despite its length, the SAC
does not contain ***any*** factual allegation about ***any*** Yuga Labs Defendant's state of mind
whatsoever. Instead, Plaintiffs offer only vague and unsupported allegations that lump
all "Defendants" together in an undifferentiated mass—a tactic courts routinely reject.

No Loss Causation (*infra* Part III.A.5). Plaintiffs similarly fail to plead loss
causation—*i.e.*, "that an economic loss was caused by the defendant's
misrepresentations, rather than some intervening event." *Cowan v. Goldcorp*, 2017
WL 5495734, at *6 (C.D. Cal. Sept. 6, 2017) (Olguin, J.). To the contrary, Plaintiffs
foreclose their own claims by repeatedly admitting that their alleged losses were
caused by intervening events unconnected to any alleged fraud.

No Reliance (*infra* Part III.A.6). Finally, the SAC fails to adequately plead any
Plaintiff's reliance on any supposed misstatement or scheme. This independently
defeats their theory of liability.

***Second,*** Plaintiffs fail to state a claim that Defendants violated Section 12(a)(1)
of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77*l*(a)(1), by selling
unregistered "securities." (*Infra* Part III.B.) Putting aside that none of the Products are

1  "securities," to plead a claim against the Defendants as "sellers," Plaintiffs must allege

2  either that (i) they purchased their Products *from Defendants*, or (ii) Defendants

3  "*successfully solicit[ed]*" Plaintiffs to purchase the Products. *Pinter v. Dahl*, 486 U.S.

4  622, 647 (1988). Plaintiffs allege neither. Moreover, Plaintiffs' solicitation-based

5  theory is time-barred as to alleged solicitations occurring more than one year before

6  the filing of this action.

7       **Third,** Plaintiffs cannot maintain any of their federal securities claims because

8  they fail to plead a "domestic" transaction, as required under *Morrison v. National*

9  *Australia Bank Ltd.*, 561 U.S. 247 (2010). (*Infra* Part III.D.)

10      **Lastly,** Plaintiffs' remaining California statutory and common law claims, as

11  well as their tack-on Florida law claims, fail for many of the same reasons as their

12  federal claims.

13                              *       *       *

14      The PSLRA "prevents a plaintiff from skirting dismissal by filing a complaint

15  laden with vague allegations of deception," *In re Nektar Therapeutics Sec. Litig.*, 34

16  F.4th 828, 835 (9th Cir. 2022), and is aimed at curbing lawsuits like this, which are

17  used "abusively to impose substantial costs on companies and individuals," *Tellabs,*

18  *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Simply "[c]obbling

19  together a litany of inadequate allegations does not render those allegations

20  particularized in accordance with Rule 9(b) or the PSLRA." *Cal. Pub. Emps.' Ret. Sys.*

21  *v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004). Even under Rule 8, "[s]omething

22  labeled a complaint but written more as a press release, prolix in evidentiary detail, yet

23  without simplicity, conciseness and clarity as to whom plaintiffs are suing for what

24  wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*,

25  84 F.3d 1172, 1180 (9th Cir. 1996).

26      Plaintiffs' SAC is devoid of well-pleaded allegations and fails to perform the

27  essential functions of a complaint. The Court should dismiss it with prejudice.

28

## II.   FACTUAL BACKGROUND

### A.   The Parties

Lead Plaintiffs Johnson (Texas resident), Boekweg (Texas resident), Palombini (Portugal resident), and additional named Plaintiffs Titcher (California resident), Smith (California resident), Neal (Florida resident), Hiren (Florida resident) and Grand (Florida resident), allege that they purchased certain Products on secondary marketplaces and later suffered losses when the prices of the Products declined. (SAC ¶¶ 10-17, 776-90.) Plaintiffs seek to represent a class of persons who purchased Products between April 23, 2021, and October 6, 2023. (SAC ¶¶ 1, 9, 625.)

Plaintiffs assert claims against 28 Defendants:

(i)     Yuga Labs;

(ii)    Yuga Labs' founders and certain current or former executives: Aronow, Solano, Atalay, Ali, Muniz, Shoemaker, Ehrlund, and Lyons ("Executive Defendants");

(iii)   Oseary, an alleged Yuga Labs minority partner, consultant, and spokesperson;

(iv)    Ohanian, Wu, and Bajwa, "Special Council" advisors to non-party Ape Foundation, which administratively supports the ApeCoin "DAO" (a decentralized autonomous organization);

(v)     certain "celebrity" owners of some Products and affiliated companies: Winkelmann, Ciccone, Hilton, Fallon, EHD, Universal, Bieber, Post, Broadus, Curry, adidas America, and adidas Ventures ("Celebrity Defendants");

(vi)    MoonPay, a technology company that builds payments infrastructure for digital products, and its CEO ("MoonPay Defendants"); and

(vii)   Sotheby's, an auction house for art and other collectibles.

**B.     The Products**

The Products comprise six distinct digital entertainment products:

(i)      the BAYC NFT collection;

(ii)     the Mutant Ape Yacht Club ("MAYC") NFT collection;

(iii)    the Bored Ape Kennel Club ("BAKC") NFT collection;

(iv)    the Otherdeed NFT collection;

(v)     the Meebits NFT collection; and

(vi)    ApeCoin.

(SAC ¶ 1 n.1.) Yuga Labs created all 10,000 BAYC NFTs and launched the NFTs in April 2021. (SAC ¶¶ 66, 69.) It later created MAYC, BAKC, and a metaverse project called "Otherside." (SAC ¶¶ 74, 81.)[4] Yuga Labs acquired the Meebits collection from non-party Larva Labs in 2022. (SAC ¶ 291.) Plaintiffs do not allege that Yuga Labs created or sold any Meebits. Plaintiffs also do not allege to have purchased any of the NFTs from any Yuga Labs Defendant. Rather, they admit purchasing them from unidentified third parties on secondary marketplaces.

ApeCoin is a fungible cryptocurrency and governance token that can be used to pay for certain goods and services and to access games and merchandise.[5] (SAC ¶¶ 245-46, 374, 389.) According to Plaintiffs, ApeCoin was introduced in 2022, and Yuga Labs later adopted it as the official currency of the BAYC "ecosystem" where members could "explore" and "play." (SAC ¶¶ 245, 402.) Plaintiffs do not allege they purchased ApeCoin from any Yuga Labs Defendant.

**C.     The Alleged "Schemes"**

Based primarily on "information and belief," Plaintiffs allege that all 28 Defendants "united" to orchestrate three supposed "schemes": (i) the Sotheby's Auction; (ii) manipulative NFT trading; and (iii) celebrity promotions.

---

[4] Plaintiffs improperly conflate Otherside with Otherdeed NFTs, which are separate products. (*E.g.*, SAC ¶¶ 1 n.1, 81.)

[5] Generally, a "governance token" is a digital asset that allows holders to vote on or propose changes to a DAO or project. (*See* SAC ¶¶ 386, 388, 533.)

1        **1.      The Sotheby's Auction**

2        First, Plaintiffs allege that Yuga Labs "colluded" with Sotheby's "to run a

3   deceptive auction of a lot of 101 BAYC NFTs" in September 2021. Plaintiffs allege

4   that the auction was "rooted in deception" because the winner was allegedly "not a

5   'traditional' buyer," but rather "the now-defunct cryptocurrency exchange FTX."

6   (SAC ¶ 147.) Plaintiffs allege no facts to connect any Yuga Labs Defendant to the

7   challenged statement or auction.

8        **2.      Alleged Trading "Manipulation"**

9        Next, Plaintiffs allege two purported trading manipulation schemes. First,

10  Plaintiffs allege a scheme based on purported "wash trad[es]" of BAYC NFTs, all of

11  which are recorded in the public domain. (SAC ¶¶ 54, 426.) A wash trade involves

12  simultaneous buying and selling "at the same price and on the same day." *E. & J. Gallo*

13  *Winery v. EnCana Corp.*, 503 F.3d 1027, 1032 (9th Cir. 2007). But Plaintiffs do not

14  allege any specific instances of wash trading—let alone by or at the behest of any

15  Defendant. Instead, Plaintiffs vaguely point to "research" supposedly "suspect[ing]"

16  that wash trading has occurred among a minute fraction of only certain Products,

17  without any suggestion of the Yuga Labs Defendants' involvement. (SAC ¶¶ 430-36.)

18  Second, Plaintiffs allege a scheme based on alleged purchases of Products at prices

19  above the "floor price." As Plaintiffs allege, the "floor price" is the lowest price for

20  which an NFT in a given collection can be purchased. (SAC ¶ 56.) Plaintiffs do not

21  allege how purchases above the "floor price" are manipulative (they are not) or that

22  any Yuga Labs Defendant engaged in any "above the floor price" trades.

23       **3.      Celebrity "Promotions"**

24       Lastly, Plaintiffs allege that "celebrity influencers" acted to "deceptively

25  promote the artificially inflated BAYC NFTs." (SAC ¶ 238.) Plaintiffs claim that the

26  Celebrity Defendants "promot[ed]" the Products by alleging, "[u]pon information and

27  belief," they each "received a BAYC NFT and/or other fiat or cryptocurrency from

28  MoonPay and/or Yuga as compensation." (SAC ¶ 846.) These "and/or," "upon

7

1   information and belief" claims are made without any factual support to connect the

2   Yuga Labs Defendants to any scheme. And notably, Plaintiffs have now withdrawn

3   their scattershot "celebrity promotion" claims against nine celebrities named in the

4   original complaint.

5   **D.    The So-Called "Dump"**

6          Plaintiffs allege that Defendants' various "schemes" culminated in a purported

7   "dump" in which "the floor price of the BAYC NFT collection began to deflate." (SAC

8   ¶ 513.) But Plaintiffs do not connect this "deflat[ing]" to any fraud, nor do Plaintiffs

9   allege that any Defendant ever sold their own Products at "artificially inflated" prices,

10  let alone in a way that caused any sort of "dump."

11

12  **III.   ARGUMENT**

13  **A.    Plaintiffs Fail To State a Claim Under Section 10(b) of the Exchange Act
        (Counts 7-8)**

14         Plaintiffs' securities fraud claims should be dismissed because Plaintiffs fail to

15  plead as to any Yuga Labs Defendant: (i) any actionable misstatements, omissions or

16  "scheme" to defraud; (ii) a strong inference of scienter; (iii) loss causation; or

17  (iv) reliance. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th

18  Cir. 2014).

19         "To state a claim under [Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)

20  ("Section 10(b)")], a plaintiff must meet 'the exacting pleading standards of [Rule]

21  9(b) and the [PSLRA].'" *Reed*, 2016 WL 6571281, at *4. Rule 9(b) requires that "a

22  party must state with particularity the circumstances constituting fraud or mistake."

23  Fed. R. Civ. P. 9(b). The PSLRA requires that a plaintiff (i) "specify ***each*** statement

24  alleged to have been misleading [and] the reason or reasons ***why*** the statement is

25  misleading," and (ii) "state with particularity facts giving rise to a ***strong inference***

26  that [each] defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1),

27  (2)(A); *see also Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-*

28  *Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017).

