

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ADONIS REAL, <u>et al.</u>, Individually and on  )
Behalf of All Others Similarly Situated,        )
                                                                 )
                                    Plaintiffs,          )
                                                                 )
                    v.                                        )
                                                                 )
YUGA LABS, INC., <u>et al.</u>,                   )
                                                                 )
                                    Defendants.        )
_____ )

Case No. CV 22-8909 FMO (BFMx)


**ORDER RE: PENDING MOTIONS**

16    Having reviewed and considered all the briefing filed with respect to: (1) Yuga Labs

17  Defendants' Motion to Dismiss (Dkt. 187, "Yuga Motion"); (2) Justin Bieber's Joinder and Motion

18  to Dismiss (Dkt. 189, "Bieber Motion"); (3) Madonna Louise Ciccone's Joinder and Motion to

19  Dismiss (Dkt. 190, "Ciccone Motion"); (4) Moonpay Defendants' Motion to Dismiss (Dkt. 191,

20  "Moonpay Motion"); (5) Universal Defendants' Motion to Dismiss (Dkt. 192, "Universal Motion");

21  (6) Mike Winkelmann's Joinder and Motion to Dismiss (Dkt. 193, "Winkelman Motion"); (7) Paris

22  Hilton's Motion to Dismiss (Dkt. 194, "Hilton Motion"); (8) Motion of Alexis Ohanian, Amy Wu, and

23  Maaria Bajwa to Dismiss (Dkt. 195, "Special Council Motion"); (9) Wardell Stephen Curry II's

24  Motion to Dismiss (Dkt. 198, "Curry Motion"); (10) Adidas Defendants' Motion to Dismiss (Dkt. 199,

25  "Adidas Motion"); and (11) [Sotheby's Holdings Inc.'s] Motion to Dismiss (Dkt. 200, "Sotheby's

26  Motion") (collectively, "Motions"), the court finds that oral argument is not necessary to resolve the

27  Motions, <u>see</u> Fed. R. Civ. P. 78(b); Local Rule 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d 675, 684

28  n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

Yuga Labs, Inc. ("Yuga") is the creator of a Non-Fungible Token ("NFT") collection, known as the Bored Ape Yacht Club ("BAYC").  (See Dkt. 179, SAC at ¶¶ 1, 4, 66, 69).  In all, there are 10,000 unique BAYC NFTs.  (See id. at ¶ 66).  Each BAYC NFT features a picture of a cartoon ape with a bored facial expression.  (See, e.g., id. at ¶¶ 66, 68, 224).  In addition to the BAYC NFT collection, Yuga created two spin-off collections: the Mutant Ape Yacht Club ("MAYC") and the Bored Ape Kennel Club ("BAKC").  (See id. at ¶ 74).  Ownership of one of these NFTs includes a membership to an online club, and provides access to a virtual shared space, or "metaverse" platform, called "Otherside."  (See id. at ¶ 81).  A separate collection called "Otherdeed NFTs" serves as virtual plots of "land" in the Otherside metaverse.  (See id.).  Yuga also introduced "ApeCoin," which is used to pay for goods and services in the Otherside metaverse, and to access "culture, gaming, and commerce."  (See id. at ¶¶ 81, 386).  Owning ApeCoin conveys voting rights and membership in the "ApeCoin DAO" – a self-governing entity that is "collectively owned and managed by [its] members."  (See id. at ¶¶ 245 n. 199, 386).  Yuga gifted a portion of ApeCoin to holders of the BAYC, MAYC, and BAKC NFTs.  (See id. at ¶¶ 379, 386).  Finally, Yuga acquired another NFT collection called "Meebits."  (See id. at ¶¶ 73, 291).

The named plaintiffs each purchased at least one of the six products at issue: (1) BAYC NFTs; (2) MAYC NFTs; (3) BAKC NFTs; (4) Otherdeed NFTs; (5) Meebits NFTs; and (6) ApeCoin (collectively, "digital assets").  (See Dkt. 179, SAC at ¶¶ 10-17).  Plaintiffs bring claims individually and on behalf of a class of persons who, "during the Class Period, purchased the [digital assets] and were subsequently damaged thereby."  (Id. at ¶ 624).  Plaintiffs filed the operative Second Amended Complaint ("SAC") on October 17, 2023, against 28 defendants.[2]  (See id. at ¶¶ 18-45).

