PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

ALEXANDER C. DRYLEWSKI (admitted *pro hac vice*)
alexander.drylewski@skadden.com
SHAUD G. TAVAKOLI (admitted *pro hac vice*)
shaud.tavakoli@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:   (212) 735-3000
Facsimile:   (212) 735-2000

*Attorneys for Defendants*
YUGA LABS, INC., WYLIE ARONOW,
GREG SOLANO, NICOLE MUNIZ, PATRICK
EHRLUND, CHRISTOPHER LYONS, and GUY OSEARY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHNNY JOHNSON, EZRA BOEKWEG, MARIO PALOMBINI, ADAM TITCHER, JONATHAN SMITH, NEAL PATEL, HIREN PATEL, and DAVID GRAND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>YUGA LABS, INC., et al.,<br><br>Defendants. | CASE NO.: 2:22-cv-08909-FMO-BFM<br><br>**YUGA LABS DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>**FILED SEPARATELY:**<br>**(1) DECLARATION OF PETER B. MORRISON;**<br>**(2) DECLARATION OF ALEXANDER C. DRYLEWSKI;**<br>**(3) RENEWED REQUEST FOR INCORPORATION BY REFERENCE; and**<br>**(4) [PROPOSED] ORDER.**<br><br>Date: December 4, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br>Complaint Filed: December 8, 2022 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D, located at 350 West First Street, Los Angeles, California 90012, Defendants Yuga Labs, Inc. ("Yuga Labs"), Wylie Aronow, Greg Solano, Nicole Muniz, Patrick Ehrlund, Christopher Lyons, and Guy Oseary (collectively, the "Yuga Labs Defendants") will, and hereby do, present for hearing by the Court, the Honorable Fernando M. Olguin presiding, this Motion to Dismiss the Third Amended Class Action Complaint (the "Motion").

The Motion seeks dismissal with prejudice of the claims set forth in Appendix A asserted in the Third Amended Class Action Complaint (the "Third Amended Complaint" or "TAC," ECF 289) brought by Lead Plaintiffs Johnny Johnson, Ezra Boekweg, and Mario Palombini, and Named Plaintiffs Adam Titcher, Jonathan Smith, Neal Patel, Hiren Patel, and David Grand (collectively, "Plaintiffs"), for failure to state a claim upon which relief may be granted.

This Motion is made pursuant to the Court's September 30, 2025 Order (ECF 288) (the "Order"). In the Order, the Court granted the Yuga Labs Defendants' Motion to Dismiss the Second Amended Class Action Complaint, granted Plaintiffs leave to file a Third Amended Complaint, and authorized Defendants to file a renewed motion to dismiss directed solely to the question whether the Products (defined below) qualify as securities.

This Motion is also filed pursuant to Rules 8(a), 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, and is based on the accompanying Memorandum of Points and Authorities, Declaration of Peter B. Morrison, Declaration of Alexander C. Drylewski, Renewed Request for Incorporation by Reference, all pleadings and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

This Motion is further made following the conference of counsel pursuant to the Order and Civil Local Rule 7-3, which took place on October 21, 2025, at 8:00 a.m.

Pursuant to the Court's Order, the following Defendants join in the Yuga Labs Defendants' arguments herein:

- Alexis Ohanian, Amy Wu, and Maaria Bajwa;

- Sotheby's Holdings Inc.;

- Mike Winkelmann;

- Madonna Louise Ciccone;

- Paris Hilton;

- James Fallon, and Universal Television, LLC;

- Justin Bieber;

- Wardell Stephen Curry II;

- adidas America Inc. and adidas Ventures B.V.; and

- Ivan Soto-Wright and MoonPay USA LLC.

DATED:  October 24, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____
                    /s/ Peter B. Morrison
                    PETER B. MORRISON

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,
Nicole Muniz, Patrick Ehrlund, Christopher
Lyons, and Guy Oseary

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 3

      A.    The Products ........................................................................................ 3

      B.    The Products Were Promoted for Consumption and
            Entertainment .................................................................................... 4

      C.    Procedural History ............................................................................. 8

            1.    This Court Dismisses the SAC .............................................. 8

            2.    Plaintiffs File the TAC ........................................................... 9

III.  ARGUMENT .................................................................................................. 9

      A.    The Products Were Not Sold in Securities Transactions ......... 10

            1.    Plaintiffs Do Not Plead an "Investment of Money" ........ 10

                  (a)    The Products Were Promoted for Consumption and
                         Entertainment ............................................................. 11

                  (b)    Plaintiffs Do Not Plead Promotion for Investment ......... 12

                         (i)    Plaintiffs' New Allegations Are Deficient ............. 12

                         (ii)   Plaintiffs' Recycled SAC Allegations Remain
                                Deficient .......................................................... 14

            2.    Plaintiffs Do Not Plead a "Common Enterprise" ......... 17

                  (a)    No Horizontal Commonality ............................................. 17

                         (i)    Plaintiffs' New Allegations Are Deficient ............. 17

                         (ii)   Plaintiffs' Recycled SAC Allegations Remain
                                Deficient .......................................................... 19

                  (b)    No Strict Vertical Commonality ....................................... 20

            3.    Plaintiffs Do Not Plead A Reasonable Expectation of
                  Profits Based On Defendants' Efforts ........................... 21

IV.   CONCLUSION .............................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

*AK Futures LLC v. TBH Supply LLC*,
    No. 8:23-CV-01030-JVS (ADSX),
    2024 WL 2984023 (C.D. Cal. Jan. 19, 2024)......................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................10

*Brooks v. Tarsadia Hotels*, No.: 3:18-cv-2290-GPC-KSC,
    2019 WL 2436395 (S.D. Cal. June 11, 2019) ...................................................19

*Davis v. Rio Rancho Estates, Inc.*,
    401 F. Supp. 1045 (S.D.N.Y. 1975)....................................................................14

*De Luz Ranchos Investment, Ltd. v. Coldwell Banker & Co.*,
    608 F.2d 1297 (9th Cir. 1979) ............................................................................22

*Donovan v. GMO-Z.com Trust Co.*,
    779 F. Supp. 3d 372 (S.D.N.Y. 2025).................................................................23

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ..............................................................................15

*Hart v. Pulte Homes of Michigan Corp.*,
    735 F.2d 1001 (6th Cir. 1984) ............................................................................20

*Hirk v. Agri-Research Council, Inc.*,
    561 F.2d 96 (7th Cir. 1977) ................................................................................19

*Hocking v. Dubois*,
    885 F.2d 1449 (9th Cir. 1989) ......................................................................17, 19

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ............................................................................................16

*Killips v. Before the Butcher, LLC*,
    No. SA CV 19-0948 FMO (PLAx),
    2021 WL 4895737 (C.D. Cal. Aug. 25, 2021) ..................................................22

*Lee v. Financial Recovery Services*,
    No. 5:24-cv-00861-SSS-SHKX,
    2024 WL 5439275 (C.D. Cal. Nov. 14, 2024) ....................................................4

*Marini v. Adamo*,
    812 F. Supp. 2d 243 (E.D.N.Y. 2011).................................................................21

*Meredith v. Conticommodity Services, Inc.*,
    No. 79-1282, 1980 WL 1465 (D.D.C. Nov. 24, 1980) .......................................18

*Milnarik v. M-S Commodities, Inc.*,
    457 F.2d 274 (7th Cir. 1972) ..............................................................................18

