1  PETER B. MORRISON (SBN 230148)
   peter.morrison@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   2000 Avenue of the Stars, Suite 200N
3  Los Angeles, California 90067
   Telephone:   (213) 687-5000
4  Facsimile:   (213) 687-5600

5  ALEXANDER C. DRYLEWSKI (admitted *pro hac vice*)
   alexander.drylewski@skadden.com
6  SHAUD G. TAVAKOLI (admitted *pro hac vice*)
   shaud.tavakoli@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   One Manhattan West
8  New York, New York 10001
   Telephone:   (212) 735-3000
9  Facsimile:   (212) 735-2000

10 *Attorneys for Defendants*
   YUGA LABS, INC., WYLIE ARONOW,
11 GREG SOLANO, NICOLE MUNIZ, PATRICK
   EHRLUND, CHRISTOPHER LYONS, and GUY OSEARY
12

13            **UNITED STATES DISTRICT COURT**

              **CENTRAL DISTRICT OF CALIFORNIA**
14
                    **WESTERN DIVISION**
15

16 JOHNNY JOHNSON, EZRA            ) CASE NO.: 2:22-cv-08909-FMO-PLA
   BOEKWEG, MARIO                  )
17 PALOMBINI, ADAM TITCHER,        ) **YUGA LABS DEFENDANTS'**
   JONATHAN SMITH, NEAL            ) **REPLY IN FURTHER SUPPORT**
18 PATEL, HIREN PATEL, and         ) **OF THEIR MOTION TO DISMISS**
   DAVID GRAND, Individually and   ) **THE THIRD AMENDED CLASS ACTION**
   on Behalf of All Others Similarly ) **COMPLAINT**
19 Situated,                       )
                                   )
20              Plaintiffs,        ) Date: December 4, 2025
                                   ) Time: 10:00 a.m.
21        v.                       ) Courtroom: 6D
                                   ) Judge: Hon. Fernando M. Olguin
22 YUGA LABS, INC., et al.,        ) Complaint Filed: December 8, 2022
                                   )
23              Defendants.        )

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   ARGUMENT ............................................................................................ 2

    A.    No "Investment of Money" ............................................................ 2

        1.    Plaintiffs Ignore Their Own Allegations of Promotion for Consumption .................................................................. 2

        2.    Plaintiffs Do Not Plead Promotions for Investment ..................... 3

            (a)    Plaintiffs' New Allegations Are Deficient .......................... 3

            (b)    Plaintiffs' Old Allegations Remain Deficient .................... 7

            (c)    Plaintiffs' Tortured Reading of Case Law Fails................ 11

    B.    No "Common Enterprise" ............................................................. 11

        1.    No Horizontal Commonality ........................................................ 11

        2.    No Strict Vertical Commonality .................................................. 14

    C.    No Reasonable Expectation of Profits Based on Defendants' Essential Efforts ......................................................................... 15

III.  CONCLUSION ...................................................................................... 16

YUGA LABS DEFENDANTS' REPLY IN
FURTHER SUPPORT OF MOTION TO DISMISS

NO.: 2:22-cv-08909-FMO-PLA

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **Page(s)**

*American Residential Equities XXVII, LLC*
    *v. Redwood Recovery Services, LLC*,
    No. CV 12-5537 FMO (DTBx), 2013 WL 12120514
    (C.D. Cal. May 7, 2013) ................................................................. 6

*Cheng v. Activision Blizzard, Inc.*,
    No. CV 21-6240 PA (JEMx), 2023 WL 2136787
    (C.D. Cal. Jan. 22, 2023), *aff'd*, No. 23-55158,
    2024 WL 208142 (9th Cir. Jan. 19, 2024) ...................................... 7

*Cook v. City of Fremont*,
    No. 20-cv-02704-JCS, 2021 WL 764044
    (N.D. Cal. Feb. 26, 2021) ............................................................... 7

*De Ford v. Koutoulas*,
    No. 6:22-cv-652-PGB-DCI, 2023 WL 2709816
    (M.D. Fla. Mar. 30, 2023) ............................................................. 7

*Dufoe v. DraftKings Inc.*,
    No. 23-cv-10524-DJC, 2024 WL 3278637
    (D. Mass. July 2, 2024) .................................................................. 9

*Friel v. Dapper Labs, Inc.*,
    657 F. Supp. 3d 422 (S.D.N.Y. 2023) ........................................... 7

*Harper v. O'Neal*,
    746 F. Supp. 3d 1360 (S.D. Fla. 2024) ......................................... 14

*Hart v. Pulte Homes of Michigan Corp.*,
    735 F.2d 1001 (6th Cir. 1984) ...................................................... 13