## 1.    The SAC Fails Because It Is a "Shotgun Pleading"

The SAC should be dismissed because it is a "shotgun" pleading: it seeks to "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Indeed, Plaintiffs allege a series of "schemes" involving 28 Defendants, many of whom are unrelated, but—even after repleading twice—do not properly distinguish among the Defendants, their alleged conduct, or the six distinct Products at issue. (*See, e.g.,* SAC ¶¶ 87, 344, 571, 682.) This failure mandates dismissal. *Destfino*, 630 F.3d at 958 (complaint "was properly dismissed because it . . . continu[ed] to make 'everyone did everything' allegations"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1153 (N.D. Cal. 2019) ("'[W]ithin the realm of Rule 9(b), "everyone did everything" allegations are not countenanced.'"); *Yost v. Nationstar Mortg.*, LLC, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013) ("Under the pleading standard of either Rule 8 or Rule 9, Plaintiffs must distinguish Defendants' particular roles in the alleged causes of action.").

## 2.    Plaintiffs Do Not Plead Any Actionable Misstatement or Omission Against Any Yuga Labs Defendant (Count 7)

Plaintiffs do not adequately allege any materially false or misleading statement or omission by any Yuga Labs Defendant. "For a statement to be false or misleading, it must 'directly contradict what the defendant knew at that time' or 'omit[ ] material information.'" *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). A statement is material only if "there is a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the total mix of information made available for the purpose of decisionmaking by [purchasers] concerning their investments." *Retail Wholesale*, 845 F.3d at 1277. Plaintiffs

YUGA LABS DEFENDANTS' MOTION TO DISMISS                    NO.: 2:22-cv-08909-FMO-PLA

1 challenge certain statements by Solano and Aronow (SAC ¶ 766(b)-(d), (h))—none of
2 which is materially false or misleading.[6]

3                              (a)      "Members-Only Benefits" Tweets

4          First, Plaintiffs challenge two tweets by Solano stating that BAYC NFTs would
5 "double as membership cards to an exclusive club with benefits" and "grant[] access
6 to a collaborative art experiment in the form of a canvas only token-holders can draw
7 on." (SAC ¶¶ 255-56; 766(b)-(c).) But Plaintiffs *admit* the statement was true: BAYC
8 NFTs *did* offer owners numerous members-only benefits. (*E.g.*, SAC ¶¶ 79, 244, 327,
9 411.) *See McGovney v. Aerohive Networks, Inc.*, 367 F.Supp.3d 1038, 1059 (N.D. Cal.
10 2019) (challenged statement was "quite literally true" and "[t]herefore, by definition,
11 it is not misleading"); *Plumley v. Sempra Energy*, 2017 WL 2712297, at *8 (S.D. Cal.
12 June 20, 2017) (dismissing where "Plaintiffs' own allegations contradict their
13 claims").

14         Plaintiffs assert that the tweets "suggested to investors that there would be a
15 broader ecosystem for BAYC NFT holders to interact in" and "the BAYC brand was
16 poised for significant growth." (SAC ¶ 766(b)-(c).) The tweets say no such thing.
17 Regardless, Plaintiffs admit even those interpretations are not false, alleging that Yuga
18 Labs took strides to build a BAYC ecosystem through various activities and events.
19 (*E.g.*, SAC ¶¶ 233, 243-45, 387-89, 397, 399, 411, 417.)

20         Moreover, any statements about the future prospects of BAYC NFTs—and
21 Plaintiffs have adequately pleaded none—would be forward-looking and optimistic
22 opinions that cannot support a claim unless coupled with allegations that the speaker
23 had actual knowledge of their falsity when made. *Weston*, 29 F.4th at 620. Fatally,
24 Plaintiffs do not plead *any* facts about Solano's knowledge.

25

26

27

28 ———————————
[6] Because Plaintiffs do not challenge statements by any of the other Executive
Defendants or Yuga Labs, Count 7 must be dismissed as to each of them. (SAC ¶¶ 759, 766.)

10

**(b)    "High School Dropout" Tweet**

Plaintiffs challenge Aronow's tweet stating "[n]ot bad for a high school dropout" in response to a third party's post that the collective value of BAYC NFTs exceeded a billion dollars. (SAC ¶¶ 273, 658, 688, 766(d).) But Plaintiffs do not allege any facts to refute that Aronow dropped out of high school.[7] Instead, Plaintiffs allege that the tweet endorsed a statement made by non-party "Willy Bullish" that the value of the BAYC NFT collection exceeded $1 billion. (SAC ¶ 273 & n.222.) Aronow cannot be held liable for this statement because he did not make it. *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011) (Section 10(b) imposes liability only on the "maker" of a statement).[8]

Nor do Plaintiffs allege facts to refute Willy Bullish's statement that the value of the BAYC NFT collection surpassed $1 billion. *Melot v. JAKKS Pac., Inc.*, 2014 WL 12589334, at *10 (C.D. Cal. June 6, 2014) ("'[A]ccurate statements of past performance' are not actionable as a matter of law."). Instead, Plaintiffs appear to allege that this statement omitted that the market valuation had risen to over $1 billion on account of unspecified "manipulative trading practices." (SAC ¶ 766(d).) This fails because Plaintiffs do not adequately allege any such "manipulation" or its impact on the value of the collection. (*Infra* Part III.A.3.a.) And, as courts have long held, companies "are not required to engage in 'self-flagellation' by disclosing unproven allegations" of wrongdoing. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) (citing cases); *accord In re Facebook, Inc. Sec. Litig.*, 477 F.Supp.3d 980, 1023 (N.D. Cal. 2020), *aff'd in relevant part*, 84 F.4th 844 (9th Cir. 2023).

---

[7] Plaintiffs also nowhere explain how this statement could have been material to any purchaser of any Product. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (immaterial statements not actionable as a matter of law); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

[8] Aronow also cannot be held liable for disseminating the statement because Plaintiffs do not allege that he "understood" it "to contain material untruths." *Lorenzo v. S.E.C.*, 139 S.Ct. 1094, 1101 (2019).

1

### (c)   "Leaked" Pitch Deck

2    Plaintiffs allege in passing that a pitch deck allegedly provided to Yuga Labs'

3  private investors (not Plaintiffs) falsely stated that unnamed "[c]elebrities are buying

4  Apes to signal that they know what's up." (SAC ¶ 766(m).) But Plaintiffs do not allege

5  any of the most basic information about the deck, including who created it or was

6  responsible for its contents. *See Defer LP v. Raymond James Fin., Inc.*, 2010 WL

7  3452387, at *12 (S.D.N.Y. Sept. 2, 2010) (dismissing where complaint "fails to allege

8  particularly which defendant was responsible for [document's] publication").

9  Plaintiffs also do not allege how or why the cited statement was false. They do not, for

10  example, plead facts that no celebrities bought BAYC NFTs. To the contrary, the SAC

11  plainly admits that certain celebrities in fact ***did*** purchase BAYC NFTs. (*See, e.g.*,

12  SAC ¶ 210.)

13

### (d)   "Commercial Rights" Statement

14    Plaintiffs challenge as false statements by Solano on Discord[9] that BAYC

15  holders own "full commercial rights to their apes." (SAC ¶ 766(h); *id.* ¶¶ 69-70.) Such

16  assertion is refuted by the very document on which Plaintiffs rely—the BAYC Terms

17  & Conditions, which states: "Yuga Labs LLC grants you an unlimited, worldwide

18  license to use, copy, and display the purchased Art for the purpose of creating

19  derivative works based upon the Art ('Commercial Use')." (Ex. 1 at 1.) It further states

20  that owners may earn revenue from use of the licensed intellectual property. (*Id.*)

21  Plaintiffs' quibble that holders are granted only a "license" misses the point: The

22  license confirms BAYC NFT owners hold commercial rights to their NFTs. In any

23  event, the terms delineating the ownership rights were at all times publicly available

24  to all users. *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *15 (N.D. Cal.

25

26

---

27  [9] Discord is an internet chat application that allows users to post and interact with

28  content in community-based chatrooms or "channels." *See* www.discord.com; (SAC ¶ 312). Some chatrooms are limited to "members-only" and cannot be seen by the public. (*Id.* ¶¶ 69, 286.)

1  Oct. 31, 2014) (dismissing where the allegedly concealed facts were "embedded

2  within certain relevant disclosures").

3                **(e)     Purported Omissions**

4         Finally, Plaintiffs suggest that all "***Defendants*** were obligated to disclose"

5  various information related to the Products ranging from the identity of the buyer at

6  the Sotheby's auction to details about "secret loans of ApeCoin" allegedly given to

7  third parties. (SAC ¶ 767.) Yet Plaintiffs identify no duty to disclose this alleged

8  information. There is no "affirmative duty to disclose any and all material

9  information,'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014),

10  or "freestanding completeness requirement," *Brody v. Transitional Hosp. Corp.*, 280

11  F.3d 997, 1006 (9th Cir. 2002). Here, the items allegedly "omitted" are simply

12  Plaintiffs' own unproven allegations and suppositions. As noted above, Defendants

13  are not required to disclose unproven allegations. Plaintiffs' claim is also doomed by

14  their reliance on the omnibus term "Defendants," instead of identifying which specific

15  Defendant(s) had a duty to disclose which information. *Sollberger*, 2010 WL 2674456,

16  at *4 (dismissing where plaintiff "group[ed] defendants together without identifying

17  what the particular defendants specifically did wrong").

18          **3.     Plaintiffs Fail To Plead a Fraudulent "Scheme" (Count 8)**

19                **(a)     Plaintiffs Do Not Plead a "Manipulative Trading" Scheme**

20         Plaintiffs assert a supposed manipulation "scheme" based on rank speculation

21  about "wash trades" and ***publicly disclosed*** purchases of NFTs made "above the floor

22  price." (SAC ¶¶ 426-505.) To state a claim for market manipulation, a plaintiff must

23  allege (i) "which defendants" took the manipulative acts, (ii) "what manipulative acts

24  were performed," (iii) "when" they were performed and (iv) "what effect the scheme

25  had on the market for the securities at issue.'" *In re Bank of Am. Corp. Auction Rate*

26  *Securities (ARS) Mktg. Litig.*, 2011 WL 740902, at *6,*9 (N.D. Cal. Feb. 24, 2011).

27  Plaintiffs do not meet any of these requirements.

28

1    **Alleged Wash Trades.** Plaintiffs allege no "wash trades" by any Defendant, let

2    alone involvement of any Yuga Labs Defendant in wash trading. *In re Rigel Pharms.,*

3    *Inc. Sec. Litig.*, 2009 WL 5125344, at *6 (N.D. Cal. Dec. 21, 2009) ("[P]laintiff must

4    allege, *inter alia*, that *the defendant* engaged in manipulative acts."). Indeed, Plaintiffs

5    allege no sales of Products by any Yuga Labs Defendant. Suffice it to say, Plaintiffs

6    also do not plead the "what" or "when" of any wash trades. *Bank of Am.*, 2011 WL

7    740902, at *9.[10] Plaintiffs likewise fail to allege "**what effect**" the alleged trades "had

8    on the market for the [Products]." *Id.* They allege that just a dozen of the 10,000 BAYC

9    NFTs "exhibit[ed] signs" of wash trading (SAC ¶¶ 430-432), without explaining how

10   this alleged trading volume—impacting just a fraction of all BAYC NFTs—could

11   possibly have manipulated the market. *In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d

12   1054, 1085 (N.D. Cal. 2003) (dismissing fraud claim based on "relatively tiny volume

13   of wash trades").