---

[1]   Because the parties are familiar with the facts of this case, the court recites them only as necessary.  Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2]   The original Complaint named 37 defendants.  (See Dkt. 1, Complaint at ¶¶ 12-49).  The remaining 28 defendants are: Yuga; Yuga's founders and certain of its current or former executives (Wylie Aranow, Greg Solano, Kerem Atalay, Zeshan Ali, Nicole Muniz, Jasmin Shoemaker, Patrick Ehrlund, and Christopher Lyons), (see Dkt. 179, SAC at ¶¶ 18-26); Guy

Plaintiffs assert federal claims for: selling and solicitation of unregistered securities, in violation of §§ 5 and 12(a)(1)  of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77l(a), (see id. at ¶¶ 721-31); control person liability for the sale and solicitation of unregistered securities under § 15 of the Securities Act, 15 U.S.C. § 77o, (see id. at ¶¶ 732-39); and securities fraud, in violation of §§ 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rules 10b-5(a)-(c), 17 C.F.R. §§ 240.10b-5(a)-(c).  (See id. at ¶¶ 755-823). Plaintiffs also assert California state law claims for:  violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., (see id. at ¶¶ 638-720); violations of California Corporate Securities Law, Cal. Corp. Code §§ 25110, 25503, (see id. at ¶¶ 740-54); securities fraud  in violation of Cal. Corp. Code §§ 25401, 25501, (see id. at ¶¶ 824-38); securities manipulation in violation of Cal. Corp. Code §§ 25400, 25500, (see id. at ¶¶ 839-53); secondary liability for securities manipulation under Cal. Corp. Code §§ 25403(b), 25504, 25504.1, (see id. at ¶¶ 854-63); and unjust enrichment.  (See id. at ¶¶ 864-869).  Finally, plaintiffs assert claims under Florida law for violation of the:  Florida Securities and Investor Protection Act, Fla. Stat. § 517.07, (see id. at ¶¶ 870-900); and Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq.  (See id. at ¶¶ 901-25).

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A

---

Oseary, an alleged Yuga minority partner, consultant, investor, and spokesperson for Yuga, (see id. at ¶ 30); board members of a Yuga-affiliated DAO (Alexis Ohanian, Amy Wu, and Maaria Bajwa), (see id. at ¶¶ 27-29); various celebrities and companies who allegedly promoted the digital assets (Mike Winkelmann, Paris Hilton, Madonna Louise Ciccone, Justin Bieber, James Fallon, Electric Hot Dog, Inc., Universal Television, LLC, Austin Richard Post, Calvin Broadus, Jr., Wardell Stephen Curry II, adidas America Inc. and its venture capital fund, adidas Venture B.V.), (see id. at ¶¶ 31-42); MoonPay USA LLC and its CEO, Ivan Soto-Wright, who allegedly acted as promoters for Yuga and solicited sales of the digital assets to the public, (see id. at ¶¶ 43-44); and Sotheby's Holdings Inc., which also allegedly acted as a promoter for Yuga and solicited sales of the digital assets to the public (collectively, "defendants").  (See id. at ¶ 45).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b)[3]

---

[3]  All further "Rule" references are to the Federal Rules of Civil Procedure.

1  requires that those allegations be pleaded with particularity.  Fed. R. Civ. P. 9(b) ("In alleging fraud

2  or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

3  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice

4  of the particular misconduct which is alleged to constitute the fraud charged so that they can

5  defend against the charge and not just deny that they have done anything wrong."  Bly-Magee v.

6  California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted).  "Averments

7  of fraud must be accompanied by the who, what, when, where, and how of the misconduct

8  charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation

9  marks omitted).  "[A] plaintiff must set forth more than the neutral facts necessary to identify the

10 transaction.  The plaintiff must set forth what is false or misleading about a statement, and why

11 it is false."  Id. (internal quotation marks omitted) (alteration and emphasis in original).

## DISCUSSION

13      In enacting the Securities Act and Exchange Act (collectively, "Securities Acts"), "Congress

14 did not[] . . . intend to provide a broad federal remedy for all fraud."  Reves v. Ernst & Young, 494

15 U.S. 56, 61, 110 S.Ct. 945, 949 (1990) (internal quotation marks omitted).  "Accordingly, the task

16 has fallen to the Securities and Exchange Commission (SEC), the body charged with

17 administering the Securities Acts, and ultimately to the federal courts to decide which of the myriad

18 financial transactions in our society come within the coverage of these statutes."  Id. (internal

19 quotation and alteration marks omitted).