*Mobayen v. Blinken*,
    780 F. Supp. 3d 969 (C.D. Cal. 2025).................................................................15

iv

*OOO-RM Invest v. Net Element International, Inc.,*
    No. 14-20903-CIV-ALTONAGA/O'Sullivan,
    2014 WL 12613283 (S.D. Fla. Nov. 3, 2014) ................................................... 23

*Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir. 1993) ..................................... 16

*Reichelt v. City of Los Angeles,*
    No. CV 21-3389 FMO (JEMx), 2022 WL 853221 (C.D. Cal. Feb. 25, 2022),
    *aff'd*, No. 22-5529, 2023 WL 234776 (9th Cir. Jan. 18, 2023) ....................... 16

*Revak v. SEC Realty Corp.,*
    18 F.3d 81 (2d Cir. 1994) ................................................................ 17, 18, 19, 20

*Rice v. Branigar Organization, Inc.,*
    922 F.2d 788 (11th Cir. 1991) .......................................................................... 2, 13

*Rodriguez v. Banco Central Corp.,*
    990 F.2d 7 (1st Cir. 1993) ...................................................................................... 13

*Salameh v. Tarsadia Hotel,*
    726 F.3d 1124 (9th Cir. 2013) ........................................................................ 21, 23

*SEC v. Aqua-Sonic Products Corp.,*
    687 F.2d 577 (2d Cir. 1982) ................................................................................. 13

*SEC v. Aqua-Sonic Products Corp.,*
    524 F. Supp. 866 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 577 (2d Cir. 1982) ........... 21

*SEC v. Belmont Reid & Co.,*
    794 F.2d 1388 (9th Cir. 1986) ................................................................... 3, 22, 23

*SEC v. Energy Group of America, Inc.,*
    459 F. Supp. 1234 (S.D.N.Y. 1978) .................................................................... 13

*SEC v. Life Partners, Inc.,*
    87 F.3d 536 (D.C. Cir. 1996) ........................................................................ 13, 23

*SEC v. Pacific West Capital Group, Inc.,*
    CV 15–2563 FMO (FFMx), 2015 WL 9694808 (C.D. Cal. June 16, 2015) ... 23

*SEC v. R.G. Reynolds Enterprises, Inc.,*
    952 F.2d 1125 (9th Cir. 1991) ............................................................................. 20

*SEC v. Ripple Labs, Inc.,*
    682 F. Supp. 3d 308 (S.D.N.Y. 2023) ................................................................ 23

*SEC v. W.J. Howey Co.,*
    328 U.S. 293 (1946) ................................................................................................ 1

*Stenger v. R.H. Love Galleries, Inc.,*
    741 F.2d 144 (7th Cir. 1984) ............................................................................... 19

*United Housing Foundation, Inc. v. Forman,*
    421 U.S. 837 (1975) ....................................................................................... 1, 10

YUGA LABS DEFENDANTS' MOTION TO DISMISS         NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

*Wals v. Fox Hills Development Corp.,*
    24 F.3d 1016 (7th Cir. 1994) ................................................................. 18

*Warfield v. Alaniz,*
    569 F.3d 1015 (9th Cir. 2009) ................................................... 1, 10, 22

*Woodward v. Terracor,*
    574 F.2d 1023 (10th Cir. 1978) ..................................................... 10, 13

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

# I.    <u>PRELIMINARY STATEMENT</u>[1]

The TAC is nothing more than a repackaged version of the deficient Second Amended Complaint ("SAC," ECF 179) that this Court already dismissed because Plaintiffs failed to allege that any digital entertainment products at issue ("Products") are "securities." As the Court held, Plaintiffs failed to satisfy any of the three prongs of *Howey*, including (i) an investment of money, (ii) in a common enterprise, (iii) with an expectation of profits. *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). The Court should dismiss the claims set forth in Appendix A hereto, this time with prejudice, for at least the following reasons:

*First*, Plaintiffs still do not plead that they made an "*investment* of money." (*Infra* § III.A.1.) In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975), the Supreme Court explained that a transaction is not an "investment" where the purchaser is not "attracted solely by the prospects of a return on his investment [but rather] is motivated by a desire to use or consume the item purchased." *Id.* at 852-53. As the Court held, the Products "were marketed for essentially consumptive uses, rather than with or for the prospect of financial gain," and thus Plaintiffs' transactions were not "investments." (Order 10.) While Plaintiffs seek to evade this ruling by excising numerous allegations of the Products' consumptive nature, the TAC still brims with marketing statements emphasizing the consumptive and entertainment use of the Products, including access to an online club, numerous "Member-Only benefits," merchandise and "exclusive event[s]," and the ability to participate in community activities. (TAC ¶¶ 110, 189, 201, 212, 245, 270, 284, 438.)

On the other hand, the TAC, like the SAC, does not allege that purchasers of any Product "were offered or promised" profits. *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009). Plaintiffs' new allegations fall within the same categories of statements this Court considered and rejected as insufficient to plead a promise of

---

[1] Unless otherwise specified, all emphasis is added; internal citations, quotation marks, and alterations are omitted.

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

profits under *Howey* and *Forman*. Indeed, the newly-alleged statements emphasize the goals of advancing "culture, gaming, and entertainment" and "building player experiences in game," (TAC ¶¶ 269-70), and promote use of the Products in a "digital environment" (*id.* ¶ 451). These are entertainment-related concepts divorced from investments, profits, or financial returns. *See Rice v. Branigar Org., Inc.*, 922 F.2d 788, 791 (11th Cir. 1991) (no investment contract where "overall emphasis" was on consumption).

*Second*, Plaintiffs still do not plead any investment "*in a common enterprise*." (*Infra* § III.A.2.) The scant new allegations in the TAC remain "bare" and "too conclusory to show horizontal commonality." (Order 14.) Plaintiffs still do not adequately plead that their funds were pooled together with those of other purchasers for collective financial benefit. Rather, Plaintiffs admit they purchased from unknown sellers on secondary marketplaces, not from Defendants, and so their money *could not* be pooled to fund an enterprise. Nor do Plaintiffs plead any "interconnected scheme," in contrast to other cases where defendants were alleged to control the marketplace where the digital assets traded. (Order 14-15.) Plaintiffs also do not plead "strict vertical commonality" because they still do not allege any "link between [P]laintiffs' and [D]efendants' fortunes." (Order 16.) Instead, Plaintiffs' theory remains built on the alleged premise that Defendants profited while Plaintiffs' incurred losses. (TAC ¶ 395.)

*Lastly*, Plaintiffs still do not plead an "expectation of profits based on the efforts of others." (*Infra* § III.A.3.) The only new TAC allegations concerning marketing further undercut Plaintiffs' theory that they were led to expect profits because the marketing efforts reflect consumptive use and say nothing about profit potential. (*See* TAC ¶ 478 (statements announcing "future membership benefits" and an interactive "arcade game").) Plaintiffs otherwise rehash the same, already-rejected allegations based on cherry-picked statements referencing prices and trading volumes and other "run of the mill" promotions. (*Id.* ¶¶ 473-83; Order 17-18.)

2

As in the SAC, Plaintiffs' expectation of profits theory boils down to their subjective hope the Products' prices would rise on secondary markets. This is insufficient as a matter of law because, just as before, the TAC does not link Plaintiffs' subjective hopes to the promotion of any of the Products, nor does it link such expectations to the essential efforts of the Yuga Labs Defendants. *SEC v. Belmont Reid & Co.*, 794 F.2d 1388, 1391 (9th Cir. 1986).