*Holland v. CryptoZoo Inc.*,
    No. 1:23-CV-00110-ADA-RCG, 2025 WL 2492970
    (W.D. Tex. Aug. 14, 2025), *report and recommendation adopted*,
    2025 WL 3028689 (W.D. Tex. Oct. 29, 2025) .............................. 16

*Hunichen v. Atonomi LLC*,
    No. C19-0615-RAJ-MAT, 2019 WL 7758597
    (W.D. Wash. Oct. 28, 2019), *report and recommendation
    adopted*, 2020 WL 1929372 (W.D. Wash. Apr. 21, 2020) .............. 14

*Iliya v. United States Marshals Service*,
    No. 24-cv-03720-TSH, 2024 WL 5190361
    (N.D. Cal. Dec. 20, 2024) ............................................................. 10

*Patterson v. Jump Trading LLC*,
    710 F. Supp. 3d 692 (N.D. Cal. 2024),
    *aff'd*, No. 24-670, 2025 WL 215519 (9th Cir. Jan. 16, 2025),
    *cert. denied*, No. 24-1266, 2025 WL 2823817
    (U.S. Oct. 6, 2025) ........................................................................ 14

*SEC v. LBRY, Inc.*,
    639 F. Supp. 3d 211 (D.N.H. 2022) ...................................................... 11

*SEC v. NAC Foundation, LLC*,
    512 F. Supp. 3d 988 (N.D. Cal. 2021) ................................................. 14

*SEC v. Ripple Labs, Inc.*,
    697 F. Supp. 3d 126 (S.D.N.Y. 2023) .................................................. 11

*SEC v. Telegram Group, Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) .................................................. 13

*SEC v. Wahi*,
    No. 2:22-cv-01009-TL, 2024 WL 896148
    (W.D. Wash. Mar. 1, 2024) .................................................................. 14

*Spindler v. City of Los Angeles*,
    No. CV 16-5655-JLS(E), 2018 WL 6163104
    (C.D. Cal. Oct. 2, 2018)................................................................... 7, 12

*In re Splunk Inc. Securities Litigation*,
    592 F. Supp. 3d 919 (N.D. Cal. 2022) ................................................... 3

*Stanton v. Wells Fargo Home Mortgage, Inc.*,
    No. CV 11-01633 AHM (JCx), 2011 WL 13220113
    (C.D. Cal. Aug. 22, 2011) ..................................................................... 7

*Warfield v. Alaniz*,
    569 F.3d 1015 (9th Cir. 2009) ............................................................. 11

**OTHER AUTHORITIES**

Paul S. Atkins, Chairman, SEC,
    Speech at the Federal Reserve Bank of Philadelphia,
    *The Securities and Exchange Commission's Approach to Digital
    Assets: Inside "Project Crypto"* (Nov. 12, 2025) ................................. 1

*Bullish*,
    *Merriam-Webster's Dictionary* (12th ed. 2025) ................................... 9

YUGA LABS DEFENDANTS' REPLY IN                    NO.: 2:22-cv-08909-FMO-PLA
FURTHER SUPPORT OF MOTION TO DISMISS

# I.   **<u>PRELIMINARY STATEMENT</u>**[1]

Plaintiffs' Opposition rehashes the same arguments this Court already rejected. Rather than identify new factual allegations that satisfy each prong of *Howey*, Plaintiffs instead ignore the Yuga Labs Defendants' dispositive arguments in the Motion, recycle the same already-rejected allegations in hopes of a different result, or mischaracterize the TAC's allegations and source documents to suggest they say something they do not.[2] None of these tactics rescue Plaintiffs' fatally flawed TAC.

*First*, Plaintiffs do not plead an "investment" of money. The TAC, like the SAC, again alleges statements advertising the Products' consumptive nature, dispelling any contention that Plaintiffs were objectively led to expect profits. As the SEC Chairman recently emphasized, "digital collectibles" like the NFTs here "are designed to be collected and/or used," and thus purchasers "are not expecting profits"[3]—a conclusion that applies with force here. The Opposition attempts misdirection by pointing to vague and out-of-context statements, including those made by parties *other than* the Yuga Labs Defendants (and over which no Yuga Labs Defendant is alleged to have any authority or control). In doing so, it fails to address, and thus concedes, the Yuga Labs Defendants' arguments as to why such statements are insufficient.

*Second*, Plaintiffs do not plead any common enterprise. Plaintiffs' Opposition

---

[1] Capitalized terms have the definitions ascribed to them in the Yuga Labs Defendants' opening brief ("Mot.," ECF 243). All emphasis is added.