14   **Alleged Above the Floor Price Trades.** Plaintiffs also allege that a series of

15   NFTs were purchased at prices above the "floor price." (SAC ¶¶ 444-504.) Yet, again,

16   Plaintiffs do not allege that any Yuga Labs Defendant made any such trades or when.

17   Nor do Plaintiffs plead that an "above the floor price" trade is manipulative. It is not.

18   The "floor price" is simply the lowest price for which an NFT in a given collection

19   can be purchased. (SAC ¶ 56.)  Plaintiffs admit that each NFT in a collection is unique

20   and differently valued and "NFTs cannot be traded or exchanged at equivalency."

21   (*E.g.*, SAC ¶¶ 56, 249 (alleging "rare 'pink' Bored Apes . . . were more valuable").)

22   By Plaintiffs' own allegations, a purchase above the floor price merely reflects that the

23   purchaser valued that unique NFT more than the lowest priced NFT within the

24

25

---

26   [10] Plaintiffs do not even plead definitively that any "wash trades" occurred. They allege
     only that certain Products "exhibit[ed] signs of wash trading" or were "flagged" as
27   potentially involving wash trading. (SAC ¶¶ 430-33.) That does not satisfy Rule 9(b)
     or the PSLRA. *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F.Supp.3d 1213, 1240
28   (C.D. Cal. 2015) (plaintiffs "must plead *which* trades were manipulative") (emphasis
     in original).

1  collection, nothing more. *See BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371,
2  at *1, *6-9 (N.D. Cal. Mar. 12, 2021).

3  **(b)    Plaintiffs Do Not Plead an "Auction" Scheme**

4  Plaintiffs' "Sotheby's auction scheme" claim fares no better. Plaintiffs fail to
5  allege that any Yuga Labs Defendant had any involvement in the auction or its
6  promotion. They point only to a post from the BAYC Twitter account accurately
7  reporting the purchase price, congratulating the unidentified buyer, and welcoming
8  them to the "club." (SAC ¶ 140.) No aspect of this statement is alleged to be false,
9  much less part of any "scheme" to conduct a "deceptive" auction.[11]

10  The crux of Plaintiffs' "auction scheme" is that Sotheby's stated that a
11  traditional art collector purchased 101 BAYC NFTs when in fact the buyer was
12  allegedly "FTX." (SAC ¶¶ 137-39.) That is a purported misrepresentation claim under
13  Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), not a scheme claim under Rule 10b-5(a) or
14  (c), 17 C.F.R. § 240.10b-5(a), (c). *See SEC v. Rio Tinto plc*, 41 F.4th 47, 55 (2d Cir.
15  2022) (rejecting attempt to "repackage" misrepresentation claims as scheme claims).
16  Moreover, the Yuga Labs Defendants are not alleged to have made or disseminated
17  the statement, let alone with fraudulent intent. *See Janus*, 564 U.S. at 142; *Sneed v.*
18  *AcelRx Pharms., Inc.*, 2022 WL 4544721, at *6 (N.D. Cal. Sept. 28, 2022).

19  Furthermore, Plaintiffs' allegations regarding the Sotheby's auction are
20  internally inconsistent and highlight the impenetrable tangle of allegations in their
21  shotgun pleading. Plaintiffs first claim that, to raise the floor price, "FTX priced these
22  BAYC NFTs . . . *aggressively high*." (SAC ¶ 153.) In the very next sentence, however,
23  Plaintiffs allege that the BAYC NFTs on FTX were listed more than *5% lower* than
24  elsewhere. (*Id.*)

25

26

27

28
_____
[11] Plaintiffs' claim also fails because no Plaintiff has standing to bring it. (Sotheby's
Brief at 2:13-4:3.)

1

### (c)    Plaintiffs Do Not Plead a "Celebrity Promotions" Scheme

2       Plaintiffs' "celebrity promotions" claim fails because Plaintiffs have not

3   pleaded any particularized facts to show that (i) any Yuga Labs Defendant was

4   involved in any Celebrity Defendant's acquisition of any NFT, or (ii) any Yuga Labs

5   Defendant had any input into, control over, or even awareness of, any of the statements

6   or actions by the celebrities. *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,

7   501 F.Supp.3d 735, 756-57 (N.D. Cal. 2020) (dismissing vaguely pled "off-label

8   marketing" scheme claim).

9       Plaintiffs speculate "on information and belief" that "MoonPay and/or Yuga"

10  gave away NFTs to some celebrities (SAC ¶ 846), but do not plead any particularized

11  facts that such giveaways occurred or any link to Yuga Labs. *Rubke v. Capitol Bancorp*

12  *Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009) (rejecting allegations "based only on

13  'information and belief'" where complaint failed to "state with particularity all facts

14  on which that belief is formed"); *SEC v. Francisco*, 262 F. Supp. 3d 985, 989 (C.D.

15  Cal. 2017) (rejecting "and/or" allegations "couched in vague, hedging language");

16  *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2012 WL 5512466, at *13 (C.D. Cal.

17  Nov. 14, 2012).

18      Plaintiffs attempt to link Yuga Labs to this purported "scheme" by asserting that

19  "MoonPay acted as an agent and indirect spokesperson for [Yuga Labs] by virtue of it

20  being controlled, in part, by Defendant Oseary." (SAC ¶ 44.) Yet Plaintiffs allege no

21  facts establishing such control. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015,

22  1024-25 & n.5 (9th Cir. 2017) (rejecting agency allegations where plaintiff offered

23  only a "conclusory legal statement unsupported by any factual assertion"). Plaintiffs

24  merely allege that Oseary had roles with Yuga Labs and MoonPay; that is not enough

25  to conflate two separate legal entities. *Pitt v. Metro. Tower Life Ins. Co.*, 2020 WL

26  1557429, at *4 (N.D. Cal. Apr. 1, 2020) ("[A]s the Supreme Court has noted,

27  employees routinely wear multiple 'hats' in the course of performing duties for

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS           NO.: 2:22-cv-08909-FMO-PLA

different legal entities without imputing the conduct of one entity to all of its corporate affiliates.").

At base, Plaintiffs allege without support that certain celebrities made misleading statements about their ownership of BAYC NFTs, but they fail to allege, let alone with particularity, that any Yuga Labs Defendant ever made, created, or disseminated such statements. This is insufficient. *Sneed*, 2022 WL 4544721, at *6 (dismissing scheme claim on same basis as misstatement claim); *Kang v. PayPal Holdings, Inc.*, 620 F.Supp.3d 884, 902 (N.D. Cal. 2022) (same).

### 4.     Plaintiffs Do Not Plead Scienter

Plaintiffs' Section 10(b) claims should also be dismissed because Plaintiffs do not "state with particularity facts giving rise to a strong inference that [any Yuga Labs Defendant] acted with the required state of mind." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021); *McGee v. Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 (C.D. Cal. Sept. 23, 2014) (Olguin, J.) ("The [complaint] is lengthy, with over 210 paragraphs, but the lack of allegations regarding scienter is readily apparent.").

"To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *In re Inogen, Inc. Sec. Litig.*, No. CV 19-1643 FMO (AGRx), slip op. at 12 (C.D. Cal. Aug. 13, 2021) (Olguin, J.). Deliberate recklessness "is 'an ***extreme*** departure from the standards of ordinary care.'" *Prodanova*, 993 F.3d at 1106.

The sum total of Plaintiffs' scienter allegations as to the Yuga Labs Defendants are contained in just ***two paragraphs***. (SAC ¶¶ 771-72.) They allege that a group of undifferentiated Defendants "had knowledge" of the alleged fraud or acted with "reckless disregard for the truth." (*Id.* ¶ 771.) This does not come close to satisfying the PSLRA. *Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F. App'x 975, 977 (9th Cir. 2004)

1  (dismissing complaint that "relie[d] on broad allegations and boilerplate
2  conclusions").

3            **(a)    Plaintiffs Impermissibly Rely on Group Pleading**

4        To start, Plaintiffs' allegations constitute impermissible "group pleading" that
5  lumps all "Defendants" together without distinguishing between them. (*E.g.*, SAC
6  ¶ 813; *id.* ¶ 772 (lumping all "Executive Defendants" together.) Failing to plead
7  particularized facts "with respect to ***each*** of the individual defendants" mandates
8  dismissal. *Apollo Grp.*, 774 F.3d at 607; *accord Carol Gamble*, 84 F. App'x at 977;
9  *Cowan*, 2017 WL 5495734, at *6 (by "lumping defendants together throughout the
10 complaint," plaintiffs failed to plead fraudulent intent).

11           **(b)    Plaintiffs Do Not Allege Knowledge of Contrary Information**

12       Regardless, Plaintiffs do not plead particularized facts to show knowledge of
13 falsity. To meet this burden, Plaintiffs must allege facts to show "access to, or
14 knowledge of . . . specific contradictory or negative information," such as information
15 contained in "internal reports." *Inogen*, slip op. at 10, 13; *accord Metzler Inv. GMBH*
16 *v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 & n.12 (9th Cir. 2008). Plaintiffs do
17 not even attempt to identify any information available to any Yuga Labs Defendant,
18 much less plead it "in any detail." *Inogen*, slip op. at 14.

19       Plaintiffs claim that "[b]ased on their control of the smart contracts to mint the
20 Bored Apes and their oversight of trading activity, the Executive Defendants knew
21 that the [Products] were being subjected to manipulative trading." (SAC ¶ 772.) But
22 Plaintiffs offer no facts establishing, or even ***describing***, this "control" and
23 "oversight." Nor do they allege how this unspecified information would have alerted
24 any Executive Defendant to manipulation. In essence, Plaintiffs' scienter allegations
25 as to the Executive Defendants are based solely on their positions with the company.
26 But, "the rule is settled that . . . corporate management's general awareness of the day-
27 to-day workings of the company's business does not establish scienter." *Curry v. Yelp*
28 *Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017).

1  Plaintiffs also allege that "[t]he Executive Defendants knew that the trading
2  done by Binance and/or FTX insiders close to the mint had outsized impacts." (SAC
3  ¶ 772.) This allegation is so vague as to be meaningless. *See Zucco Partners, LLC v.*
4  *Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), *as amended* (Feb. 10, 2009)
5  ("conclusory" allegations of scienter insufficient).

6  Even assuming some third parties bought or sold Products in large volumes, that
7  alone does not equate to "market manipulation" absent specific allegations of
8  wrongdoing (which are wholly lacking here).