20      Under the Securities Acts, the definition of regulated "securities" include an enumerated list

21 of "the commonly known documents traded for speculation or investment."[4]  S.E.C. v. W.J. Howey

22 ────────────────

23      [4]  The Securities Acts define a "security" to mean "any note, stock, treasury stock, security
    future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or
24  participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate
    or subscription, transferable share, investment contract, voting-trust certificate, certificate of
25  deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call,
    straddle, option, or privilege on any security, certificate of deposit, or group or index of securities
26  (including any interest therein or based on the value thereof), or any put, call, straddle, option, or
    privilege entered into on a national securities exchange relating to foreign currency, or, in general,
27  any interest or instrument commonly known as a 'security', or any certificate of interest or
    participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to
28

Co., 328 U.S. 293, 297, 66 S.Ct. 1100, 1102 (1946) ("Howey").  Plaintiffs allege that the digital assets qualify as securities because they are "investment contracts."  (See Dkt. 179, SAC at ¶¶ 536-99); Howey, 328 U.S. at 297, 66 S.Ct. at 1102 (definition "also includes 'securities' of a more variable character, designated by such descriptive terms as . . . [an] 'investment contract.'").

Whether a financial instrument is an "investment contract" is governed by the Supreme Court's test in Howey.  Under the Howey test, "an investment contract for purposes of the Securities Act[s] means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party[.]" Howey, 328 U.S. at 298-99, 66 S.Ct. at 1103; see also Warfield v. Alaniz, 569 F.3d 1015, 1020 (9th Cir. 2009) (noting the Ninth Circuit has distilled the Howey test into a three-pronged inquiry).  The test is intended to "embod[y] a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Howey, 328 U.S. at 299, 66 S.Ct. at 1103.  Accordingly, "the determination of whether or not a transaction falls within the ambit of the Securities Acts [under Howey] is not bound by legal formalisms, but instead focuses on the economic realities involved in the transaction." S.E.C. v. Rubera, 350 F.3d 1084, 1089 (9th Cir. 2003).

Plaintiffs allege that all six digital assets are "securities" within the meaning of the Securities Acts.  (See Dkt. 179, SAC at  ¶¶ 1 n. 1, 536-99); 15 U.S.C. §§ 77b(a)(1), 78c(a)(10).  Yuga "unequivocally den[ies] that any of the Products are 'securities[.]'"[5] (Dkt. 187, Yuga Motion at 2).

---

subscribe to or purchase, any of the foregoing." 15 U.S.C. § 77b(a)(1); id. at § 78c(a)(10) (same).

[5]   As most of the defendants joined Yuga's Motion as to this argument, (see Dkt. 189, Bieber Motion at i); (Dkt. 190, Ciccone Motion at i); (Dkt. 191, MoonPay Motion at 1-2); (Dkt. 193, Winkelmann Motion at i); (Dkt. 194, Hilton Motion at i); (Dkt. 195, Special Council Motion at ii); (Dkt. 198, Curry Motion at ii), the court will cite to Yuga's Motion for simplicity.  Defendants Universal Television, LLC, James Fallon, and Electric Hot Dog, Inc. (collectively, "Universal defendants"), adidas America Inc. and adidas Venture B.V. (collectively, "Adidas defendants"), and Sotheby's Holdings Inc. ("Sotheby's"), did not expressly join this portion of Yuga's Motion. (See Dkt. 192, Universal Motion at i-ii); (Dkt. 199, adidas Motion at iii); (see, generally, Dkt. 200-1, Memorandum of Points & Authorities in Support of Motion to Dismiss [] ("Sotheby's Memo")).  However, plaintiffs' federal securities claims are alleged against all defendants, (see, e.g., Dkt.