Plaintiffs' failure to cure the defects identified in the Order requires dismissal of the claims in **Appendix A** with prejudice.[2]

## II.    FACTUAL BACKGROUND

### A.    The Products

The Products comprise four digital entertainment products:

(i) BAYC collection;

(ii) MAYC collection;

(iii) Otherdeed collection; and

(iv) ApeCoin.

(TAC ¶ 1 n.1.)[3] The first three Products are NFTs. Each NFT is a non-fungible, one-of-a-kind digital product (Order 2), which has its own price on marketplaces based on consumer tastes and, just like any collectible, has "traits" and "attributes that distinguish one [NFT] from another." (TAC ¶¶ 44-46.)

Yuga Labs created **BAYC NFTs** in 2021. (TAC ¶ 45.) They are "unique" "works of art" that "feature pictures of an animated ape with a bored facial expression," each with "distinct visual attributes" that can be viewed and displayed. (*Id.* ¶¶ 45, 54, 101, 112.) The price of each BAYC NFT is tied to the rarity of its unique

---

[2] Defendants previously moved to dismiss all claims on various additional grounds, all of which Defendants expressly preserve to the extent necessary following adjudication of the instant motion.

[3] Plaintiffs expressly abandoned claims based on Meebits in the TAC. Plaintiffs confirmed that they are also not pursuing claims based on BAKC. (Decl. of Alexander C. Drylewski ¶ 7, dated October 24, 2025.)

YUGA LABS DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT                    NO.: 2:22-cv-08909-FMO-BFM

traits and accessories. (*Id.* ¶¶ 193, 388, 414.) A "rare pink" BAYC NFT, for example, is "more valuable" than one of a different color. (*Id.* ¶ 193.)

Following BAYC, Yuga Labs launched the "spinoff" **MAYC NFT** collection. (SAC ¶ 73.) Collectors could create MAYC NFTs that were "mutated versions of [BAYC NFTs]." (TAC ¶ 46.) One artist even "mutated" his BAYC NFT "as part of a live performance." (*Id.* ¶ 438.) MAYC NFTs are unique collectible images. (*Id.* ¶ 388.)

The **Otherdeed NFTs** are "digital land deeds" for plots of land in an interactive gaming metaverse called "Otherside." (TAC ¶ 44.)

**ApeCoin** is a digital currency and governance token for the ApeCoin community. (TAC ¶ 43.)[4] ApeCoin was advertised as the "official currency of the BAYC ecosystem" to access goods and services and permit owners to "vote on governance" of the ApeCoin community. (*Id.* ¶¶ 281, 284.)

**B.    The Products Were Promoted for Consumption and Entertainment**

The TAC continues to allege numerous marketing statements reflecting the Products' many consumptive uses that purchasers were led to expect.[5]

***Club Memberships.*** In addition to being one-of-a-kind collectibles, Plaintiffs allege that buying a BAYC NFT is akin to joining a "club." (TAC ¶¶ 110, 201, 438, 469, 546.) This "club" gives owners access to events and other "Member-Only" benefits such as a "Collab Art Board" and "Roadmap Activations," which included an interactive "NFT breeding arcade game." (*Id.* ¶¶ 212, 478.) As one tweet referenced in the TAC and reproduced in the SAC showed:

---

[4] A "governance token" is a digital asset that allows holders to vote on or propose changes to a blockchain-based project. (TAC ¶¶ 281, 283.)

[5] Although not necessary, the Court may also consider the allegations of consumptive use that were pleaded in the SAC that Plaintiffs have strategically omitted from the TAC. *Lee v. Financial Recovery Servs.*, 2024 WL 5439275, at *2 (C.D. Cal. Nov. 14, 2024) (plaintiffs cannot "avoid dismissal simply by eliminating allegations that would otherwise defeat [their] claim[s]"); *AK Futures LLC v. TBH Supply LLC*, 2024 WL 2984023, at *3 (C.D. Cal. Jan. 19, 2024) ("Court may consider Plaintiffs' prior allegations in determining the *plausibility* of their allegations in the TAC."). Alternatively, the Court may take judicial notice of the public statements Plaintiffs pleaded in the SAC.



(SAC ¶ 268 (referenced at TAC ¶ 210); Ex. 1.)

**ApeFest and Social Events.** Plaintiffs allege that BAYC and MAYC owners had access to "exclusive event[s]" such as "ApeFest" (TAC ¶ 189) and "live performance[s]" at the "@BoredApeYC party" (*id.* ¶¶ 245, 438). Past ApeFests have featured a "merch pop-up" and musical performances, and drawn "huge" crowds. (SAC ¶¶ 263, 274, 288, 411.)

**Merchandise and Games.** Plaintiffs allege the Products give owners access to "exclusive games, merch, events, and services." (TAC ¶ 284; *see also id.* ¶ 212; SAC ¶¶ 75, 290, 316, 389, 411, 890.) For example, a tweet by the BAYC Twitter account reproduced describes "Narrative-based utility" and "Merch" and depicts an NFT and BAYC merchandise, as illustrated below.

YUGA LABS DEFENDANTS' MOTION TO DISMISS                    NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(TAC ¶ 212.) The TAC also reproduces tweets describing ApeCoin as "a token for culture, gaming, and commerce" for the BAYC "ecosystem" and "future Yuga products and services," as illustrated below.

6

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21  (TAC ¶ 216.)

22       ***Otherside.*** Plaintiffs allege that Otherside is "a collective virtual shared space
23  or 'metaverse' platform" promoted by Defendants "as an extension to the BAYC
24  ecosystem" (TAC ¶ 62) where "all Yuga NFTs would . . . be able to move and interact
25  with each other in a digital environment" (*id.* ¶ 451). Otherdeed NFTs are the "key to
26  claiming land in Otherside and its metaverse game." (*Id.* ¶ 299.) Although Plaintiffs
27  allege the Otherside metaverse had not yet launched at the "time of sale" in April 2022,
28

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1    (*id.* ¶ 422), each Otherdeed is a unique digital collectible "defined by attributes that

2    distinguish one deed from another" (*id.* ¶¶ 44, 62, 294).

3         ***Commercial Rights.*** Plaintiffs allege that the products were promoted as

4    providing purchasers "exclusive commercial IP rights" over their unique artwork.[6]

5    (TAC ¶¶ 233, 269.)

6         ***ApeCoin Community Participation.*** Plaintiffs allege that ApeCoin users can

7    "participate in the ApeCoin DAO"—a community of ApeCoin owners—by voting on

8    governance proposals that fellow ApeCoin owners make. (TAC ¶¶ 281, 283.)

9    **C.    Procedural History**

10        On October 3, 2024, the Yuga Labs Defendants and other Defendants filed

11   motions to dismiss the SAC. (ECF 187-200.) The Court requested briefing on whether

12   Plaintiffs had pleaded that the Products were "securities." (ECF 236.)

13        **1.    This Court Dismisses the SAC**

14        On September 30, 2025, this Court dismissed the SAC because it failed to plead

15   that any of the Products were securities (ECF 288) for three reasons:

16        *First*, Plaintiffs did not plead an "investment of money." (Order 10.) The Court

17   emphasized that Defendants' statements touted the consumptive and entertainment

18   nature of the Products. (*Id.*) The Court concluded that, although some statements

19   discussed the "inherent, long-term value" or "price" of the Products, "[n]one of the[]

20   alleged promotional statements can be read to tout the NFTs as investments." (Order

21   11-12.)