[2] To take just a few examples, Plaintiffs assert: (i) "Defendants Solano and Aronow promoted the 'price ramps' of BAYC NFTs'" (Opp'n 3), yet the tweet alleged in the TAC shows that Aronow actually said there would *not* be price ramps (TAC ¶ 212); (ii) that the TAC states that "Otherside metaverse was to be 'entirely fueled by ApeCoin,'" (Opp'n 4), yet that quotation appears nowhere in the TAC; and (iii) "Defendants" made certain statements, including touting "life-changing' return[s]," (Opp'n 3), yet the Opposition cites statements by non-Defendants (TAC ¶ 109 (TheGovernoreth); TAC ¶ 264 (FaZe Banks)).

[3] Paul S. Atkins, Chairman, SEC, Speech at the Federal Reserve Bank of Philadelphia, *The Securities and Exchange Commission's Approach to Digital Assets: Inside "Project Crypto"* (Nov. 12, 2025), available at https://www.sec.gov/newsroom/speeches-statements/atkins-111225-securities-exchange-commissions-approach-digital-assets-inside-project-crypto.

1

relies *exclusively* on allegations recycled from the SAC this Court already dismissed. Like the SAC, the TAC is devoid of well-pleaded allegations that Plaintiffs' funds were pooled and fortunes tied. Rather, each Plaintiff alleges to have purchased Products on secondary markets from third parties and hence their funds *could not* have been pooled.

*Third*, Plaintiffs do not plead they were objectively led to expect profits, much less profits based on the essential managerial efforts of Defendants. The allegations reflect that Plaintiffs were led to expect consumptive benefits, foreclosing their claim under *Howey*.

Accordingly, the Court should reject Plaintiffs' fourth attempt to plead that the Products are securities and dismiss the TAC with prejudice.

## II.    ARGUMENT

### A.    No "Investment of Money"

#### 1.    Plaintiffs Ignore Their Own Allegations of Promotion for Consumption

Plaintiffs concede that the Court conducts an "objective" inquiry into "what the purchasers were 'led to expect'" (Opp'n 7) but ignore the myriad marketing statements that, viewed objectively, led purchasers to expect consumptive benefits, not financial returns. (Mot. 4-8, 10-11.) Plaintiffs nowhere address this Court's holding that these same allegations—first alleged in the SAC and carried over to the TAC—foreclose any claim that the Products were sold as investments. (Order 10.)

Instead, Plaintiffs suggest that a transaction is an "investment" unless investors were "attracted solely" by consumption. (Opp'n 13.) Plaintiffs misread the law. Courts applying *Howey* and *Forman* routinely hold there is no investment where the "overall" or "primary" promotional emphasis is on consumption—even if some promotions reference investment. (Mot. 13-14.) Plaintiffs do not address this authority, nor can they refute that the overwhelming—if not exclusive—promotional emphasis was on consumption. (*Id.*)

1        **2.    Plaintiffs Do Not Plead Promotions for Investment**

2            Despite the avalanche of statements promoting consumption, Plaintiffs insist

3    that the Yuga Labs Defendants promoted the Products as "for-profit investments" and

4    promised "outsized financial gains" using "the language of investment returns."

5    (Opp'n 1-3, 7-8.) Yet they do not identify a single TAC allegation in which any Yuga

6    Labs Defendant used the words "profit," "investment," "gains," or "returns."

7            Left with nothing else, Plaintiffs resort to mischaracterizing Defendants'

8    arguments, asserting that Defendants "concede that certain promotional statements

9    could imply a financial gain." (Opp'n 13.) That is incorrect. The Motion "assum[ed]

10    arguendo" that even if Plaintiffs had identified statements promoting financial gain,

11    they have not pleaded an "investment" given the overwhelming messaging of

12    consumptive benefits. (Mot. 13.) As the entirety of the Motion makes clear, however,

13    Plaintiffs have not pleaded *any* promotion for investment.

14            **(a)    Plaintiffs' New Allegations Are Deficient**

15            The Motion explains why none of the TAC's new allegations pleads that any

16    Yuga Labs Defendant marketed the Products for investment. (Mot. 12-14.) In

17    Opposition, Plaintiffs rely on just one of these new allegations in support of their

18    argument: an allegation stating—incorrectly—that a Yuga Labs promotional video for

19    Otherside contains "rocket-ship and moon emojis" that suggest profits. (Opp'n 9.)[4]

20    Plaintiffs do not defend any other "new" statements (Mot. 11-14), which are thus

21    abandoned. *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 933 n.2 (N.D. Cal. 2022)

22    (failure to defend alleged statements in opposition brief is "concession that Plaintiff's

23    theory of liability is not predicated on those statements").

24

25

26    _____

27    [4] Although this video was alleged in the SAC (¶ 621), the TAC now alleges that the
video contains "an allusion to [a] rocket ship emoji." (TAC ¶ 449.) Plaintiffs also cite
28    paragraph 195, which contains a purportedly "new" allegation that merely duplicates
other existing allegations regarding market capitalization (addressed below).