9  Plaintiffs also allege that "Yuga knew that the celebrity promotions had been
10 done at the behest of Oseary and MoonPay." (SAC ¶ 772.) But whether Yuga Labs
11 knew promotions were done "at the behest" of Oseary and/or MoonPay—a conclusion
12 unsupported by any particularized fact—says nothing about whether it knew
13 celebrities' statements about their Apes were false or misleading.[12]

14 ### (c)   Plaintiffs Do Not Allege Any Motive To Defraud

15 "[T]he lack of a plausible motive . . . makes it much less likely that a plaintiff
16 can show a strong inference of scienter." *Prodanova*, 993 F.3d at 1108. Plaintiffs do
17 not allege that any Executive Defendant sold a single Product at inflated prices for
18 personal gain. *See In re Downey Sec. Litig.*, 2009 WL 2767670, at *13 (C.D. Cal.
19 Aug. 21, 2009) (even "a strong inference of scienter is negated when there is an
20 absence of stock sales or where such sales are minimal"); *accord Webb v. Solarcity*
21 *Corp.*, 884 F.3d 844, 856 (9th Cir. 2018). Plaintiffs allege only vaguely that
22 unspecified Yuga Labs "insiders" sought to get "rich" by boosting the prospects of
23 Yuga Labs and the Products. (SAC ¶ 766(b).) But generally seeking to increase
24 business prospects is the type of "routine corporate objective[]" that courts uniformly

25
26
_____

27 [12] Although Plaintiffs allege a confidential witness supposedly suspected wrongdoing
   (SAC ¶¶ 112-15), they offer no facts to tie any Yuga Labs Defendant to the purported
28 conduct in the witness's recollection. Nor is there any basis to conclude that the
   witness's inability to locate celebrities' sensitive personal information in a MoonPay
   database raises any inference of scienter.

1   reject as insufficient. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir.

2   2012).

3   **5.     Plaintiffs Do Not Plead Loss Causation**

4   Plaintiffs also fail to plead loss causation—*i.e.*, "'that the [price of the product]

5   fell significantly after the truth became known' or was 'revealed to the market'"

6   through a so-called "corrective disclosure." *Cowan*, 2017 WL 5495734, at *6. Loss

7   causation must be pleaded with particularity. *Apollo*, 774 F.3d at 605. Plaintiffs assert

8   six purported "corrective disclosures" (SAC ¶¶ 777-87), none of which is alleged to

9   have "revealed" any truth about the purported fraud. *Apollo*, 774 F.3d at 608 (no loss

10   causation where it was "unclear what claims made by the Defendants were invalidated

11   by [alleged corrective disclosure]"); *In re Nektar Therapeutics*, 2020 WL 3962004, at

12   *17 (N.D. Cal. July 13, 2020) (rejecting scheme claim where plaintiffs "[did] not

13   plausibly allege that the claimed manipulation . . . was the proximate cause of the . . .

14   price drop").

15   ***Voyager Lockout.*** First, Plaintiffs allege that "in June 2022" Voyager

16   "announced that it had significant exposure to [a] bankrupt hedge fund," allegedly

17   causing an unspecified price decline in ApeCoin over an unspecified period. (SAC

18   ¶ 780.) This event is untethered to any of the supposed fraudulent "schemes" alleged.

19   ***Celebrity Endorsements "Dried Up."*** Second, Plaintiffs allege that "[b]y

20   August 2022, the celebrity endorsements had dried up." (SAC ¶ 781.) Plaintiffs do not

21   even allege which Product(s) they are referring to, let alone any revelation to the

22   market that celebrities stopped endorsing those Products. Nor do Plaintiffs allege any

23   concrete price decline in response to this amorphous "event." (SAC ¶ 515.) Moreover,

24   as explained in the MoonPay Defendants' motion to dismiss, the article Plaintiffs cite

25   for this allegation says nothing about celebrity endorsements. (MoonPay Brief at 12:4-

26   15.)

27   ***ApeCoin "Token Unlock."*** Third, Plaintiffs allege that on September 16, 2022,

28   the price of ApeCoin dropped 9% "in anticipation of a significant token unlock." (SAC

20

1    ¶ 782.) Plaintiffs do not allege what a "token unlock" is (SAC ¶¶ 516, 782), and there

2    are no allegations that any "unlock" revealed any alleged misleading statement or

3    scheme causing a subsequent price decline. Plaintiffs' allegation that the "token

4    unlock" was "anticipat[ed]" (SAC ¶¶ 516, 782) further undermines their theory that it

5    served as a corrective disclosure revealing concealed fraud.

6        *SEC Investigation.* Fourth, Plaintiffs allege that on October 11, 2022,

7    Bloomberg reported that the SEC was conducting an investigation of Yuga Labs.

8    (SAC ¶ 783.) But "the announcement of an investigation, standing alone, is

9    insufficient to establish loss causation." *Loos v. Immersion Corp.*, 762 F.3d 880, 883

10   (9th Cir. 2014); *Cowan*, 2017 WL 5495734, at *7.[13]

11       *FTX Collapse.* Fifth, Plaintiffs allege that the "downfall of FTX had a

12   significant impact" on the Products. (SAC ¶¶ 785-87.) Again, this is an external event

13   lacking any connections to any of the alleged fraudulent schemes or misstatements in

14   this case. Moreover, Plaintiffs do not allege when, exactly, the price declines occurred.

15   Nor do Plaintiffs identify when any corrective disclosure occurred.

16       *Yuga Labs Layoffs.* Lastly, Plaintiffs newly allege in the SAC that Yuga Labs'

17   October 6, 2023, announcement of layoffs was a "corrective disclosure." But Plaintiffs

18   do not attempt to allege any resulting price decline of any Products as a result or tie it

19   in any way to the alleged fraud. Moreover, mere "reports of the defendant's poor

20   financial health generally"—which is what Plaintiffs wrongly insinuate—are not

21   sufficient to "adequately ple[a]d" loss causation. *Metzler*, 540 F.3d at 1063. Indeed,

22   this disclosure occurred long after the filing of the original complaint and thus—in

23   Plaintiffs' own view—after the alleged fraud was revealed. (ECF No. 1.)[14]

24

25

---

26   [13] The timing of Plaintiffs' purchases also undercuts any claim of loss causation for the reasons set forth in the MoonPay Brief at 5:27-6:8.

27   [14] Plaintiffs do not plead any corrective disclosure concerning the purported revelation

28   that FTX was the true purchaser of BAYC NFTs at the Sotheby's Auction. (SAC ¶¶ 776-792.) Even if they did, that claim would fail for the reasons set forth in the Sotheby's Brief at 4:5-6:10.

1   If anything, the above "corrective disclosure" allegations confirm that
2   Plaintiffs' alleged losses were ***not*** caused by the revelation of any fraud but instead by
3   unrelated intervening events. This defeats their securities fraud claims as a matter of
4   law. *Cowan*, 2017 WL 5495734, at *6 (plaintiff "must demonstrate that an economic
5   loss was caused by the defendant's misrepresentations, ***rather than some intervening***
6   ***event***") (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016));
7   *accord Reed*, 2016 WL 6571281, at *11.

8   ### 6.   Plaintiffs Do Not Plead Reliance

9   Lastly, Plaintiffs' do not plead reliance on any deceptive acts, "an essential
10  element of the § 10(b) private cause of action." *ScripsAmerica*, 119 F.Supp.3d at 1247.
11  The only purportedly misleading statement on which any Plaintiff is alleged to have
12  relied is Aronow's Twitter post responding to a tweet about the BAYC NFT market
13  value. (*Supra* Part III.A.2.a; SAC ¶ 623.) But the Plaintiffs alleged to have seen this
14  statement—Smith, Titcher, Grand, Neal, and Johnson—did ***not*** purchase any BAYC
15  NFTs. (SAC ¶¶ 10, 13; ECF No. 1-2; ECF No. 74-2 at 2-8; ECF No. 179-1; ECF No.
16  179-3; ECF No. 179-4.)[15] Plaintiffs tacitly concede this defect, alleging that they
17  "saw"—but not that they ***relied on***—this statement. (SAC ¶ 623.) Plaintiffs otherwise
18  allege that some "followed" Twitter accounts allegedly controlled by Yuga Labs and
19  "saw" promotions and press releases, but do not identify ***any*** specific false or
20  misleading statement on which they allegedly relied to make any purchase. (SAC
21  ¶ 621.) *Crago v. Charles Schwab & Co.*, 2017 WL 2540577, at *7 (N.D. Cal. June
22  12, 2017) (plaintiffs must plead they "actually relied on [the defendant's] alleged
23  misrepresentations").[16]

24

25

---

26  [15] Neal's certification lists a host of purported transactions but does not specify which,
27  if any, were purchases or sales. (ECF No. 179-4.)

28  [16] Although Plaintiffs allege that Titcher, Johnson, and Palombini relied on a
    March 19, 2022 promotional video, they do not allege anything about the video's
    content, let alone that it was misleading.

1    Plaintiffs also do not plead reliance with respect to their market manipulation
2    claim. To do so, Plaintiffs "must allege that [they] relied on 'an assumption of an
3    efficient market free of manipulation.'" *ScripsAmerica*, 119 F.Supp.3d at 1249 (cited
4    in SAC ¶ 634); *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 2011 WL 1152568,
5    at *9 (N.D. Cal. Mar. 28, 2011). Plaintiffs' own allegations belie any claim of reliance:
6    they allege that NFT market manipulation was "prevalent" and widely known. (SAC
7    ¶¶ 426, 430-35.)

8    Nor can Plaintiffs rely on a mere presumption of reliance under the fraud-on-
9    the-market doctrine. (SAC ¶ 633.) Plaintiffs plead ***none*** of the factors necessary to
10   establish market efficiency for any Product (much less all of them), such as trading
11   volume, analyst coverage, existence of arbitrageurs, issuer SEC registration eligibility,
12   or prices rapidly responding to news. *Hashem v. NMC Health PLC*, 2021 WL
13   5926133, at *4 (C.D. Cal. Nov. 1, 2021) (dismissing Section 10(b) claim where market
14   efficiency not adequately pleaded); *ScripsAmerica*, 119 F.Supp.3d at 1250-58 (same).

15   In addition, Plaintiffs allege that the supposed misstatements about BAYC
16   somehow extend to MAYC, BAKC, Otherdeed, and Meebits NFTs and ApeCoin by
17   claiming all of the Products "were manipulated by the same misconduct" and "dropped
18   during the same time period." (SAC ¶¶ 635-37.) Plaintiff alleges no facts to support
19   their conclusory allegations, defeating any claim of reliance with respect to these
20   Products.

21   While Plaintiffs attempt to conflate all of the Products (SAC ¶¶ 635-37), they
22   admit different dates on which various Products reached "Class Period lows" (except
23   for Meebits, with respect to which Plaintiff alleges no Class Period low). (SAC ¶¶ 528-
24   32.) This is with good reason: the Products are plainly distinct, as evidenced by the
25   SAC itself. For example, the Meebits collection was not even created by Yuga Labs
26   and has no connection whatsoever to BAYC. (SAC ¶ 11.)[17]  ApeCoin is not an NFT.

27
28   [17] Plaintiffs incorrectly allege that "all Yuga financial products were issued by [Yuga
     Labs] at creation," but elsewhere concede that the Meebits collection was created by
     Larva Labs, not Yuga Labs. (SAC ¶¶ 11, 574.)