However, it provides no argument or authority by which to address this threshold issue.  (See, generally, id.).[6]  Instead, Yuga assumes that the digital assets constitute securities, and proceeds to analyze the sufficiency of plaintiffs' factual allegations underlying their securities claims.[7]  (See, e.g., id. at 8-33, 36-39).  Although the court has concerns as to whether plaintiffs have sufficiently alleged scienter, see Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1066 (9th Cir. 2008) ("To meet [the scienter] pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made.") (internal quotation marks omitted), or whether any of the defendants constitute "statutory sellers" of the alleged unregistered securities for purposes of § 12(a)(1) of the Securities Act,[8] see Pinter v. Dahl, 486 U.S. 622, 642, 108 S.Ct. 2063, 2076 (1988) (a defendant is a "statutory seller" if it "passed title, or other interest in the security, to the buyer for value"), the court believes that it must first address whether the NFTs qualify as "securities" within the meaning of the  Securities Acts.  See Koch v. Hankins, 928 F.2d 1471, 1475 (9th Cir. 1991) ("In order to make out a claim under the federal securities laws, the investors must demonstrate as a threshold matter that the promoters' alleged misrepresentations were made in connection with the purchase or sale of a security.").  As one

179, SAC at ¶¶ 721-31), and thus whether the digital assets are securities is relevant to the non-joining defendants.

    [6]  Analysis under the Howey test also does not appear in any of the other Motions.  (See, generally, Dkt. 189, Bieber Motion); (Dkt. 190, Ciccone Motion); (Dkt. 191, Moonpay Motion); (Dkt. 192, Universal Motion); (Dkt. 193, Winkelman Motion); (Dkt. 194, Hilton Motion); (Dkt. 195, Special Council Motion); (Dkt. 198, Curry Motion); (Dkt. 199, Adidas Motion); (Dkt. 200-1, Sotheby's Memo).

    [7]  Other defendants seek dismissal on similar grounds, arguing that plaintiffs have not alleged sufficient facts as to their particular conduct to show liability under the Securities Acts.  (See, e.g., Dkt. 189, Bieber Motion at 1) (arguing that his one Instagram post, one Tweet and alleged investment in MoonPay are not actionable representations for purposes of federal securities laws).

    [8]  (See Dkt. 187, Yuga Motion at 24-26) (pointing out that "[n]one of the plaintiffs allege that they 'purchased directly' any [digital asset] from any defendant.  Rather, Plaintiffs admit they acquired their [digital assets] on secondary marketplaces from unidentified market participants.") (citation omitted).

commentator has noted, "[a]n NFT can alternatively represent a collectible, a financial instrument, or a permanent record associated with a person, digital or physical item, or data[,]" and "[e]ach type of use presents different . . . legal issues." Houser, et al., "Navigating the Non-Fungible Token," 2022 Utah L. Rev. 891, 894 (2022) (footnotes omitted).

The question of whether any, some, or all six digital assets is a security is a threshold question that governs not only the applicability of the Securities Acts and parallel state claims, but also other aspects of the case. For example, Yuga urges the court to decline to exercise personal jurisdiction over the non-California defendants, because the federal securities laws, which provide for nationwide personal jurisdiction, do not apply. (See Dkt. 187, Yuga Motion at 41-42) (arguing that plaintiffs' "federal claims providing for nationwide personal jurisdiction lack merit and there is no independent basis for personal jurisdiction"). Adidas Venture B.V., which is headquartered in the Netherlands, (see Dkt. 179, SAC at ¶ 42), similarly argues that the court lacks personal jurisdiction over it. (See Dkt. 199, Adidas Motion at 5-6) (arguing that if the federal securities claims are dismissed, then the California and Florida state claims must be dismissed "because plaintiffs have not pled suit-related contacts" with either state). Finally, as to plaintiffs' state law claims, these, too, depend on whether the digital assets are securities, because the UCL "does not apply to securities transactions." Bowen v. Ziasun Techs., Inc., 116 Cal.App.4th 777, 784 (2004) (internal quotations marks omitted); id. at 790 (holding that the UCL "does not apply to securities transactions").

## **CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. No later than **September 3, 2024**, the parties shall submit a stipulation and proposed order setting forth a briefing schedule for motions to dismiss limited to the question of whether the subject digital assets qualify as securities within the meaning of the Securities Acts.

4. The pending Motions **(Documents Nos. 187, 188, 189, 190, 191, 192, 193, 194, 195, 198, 199, & 200)** are **denied without prejudice**. Assuming the court concludes that the subject

digital assets are found to constitute securities within the meaning of the Securities Acts, defendants may – depending on whether there have been any legal or factual developments – file renewed motions to dismiss or seek to have the current motions reinstated.

Dated this 20th day of August, 2024.

 

 

 

 

                                                           /s/

                                        Fernando M. Olguin
                                  United States District Judge