22        *Second*, Plaintiffs did not plead a "common enterprise." The Court concluded

23   that Plaintiffs' allegations, including that "Yuga used the funds from its ApeCoin to

24   fund its operations," are "too conclusory to show horizontal commonality." (Order 13-

25   14.) As to vertical commonality, the Court held that Plaintiffs did not plead any "link

26

27   _____

     [6] Plaintiffs dispute whether they obtained IP rights, (TAC ¶¶ 225, 618), but admit the
28   Products were marketed as providing such rights—the relevant inquiry on this motion.
     (*Id.* ¶¶ 233, 618).

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1  between plaintiffs' and defendants' fortunes," including based on "common

2  ownership" or "creator fees," because they did not allege "any agreement between

3  themselves and defendants to share profits on a percentage basis." (*Id.* 16.)

4  　　　*Third*, Plaintiffs did not plead an "expectation of profits." The Court explained

5  that "[s]tatements about a product's inherent or intrinsic value are not necessarily

6  statements about profit," and "statements about NFT prices and trade volumes" also

7  "fail to establish an expectation of profit." (*Id.* 17-18.)

8  　　　**2.　　Plaintiffs File the TAC**

9  　　　Plaintiffs filed the TAC on October 10, 2025. (ECF 289.) The TAC continues

10  to include the same promotional snippets this Court found insufficient, in some cases

11  grafting broad, conclusory characterizations to these statements in an attempt to

12  repackage them as part of a "profit-generating" scheme (*compare* TAC ¶¶ 115, 127,

13  130, 180, 204-05, 416-18, 444, 457, *with* SAC ¶¶ 65, 147, 159, 171, 232, 260, 392-

14  96).

15  　　　The TAC alleges just a handful of new statements Plaintiffs contend marketed

16  the Products as investments. (TAC ¶¶ 195-96, 448-49, 451-52, 466, 478.) Many of the

17  statements are alleged without reference to the source or quotations to the original

18  material. (*Id.* ¶¶ 195-96, 451.) They include a promotional video that Plaintiffs

19  (incorrectly) claim features an "animated rocket ship." (*Id.* ¶¶ 448-49.) The new

20  alleged statements reference the BAYC "community," (*id.* ¶¶ 466, 478), describe

21  Otherdeeds NFTs as "dynamic," (*id.* ¶ 452), and describe other consumptive features,

22  such as experiencing a "digital environment," (*id.* ¶ 451), and enjoying "membership

23  benefits," (*id.* ¶ 478). None refer to, or promise, profits or financial returns.

24  **III.　ARGUMENT**

25  　　　The Court's prior Order confirms the applicable legal framework under *Howey*

26  and *Forman*. (Order 6-10, 12-13, 17, 19.) The Court held that the SAC failed to plead

27  that any Product was sold as an "investment contract" because the alleged transactions

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1  did not meet the three prongs of *Howey*. The TAC does not cure the defects the Court

2  identified.

3  **A.    The Products Were Not Sold in Securities Transactions**

4  Plaintiffs now assert that each of the Products are "governed by a written

5  investment contract deployed on the Ethereum blockchain" that "functions as the

6  official set of rules that all holders rely upon." (TAC ¶¶ 43-46.) Plaintiffs do not

7  explain how these supposed "investment contract[s]" function, what their terms were,

8  or how they render any Product a "security." Mere parroting of the legal term

9  "investment contract" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

10  (2007) (plaintiff must plead "more than labels and conclusions"). The TAC does not,

11  and cannot, plead any contract that "governs" the parties' relationship with promises

12  of profits based on Yuga Labs's efforts. *Woodward v. Terracor*, 574 F.2d 1023, 1026-

13  27 (10th Cir. 1978). Moreover, as discussed below, Plaintiffs do not offer any other

14  new facts to satisfy *Howey* and *Forman*.

15  **1.    Plaintiffs Do Not Plead an "Investment of Money"**

16  The TAC, like the SAC, does not plead an "investment of money." (Order 7-

17  12.) There is an "investment" only "where one parts with his money in the hope of

18  receiving profits from the efforts of others, and *not* where he purchases a commodity

19  for personal consumption." *Forman*, 421 U.S. at 858. Courts "look to the promotional

20  materials associated with a sale" and "focus [the] inquiry on what the purchasers were

21  offered or promised," (Order 9), and thus "led to expect," *Warfield*, 569 F.3d at 1021.

22  Purchasers' subjective motivations are irrelevant unless attributable to the defendants'

23  actual promotion of the assets in question. *Forman*, 421 U.S. at 856.

24  Here, the TAC continues to illustrate that the Products were promoted for

25  entertainment and consumption. (*Infra* § II.A.1.a.) Plaintiffs plead only a small number

26  of new purported "facts," none of which are sufficient to allege that any of the Products

27  were promoted as investments. (*Infra* § III.A.1.b.i.) Otherwise, Plaintiffs merely

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS            NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

recycle the SAC's old allegations, sometimes adding revised characterizations or "gloss"—all of which is foreclosed by the Order. (*Infra* § III.A.1.b.ii.)

<strong>(a)    The Products Were Promoted for<br>Consumption and Entertainment</strong>

The TAC's allegations—reproduced from the SAC—again confirm that the Products "were marketed for essentially consumptive uses, rather than with or for the prospect of financial gain." (Order 10.) For example, Plaintiffs allege that **ApeCoin** owners had access to "exclusive games, merch, events, and services" and the ability to "participate in" governing a "self-sustaining ecosystem"; **BAYC NFT** and **MAYC NFT** owners became members of a "club" that provides "Member-Only" benefits, including access to a digital graffiti board and "exclusive event[s]"; and **Otherdeed** NFTs owners could "claim land" in the Otherside "metaverse" game. (*Supra* § II.B.) These allegations defeat Plaintiffs' claim that they made an "investment" under *Forman*. (Order 10 (considering identical allegations).)[7]

Plaintiffs parrot their previous allegation that they could not have acquired the Products for consumptive use because the "consumptive-use benefits were not yet in play at the time of purchase." (TAC ¶¶ 422, 427, 434, 439.) But the Court already rejected this argument, explaining that the question is whether *statements promoting* consumptive use were made prior to a purchase regardless of whether those consumptive uses were already "in play." (Order 10-11.) Numerous statements promoting consumptive use for each Product "had already been made by the time any [P]laintiff purchased [that Product]." (Order 10-11; TAC ¶¶ 55, 62, 201, 203, 210, 216, 281, 444, 478.) Moreover, "the fact that defendants promised that NFTs would confer future, as opposed to immediate, consumptive benefits does not alone transmute those benefits from consumptive to investment-like in nature." (Order 11.)

---

[7] Plaintiffs deleted prior allegations of consumptive marketing and uses in the SAC. (*See, e.g.*, SAC ¶¶ 285, 290, 411, 890.) They also omitted allegations that BAYC NFTs featuring certain traits are rarer and therefore more valuable. (Order 3.) While not necessary to resolve this motion, the Court may still consider Plaintiffs' deleted allegations. (*Supra* § II.B.)