YUGA LABS DEFENDANTS' REPLY IN                    NO.: 2:22-cv-08909-FMO-PLA
FURTHER SUPPORT OF MOTION TO DISMISS

1    As explained in the Motion and illustrated below, the video does not depict a
2    rocket ship or any emoji whatsoever. (Mot. 12.) It depicts a submarine, complete with
3    a periscope, that emerges from liquid and takes flight:



**Screenshot 1: Periscope**

YUGA LABS DEFENDANTS' REPLY IN                    NO.: 2:22-cv-08909-FMO-PLA
FURTHER SUPPORT OF MOTION TO DISMISS



**Screenshot 2: Emerging From Liquid**



**Screenshot 3: Flight (1 of 2)**

YUGA LABS DEFENDANTS' REPLY IN
FURTHER SUPPORT OF MOTION TO DISMISS

NO.: 2:22-cv-08909-FMO-PLA



**Screenshot 4: Flight (2 of 2)**

As the video itself shows, there is no rocket, no moon, and the submarine does not blast into space. The video plainly depicts the Otherside metaverse, a digital world that NFT Product users can experience and is quintessentially consumptive. Nowhere else in the TAC do Plaintiffs allege any Yuga Labs Defendant used a "rocket ship or moon emoji." Plaintiffs do not address in their Opposition any of these flaws. *Am. Residential Equities XXVII, LLC v. Redwood Recovery Servs., LLC*, 2013 WL 12120514, at *6 (C.D. Cal. May 7, 2013) (Olguin, J.) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment.").

Plaintiffs selectively quote and mischaracterize statements made by non-Yuga Labs Defendants[5] to suggest they discuss "investing" in the Products. They do not. Plaintiffs are also wrong that the mere "use of such emojis . . . satisfies the first *Howey* prong." (Opp'n 9.) They cite no case for that proposition and this Court already dismissed the SAC alleging the same statements that Plaintiffs recycle here. (*See infra*

---

[5] While not the subject of this *Howey*-focused Motion, it bears mention that Plaintiffs' imprecision around who said what, when, and on whose behalf, is a persisting flaw that dooms the TAC irrespective of whether the Products are offerings of securities.

YUGA LABS DEFENDANTS' REPLY IN
FURTHER SUPPORT OF MOTION TO DISMISS

NO.: 2:22-cv-08909-FMO-PLA

1  § II.A.1.b.) While Plaintiffs again rely on *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d
2  422 (S.D.N.Y. 2023), this Court explained that the allegations in *Dapper Labs*
3  involved more than mere use of a rocket ship emoji—including pictures of "money
4  bags" and "stock charts" and explicit statements that purchasers would "benefit
5  financially," none of which is alleged here. (Order 18; Mot. 12.) Plaintiffs' citation to
6  *De Ford v. Koutoulas*, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023), is even further
7  afield, as it did not address any promotions containing rocket ship or moon emojis.

### (b)    Plaintiffs' Old Allegations Remain Deficient

9  Every other alleged statement in Plaintiffs' Opposition is copied from the SAC
10  and is therefore deficient. Plaintiffs cannot revive their claims by recycling these
11  already-rejected allegations. *Cheng v. Activision Blizzard, Inc.*, 2023 WL 2136787, at
12  *9 (C.D. Cal. Jan. 22, 2023) (dismissing amended pleading where plaintiff
13  "recycled[d] – nearly word-for-word – additional allegations from the previous
14  [dismissed] complaints"), *aff'd*, 2024 WL 208142 (9th Cir. Jan. 19, 2024); *Cook v.
15  City of Fremont*, 2021 WL 764044, at *5 (N.D. Cal. Feb. 26, 2021) (dismissing
16  amended pleading where plaintiff "recycle[d] the same allegations from his original
17  complaint"); *Spindler v. City of Los Angeles*, No. CV 16-5655-JLS(E), 2018 WL
18  6163104, at *2 (C.D. Cal. Oct. 2, 2018) (dismissing complaint that was the product of
19  "wholesale copying from his earlier, defective pleading"); *Stanton v. Wells Fargo
20  Home Mortg., Inc.*, 2011 WL 13220113, at *2 (C.D. Cal. Aug. 22, 2011) (dismissing
21  "allegations copied verbatim from [plaintiff's] original complaint").