(SAC ¶ 81.) OtherDeeds are interactive "plots of land" for use in a metaverse videogame. (SAC ¶ 405.) And Meebits, ApeCoin, OtherDeed, and BAKC holders did not have access to features available to BAYC holders, including access to the "exclusive" ApeFest event. (SAC ¶ 411.)[18]

## B. Plaintiffs Fail To State a Claim Under Section 12(a)(1) of the Securities Act (Count 4)

None of the Products are "securities." But even putting that issue aside, Plaintiffs' Section 12(a)(1) claim fails on multiple grounds. Rule 9(b) applies to this claim because it arises out of the same conduct as Plaintiffs' fraud claims. *Carol Gamble*, 84 F.App'x at 978 (Section 12(a)(1) claims "must be pleaded with 'particularity'" where coupled with fraud claims and "grounded in fraud"). Indeed, Plaintiffs rely on all of the same allegations for their Section 10(b) and Section 12(a)(1) claims. (SAC ¶ 721.) Regardless, Plaintiffs' claim fails under any pleading standard.[19]

### 1. Plaintiffs Do Not Allege That Any Yuga Labs Defendant Is a "Statutory Seller"

To sustain a claim under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), against a Yuga Labs Defendant, Plaintiffs must allege that ***each*** defendant was a "statutory seller" of the particular "unregistered security." *Pinter*, 486 U.S. at 641-42, 646; 15 U.S.C. §§ 77e(a), 77*l*(a)(1). A defendant is a "statutory seller" only if it (i) "passed title, or other interest in the security, to the buyer for value," or (ii) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities' owner." *Pinter*, 486 U.S. at 642, 647.

---

[18] Plaintiffs' Section 10(b) claims should also be dismissed under the purchaser-seller rule for the reasons set forth in the MoonPay Brief at 7:23-8:13. Any holder claim must also be dismissed because holder claims are not cognizable under Section 10(b). (*See* Universal Defendants' Brief at 7:27-28.)

[19] This claim is asserted against only the "Statutory Seller Defendants" and the "Solicitation Defendants," which do not include Oseary. (SAC ¶¶ 722-24.) Even if the claim were brought against him, it should be dismissed for the reasons set forth herein.

24

1        **(a)    No Passing of Title**

2        None of the Plaintiffs allege that they "purchased directly" any Product from

3  any Defendant. *State Treasurer of Mich. v. Countrywide Fin. Corp.*, 2011 WL

4  13220150, at *6 (C.D. Cal. Aug. 22, 2011). Rather, Plaintiffs admit they acquired their

5  Products on secondary marketplaces from unidentified market participants. (SAC

6  ¶¶ 10-17, 751.)

7        Plaintiffs attempt to avoid this defect by alleging that they were in "privity" with

8  the Yuga Labs Defendants by virtue of "creator earnings fees" that Plaintiffs allegedly

9  paid to Yuga Labs. (*E.g.*, SAC ¶¶ 601-08, 728.) This is incorrect. Plaintiffs must plead

10  that Defendants ***passed title*** to satisfy *Pinter*; payment of some ancillary fee is not

11  sufficient. *Underwood v. Coinbase Glob., Inc.*, 654 F.Supp.3d 224, 236-37 & n.5

12  (S.D.N.Y. 2023) (defendant not seller where it did not pass title but only collected

13  transaction fees). Regardless, Plaintiffs plead only that creator fees were charged with

14  respect to purchases of NFTs (which do not include ApeCoin) on the OpenSea

15  marketplace, ignoring the alleged purchases on other unspecified platforms. (*E.g.*,

16  SAC ¶¶ 12, 15.)

17        Plaintiffs do not even plead that any creator fees were paid directly to any Yuga

18  Labs Defendant. And, as the document on which Plaintiffs rely confirms, Plaintiffs

19  did not pay any creator fees upon making their purchases ***at all***. The fee is paid by ***the***

20  ***seller***, not the buyer. (*See* Ex. 2 at 1 (cited in SAC ¶ 601 n.453).)

21        Lastly, Plaintiffs claim they are in "privity" with the "Statutory Seller

22  Defendants" based on their alleged "provisioning of ApeCoin tokens to the liquidity

23  pools that Plaintiffs . . . purchased from." (SAC ¶ 728.) This allegation does not

24  establish privity, let alone that any Yuga Labs Defendant was a statutory seller. A

25  liquidity pool is merely a secondary trading pool that can be utilized by any third party.

26  Fatally, a sale into a liquidity pool is just that—a sale into a pool from which other

27  purchasers may later buy. There is no direct link between a sale into the pool, on the

28  one hand, and a subsequent purchase, on the other. In any event, Plaintiffs do not allege

1  that they purchased any ApeCoin that any Yuga Labs Defendant had previously sold

2  into the liquidity pool. *See Welgus v. TriNet Grp., Inc.*,  2017 WL 6466264, at *28

3  (N.D. Cal. Dec. 18, 2017) (plaintiff's contention that defendant "sold 2,250,000 shares

4  in the IPO and sold all 13,800,000 shares in the Secondary Offering . . . do not

5  constitute facts that Plaintiff purchased his shares directly from [defendant] as opposed

6  to another seller or intermediary"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *In re*

7  *Lehman Bros. Sec. & ERISA Litig.*, 903 F.Supp.2d 152, 196-97 (S.D.N.Y. 2012) (no

8  passing of title where complaint "does not allege from whom . . . plaintiffs purchased

9  these securities").[20] Plaintiffs also allege in passing that Yuga Labs used purported

10 "market makers" who were given "undisclosed loans . . . to sell" ApeCoin. (SAC ¶

11 751.) But Plaintiffs identify no purchase made from such market maker and allege no

12 facts regarding these supposed loans or any direct link between Plaintiffs and Yuga

13 Labs.

14            **(b)    No "Successful Solicitation"**

15         Plaintiffs also do not allege that any Yuga Labs Defendant "successfully

16 solicit[ed]" the purchase of any Products by any Plaintiff for financial gain. *Pinter*,

17 486 U.S. at 647; *Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1257-59 (9th Cir.

18 2022). A plaintiff "must allege that the defendants did more than simply urge another

19 to purchase a security." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005),

20 *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27

21 (2011); *Pino*, 55 F.4th at 1259. Rather, a plaintiff must allege that a statement was

22 specifically "***directed at producing [a] sale***," *Pinter*, 486 U.S. at 646, and

23 "***persuade[d] potential purchasers to invest***" in the security at issue, *Pino*, 55 F.4th at

24 1260.

25

26 ────────────
   [20]  Plaintiffs' unsupported allegation that they purchased from the Yuga Labs
27 Defendants is also facially implausible. The Yuga Labs Defendants were subject to a
   12-month lockup spanning from the initial ApeCoin offering on March 17, 2022, to
28 March 27, 2023. (*See* Ex. 3 at 4-5 (https://apecoin.com/about) (cited in SAC ¶ 389
   n.343).) After that 12-month period, the lockup released just 0.006% of the total supply
   of ApeCoin for Yuga Labs Defendants to use per month. (*Id.*)

1   In creating the solicitation standard, the Supreme Court explicitly rejected the
2   "substantial factor" test, holding that a party's efforts that reflect "mere participation"
3   in the sale are insufficient. *Pinter*, 486 U.S. at 650, 654. This is with good reason, as
4   "the language of § 12(1) contemplates a buyer-seller relationship not unlike traditional
5   contractual privity." *Id.* As one Court of Appeals aptly explained, a claim under
6   Section 12 fails where the defendant "did not specifically recommend or 'talk [the
7   plaintiff] into buying'" the security. *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943
8   F.2d 1521, 1532 (11th Cir. 1991); *see also Solicitation*, Black's Law Dictionary (11th
9   ed. 2019) ("The act or an instance of requesting or seeking to obtain something; a
10  request or petition.").

11              **(i)      None of Plaintiffs' Allegations Constitutes Solicitation**

12  Here, Plaintiffs offer only generic, boilerplate statements attributed to various
13  Defendants, but never identify the specific statements they claim constitute
14  "solicitations," let alone explain how they actually solicited Plaintiffs to purchase any
15  particular Product. (SAC ¶¶ 721-31.)

16  Their failure to identify which statements actually and specifically solicited the
17  purchase of which Products dooms their claim. *See Hollifield v. Resolute Cap.*
18  *Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023); *Risley v.*
19  *Universal Navigation Inc.*, 2023 WL 5609200, at *18-19 (S.D.N.Y. Aug. 29, 2023)
20  (dismissing where "Plaintiffs offer[ed] nothing more than a conclusory allegation that
21  Defendants 'sold, promoted, and/or solicited the Tokens directly to Plaintiffs'").[21]
22  Indeed, Plaintiffs do not even attempt to identify some statements, speculating only
23  that they were purportedly on Discord—but not alleged to have been publicly
24  available—and "may have been removed or deleted." (*E.g.*, SAC ¶ 266.)

25

26

_____

27  [21] The same is true of Plaintiffs' other conclusory allegations of solicitation, such as
28  Plaintiffs' threadbare allegation that "Shoemaker consistently reposts the solicitations and misleading statements from the main BAYC, Otherside, ApeCoin, and Yuga Twitter accounts." (SAC ¶ 399.)

1  Moreover, none of the statements attributed to any Yuga Labs Defendant was
2  "solicitation" under *Pinter*. The statements merely described one or more of the
3  Products and their features, announced sales that had already occurred, discussed
4  unrelated products, or reflected excitement about Yuga Labs' endeavors—none of
5  which constitutes "solicitation" to purchase a particular security. *See Brody v.
6  Homestore, Inc.*, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (no solicitation
7  where underwriters "presented highly favorable information about the Company");
8  *Risley*, 2023 WL 5609200, at *19 (tweets about safety of functions of exchange were
9  "too attenuated" to constitute solicitation); *Underwood*, 654 F.Supp.3d at 239 (no
10  solicitation where defendant "promote[d] the sale of Tokens by providing users with
11  descriptions of each Token").

12  Plaintiffs' general and disjointed references to "solicitation" are a far cry from
13  what the Ninth Circuit has held constitutes solicitation. *Compare Pino*, 55 F.4th at
14  1256 ("I am offering investment opportunities to the everyday investor, like you! . . .
15  [Y]ou're gonna walk away with a 15% annualized return."),[22] *with Salameh v.
16  Tarsadia Hotels*, 2010 WL 2839013, at *5 (S.D. Cal. July 20, 2010) (no solicitation
17  where there were "no allegations that the [defendants] sought out Plaintiffs or
18  somehow induced Plaintiffs into entering into the particular transactions"). They are
19  thus insufficient to allege that any Yuga Labs Defendant was a statutory seller.[23]

20  **(ii)   Plaintiffs Do Not Allege Any "Successful" Solicitation**

21  Plaintiffs also do not plead, as they must, that any alleged solicitation was
22  "successful." *Pinter*, 486 U.S. at 647. To plead "successful" solicitation, at minimum,

---

24  [22] The *Pino* complaint also alleged that the defendant asked potential investors, "Want
25  to double your money[?]" and stated that an investor could receive $480,000 in cash
flow after investing $1,000,000, achieve "north of 15% returns after fees," and obtain
26  a "118% return amounting to 19.6% per year." *Pino*, 55 F.4th at 1256. These posts
specifically aimed "to source investors" and "persuade potential purchasers to invest."
*Id.* at 1260.