**(b)    Plaintiffs Do Not Plead Promotion for Investment**

Against the tidal wave of promotions for consumptive and entertainment purposes, Plaintiffs do not adequately allege that any Product was promoted as a source of investment returns. In fact, the TAC does not identify a single reference to profits in any alleged promotion.

**(i)    *Plaintiffs' New Allegations Are Deficient***

The TAC only includes a handful of new statements that were not included in the SAC. (TAC ¶¶ 195-96, 448-49, 451-52, 466, 478.) None are sufficient to plead that any Product was marketed as an investment.

*First*, Plaintiffs point to a Yuga Labs animated video for Otherside that Plaintiffs contend contains a "rocket ship" and reference to "FOMO," or "Fear of Missing Out." (TAC ¶¶ 448-49.) But there is no rocket ship depicted in the video.[8] And a mere reference to "FOMO" or a rocket ship does not equate to promises of profit. Nor can this allegation cure the shortcomings of the SAC, which also alleged tweets containing rocket ship emojis. (SAC ¶¶ 159, 170-71, 232.) Unlike in *Dapper Labs*, where the rocket ship emojis were accompanied by pictures of "money bags" and "stock charts" and statements that purchasers would "benefit financially," Plaintiffs allege nothing of the sort here. (Order 18.)

*Second*, Plaintiffs allege that, on an unspecified date in an unspecified forum, Yuga Labs touted Otherside as "a place where all Yuga NFTs would, for the first time, be able to move and interact with each other in a digital environment" and that ApeCoin is the currency of that digital environment. (TAC ¶ 451.) This allegation only confirms the consumptive nature of the Products.

*Third*, Plaintiffs allege that the Otherside FAQ described Otherdeeds as "dynamic NFT[s]" whose "true potential can only be revealed with time." (TAC ¶ 452.) These statements are likewise unmoored in time, but nonetheless further

---

[8]    Yuga Labs, *Otherside Trailer*, YouTube (Mar. 22, 2022), https://www.youtube.com/watch?app=desktop&v=qt1equGhkQE.

1  confirm the entertainment uses of Otherdeeds. They say nothing about profits, let alone

2  promise them.

3    *Fourth*, Plaintiffs allege a Discord post by Aronow stating that "the entire

4  community benefits from each ape sold." (TAC ¶ 466.) Although Plaintiffs, based on

5  "information and belief" speculation, contort this statement as purportedly promising

6  profits, Plaintiffs elsewhere allege a BAYC tweet stating that "the more apes sell, the

7  more we get to work on future ***membership benefits***." (TAC ¶ 478.) This emphasizes

8  the consumptive features of the NFTs and says nothing about profits. Together, these

9  statements do not support Plaintiffs' claim because any expected profits must "be in

10  the form of a financial return on the investment, *not in the form of consumption*." *SEC*

11  *v. Life Partners, Inc.*, 87 F.3d 536, 543 (D.C. Cir. 1996).

12    *Finally*, while Plaintiffs allege that Oseary stated that ApeCoin would be

13  available to purchase on multiple exchanges (TAC ¶¶ 195-96), they do not even

14  quote—let alone reproduce—his supposed statements or allege where they were made.

15  They are, in any event, insufficient because, as the Court already held, they do not

16  promise profits. (Order 17-18.)

17    Even assuming *arguendo* that any of the above statements could be construed

18  as promoting any Product as an investment, that still would not transform the Products

19  into securities because the overwhelming majority of promotional statements stress

20  the Products' entertainment and consumptive nature. *Rice*, 922 F.2d at 791 (no security

21  based on "one passing reference to buying the property as an investment" where "[t]he

22  overall emphasis" of promotional materials "was clearly placed on enjoying the beauty

23  of the island and the amenities of the club and community"); *see also Woodward*, 574

24  F.2d at 1026-27. As courts have explained, the Products must be "promoted *primarily*

25  as an investment." *SEC v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 582 (2d Cir. 1982);

26  *see also Rodriguez v. Banco Cent. Corp.*, 990 F.2d 7, 11 (1st Cir. 1993) (undeveloped

27  lots not securities because they were offered primarily for use); *SEC v. Energy Grp. of*

28  *Am., Inc.*, 459 F. Supp. 1234, 1239 (S.D.N.Y. 1978) ("[W]hile [defendant's]

13

1  promotional literature speaks in terms of both an 'investment' and a 'gamble,' the
2  overall intent of the literature is to encourage readers to participate in a lottery[.]");
3  *Davis v. Rio Rancho Estates, Inc.*, 401 F. Supp. 1045, 1049 (S.D.N.Y. 1975)
4  ("Although the two themes are interwoven throughout the brochures, defendants'
5  promotional materials, fairly read, place more emphasis on development of a
6  residential community than on purchase as an investment.").

### (ii)    Plaintiffs' Recycled SAC Allegations Remain Deficient

8      Plaintiffs' remaining allegations are merely repackaged from the SAC. The
9  Court need not consider these old allegations, which remain insufficient.

10     *First*, Plaintiffs again point to statements referencing trading volume and price
11  of the Products. (TAC ¶¶ 195, 203, 212, 214, 271, 411.) The Court rejected this type
12  of allegation: "[s]tatements about a product's inherent or intrinsic value are not
13  necessarily statements about profit" and statements about trading volumes "by
14  themselves fail to establish an expectation of profit." (Order 17-18.)

15     *Second*, Plaintiffs re-allege that "Defendants" promoted financial returns by
16  "publiciz[ing] partnerships with . . . venture capital firms." (*Compare* TAC ¶¶ 238,
17  295-96, 412, 432, *with* SAC ¶¶ 336, 401-02.) But these statements emphasize Yuga
18  Labs's *entertainment*-driven mission, including that (i) "Yuga Labs is at the forefront
19  of merging culture and innovation for everyone to enter the metaverse" and "***has***
20  ***become a web3 culture, gaming, and entertainment empire***" (TAC ¶ 238), and (ii)
21  Yuga is "building a beautiful, interoperable world ***for people to explore and play in***."
22  (*Id.* ¶ 296.) None reference or promise profits to buyers of any Products.

23     *Third*, plaintiffs re-allege that Defendants used the term "ape in" to signal that
24  buyers could profit from Product purchases. (*Compare* TAC ¶¶ 407, 420, 423, 428,
25  435, *with* SAC ¶¶ 75, 122, 125-27,136, 260, 271, 386.) An ambiguous catchphrase
26  does not amount to "explicit discussions of rates of return" or profit. (Order 9-11.) The
27  Products all include the word "Ape" in their name, except Otherdeed NFTs that could
28  be purchased only with ***Ape***Coins (TAC ¶ 294). The natural reading of the phrase "ape

14

1  in" is to buy these Products and participate in events such as "*Ape*Fest" (TAC ¶ 189)—

2  not seek profit. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996

3  (9th Cir. 2014) ("When considering plausibility, courts must also consider an obvious

4  alternative explanation."); *Mobayen v. Blinken*, 780 F. Supp. 3d 969, 976-77 (C.D.

5  Cal. 2025) (crediting "plausible alternative explanation" that "render[ed] plaintiff's

6  explanation implausible").