22  Although the Court need not (and should not) reconsider these allegations, they
23  are insufficient for the reasons set forth in the Motion and unrebutted in the
24  Opposition, including:

7

***"Financially Related Metrics"—Copied from SAC ¶¶ 259, 270, 273, 376.*** Plaintiffs rehash statements regarding floor prices, market capitalization, and trading volumes (Opp'n 10-11), which the Court rejected as insufficient (Mot. 14; Order 17-18). Plaintiffs mischaracterize one of these recycled allegations, arguing that Defendant Aronow promoted a "price ramp" for BAYC NFTs. (Opp'n 10 (citing TAC ¶ 212).) The referenced tweet confirms the exact opposite: that, unlike other NFT projects, there would be *no* price ramp with BAYC NFTs[6]:



The tweet further emphasized the consumptive benefits of BAYC NFTs, calling out the project's "narrative-based utility" that included Roadmap Activations, a member-

---

[6] Any price ramp at the mint is also irrelevant because no Plaintiff alleges to have purchased a BAYC NFT from the mint.

8

1  only art board, and access to merchandise, and nowhere promises investment returns.

2  (Mot. 4-6.)

3  **Wu Statements—Copied from SAC ¶¶ 204, 375.** Plaintiffs incorrectly assert

4  that "Defendant Wu touted the '100x to 500x' returns" Product purchasers "could

5  realize." (Opp'n 8.) But neither Wu's statement nor the article refer to any Products,

6  nor financial "returns" from purchasing them. (Mot. 16.) The Opposition fails to

7  address this argument.

8  The same is true of Wu's statement that she was "[b]ullish for the long-term."

9  (Opp'n 10; TAC ¶ 270.) Wu was speaking optimistically about purely consumptive

10  benefits: growth prospects for "player experiences in game" and a "metaverse." (Mot.

11  15-16; TAC ¶ 270.)[7]

12  Moreover, Wu is not a Yuga Labs Defendant. As the Motion explains, a non-

13  Yuga Labs Defendant's statement, like Wu's, cannot reveal *Yuga Labs's* intent

14  concerning the Products. (Mot. 16 & n.9.) Plaintiffs' own authority explains that "the

15  Court's focus" should be "on statements attributable to [the alleged issuer]." *Dufoe v.*

16  *DraftKings Inc.*, 2024 WL 3278637, at *9 n.6 (D. Mass. July 2, 2024). Plaintiffs do

17  not respond to any of these points, thereby conceding them.

18  **FaZe Banks Statement—Copied from SAC ¶ 356.** Plaintiffs argue that FaZe

19  Banks touted Otherside as an investment. (Opp'n 8.) Again, FaZe Banks is not a Yuga

20  Labs Defendant, or *any* Defendant in this matter, making his statements irrelevant.

21  (Mot. 16.)[8] Moreover, this deficient allegation is recycled from the SAC and pertains

22  only to Otherdeeds, not any other Product. (TAC ¶ 264.)

23

24  _____

25  [7] *See Bullish*, *Merriam-Webster's Dictionary* (12th ed. 2025) (defining "bullish" as "[o]ptimistic about something's or someone's prospects").

26  [8] Plaintiffs allege that either "FaZe Clan" or "FaZe Banks" (it is unclear which) had a

27  "partnership" with Defendants Soto-Wright and MoonPay. (TAC ¶ 264.) But Plaintiffs do not allege any details about that purported "partnership," nor that Soto-Wright,

28  MoonPay, or any Yuga Labs Defendant made, adopted, or has any tie to FaZe Banks's statement.

9

***Venture Capital Investment Statements—Copied from SAC ¶¶ 231, 402.*** Plaintiffs again point to announcements of venture capital investments in *Yuga Labs* but fail to explain how these statements promised profits to *Product* purchasers. (Opp'n 11.) Plaintiffs admit these statements constituted "promises of creating and maintaining the Bored Ape Ecosystem," *i.e.*, a supposed bundle of consumptive benefits such as gaming and metaverse experiences. (*Id.*)

***"Ape In" Statements—Copied from SAC ¶¶ 81, 122-23, 125-27, 138, 160, 227, 232-35, 252, 260, 271, 386, 393-95.*** Plaintiffs recycle the allegation that use of the term "ape in" by "Defendants" constituted promises of profits. (Opp'n 11.) To the contrary, these statements make clear that "ape in" refers to consumption, such as "ap[ing]-in to the club" or attending "ApeFest." (Mot. 14-15.) Plaintiffs' quote to an article (Opp'n 11 & n.3) does not help them for two reasons: (i) the article does not discuss any Products, and (ii) Plaintiffs do not plead the article in the TAC. *Iliya v. U.S. Marshals Serv.*, 2024 WL 5190361, at *10 (N.D. Cal. Dec. 20, 2024) (Plaintiffs "cannot amend [their] complaint through [their] opposition brief"). And most of the statements Plaintiffs cite do not say "ape-in" or "aping-in" at all (TAC ¶¶ 62, 128, 175, 180-81, 197, 416), or were not made by any Yuga Labs Defendant, making them irrelevant (*id.* ¶¶ 96-98, 106 (Sotheby's); ¶¶ 62, 218 (ApeDAO Defendants)).[9]