27  [23] Plaintiffs also misattribute certain statements on apecoin.com to Yuga Labs that,
28  based on the sources Plaintiffs themselves cite, were made by others. (SAC ¶¶ 388-
89.) In any event, these statements similarly just described ApeCoin's features and
benefits (SAC ¶ 389) and are not solicitations.

1  Plaintiffs must show that they were at least aware of and influenced by the
2  solicitations. *See Hollifield*, 2023 WL 4291524, at *6 (dismissing solicitation claims
3  because "Plaintiffs d[id] not allege that they attended any seminars or dinners or
4  listened to any radio shows" hosted by defendants). Here, Plaintiffs allege that they
5  were only actually aware of a scant few purported "solicitations" by the Yuga Labs
6  Defendants, but—fatally—do not allege that they actually made any purchase of any
7  Product as a result.

8       ***"High School Dropout" Tweet.*** Smith, Titcher, Johnson, Grand, Neal and
9  Palombini allege to have been induced to purchase and hold unspecified Products
10 based on Aronow's August 21, 2021, Twitter post. (*Supra* Part III.A.2.a; SAC ¶ 623.)
11 These claims fail because five of these Plaintiffs did not even purchase BAYC NFTs—
12 the only Product that was the subject of the tweet—at any time, and the sixth, Neal, is
13 not alleged to have purchased BAYC in the relevant period.[24] (SAC ¶¶ 10-17; ECF
14 No. 1-2 (Titcher); ECF No. 74-2 at 2-8 (Johnson); ECF No. 179-1 (Grand); ECF
15 No. 74-2 at 25-26 (Palombini); ECF No. 179-4 (Neal); ECF No. 179-3 (Smith).)
16 Palombini's claim independently fails because he does not allege that he even saw or
17 was aware of the post.

18      ***Sotheby's Auction Tweet.*** Smith, Titcher, Grand, Neal, and Palombini also
19 allege that they purchased based on "promotions by Sotheby's and [Yuga Labs]"
20 relating to the Sotheby's auction of BAYC NFTs. (SAC ¶ 613.) But they identify no
21 such promotion by any Yuga Labs Defendant. Moreover, Smith, Titcher, Grand, and
22 Palombini are not alleged to have purchased any BAYC NFTs, so a statement about
23 an auction of BAYC NFTs could not have successfully solicited their purchases.
24 Likewise, as noted above, Neal does not attest to having purchased BAYC NFTs at
25 any relevant time. Titcher's and Palombini's admission that they made their purchases
26 ***before*** the September 9, 2021, auction also guts their solicitation claim because the

27 _____

28 [24] Neal's certification identifies no purchases and his first transaction did not even
   occur until October 19, 2022—over a year after Aronow's tweet. (ECF No. 179-4.)

1   only related statement Yuga Labs is alleged to have made came after the auction. (SAC

2   ¶¶ 140, 613.) And Smith, Grand and Neal are not alleged to have made any transactions

3   in other Products until 2022, many months after the auction. (ECF No. 179-1, at 2;

4   ECF No. 179-2, at 2; ECF No. 179-4, at 2-19.)

5       ***Rolling Stone Tweets.*** Plaintiffs point to BAYC tweets promoting *Rolling Stone*

6   magazine covers featuring BAYC NFTs (SAC ¶ 613), but tweeting a magazine cover

7   is not a solicitation urging another to purchase anything—let alone a specific product

8   alleged to be a "security"—and none of the Plaintiffs who claim to have seen them

9   allege that they bought BAYC NFTs.[25]

10              **(iii)    Plaintiffs Do Not Plead Financial Motivation**

11      A solicitation is only actionable under Section 12(a)(1) if made for financial

12  gain. *Pinter*, 486 U.S. at 646. Aside from vague generalities, Plaintiffs do not plead

13  financial motivation by each Yuga Labs Defendant to solicit Plaintiffs' purchases of

14  the Products, which were allegedly made on secondary marketplaces by unidentified

15  third parties, not any Defendant. *See Risley*, 2023 WL 5609200, at *19.

16          **2.    Plaintiffs' Section 12(a)(1) Claim Is Time-Barred**

17      Plaintiffs must "affirmatively plead" a "violation" of Section 12(a)(1) that

18  occurred within one year of the date the action was filed—here, December 8, 2022.

19  *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985). Accordingly, claims based on

20  any alleged solicitations prior to **December 8, 2021**, are time-barred, including:

21  (i) Aronow's tweet on August 21, 2021; and (ii) Yuga Labs' tweets on September 9,

22  2021, November 1, 2021, and November 15, 2021. (SAC ¶¶ 243, 248, 613, 623);

23  *Anderson v. Binance*, 2022 WL 976824, at *3, *5 (S.D.N.Y. Mar. 31, 2022)

24  (dismissing where alleged solicitation occurred more than a year before suit), *appeal*

25  *docketed sub nom. Lee v. Binance*, No. 22-972 (2d Cir. May 2, 2022).

26

27

28  [25] Plaintiffs' vague references to assorted, undefined "promotions" and Discord posts that Plaintiffs do not even allege existed or were public fail to plead even the most basic facts necessary to plead solicitation under *Pinter*.

**C.      Plaintiffs Fail To State a Claim Under Section 15 of the Securities Act or
Section 20(a) of the Exchange Act (Counts 5 and 9)**

Plaintiffs' control person claims under Section 15 of the Securities Act and
Section 20(a) of the Exchange Act, 15 U.S.C. § 77*o*, should be dismissed because
Plaintiffs have not alleged a primary violation. *See Rigel Pharms.*, 697 F.3d at 886
(Section 15 and Section 20(a)); *LifeVoxel Va. SPV, LLC v. LifeVoxel.AI, Inc.*, 622
F.Supp.3d 935, 947 (S.D. Cal. 2022) (Section 20(a)).

**D.      Plaintiffs Do Not Plead a Domestic Transaction Under *Morrison***

All of Plaintiffs' federal securities claims must also be dismissed on the
independent ground that Plaintiffs do not adequately allege any domestic transactions
subject to the U.S. securities laws. The securities laws cover only conduct "in
connection with the purchase or sale of" (i) "a security listed on an American stock
exchange" or (ii) "any other security in the United States." *Morrison*, 561 U.S. at 273;
*see also SEC v. Levine*, 462 F.App'x 717, 719 (9th Cir. 2011).

*First*, Plaintiffs do not allege any facts showing that they purchased Products
listed on an American stock exchange. They do not specify where they made many of
their purchases, alleging only in conclusory fashion that they were made "on U.S.
based cryptocurrency exchanges" without identifying the actual purported exchanges
or any supporting facts. (*E.g.*, SAC ¶¶ 11-12, 15-17.) Although Plaintiffs allege that
they made certain purchases on "Coinbase" and "OpenSea," Plaintiffs do not allege
any facts to show that either platform meets the requirements of an "American stock
exchange." *See Anderson* 2022 WL 976824, at *4-5 (dismissing where plaintiffs failed
to adequately allege that digital asset trading platform was a domestic exchange);
*Acerra v. Trulieve Cannabis Corp.*, 2021 WL 1269919, at *3 (N.D. Fla. Mar. 18, 2021)
(first *Morrison* prong not met where plaintiff "does not allege facts showing that the
OTCQX is a domestic exchange").[26]

---

[26] Neither Coinbase nor OpenSea is a registered national securities exchange. *See Fast
Answers: National Securities Exchanges*, Sec. & Exch. Comm'n (Sept. 26, 2023),
https://www.sec.gov/fast-answers/divisionsmarketregmrexchangesshtml (last visited
*(cont'd)*

YUGA LABS DEFENDANTS' MOTION TO DISMISS                    NO.: 2:22-cv-08909-FMO-PLA

1  *Second*, Plaintiffs do not allege "specific factual allegations" to show that they

2  "'incurred irrevocable liability within the United States to take and pay for a security,

3  or that the seller incurred irrevocable liability within the United States to deliver a

4  security.'" *See Stoyas*, 896 F.3d at 948-49; *see also Melvin v. Brayshaw*, 2019 WL

5  6482220, at *3, *5 (C.D. Cal. Oct. 3, 2019) (dismissing complaint "devoid of

6  allegations from which the Court could infer irrevocable liability incurred or that title

7  transferred in the United States").

8  Plaintiffs allege only that they purchased Products on secondary platforms from

9  unidentified secondary market or liquidity pool participants. (SAC ¶¶ 10-13, 15-17,

10  751; *infra* Part III.F.1.) These allegations say nothing about where title passed and/or

11  where irrevocable liability occurred. *Stoyas*, 896 F.3d at 949 (allegations that "ADRs

12  were purchased in the United States" and that "one of the depository institutions . . .

13  sold Toshiba ADRs in the United States" insufficient). Indeed, "the mere assertion that

14  transactions 'took place in the United States' is insufficient to adequately plead the

15  existence of domestic transactions," and "a party's residency or citizenship is

16  irrelevant to the location of a given transaction." *Absolute Activist Value Master Fund*

17  *Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012).[27]

18  While Plaintiffs assert that Yuga NFTs and ApeCoin are Ethereum-based tokens

19  on a blockchain, "nodes of which reside in the United States" (SAC ¶¶ 600, 609), that

20  is not sufficient to satisfy *Morrison* because there are Ethereum nodes all over the

21  world, *see Shi v. Le*, 2022 WL 896963, at *3 n.5 (E.D.N.Y. Mar. 28, 2022), and, as

22  one court has emphasized, "the location of the node that verified the specific

23

24  Nov. 2, 2023); *see also United States v. Georgiou*, 777 F.3d 125, 130, 134 (3d Cir.
   2015) (declining to characterize two marketplaces as "exchanges" under *Morrison*'s

25  first prong because "there are eighteen registered national security exchanges [and]
   the Pink [OTC Markets Inc.] and the OTCBB are not among them"); *Anderson*, 2022

26  WL 976824, at *4 ("An exchange is considered 'domestic' if it registers as a 'national
   securities exchange.'"); *cf. Stoyas v. Toshiba Corp.*, 896 F.3d 933, 945 (9th Cir. 2018)

27  (declining to address whether *Morrison*'s first prong applies only to registered national
   security exchanges). The Court may take notice of the SEC's list of national securities

28  exchanges. *Stoyas*, 896 F.3d at 945 n.13.

[27] Regardless, Palombini is alleged to live in Portugal. (SAC ¶ 12.)

YUGA LABS DEFENDANTS' MOTION TO DISMISS                   NO.: 2:22-cv-08909-FMO-PLA

transaction at issue should control," *Williams v. Block.one*, 2022 WL 5294189, at *7 (S.D.N.Y. Aug. 15, 2022). Plaintiffs do not allege which nodes verified their transactions or where they were located.