7      Other statements in the TAC refute Plaintiffs' characterization. A tweet

8  encouraging people to "ape in" (TAC ¶ 213) goes on to state that one should "ape in

9  *so you can join in the fun tonight when we release THE BATHROOM, a Members-*

10  *Only collaborative pixel board*." (SAC ¶ 271; Ex. 2.) This statement would make no

11  sense if "ape in" meant "to profit from an increase in price." Other statements refer to

12  "ap[ing]-in to the club" (TAC ¶ 58), "joining the club" (*id.* ¶ 438), and similar

13  sentiments (*id.* ¶¶ 469, 546)—signifying membership in a club and attendant benefits,

14  not profit-seeking (Order 10).

15      *Fourth*, Plaintiffs re-allege that "Yuga's promotional messaging related to the

16  Sotheby's auction created an expectation of profits" as to BAYC NFTs. (*Compare*

17  TAC ¶¶ 109, 115-16 *with* SAC ¶¶ 135, 139, 147.) Yet the tweet by Yuga Labs

18  confirmed the consumptive nature of the NFT sold, stating: "To the buyer, I think we

19  speak for everybody when we say: WELCOME TO THE CLUB." (TAC ¶ 110.) The

20  tweet said nothing about investment or profits. And the fact that BAYC NFTs were

21  auctioned at Sotheby's reinforces their nature as art products, not securities.

22      *Fifth*, Plaintiffs re-allege two tweets by non-Yuga Labs Defendant Wu

23  containing rocket ship and moon emojis, and assert that these tweets somehow

24  promoted unspecified Products as an "investment." (*Compare* TAC ¶¶ 269-70, 425,

25  *with* SAC ¶¶ 374-75). Read in context, Wu's tweets do no such thing. Immediately

26  before the rocket ship emojis in one, Wu stated that "@ApeCoin Dao" was an entity

27  "at the nexus of *culture, gaming, and entertainment*." (TAC ¶ 269.) Another tweet

28  containing a rocket ship emoji touted, in Plaintiffs' words, "growth prospects for the

15

1    BAYC metaverse." (*Id.* ¶ 270.) But the tweet referred to "building ***player experiences***
2    ***in game***" that would lay the groundwork for this "metaverse." (*Id.*) These tweets do
3    not promise profits based on purchasing ApeCoin or anything else, but instead
4    emphasize the launch or expansion of consumptive benefits. (*Supra* § III.A.1.a.)

5        Plaintiffs also re-allege a statement in which Wu allegedly touted "100x to 500x
6    return[s]" that purchasers "could realize." (*Compare* TAC ¶¶ 152, 415, *with* SAC
7    ¶ 204.) But as the source article shows, Wu was speaking generally about "games"
8    that "revolve around tokenomics" (Ex. 3.) The article ***does not*** mention a single
9    Product. *Reichelt v. City of Los Angeles*, 2022 WL 853221, at *4 (C.D. Cal. Feb. 25,
10   2022) (Olguin, J.) (courts do not "accept as true allegations that contradict exhibits
11   attached to the Complaint or matters properly subject to judicial notice"), *aff'd*, 2023
12   WL 234776 (9th Cir. Jan. 18, 2023).

13       Regardless, there is no pleaded basis to impute statements by a non-Yuga Labs
14   Defendant, like Wu, to Yuga Labs. *Cf. Janus Cap. Grp., Inc. v. First Derivative*
15   *Traders*, 564 U.S. 135, 142-48 (2011) (only maker of statement may be held liable
16   under federal securities laws); *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th
17   Cir. 1993) (securities laws "do not require the company to police statements made by
18   third parties for inaccuracies, even if the third party attributes the statement to [the
19   company]"). The only relevant question is what the actual creators of the Products—
20   the Yuga Labs Defendants—said, and those statements overwhelmingly reflect that
21   the Products were intended for consumption and entertainment, not investment.[9]

22       *Finally*, Plaintiffs re-allege that "Defendants" used the term "WAGMI," which
23   they allege means "we are all gonna make it." (*Compare* TAC ¶¶ 139, 410, *with* SAC
24   ¶¶ 271, 374-75.) Such an ambiguous, isolated phrase does not amount to any promise
25   of profits, nor do Plaintiffs allege any facts from which to infer that it does. Further,

26
27   [9] Plaintiffs label Wu a "spokesperson" of the Company (TAC ¶ 23), but plead no facts
     to support the conclusion that she or any other non-Yuga Labs Defendant ever did or
28   could speak for Yuga Labs. Rather, the TAC describes Wu as a "board member of the
     ApeCoin DAO"—an entity separate and distinct from Yuga Labs.

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1  Plaintiffs do not allege a single use of "WAGMI" by any Yuga Labs Defendant. The

2  acronym is allegedly used in a single tweet by a non-Yuga Labs Defendant in reference

3  to one Product, BAYC. (TAC ¶ 139.)

4       In sum, Plaintiffs' recycled SAC allegations should be rejected once again.

5       **2.      Plaintiffs Do Not Plead a "Common Enterprise"**

6       Plaintiffs also do not plead a "common enterprise." To do so, Plaintiffs must

7  allege facts to show "horizontal commonality" or "strict vertical commonality." (Order

8  12-13 & n.9 (citing *Hocking v. Dubois*, 885 F.2d 1449, 1459 (9th Cir. 1989)).) Despite

9  the Court's Order, Plaintiffs allege only limited new "facts" none of which support a

10  finding of a common enterprise under either horizontal or strict commonality. (TAC

11  ¶¶ 447-55.) Plaintiffs otherwise rely on the same retreaded allegations that the Court

12  has already rejected. (Order 12-16; *compare* TAC ¶¶ 440-46, 456-69, *with* SAC

13  ¶¶ 542, 544-47, 553, 556, 565-67, 601, 728, 895.)

14       **(a)      No Horizontal Commonality**

15       Horizontal commonality exists where investors "pool their investments together

16  and split the net profits and losses in accordance with their pro rata investments."

17  (Order 13); *Hocking*, 885 F.2d at 1459. "The hallmark of a horizontal common

18  enterprise is the 'tying of each individual investor's fortune to the fortunes of other

19  investors,' which, in turn, 'depend[s] upon the profitability of the enterprise as a

20  whole.'" (Order 13 (quoting *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir.

21  1994)).)

22       ***(i)      Plaintiffs' New Allegations Are Deficient***

23       Plaintiffs do not offer any new allegations to plead horizontal commonality.

24  Plaintiffs newly assert that BAYC and MAYC "market capitalization" rose or fell in

25  tandem in certain unidentified timeframes (TAC ¶¶ 447, 454-55) and that promotions

26  of Otherside caused an increase in the price of other NFTs (*id.* ¶¶ 448-53). But

27  Plaintiffs do not plead any facts to support those allegations, which say nothing about

28

the price of individual NFTs within each collection (and do not address ApeCoin at all).

"The horizontal commonality requirement requires more than a coincidental similarity in profits and losses between investors." *Meredith v. Conticommodity Servs., Inc.*, 1980 WL 1465, at *5 (D.D.C. Nov. 24, 1980). "It requires some causative link between the profits of individual investors and the profits of the overall scheme." *Id.* Plaintiffs' vague allegations are insufficient to plead the required "causative link" between their profits and some "overall scheme." *Id.*

Indeed, applying the securities laws to transactions "makes sense only if the investors are obtaining the *same thing*, namely an undivided share in the same pool of assets and profits." *Wals v. Fox Hills Dev. Corp.*, 24 F.3d 1016, 1019 (7th Cir. 1994). Thus, horizontal commonality is lacking where the assets are not the same or do not perform the same. *Revak*, 18 F.3d at 88 (no commonality among condominium purchasers because each "owned individual units, and could make profits or sustain losses independent of the fortunes of other purchasers"); *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274, 277 (7th Cir. 1972) (no commonality where each asset "is unitary in nature and each will be a success or failure without regard to the others").