***Rocket Ship and Moon Emojis—Copied from SAC ¶¶ 159, 162, 232, 374-75.*** Finally, Plaintiffs' recycled allegations that "Defendants" promoted Products as investments by using "rocket-ship and moon emojis" (Opp'n 9) are insufficient for the reasons above. Additionally, none of the alleged statements was made by Yuga Labs Defendants. (TAC ¶ 127 (MoonPay); *id.* ¶ 130 (Fallon); *id.* ¶ 180 (Adidas); *id.* ¶¶ 269-70 (Wu).) MoonPay's statements lacked any profit-focused elements. (TAC ¶ 127; *see* Order 18.) Fallon's statement is not even alleged to contain rocket ship or moon

---

[9] Plaintiffs cite paragraph 148 as a purported example that Defendants "consistently touted the massive price increases for Yuga NFTs." (Opp'n 11.) But that paragraph merely describes unattributed "reports" about Bieber's "gross overpayment" without any statement by Bieber. (TAC ¶ 148; *id.* ¶ 147 (no mention of price).)

emojis. (TAC ¶ 130.) Wu's statements promoted the launch or expansion of *consumptive* goals of the ApeCoin DAO and *consumptive* benefits of the metaverse; it did not promise profits. (Mot. 15; TAC ¶¶ 269-70.) Again, Plaintiffs offer no response to these points, conceding them.[10]

### (c)    Plaintiffs' Tortured Reading of Case Law Fails

Plaintiffs rely heavily on the out-of-Circuit decision in *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211 (D.N.H. 2022), to argue that they do not need to allege any statements promising profits. Plaintiffs are mistaken. First, ample Ninth Circuit case law makes clear that *Howey* and *Forman* focus on what purchasers were offered or promised in promotional materials associated with the sale. (Order 9); *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009). Moreover, the *LBRY* defendant made a host of statements expressly offering financial gains, including: (i) recommending that individuals buy the token in the "hope" it will "*appreciate*"; (ii) announcing that it was "negotiating private placements" of tokens with "*investors*"; (iii) providing advice to "help" with "*investment* decisions"; (iv) speaking of a "path to *profit*"; and (v) touting the token's "*value*" in the context of price appreciation. *LBRY*, 639 F. Supp. 3d at 217-19. This is night and day from the statements here. In fact, in *LBRY*, "the parties did not dispute *Howey*'s first prong." *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 136 (S.D.N.Y. 2023). Thus, "[t]he Court cannot draw any conclusions about the *LBRY* court's reasoning as to an issue that was never litigated." *Id.*

### B.    No "Common Enterprise"

### 1.    No Horizontal Commonality

Plaintiffs proclaim that the TAC contains an "entire section" devoted to horizontal commonality. (Opp'n 16.) But Plaintiffs have merely repositioned and relabeled identical allegations from the SAC in a new section, and added a "Horizontal

---

[10] In the Opposition's background section, Plaintiffs reference a tweet by Fallon including "#WAGMI." That is insufficient for the reasons explained in the Motion and left unrebutted. (Mot. 16-17.)

YUGA LABS DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS                    NO.: 2:22-cv-08909-FMO-PLA

Commonality" header at the top. There are no new factual allegations to support horizontal commonality, in this section or anywhere else. (Mot. 17.) This alone mandates dismissal. *Spindler*, 2018 WL 6163104, at *2 (dismissing complaint that was a "virtual copy" of the prior pleading with "repositioned" allegations).

Regardless, Plaintiffs concede that "horizontal commonality is established when a group of investors' funds are pooled . . . and their fortunes are thereby tied to one another" (Opp'n 15), but plead neither element. (Mot. 18-20.) Rather, they concede they made their purchases on secondary marketplaces from third-party sellers. (Mot. 20.) Thus, their funds did not go to any Yuga Labs Defendant and *could not have been pooled*.

Plaintiffs' reliance on recycled allegations (Opp'n 16-17) is insufficient for the reasons explained in the Motion and left unaddressed in the Opposition—namely:

- **Paragraphs 442-43** allege that "[t]he funds Plaintiffs paid" to purchase products "were pooled" and such pooling "was necessary."[11] But Plaintiffs purchased on secondary markets, not from Defendants. (Mot. 20.)

- **Paragraph 444** alleges that Yuga Labs "used the funds from its ApeCoin and NFT sales to fund its operations." But this Court rejected identical allegations as "too conclusory." (Mot. 20; Order 13-14.)