**E.**   **Plaintiffs Fail To State a Claim for Violations of the California Unfair Competition Law (Counts 1-3)**

To plead a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 to 17210, a plaintiff must allege "unfair competition," defined as a "business act or practice" that is (i) "unlawful," (ii) "unfair," or (iii) "fraudulent." *Id.* § 17200; *see Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1149-50 (N.D. Cal. 2010). Plaintiffs concede these claims must be pleaded with particularity. (SAC ¶¶ 645, 681, 701); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

**1.**   **Plaintiffs Lack Standing**

Plaintiffs lack standing because they do not plead with particularity that they relied on any misleading materials in making a purchase. (*Supra* Part III.A.6) *See Bergeron v. Monex Deposit Co.*, 2020 WL 3655495, at *4-5 (C.D. Cal. Apr. 29, 2020); *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *12 (C.D. Cal. Oct. 20, 2014).

**2.**   **Plaintiffs Fail To Plead Recoverable Remedies**

"The UCL provides a private plaintiff two equitable remedies: injunctive relief and restitution." *Tellone Pro. Ctr. LLC v. Allstate Ins. Co.*, 2021 WL 1254360, at *6 (C.D. Cal. Jan. 26, 2021). Plaintiffs do not adequately allege entitlement to either.

First, "to establish standing to pursue ***injunctive relief*** . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Plaintiffs merely assert that they "seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants." (SAC ¶¶ 664, 700, 720.) This boilerplate allegation is insufficient. *Tellone*, 2021 WL 1254360, at *7. Plaintiffs also do not allege any intent to buy

33

1  Products in the future, as they must. *Ibarra v. Pharmagenics LLC*, 2023 WL 2445397,
2  at *3 (C.D. Cal. Mar. 8, 2023).

3      Second, a "claimant may seek **restitution** in equity 'where money or property
4  identified as belonging in good conscience to the [claimant] could clearly be traced to
5  particular funds or property in the defendant's possession.'" *Schuman v. Microchip*
6  *Tech. Inc.*, 372 F.Supp.3d 1054, 1059 (N.D. Cal. 2019). Plaintiffs do not allege
7  transacting with any Yuga Labs Defendant (*supra* Part III.B.1.a), and thus fail to allege
8  any money or property in any Yuga Labs Defendant's possession that can be subject
9  to restitution. While Plaintiffs allege that certain Products have decreased in value,
10  they cannot seek restitution on this basis. *Wofford v. Apple Inc.*, 2011 WL 5445054 at
11  *3 (S.D. Cal. Nov. 9, 2011).

12      Finally, Plaintiffs fail to allege that they "lack[] an adequate remedy at law."
13  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). To the contrary,
14  they plead a host of claims seeking legal remedies. While Plaintiffs assert that if their
15  statutory claims are dismissed they would then have no adequate remedy at law (SAC
16  ¶ 716-17), that allegation is irrelevant. *See Rhynes v. Stryker Corp.*, 2011 WL
17  2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff
18  **may** entitle her to an adequate remedy at law, equitable relief is unavailable."
19  (emphasis in original)); *accord Grundstrom v. Wilco Life Ins. Co.*, 2022 WL 2390992,
20  at *2 (N.D. Cal. July 1, 2022).

21      **3.    Plaintiffs Do Not Allege Direct Economic Injury**

22      Plaintiffs also fail to plead that any alleged misstatement, omission, or
23  fraudulent scheme actually caused any loss. (*Supra* Part III.A.5.) *See Chu v. Fay Serv.,*
24  *LLC*, 2016 WL 5846990, at *6 (N.D. Cal. Oct. 6, 2016).

25      **4.    Plaintiffs Do Not Plead Unlawful, Unfair, or Fraudulent Acts**

26      Plaintiffs also do not plead "acts or practices" that are "unlawful," "unfair" or
27  "fraudulent" because, as explained above, they have not pleaded fraud or any violation
28  of federal or California law. *See In re Apple Processor Litig.*, 2022 WL 2064975, at

34

1    *12 (N.D. Cal. June 8, 2022); *Aleksick v. 7-Eleven, Inc.*, 205 Cal.App.4th 1176, 1185

2    (2012).[28] As to "unfair" conduct, Plaintiffs' boilerplate "recitation of the 'unfair' legal

3    standard" is insufficient. *Apple*, 2022 WL 2064975, at *13; (SAC ¶ 672). Moreover,

4    "where the unfair business practices alleged under the unfair prong of the UCL overlap

5    entirely with the business practices addressed in the fraudulent and unlawful prongs

6    of the UCL, the unfair prong of the UCL cannot survive if the claims under the other

7    two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d

8    1074, 1104-05 (N.D. Cal. 2017). And any allegation that other states' consumer

9    protection laws could ground a UCL claim fails because Plaintiffs plead no violation

10   of other state consumer protection laws. (*See* MoonPay Brief at 7:7-11.)

11        **5.**     **The UCL Does Not Apply to Alleged "Securities"**

12        Finally, although the Products are not "securities," Plaintiffs' allegation to the

13   contrary mandates dismissal because the UCL "does not apply to securities

14   transactions." *Bowen v. Ziasun Techs., Inc.*, 116 Cal.App.4th 777, 788 (2004).

15   Plaintiffs may contend that they are pleading in the alternative, but a plaintiff "cannot

16   reasonably assert that it was pleading 'in the alternative'" where, as here, a claim

17   "incorporate[s]" and has at its "foundation" another claim. *MEECO Mfg. Co. v. True*

18   *Value Co.*, 2007 WL 1051259, at *3 (W.D. Wash. Apr. 4, 2007); (*e.g.*, SAC ¶¶ 117,

19   231, 679, 682(e); *see also* SAC ¶ 665 (incorporating SAC ¶¶ 1-664)).

20

21

22

23

24

---

25   [28] Plaintiffs must also allege that the supposedly undisclosed information relates to the
26   Products' "central functionality" to state a claim under the UCL. *Hall v. SeaWorld*
     *Entm't, Inc.*, 747 F.App'x 449, 451 (9th Cir. 2018). Plaintiffs do not meet this
27   requirement. While Plaintiffs assert that Yuga Labs made "misleading statements and
     omissions concerning the ability to use [the Products] and their related intellectual
28   property rights" (SAC ¶¶ 651, 707), Plaintiffs do not identify which specific
     statements concerning the Products' features were supposedly "misleading." This
     cannot satisfy the applicable heightened pleading standard. *Kearns*, 567 F.3d at 1125.

**F.    Plaintiffs Fail To State a Qualification Claim Under Sections 25110 and 25503 of the California Corporations Code (Count 6)**

**1.    No Alleged Acquisition From Any Yuga Labs Defendant**

Plaintiffs do not allege that they purchased any Product from any Defendant.[29] (*Supra* Part III.B.1.a.) This is fatal to Plaintiffs' claim, which requires allegations "that the defendant actually sold the securities to the plaintiff." *Hollifield*, 2023 WL 4291524, at *6 (citing *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal.App.4th 226, 252-54 (2007)).

**2.    No Alleged Acquisition in an "Issuer Transaction"**

Plaintiffs also fail to allege they acquired their Products in a so-called "issuer transaction," as required to state a claim under Sections 25110 and 25503. *See* Cal. Corp. Code § 25110; *see Bowden v. Robinson*, 67 Cal.App.3d 705, 711 (1977). An "issuer transaction" is the sale of a security "purchased from the issuing corporation in a public offering," *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1104 (1993), and is limited to the transaction that occurs the ***first*** time a security is sold, *see* Harold W. Marsh & Robert H. Volk, 1 Practice Under the California Securities Laws § 14.06 (2018). Because securities "purchased . . . on the open market" do not require the purchaser to "deal face to face with the defendants, the price the purchasers [pay does] not accrue directly to the defendants," and thus are not issuer transactions. *Viterbi v. Wasserman*, 191 Cal.App.4th 927, 938 (2011). Plaintiffs' admission that they made their purchases on anonymous secondary marketplaces defeats their claim. (SAC ¶¶ 10-17.)

**3.    No Alleged Purchases in California**

Plaintiffs fail to allege that the offer or sale with respect to any Products occurred in California, as required under Section 25110. Cal. Corp. Code § 25503; *Siegal v. Gamble*, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016). A sale "is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or (if both the seller and the purchaser are domiciled in this state) the security

---

[29] This claim is not asserted against Oseary. (SAC at 269, lines 22-23; *id.* ¶ 741.)

YUGA LABS DEFENDANTS' MOTION TO DISMISS                    NO.: 2:22-cv-08909-FMO-PLA

1  is delivered to the purchaser in this state." Cal. Corp. Code § 25008(a); *Lubin v.*
2  *Sybedon Corp.*, 688 F.Supp. 1425, 1460 (S.D. Cal. 1988). Plaintiffs do not allege that
3  any Defendant offered to sell Plaintiffs any Products, accepted any Plaintiff's offer to
4  buy Products, or delivered Products to any Plaintiff in California. *See Siegal*, 2016 WL
5  1085787, at *7 ("That a person is a citizen of a state is insufficient to leap to the
6  conclusion that the sale of a security took place in that state.").

7  **4.   Plaintiffs' Qualification Claim Is Time-Barred**

8  Plaintiffs' qualification claim is time-barred for any transactions that occurred
9  before December 8, 2021—*i.e.*, one year before this action was filed—for the reasons
10 set forth above. Cal. Corp. Code § 25507(a); (*supra* Part III.A.3.d). Indeed, all of the
11 alleged facts on which Plaintiffs rely in mistakenly claiming that the Products are
12 "securities" were known to Plaintiffs at the time they allegedly purchased their
13 Products. (SAC ¶¶ 539, 542, 549.)

14 **G.  Plaintiffs Fail To State a Misrepresentation or "Manipulation" Claim
15  Under Sections 25400-01 and 25500-01 of the California Corporations
    Code (Counts 10 and 11)**

16 Plaintiffs do not plead a fraud claim under California law because they have not
17 alleged any actionable misstatement or scheme for the reasons set forth above. *See*
18 *Jackson v. Fischer*, 931 F.Supp.2d 1049, 1077-78 (N.D. Cal. 2013); *Kainos Lab'ys,*
19 *Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998).
20 Plaintiffs also do not, as they must, allege "'strict privity' between the parties"—*i.e.*,
21 that any Defendant "sold [a Product] directly to [any Plaintiff]." *Sharp v. Arena*
22 *Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013); (*supra*
23 Part III.B.1.a). Moreover, Plaintiffs' claim under sections 25400 and 25500 requires
24 that the "defendant 'willfully participate[ ]' in the violation," *Sharp*, 2013 WL
25 12094819, at *2, which Plaintiffs do not plead. (*Supra* Part III.A.4.) Plaintiffs' claim
26 under these sections also fails because they do not allege any "active trading." (*See*
27 Sotheby's Brief at 12:27-13:20.)

28

**H.  Plaintiffs Fail To State a Secondary Liability Claim Under Sections 25403(b), 25504, and 25504.1 of the California Corporations Code (Count 12)**

Plaintiffs' claims for secondary liability should be dismissed because they have not pleaded a primary violation. *Jackson*, 931 F.Supp.2d at 1064. Plaintiffs' Section 25504.1 claim should also be dismissed because Plaintiffs do not plead the requisite "intent to deceive or defraud." Cal. Corp. Code § 25504.1; (*supra* Part III.A.4). Plaintiffs' claim under Section 25403(b) should be dismissed because Section 25403 does not provide a private right of action. *Scognamillo v. Credit Suisse First Bos. LLC*, 2005 WL 2045807, at *9 (N.D. Cal. Aug. 25, 2005), *aff'd*, 254 F.App'x 669 (9th Cir. 2007).