Here, the TAC admits that each NFT is a one-of-a-kind product that sells for differing amounts based on its unique traits, just like collectibles or artwork. (*Supra* § II.A.) Someone with a rare or popular NFT may see higher market prices that will not be shared by other NFT owners, who may see simultaneous decreases in the price of their own NFTs. (TAC ¶¶ 193, 388, 414.) Thus, an NFT collection's so-called "market cap" may be a function of a change in price of a subset of the NFTs (*e.g.*, certain of the more "rare" NFTs increasing in price). And while the overall "market cap" might move, those price changes would impact only a handful of purchasers. This cannot suffice to show the fortunes of all NFT purchasers are linked. Rather, horizontal commonality is foreclosed because each owner can "make profits or sustain losses

18

1  independent of the fortunes of other purchasers," *Revak*, 18 F.3d at 88, and each owner

2  "has a success or failure rate without regard to the others," *Hirk v. Agri-Rsch. Council,*

3  *Inc.*, 561 F.2d 96, 101 (7th Cir. 1977); *see also Stenger v. R.H. Love Galleries, Inc.*,

4  741 F.2d 144, 147 (7th Cir. 1984) (no commonality where "there [wa]s no basis for

5  assuming that the appreciation or depreciation of plaintiff's [art] collection would

6  benefit anyone other than himself").

7      Finally, Plaintiffs point to unspecified "promotional materials" in which Yuga

8  Labs "advised that owners of BAYC and MAYC NFTs would automatically receive a

9  portion of available Otherdeeds NFTs." (TAC ¶ 450.) Plaintiffs assert this caused

10  individuals to "purchase BAYC and MAYC NFTs in order to be eligible for the

11  Otherdeed NFT distribution to then-current BAYC and MAYC NFT holders." (*Id.*)

12  But even accepting these allegations as true, they show excited consumers obtaining

13  entertainment and consumptive products. Plaintiffs fail to explain how these

14  allegations evince a common enterprise. (Order 14-16.)

15          (ii)    ***Plaintiffs' Recycled SAC Allegations Remain Deficient***

16      Plaintiffs' remaining allegations are rehashes from the SAC the Court

17  dismissed. For example, Plaintiffs reiterate without factual support that "[t]he funds

18  Plaintiffs paid to purchase [Products] were pooled by the Executive Defendants."

19  (*Compare* TAC ¶ 442 *with* SAC ¶¶ 546, 881.) Such "threadbare recitals" are

20  insufficient. *Brooks v. Tarsadia Hotels*, 2019 WL 2436395, at *16 (S.D. Cal. June 11,

21  2019).

22      Plaintiffs re-allege that Yuga Labs "pooled" NFT "creator fees" (which do not

23  apply to ApeCoin). (*Compare* TAC ¶ 457, *with* SAC ¶ 636.) These fees are not

24  "pooled" in the *Howey* sense—Plaintiffs do not allege that any Defendant promised to

25  use (or in fact used) creator fees to finance a common enterprise to benefit NFT

26  consumers financially. *Hocking*, 885 F.2d at 1459 (horizontal commonality exists only

27  where investors "make their collective fortunes dependent on the success of a single

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS            NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1     common enterprise"); *Revak*, 18 F.3d at 87 ("[H]orizontal commonality ties the
2     fortunes of each investor in a pool of investors to the success of the overall venture.").[10]

3         Plaintiffs re-allege that "Defendants" used ApeCoin to fund Yuga's operations
4     and to "build and maintain the greater Bored Ape Ecosystem." (*Compare* TAC ¶¶ 459-
5     62, *with* SAC ¶ 544.) But Plaintiffs acquired their Products on secondary marketplaces
6     from third-party sellers, *not* Defendants. (TAC ¶¶ 8-15.) Their money went to those
7     sellers and *could not* be pooled by Defendants, or anyone else, and thus could not be
8     used to finance a common enterprise. *Hart v. Pulte Homes of Mich. Corp.*, 735 F.2d
9     1001, 1005 (6th Cir. 1984) (no common enterprise where "there was not . . . a claim
10    that the sales were necessary to finance the development of these subdivisions").

11        Finally, Plaintiffs re-allege that (i) "the prospective profits of Plaintiffs and the
12    Class . . . are intertwined with the fortunes of Yuga, its Founders, and the Executive
13    Defendants" and (ii) "Defendants acknowledged that Yuga used the funds from its
14    ApeCoin and NFT sales to fund its operations."[11] (TAC ¶ 444.) These vague assertions
15    are indistinguishable from the "bare allegations" this Court deemed "too conclusory
16    to show horizontal commonality." (Order 13-14 (rejecting allegations that (i) "the
17    profits of each Plaintiff . . . were intertwined with those of Defendants and of other
18    investors" and (ii) "Defendants have conceded that Yuga used the funds from its
19    ApeCoin to partially fund its operations").)

20          **(b)**    **No Strict Vertical Commonality**

21        Plaintiffs also do not plead vertical commonality as to any Product, which
22    requires that "the fortunes of the investors are linked with those of the promoters."
23    (Order 13); *SEC v. R.G. Reynolds Enters., Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991).

24

---

25    [10] Regardless, Plaintiffs did not pay "creator fees" to Yuga Labs. To the extent any
26    fees are collected, the *seller* is required to pay them, not the buyer. (ECF 187 at 25; Ex. 4 at 1 (cited in TAC ¶ 485 n.49).) Thus, no purchaser funds were pooled at all.

27    [11] The document on which Plaintiffs rely shows that only a small minority of Yuga
28    Labs's revenues in 2022 derived from BAYC sales. (Ex. 5 at 85.) The document says nothing about ApeCoin. (*Id.*)

1   There must be a "one-to-one relationship between the investor and investment

2   manager such that there is an interdependence of both profits and losses of the

3   investment." *Marini v. Adamo*, 812 F. Supp. 2d 243, 256 (E.D.N.Y. 2011).

4   Plaintiffs rely exclusively on allegations from the SAC that the Court dismissed.

5   (*Compare* TAC ¶¶ 465-69, *with* SAC ¶¶ 379, 542, 544, 546-47, 636.) Plaintiffs do

6   not allege any one-to-one relationship between the profits and losses of Defendants

7   and Product purchasers. They assert merely that Defendants held "stakes in the

8   ApeCoin and/or the Yuga NFT collections." (TAC ¶ 467.) The Court found these

9   allegations insufficient because Plaintiffs do not "identify any allegations to support

10  their conclusion that common ownership of [Products] resulted in a 'link' between

11  [P]laintiffs' and defendants' fortunes" such as "any agreement between themselves

12  and defendants to 'share profits on a percentage basis." (Order 16.) Far from pleading

13  such "link," the TAC alleges the opposite: Defendants profited when Plaintiffs did not.

14  (TAC ¶ 395.)

15  Finally, Plaintiffs' allegation that there is vertical commonality because Yuga

16  Labs received "creator fees" from certain NFT sales (TAC ¶ 466) was already rejected

17  by the Court. (Order 16.)