- **Paragraph 445** alleges the "Executive Defendants" held ApeCoin. That says nothing about pooling of Plaintiffs' funds and the Court held common ownership alone does not equate to tied fortunes. (Mot. 21; Order 16.)

---

[11] In the Opposition's background section, Plaintiffs argue that Otherdeed NFT holders "were to receive pro rata benefits from appreciation" of the NFTs (Opp'n 5), yet they allege no facts to show "pro rata benefits" (TAC ¶ 458) and this allegation says nothing about pooling of funds.

12

- **Paragraphs 448-49** allege that an Otherside promotional video contained "an animated rocket ship." This allegation is false (*supra* § II.A.2.a) and says nothing about pooling or tied fortunes.

- **Paragraphs 446-55 and 458-64** allege sales proceeds were invested in an "ecosystem." But again, secondary sales proceeds from Plaintiffs' purchases did not go to Yuga Labs and could not have supported this "ill-defined ecosystem." (Order 15.) Plaintiffs' argument that purchaser funds were necessary to build the "ecosystem" is further undercut by allegations that Yuga Labs received venture capital funding. (TAC ¶ 238); *Hart v. Pulte Homes of Mich. Corp.*, 735 F.2d 1001, 1005 (6th Cir. 1984) (no common enterprise because sales proceeds were not "necessary to finance the development of these subdivisions").

- **Paragraph 457** alleges that Plaintiffs paid NFT creator fees (inapplicable to ApeCoin) "into a common wallet address." But Plaintiffs allege only that this was an OpenSea wallet address, and do not plead any factual allegations connecting it to Yuga Labs. More fundamentally, Plaintiffs do not allege any Defendant promised to use creator fees to fund a common enterprise (Mot. 19) and the creator fees were paid by sellers, not purchasers. (*Id.* 20 n.10.)

Plaintiffs' rehashed allegations regarding the supposed "interplay" between the NFTs and "Bored Ape Ecosystem" (Opp'n 17) remain insufficient. (Order 15-16.) As this Court explained, in other cases plaintiffs specifically alleged how defendants received plaintiffs' funds from NFT sales and used those funds to support an "ecosystem." (*Id.* at 15 n.11.) For example, in *Dapper Labs*, defendants "'retain[ed] purchasers' cash on [the] books . . . to prop up the value of the [crypto token].'" (*Id.*) And in *SEC v. Telegram Group, Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020), defendants "deposited investor funds into a single bank account" and publicized a white paper

1  listing aspects of planned digital ecosystem to be funded with the deposits. (*Id.*) The
2  TAC is devoid of such allegations.[12]

3     *Dapper Labs* and *DraftKings* are also distinguishable because the defendants
4  controlled the marketplace in which the NFTs traded or the blockchain on which they
5  were recorded. (Order 14-15.) The TAC, like the SAC, alleges "no similar
6  interconnected scheme." (Order 14.) And *Harper v. O'Neal*, 746 F. Supp. 3d 1360
7  (S.D. Fla. 2024), did not address horizontal commonality—it applied a "broad vertical
8  commonality" test the Ninth Circuit rejects. *Id.* at 1374.

9     **2.    No Strict Vertical Commonality**

10    Here too, Plaintiffs have merely repackaged deficient allegations from the SAC.
11  (Mot. 20-21.) The Court can reject them for this reason alone. Regardless, they are
12  insufficient.

13    For example, Plaintiffs argue that Defendants "retained" some of the Products.
14  (Opp'n 19.) But the Court held these allegations do not link Plaintiffs' and Defendants'
15  fortunes. (Mot. 21; Order 13.) Under Plaintiffs' implausible and baseless theory, artists
16  would be deemed in a "common enterprise" with anyone who purchased their artwork
17  simply by retaining some of their own artwork. Plaintiffs also ignore their own
18  allegation that Defendants profited when Plaintiffs did not, refuting any link. (Mot.
19  21.)

20    Plaintiffs assert that "APE tokens . . . were used" to develop "the Yuga
21  ecosystem." (Opp'n 19.) This is merely a variant of allegations the Court rejected. It

22

---

23  [12] Other cases on which Plaintiffs rely are likewise distinguishable. *SEC v. NAC
24  Found., LLC*, 512 F. Supp. 3d 988, 992, 996 (N.D. Cal. 2021) (issuer pooled investor
   proceeds from initial coin offering to build ecosystem promised in white paper);
   *Hunichen v. Atonomi LLC*, 2019 WL 7758597, at *12-13 (W.D. Wash. Oct. 28, 2019)
25  (similar), *report and recommendation adopted*, 2020 WL 1929372 (W.D. Wash. Apr.
   21, 2020); *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 711 (N.D. Cal. 2024)
26  (defendant promoted token "as an investment that would 'increase in value with the
   increased usage of the Terraform blockchain'"); *SEC v. Wahi*, 2024 WL 896148, at *5
27  (W.D. Wash. Mar. 1, 2024) ("Each token issuer expressly stated an intent to use pooled
   proceeds raised from investors to launch and develop its business and emphasized that
28  token-holders would collectively benefit from their success.").

does not show an "agreement between [P]laintiffs and [d]efendants to 'share profits on a percentage basis'" (Order 16), and says nothing about any other Product.