**I.  Plaintiffs Fail To State a Claim for Unjust Enrichment (Count 13)**

"[I]n California, there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *accord Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022). Plaintiffs' unjust enrichment claim should be dismissed on this basis.

Although a plaintiff may seek to recover "unjust enrichment" akin to a "quasi-contract claim seeking restitution," this remedy for an underlying fraud claim must nonetheless be dismissed if, as here, the claims underlying the remedy fail. *Apple*, 2022 WL 2064975, at *12 (citing *Astiana*, 783 F.3d at 762). Plaintiffs' claim also fails because it does not allege any unjustly "retained" "benefit" conferred on any Yuga Labs Defendant at the expense of any Plaintiff. *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 532 F.Supp.3d 956, 970 (S.D. Cal. 2021).

**J.  Plaintiffs Fail to State a Claim for Violation of the FSIPA (Count 14)**

Plaintiffs' afterthought claim under the Florida Securities and Investor Protection Act ("FSIPA") fails because that provision applies only to direct sellers or agents of sellers. *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So.3d 316, 327 (Fla. Dist. Ct. App. 2017) (citing Fla. Stat. Ann. § 517.211(2)). As explained above, Plaintiffs do not allege that any Yuga Labs Defendant was a "seller" to Plaintiffs of

38

1    any Products. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F.Supp. 342, 372 & n.40

2    (S.D. Fla. 1991) (applying *Pinter* standard to FSIPA claim).

3    **K.      Plaintiffs Fail to State a Claim for Violation of the FDUTPA (Count 15)**

4             Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act

5    ("FDUTPA"), mislabeled as a FSIPA claim in the SAC, fails for several reasons:

6             *First*, "[t]he FDUPTA does not apply to claims arising from [alleged] securities

7    transactions," yet Plaintiffs allege that the transactions here are securities transactions.

8    *Minshall v. TD Evergreen*, 2005 WL 8145046, at *1 (M.D. Fla. Aug. 4, 2005).

9             *Second*, the FDUPTA applies only to conduct occurring in Florida, yet Plaintiffs

10   fail "to specify the location of the conduct to make certain it occurred within the

11   territorial boundaries of Florida." *Five for Ent. S.A. v. Rodriguez*, 877 F.Supp.2d 1321,

12   1331 (S.D. Fla. 2012).

13            *Third*, Plaintiffs do not plead any deceptive acts that could give rise to liability

14   under FDUTPA for the reasons set forth above. *SIG, Inc. v. AT & T Digital Life, Inc.*,

15   971 F.Supp. 2d 1178, 1195 (S.D. Fla. 2013); *Perret v. Wyndham Vacation Resorts,*

16   *Inc.*, 846 F.Supp. 2d 1327, 1333 (S.D. Fla. 2012) (applying Rule 9(b) to FDUTPA

17   claim "based on fraud"). Plaintiffs do not even attempt to plead "unfair practices" and

18   instead merely offer a "[f]ormulaic recitation of the elements under FDUTPA using

19   conclusory statements." *Varnes v. Home Depot USA, Inc.*, 2012 WL 5611055, at *1

20   (M.D. Fla. Nov. 15, 2012); (*see* SAC ¶ 914).[30]

21            *Lastly*, Plaintiffs do not plead that the alleged deceptive conduct directly caused

22   their losses for the reason set forth above. *See Lombardo v. Johnson & Johnson*

23   *Consumer Companies, Inc.*, 124 F.Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("[C]ausation

24   is a necessary element of the FDUTPA claim.").

25

26

27   [30] Plaintiffs can only base the FDUPTA claim on alleged conduct after February 8,
     2022, the first date any Florida Plaintiff made any alleged purchase. (ECF No. 179-1;
28   ECF No. 179-4.) This excludes numerous theories of liability advanced by Plaintiffs,
     like the Sotheby's auction "scheme" theory.

**L.   Plaintiffs Lack Standing To Pursue California or Florida Claims
Regarding BAYC and Meebits and California Claims Regarding BAKC**

Plaintiffs lack standing to pursue (i) California or Florida claims regarding
BAYC and Meebits NFTs because no California or Florida resident plaintiff alleges
to have purchased those Products, or (ii) California claims regarding BAKC NFTs
because no California resident plaintiff alleges to have purchased BAKC.[31] "Plaintiffs
do not have standing to bring claims under the laws of states where they have alleged
no injury, residence, or other pertinent connection." *Goldstein v. Gen. Motors LLC*,
445 F.Supp.3d 1000, 1021 (S.D. Cal. 2020); *see also In re Terazosin Hydrochloride
Antitrust Litig.*, 160 F.Supp. 2d 1365, 1371 (S.D. Fla. 2001).[32]

**M.   Plaintiffs Cannot Pursue California State Law Claims on Behalf of a
Nationwide Class**

All California state law claims brought on behalf of non-California putative
class members also should be dismissed because the statutes do not apply
extraterritorially. "California law presumes that the legislature did not intend a statute
to be 'operative, with respect to occurrences outside the state, . . . unless such intention
is clearly expressed or reasonably to be inferred from the language of the act or from
its purpose, subject matter or history.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961
F.Supp.2d 1134, 1147 (N.D. Cal. 2013); *see also Mosqueda v. Am. Honda Mot. Co.,
Inc.*, 443 F.Supp.3d 1115, 1126 (C.D. Cal. 2020) (cited in SAC ¶ 706) (plaintiffs "may
not assert nationwide claims under California law" because "other states have a
compelling interest in setting the scope of recovery for consumers under their own
laws").

---

[31] Although Neal's certification purports to identify transactions in BAKC, it does not
state whether any were purchases. (ECF No. 179-4.)

[32] Plaintiffs' standing to pursue California claims regarding ApeCoin is also
questionable. The only two California-based Plaintiffs who allegedly purchased
ApeCoin are Titcher (reflected in his certification, not Plaintiffs' SAC) and Smith.
Titcher transacted in ApeCoin over a roughly one-month period and sold more than
he acquired. (*Supra* Part II.B.) Smith bought the equivalent of 0.073 ApeCoin for an
alleged loss of just $12.84. (ECF No. 179-3.)

1  Plaintiffs do not allege that any Plaintiff located outside California has been

2  harmed due to activity occurring in California, foreclosing claims on behalf of these

3  Plaintiffs and putative class members. *Wilson*, 961 F.Supp.2d at 1148 (dismissing

4  California law claims based on activity occurring in other states); *Gershman v. Bayer*

5  *HealthCare LLC*, 2015 WL 2170214, at *6-7 (N.D. Cal. May 8, 2015) ("[w]here 'none

6  of the alleged misconduct or injuries occurred in California,' the UCL has no

7  application").

8  **N.   The Court Should Decline To Exercise Pendent Personal Jurisdiction
   Over Plaintiffs' State Law Claims**

9

10  Finally, because Plaintiffs do not state a claim under the federal securities laws,

11  the Court should also decline to exercise pendent personal jurisdiction as to the non-

12  California Defendants. Courts "decline[ ] to exercise pendent personal jurisdiction"

13  where, as here, a plaintiff's federal claims providing for nationwide personal

14  jurisdiction lack merit and there is no independent basis for personal jurisdiction.

15  *Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *4-5 (N.D. Cal. May 19,

16  2021).

17  **No general jurisdiction.** Plaintiffs allege that Aronow, Solano, Atalay, Muniz,

18  Shoemaker, Ehrlund, and Lyons reside outside California and that Yuga Labs is based

19  and incorporated outside California. (SAC ¶¶ 18-21, 23-26.) As such, none are subject

20  to general jurisdiction in California. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

21  **No specific jurisdiction.** Plaintiffs also fail to allege any acts that the non-

22  California Defendants took in California, let alone sufficient contacts with California

23  to establish specific jurisdiction. *See Schwarzenegger v. Fred Martin Mot. Co.*, 374

24  F.3d 797, 802 (9th Cir. 2004). Plaintiffs' "conclusory" and "boilerplate" recitation of

25  the legal requirements for specific jurisdiction (SAC ¶ 49) is insufficient. *Rain Design,*

26  *Inc. v. Spinido, Inc.*, 2018 WL 4904894, at *2 (N.D. Cal. Oct. 9, 2018). Equally

27  insufficient is the mere fact that Titcher is allegedly located in California. *Kalin v.*

28  *Semper Midas Fund, Ltd.*, 2021 WL 5906053, at *2 (N.D. Cal. Dec. 14, 2021) ("The

plaintiff cannot be the only link between the defendant and the forum . . . ."). At the

41

core of the SAC are allegations that Defendants posted material on the internet, which is insufficient to confer specific jurisdiction absent purposeful direction. *See Johnson v. Comm'n on Presidential Debates*, 2014 WL 12597805, at *9 (C.D. Cal. Jan. 6, 2014) (Olguin, J.).[33]

## IV.   <u>CONCLUSION</u>

The Court should dismiss the SAC for the reasons set forth herein. Moreover, the dismissal should be with prejudice. Plaintiffs have now had two opportunities to replead their claims, including after reviewing the Yuga Labs Defendants' motion to dismiss the First Amended Complaint. Yet Plaintiffs still do not plead facts to state a claim under any theory. *See Zucco*, 552 F.3d at 1007 ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.").

DATED:  November 30, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
*/s/ Peter B. Morrison*
PETER B. MORRISON

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,
Kerem Atalay, Zeshan Ali, Nicole Muniz,
Jasmin Shoemaker, Patrick Ehrlund,
Christopher Lyons, and Guy Oseary

---

[33] The Court also lacks personal jurisdiction over the non-California defendants for claims arising out of non-California conduct on behalf of non-California putative class members. In *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), the Supreme Court held that a court may exercise personal jurisdiction in a mass action only if there is personal jurisdiction over the defendant as to each plaintiff. While there is a split of authority on whether *Bristol-Myers* applies in the nationwide class action context, Defendants respectfully submit that it does. *See Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028, 1035 (S.D. Cal. 2020).

42

1

## CERTIFICATE OF COMPLIANCE

2

The undersigned, counsel of record for Defendants Yuga Labs, Inc., Wylie

3

Aronow, Greg Solano, Kerem Atalay, Zeshan Ali, Nicole Muniz, Jasmin Shoemaker,

4

Patrick Ehrlund, Christopher Lyons, and Guy Oseary, certifies that this brief contains

5

13,943 words, which complies with the word limit set by Court Order dated October

6

10, 2023.

7

DATED:  November 30, 2023

8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

9

10

By: _____
                    */s/ Peter B. Morrison*

11

PETER B. MORRISON

12

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,

13

Kerem Atalay, Zeshan Ali, Nicole Muniz,
Jasmin Shoemaker, Patrick Ehrlund,

14

Christopher Lyons, and Guy Oseary

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS              NO.: 2:22-cv-08909-FMO-PLA