### 3.    Plaintiffs Do Not Plead A Reasonable Expectation of Profits Based On Defendants' Efforts

18

19

20  Lastly, the TAC does not plead a reasonable expectation of profits to be derived

21  from the efforts of others. (Order 17-18.) This inquiry looks at objective expectations;

22  thus, "[t]he enterprise and the described materials . . . must be examined as of the time

23  that the transaction took place, together with the knowledge and the objective

24  intentions and expectations of the parties at that time." *SEC v. Aqua-Sonic Products*

25  *Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 577 (2d Cir. 1982);

26  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1131 (9th Cir. 2013). Courts assess

27  "whether the efforts made by those other than the investor are the *undeniably*

28  *significant ones*, those *essential* managerial efforts which affect the failure or success

1  of the enterprise." *Belmont*, 794 F.2d at 1390-91; *Killips v. Before the Butcher, LLC*,
2  2021 WL 4895737, at *3 (C.D. Cal. Aug. 25, 2021) (Olguin, J.).

3      Plaintiffs offer only two new allegations for this prong, neither of which alters
4  the analysis.

5      *First*, Plaintiffs allege that the BAYC Twitter account posted that "the more
6  apes sell, the more we get to work on future membership benefits." (TAC ¶ 478.) As
7  discussed above, this statement emphasizes *consumptive benefits* and thus cannot
8  show an expectation of profits. (*Supra* § III.A.1.b.i.)

9      *Second*, Plaintiffs allege that (i) the consumptive benefits promoted with respect
10  to BAYC and MAYC NFTs were "not the reason for Plaintiffs' purchases," and
11  (ii) "[n]o Plaintiff attended [BAYC or MAYC] events or otherwise used [their NFTs]
12  for any personal or experiential consumption." (TAC ¶¶ 434, 439.) These allegations
13  regarding Plaintiffs' subjective beliefs or after-the-fact actions are insufficient. Under
14  *Howey*, "courts conduct an *objective* inquiry into the . . . transaction offered based on
15  what the purchasers were led to expect." (Order 11.) Further, Plaintiffs' professed
16  expectation of profits is not linked to any promises by Defendants and thus
17  insufficient. *Belmont*, 794 F.2d at 1391 (profits did not come from efforts of others
18  where "purchasers were speculating in the world gold market").

19      Plaintiffs' remaining allegations, all carried over from the SAC, do not identify
20  any statements that could give rise to a reasonable expectation of profits. (*Supra*
21  § III.A.1.) While the TAC, like the SAC, references statements reflecting that strong
22  consumer demand for the Products led to higher prices and volumes (TAC ¶¶ 132,
23  195, 197, 205, 207), not one promises anyone anything, let alone profits. (Order 18);
24  *Warfield*, 569 F.3d at 1021; *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*, 608
25  F.2d 1297, 1301 (9th Cir. 1979) (no investment contract where defendant "did not
26  promise to distribute profits").

27      Plaintiffs reference two statements allegedly discussing the Products' "value."
28  (TAC ¶ 478.) The Court rejected this category of statement. (Order 18.) Further,

22

context makes clear that references to value were linked to "Roadmap Activations"—a series of consumptive benefits that came with owning a BAYC NFT. (*Id.* ¶ 478.) This is insufficient because "the expected profits must, in conformity with ordinary usage, be in the form of a financial return on the investment, *not in the form of consumption*." *Life Partners*, 87 F.3d at 543.

Finally, the TAC also does not link any expectation of profits to the requisite "essential" efforts by the Yuga Labs Defendants. *Belmont*, 794 F.2d at 1390-91. To meet this standard, Plaintiffs must plead that Defendants' "efforts" were so "essential" that they would result in "the failure or success of the enterprise." *Id.*; *SEC v. Pac. W. Cap. Grp., Inc.*, 2015 WL 9694808, at *6 (C.D. Cal. June 16, 2015) (Olguin, J.) ("[E]fforts must be undeniably significant ones, where the success of the investment program as a whole is crucial to and hinges on the efforts by defendants."); *accord Donovan v. GMO-Z.com Tr. Co.*, 779 F. Supp. 3d 372, 388 (S.D.N.Y. 2025).[12] The TAC does not meet that burden.[13]

## IV.    **CONCLUSION**

The Court should dismiss the claims in the TAC with prejudice as set forth in **Appendix A**.

---

[12] Plaintiffs' theory also fails because they bought their Products from unidentified sellers on secondary marketplaces and thus could not have expected profits based on any Defendant's efforts. *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 328-29 (S.D.N.Y. 2023). While the Court disagreed with this argument, the Yuga Labs Defendants respectfully reiterate it here for preservation purposes.

[13] California and Florida follow the *Howey* test, and thus Plaintiffs' securities-based state law claims fail for the same reasons. *Salameh*, 726 F.3d at 1130 n.3; *OOO-RM Invest v. Net Element Int'l, Inc.*, 2014 WL 12613283, at *11 (S.D. Fla. Nov. 3, 2014).

23

1  DATED:  October 24, 2025

2                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3

4                    By:    _____
                                    /s/ Peter B. Morrison
5                                   PETER B. MORRISON

6                              *Attorneys for Defendants*
                              Yuga Labs, Inc., Wylie Aronow, Greg Solano,
7                              Nicole Muniz, Patrick Ehrlund,
                              Christopher Lyons, and Guy Oseary

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

## APPENDIX A

## SECURITIES CLAIMS TO BE DISMISSED

| Count | Claim | Basis for Dismissal |
|---|---|---|
| 1 | Securities Act §§ 5, 12(a)(1)<br>("Unregistered Offering & Sale of Securities") | No "security" alleged |
| 2 | Securities Act § 15<br>("Control Person" Liability) | No "security" alleged |
| 3 | Exchange Act § 10(b) & Rule 10(b)-5<br>("Fraudulent Statement Liability") | No "security" alleged |
| 4 | Exchange Act § 10(b) & Rule 10(b)-5<br>("Scheme Liability") | No "security" alleged |
| 5 | Exchange Act § 20(a)<br>("Control Person" Liability) | No "security" alleged |
| 6 | California Corp. Code §§ 25400, 25500<br>("Manipulation Sections") | No "security" alleged |

## REMAINING CLAIMS

| Count | Claim | Basis for Dismissal |
|---|---|---|
| 7–9 | California Unfair Competition Law | These claims should be dismissed for the reasons in Defendants' original motions to dismiss the SAC, and Defendants therefore reserve all rights to move to dismiss on those and other grounds. |
| 10 | Florida Deceptive & Unfair Trade Practices Act | |

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT

1

### CERTIFICATE OF COMPLIANCE

2
3
4
5

The undersigned, counsel of record for Defendants Yuga Labs, Inc., Wylie Aronow, Greg Solano, Nicole Muniz, Patrick Ehrlund, Christopher Lyons, and Guy Oseary, certifies that this brief (including Appendix A) contains 6,998 words, which complies with the word limit set by Court Order dated September 30, 2025.

6
7

DATED:  October 24, 2025

8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

9
10

By: _____
                    */s/ Peter B. Morrison*
                    PETER B. MORRISON

11
12
13

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,
Nicole Muniz, Patrick Ehrlund, Christopher
Lyons, and Guy Oseary

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

YUGA LABS DEFENDANTS' MOTION TO DISMISS          NO.: 2:22-cv-08909-FMO-BFM
THIRD AMENDED COMPLAINT