Finally, Plaintiffs argue that Yuga Labs used proceeds from "creator fees" to build an "ecosystem." (Opp'n 19.) The Court held that these allegations negated, rather than supported, strict vertical commonality because Defendants allegedly "stood to gain even if plaintiffs sold their own NFTs at a loss." (Order 16.)

## C. No Reasonable Expectation of Profits Based on Defendants' Essential Efforts

In the Opposition, Plaintiffs do not defend—and thus abandon—any allegations from the expectation of profits section of the TAC. (Mot. 21-23; Opp'n 20-22; TAC ¶¶ 473-83.) Plaintiffs instead rely on allegations from their investment section that are deficient for the reasons above and in the Motion: the promotions emphasize consumptive and not financial benefits. (Mot. 10-17.)

Plaintiffs incorrectly contend that the TAC alleges "the exact same 'profit based' elements" alleged in *Dapper Labs*. (Opp'n 21.) In *Dapper Labs*, however, the founder publicly promoted his own holdings as "valuable" and touted the NFTs as presenting "younger generations" with "an opportunity to 'benefit financially.'" 657 F. Supp. 3d at 425-26, 443-44. The issuer also promoted NFTs with "stock chart" and "money bags" emojis. *Id.* at 443. Plaintiffs allege nothing of the sort here.

Plaintiffs argue that statements relating to "venture capital backers" led Product purchasers to expect profits. But, as explained above, these announcements disclosed investments in Yuga Labs the company, not the Products, and hence did not promise Product-related profits. (TAC ¶¶ 238, 295-96.) Under Plaintiffs' theory, any third-party investment in a company could lead purchasers of that company's products to have an "expectation of profits"—no matter what consumable goods purchasers bought. Plaintiffs' theory is wrong and would constitute an unsupportable expansion of the federal securities laws.

YUGA LABS DEFENDANTS' REPLY IN
FURTHER SUPPORT OF MOTION TO DISMISS

NO.: 2:22-cv-08909-FMO-PLA

1    Plaintiffs also rely on *Holland v. CryptoZoo Inc.*, 2025 WL 2492970 (W.D. Tex.

2  Aug. 14, 2025), *report and recommendation adopted*, 2025 WL 3028689 (W.D. Tex.

3  Oct. 29, 2025), but that case bears no resemblance to this one. There, creators of digital

4  assets expressly described them as "securities," referred to purchasers as "investors"

5  and purchases as "investing," and told investors that the products would "make

6  [purchasers] money." *Id.* at *1-3, *26-27. No such allegations exist here.

7    Finally, Plaintiffs do not link any (non-existent) expectation of profits to the

8  "essential" efforts of the Yuga Labs Defendants. (Mot. 23.)

9  **III.    <u>CONCLUSION</u>**

10    The Court should dismiss the TAC with prejudice as set forth in the Motion.

11  DATED:  November 20, 2025

12                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13

14                      By:  _____/s/ Peter B. Morrison_____

15                                          PETER B. MORRISON

16                                  *Attorneys for Defendants*
                            Yuga Labs, Inc., Wylie Aronow, Greg Solano,
17                              Nicole Muniz, Patrick Ehrlund,
                              Christopher Lyons, and Guy Oseary

18

19

20

21

22

23

24

25

26

27

28

YUGA LABS DEFENDANTS' REPLY IN                    NO.: 2:22-cv-08909-FMO-PLA
FURTHER SUPPORT OF MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Yuga Labs, Inc., Wylie Aronow, Greg Solano, Nicole Muniz, Patrick Ehrlund, Christopher Lyons, and Guy Oseary, certifies that this brief contains 3,983 words, which complies with the word limit set by Court Order dated September 30, 2025.

DATED:  November 20, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Peter B. Morrison_____
PETER B. MORRISON

*Attorneys for Defendants*
Yuga Labs, Inc., Wylie Aronow, Greg Solano,
Nicole Muniz, Patrick Ehrlund,
Christopher Lyons, and Guy Oseary

YUGA LABS DEFENDANTS' REPLY IN
FURTHER SUPPORT OF MOTION TO DISMISS

NO.: 2:22-cv-08909-FMO-PLA