# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ERIC DE FORD, SANDRA BADER and SHAWN R. KEY,**

       **Plaintiffs,**

v.                                  **Case No: 6:22-cv-652-PGB-DCI**

**JAMES KOUTOULAS and LGBCOIN, LTD,**

       **Defendants.**

_____/

## ORDER

This cause is before the Court upon Defendants James Koutoulas and LGBCoin, LTD's (collectively, the "**Defendants**") Amended Motion for Summary Judgment. (Doc. 477 (the "**Motion**")). Plaintiffs Eric De Ford, Sandra Bader, and Shawn R. Key (collectively, the "**Plaintiffs**") filed a response in opposition. (Doc. 486 (the "**Response**")) and Defendants filed an amended reply. (Doc. 520 (the "**Amended Reply**")). The parties filed a Joint Stipulation of Agreed Material Facts. (Doc. 479 (the "**Joint Stipulation**")).  Upon consideration, the Motion is due to be denied, and partial summary judgment is due to be granted in favor of Plaintiffs pursuant to Federal Rule of Civil Procedure 56(f).

## I.    BACKGROUND

Plaintiffs initiated this class action against Defendants on April 1, 2022 for conduct associated with the creation, marketing, and sale of LGBCoin, a

cryptocurrency.[1] (Doc. 1). Pertinent to the instant Motion, Plaintiffs allege in Count I of their Third Amended Complaint (Doc. 245 (the "**Third Amended Complaint**")) that Defendant James Koutoulas ("**Defendant Koutoulas**") violated Section 12(a)(1) of the Securities Act by offering or selling LGBCoin without filing a registration statement. (*See id.* ¶¶ 369–81); 15 U.S.C. § 77e. Now, Defendants seek summary judgment as to Count I, claiming that LGBCoin is not a security, and that Defendants are not statutory sellers under Section 12(a)(1). (Doc. 477, pp. 4, 32–33). Accordingly, the following synopsis addresses the material facts related to Count I specifically.

LGBCoin was minted on October 27, 2021. (Doc. 479, ¶ 1). LGBCoin was never registered with any federal or state regulatory authority. (*Id.* ¶ 4). After LGBCoin was minted, Defendant Koutoulas drafted the "LGBCoin Trust Agreement" (the "**Trust Agreement**") to transfer LGBCoin "from an unnamed Developer to the LGBCoin 'Foundation wallet.'" (*Id.* ¶¶ 2–3). The Trust Agreement named Koutoulas Law, LLC, which is owned and operated by Defendant Koutoulas, as the trustee of the LGBCoin "Foundation wallet." (*Id.* ¶¶ 5–6). Under the Trust Agreement, Koutoulas Law, LLC had the power to "enter into legal agreements on behalf of all LGBCoins" including promotional agreements and agreements for the "creation and management of decentralized liquidity pool(s)

---

[1] The Court previously outlined the background of cryptocurrency, including how coins are minted and subsequently traded, in its Order on Defendants' Motion to Dismiss. (Doc. 354, pp. 3–6). Thus, for the sake of judicial economy, the factual background on cryptocurrency as stated in the Court's Order on Defendants' Motion to Dismiss is hereby adopted and made part of this Order. (*See id.*).

[.]" (*Id.* ¶ 5). In addition, Koutoulas Law, LLC had the authority to "manage a treasury of LGBCoins that can be traded or sold to pay for the above services" and "organize a non-profit LGBCoin Foundation[.]" (*Id.*). For his work as trustee, Defendant Koutoulas was initially paid 1 trillion LGBCoins. (Doc. 488-2, 24:8–24). Further, pursuant to the Trust Agreement, Defendant Koutoulas, and other purchasers of LGBCoin, had rights that "'[ran] with the tokens' without any further intervention or action[.]" (Doc. 479, ¶ 7).

Following the launch of LGBCoin, in November of 2021, Defendant Koutoulas created and advanced a market and ecosystem for LGBCoin through various social media posts. (*See generally* Doc. 488-7). For example, on the LGBCoin X account, potential purchasers were advised of efforts taken by Defendant Koutoulas to gain national recognition for LGBCoin, such as forming several partnerships with major national media outlets, using influencers, and negotiating a major national sponsorship deal. (*Id.* at p. 36). Specifically, LGBCoin social media accounts highlighted a sponsorship agreement with NASCAR and professional driver, Brandon Brown.  (*Id.* at pp. 38–40, 43–44, 55). Within these social media posts and on the LGBCoin website, Defendant Koutoulas represented LGBCoin as a "digital collectible" that had "no intrinsic value[.]" (*See* Doc. 477-3, 25:4–17; Doc. 488-7, p. 36). From the beginning, Defendant Koutoulas has had approval power for all posts made on the various LGBCoin social media accounts. (Doc. 488-9, 73:17–74:10). Additionally, Defendant Koutoulas was responsible for

negotiating and signing the sponsorship agreement with NASCAR and Brandon Brown. (*Id.* 160:6–161:18).

In January of 2022, the LGBCoin Foundation (the "**Foundation**") was ultimately incorporated, naming Defendant LGBCoin, LTD ("**Defendant LGBCoin**") as its sole director and owner. (Doc. 488-2, 33:4–17, 41:4–8). Defendant Koutoulas was, and is, the sole director of Defendant LGBCoin. (*Id.* 44:1–4; Doc. 488-9, 161:6–18).  Similar to his role as trustee of the LGBCoin "Foundation wallet," Defendant Koutoulas, as sole director of Defendant LGBCoin, had the authority to enter contracts on behalf of the Foundation, make payments from the Foundation's treasury, and give approval for transactions involving the Foundation. (Doc. 488-9, 29:9–14, 31:8–32:7, 32:16–33:15).

In due course, Plaintiffs purchased LGBCoins on cryptocurrency exchanges such as Coinbase and Uniswap. (*See* Doc. 477-3, 23:8–11; Doc. 477-4, 24:5–17; Doc. 477-5, 19:10–22). Plaintiffs converted US dollars into forms of cryptocurrency, like Ethereum, to make these purchases. (*See* Doc. 477-4, 24:5–17; Doc. 477-5, 10:2–20). Plaintiffs purchased LGBCoins consistent with their Private Securities Litigation Reform Act certifications. (Doc. 479, ¶ 14). Plaintiffs did not transact directly with Defendant Koutoulas when purchasing LGBCoin. (*See* Doc. 477-3, 26:15–27:2, 32:7–33:17; Doc. 477-4, 34:23–35:16; Doc. 477-5, 115:3–8). Plaintiffs assert that they viewed these purchases of LGBCoin as investments. (*See* Doc. 469-2, 28:12–20; Doc. 469-3, 108:4–12; Doc. 469-4, 12:22). But Plaintiffs were not promised—either directly from Defendant

Koutoulas or indirectly through social media and internet posts—any profits, dividends, transaction fees, or appreciation on their investment in LGBCoin. (*See* Doc. 477-3, 32:4–24; Doc. 477-4, 34:23–35:12; Doc. 477-5, 74:2–13). Additionally, Plaintiffs assert several non-investment reasons for purchasing LGBCoin, including "fight[ing] back against cancel culture," "help[ing] bring our Conservative party into the 21st century," and "donating to charity." (Doc. 477-9; Doc. 479, ¶ 8; *see also* Doc. 477-3, 23:12–25).

Ultimately, LGBCoin's sponsorship agreement with NASCAR and Brandon Brown fell through, causing Plaintiffs to suffer damages in the form of financial losses. (*See* Doc. 488-7, pp. 45–47; Doc. 403-1, 31:3–8, 83:17; Doc. 403-2, 11:25–12:3). Like Plaintiffs, Defendant Koutoulas equally experienced a decrease in the value of his LGBCoins following the revocation of the NASCAR sponsorship agreement. (Doc. 488-9, 110:13–111:6).

Now, in their Motion, Defendants ask the Court to enter summary judgment in their favor as to Count I, arguing that LGBCoin is not a security, and even if the Court finds it is a security, Defendants are not statutory sellers under Section 12(a)(1). (Doc. 477, pp. 2–3, 5–16). Defendants further contend that the named Plaintiffs do not have standing to sue under Article III or under Section 12(a)(1) because Plaintiffs purchased LGBCoin on "secondary exchanges from unidentified sellers" and not directly from Defendant Koutoulas. (*Id.* at pp. 23–25). For their part, Plaintiffs assert that the Court should grant partial summary judgment in their favor on these issues pursuant to the Court's power under Federal Rule of

Civil Procedure 56(f).[2] (Doc. 486, pp. 1, 11–29); *see also* FED. R. CIV. P. 56(f)
(empowering the Court to grant summary judgment for a nonmovant after
identifying material facts that are not genuinely in dispute).

## II.  LEGAL STANDARD

### A.  Summary Judgment

A court may only "grant summary judgment if the movant shows that there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden
of "citing to particular parts of materials in the record, including depositions,
documents, electronically stored information, affidavits or declarations,
stipulations . . . , admissions, interrogatory answers, or other materials" to support
its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A).
"The burden then shifts to the non-moving party, who must go beyond the
pleadings, and present affirmative evidence to show that a genuine issue of
material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court
need consider only the cited materials" when resolving a motion for summary
judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l
(USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a

---

[2]   In their Amended Reply, Defendants reassert their argument from the Motion to Strike
Plaintiffs' Rule 56(f) Cross-Motion for Summary Judgment (Doc. 493 (the "**Motion to
Strike**") that Plaintiffs' request is "procedurally and substantively flawed." (*Compare* Doc.
493, *with* Doc. 520, pp. 2–3). The Court previously rejected this argument in its Order on the
Motion to Strike. (Doc. 497, pp. 6–8). Accordingly, because the law of the case applies, the
Court is bound by its previous decision and may properly consider summary judgment in favor
of Plaintiffs pursuant to its power under Federal Rule of Evidence 56(f). *Litman v. Mass. Mut.
Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987).

district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs and the arguments raised therein).[3]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). But, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (citations omitted)).

Additionally, under Federal Rule of Civil Procedure 56(f), "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." FED. R. CIV. P. 56(f)(1). Rule 56(f) is a "tool to be used by the Court" when a party did not bring a motion or cross-motion for summary

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

judgment. *See Abreu v. EB & JB Corp.*, No. 14-23266-CIV-LENARD/GOODMAN, 2015 WL 12570946, at *1 (S.D. Fla. Dec. 8, 2015).

### B.    Standing

A plaintiff's standing to bring and maintain a lawsuit is a fundamental component of a federal court's subject matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish standing, Plaintiffs must satisfy Article III's constitutional standing requirements and the statutory standing requirements of Section 12(a)(1). *See Lexmark Int'l, Inc. v. Static Control Components*, Inc., 572 U.S. 118, 125 (2014). As long as one of the named Plaintiffs satisfies the standing inquiry, the lawsuit may proceed. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986).

To establish standing under Article III, the plaintiff—as the party invoking the court's jurisdiction—must prove three elements: (1) that the plaintiff "suffered an injury in fact"; (2) that the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) that the injury "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); and then citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Importantly:

> [s]ince [these elements] are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan*, 504 U.S. at 561 (collecting cases). Accordingly, at the summary judgment stage, a plaintiff cannot rely upon "mere allegations" in order to demonstrate standing. *Id.* Instead, the plaintiff must "submit affidavits or other evidence showing, through specific facts," that the plaintiff has standing to sue. *Id.* at 563.

For statutory standing, Plaintiffs must satisfy a two-pronged standing inquiry. First, Plaintiffs must fall within Section 12(a)(1)'s zone of interest; and second, Plaintiffs must demonstrate that their injuries were proximately caused by Defendants' wrongful conduct. *See Lexmark Int'l, Inc.*, 572 U.S. at 127–28.

## C.     Section 12(a)(1) of the Securities Act

Section 12(a)(1) of the Securities Act of 1933 provides a private right of action against any person who offers or sells a security in violation of § 5 of the Securities Act. 15 U.S.C. § 77l(a)(1). "In order to establish liability under Section 12(a)(1), a plaintiff must prove (1) the defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2021 WL 4134984, at *10 (S.D. Fla. Sept. 10, 2021) (citation omitted).[4]

---

[4]     It appears that the only element of Plaintiffs' Section 12(a)(1) claim at issue in Defendants' Motion and Plaintiffs' Response is whether the Defendants "sold or offered to sell securities[.]" (*See* Doc. 477, p. 2) ("Thus, the issue is simple – LGBcoin is not a security and Plaintiffs' claims fail as a matter of law."). Accordingly, the Court's analysis focuses solely on whether LGBCoin qualifies as a security and whether Defendants are statutory sellers under Section 12(a)(1). *See* discussion *infra* Section III.B.

## III.   DISCUSSION

### A.   Standing

While the Court addressed similar standing arguments in its Order on Plaintiffs' Motion for Class Certification (Doc. 455 (the "**Class Certification Order**")), "standing must also be shown to exist at the summary judgment stage." *Lingard v. Holiday Inn Club Vacations, Inc.*, No. 6:23-CV-323-JSS-RMN, 2025 WL 1993176, at *3 (M.D. Fla. July 17, 2025) (citing *Lujan,* 504 U.S. at 561). Thus, Defendants again challenge the named Plaintiffs' standing to bring the instant action. (*See* Doc. 477, pp. 23–26).

Defendants contest Plaintiffs' constitutional and statutory standing on the grounds that Plaintiffs cannot establish traceability or reliance; that is, Plaintiffs cannot demonstrate the causal connection between their injuries and Defendants' conduct. (*Id.* at p. 24).[5] According to Defendants, "[s]ection 12 require[s] a direct nexus between the defendant and the plaintiff's purchase." (*Id.*). Defendants assert that Plaintiffs have not established this "direct nexus" because Plaintiffs did not have any direct communications with Defendant Koutoulas and could not identify "any advertisements, tweets, statements, or promotional materials from [Defendant] Koutoulas that induced their purchases." (*Id.* at pp. 24–25). Instead, Defendants contend that Plaintiffs purchased LGBCoin on the "open market"

---

[5]  Defendants do not appear to challenge the fact that Plaintiffs suffered injuries-in-fact which are redressable by a favorable ruling from this Court. (*See* Doc. 477, pp. 23–26). Therefore, the Court limits its standing analysis to only the traceability, or causation, prong.

motivated solely by their own personal ideology or speculation, and not by Defendants' conduct. (*Id.* at pp. 24–26).

In their Response, Plaintiffs assert that they have established standing because Defendant Koutoulas "promoted LGBCoin, motivated at least in part by a desire to serve his own financial interest. He was successful, the named Plaintiffs purchased LGBCoin and consequently suffered investment losses, as did the absent Class Members." (Doc. 486, p. 9). Additionally, Plaintiffs highlight that Defendants' reliance on *Securities and Exchange Commission v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308 (S.D.N.Y 2023) and *Gustafon v. Alloyd Co.*, 513 U.S. 561 (1995) is misplaced because both cases fail to address Section 12(a)(1) claims, which is the claim at issue in the instant action. (Doc. 486, pp. 9–10).

Traceability requires "a causal connection" between the plaintiff's injuries and the defendant's legal violation. *Lujan*, 504 U.S. at 560. However, in the standing context, this causation element is "less stringent" than the tort law concept of "proximate cause." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019). "[E]ven harms that flow indirectly from the action in question can be . . . 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). That said, "a plaintiff must at least demonstrate factual causation between his injuries and the defendant's misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (citations omitted); *see also Dep't of Com. v. New York*, 588 U.S. 752, 768

(2019) ("Article III requires no more than *de facto* causality[.]" (citations omitted)).

Viewing the evidence in the light most favorable to the non-movant Plaintiffs, Plaintiffs have adequately demonstrated that their injuries are traceable to Defendants' conduct to satisfy both Article III and statutory standing. Here, Plaintiffs established that they suffered injuries as a result of Defendants' decisions related to the ownership and control of the Foundation, including the promotion of LGBCoin.

Defendant Koutoulas drafted the Trust Agreement leading to the transfer of LGBCoin from an "unnamed Developer to the LGBCoin 'Foundation Wallet[.]'" (Doc. 479, ¶¶ 2–3). Under the Trust Agreement, Koutoulas Law, LLC, which is owned and operated by Defendant Koutoulas, had the power to "enter into legal agreements on behalf of all LGBCoins," "manage a treasury of LGBCoins that can be traded or sold to pay for the above services[,]" and "organize a non-profit LGBCoin Foundation[.]" (*Id.* ¶¶ 5–6). With this power, Defendant Koutoulas could form promotional agreements and agreements for the "creation and management of decentralized liquidity pool[s]" for LGBCoins. (*Id.* ¶ 5). Furthermore, as sole director of Defendant LGBCoin, Defendant Koutoulas had the authority to enter into contracts on behalf of the Foundation, make payments from the Foundation's Treasury, and give approval for transactions involving the Foundation. (Doc. 488-9, 29:9–14, 31:8–32:7, 32:16–33:15). For example, Defendant Koutoulas

negotiated and signed the sponsorship agreement with NASCAR and Brandon Brown. (*Id.* 160:6–161:18).

Based on this evidence, a reasonable juror could conclude that Defendant Koutoulas' decisions to promote LGBCoin through sponsorship agreements and endorsements by major political figures created and influenced the market for LGBCoins. (*See id.* 109:11–110:22). Similarly, a reasonable juror could find that Plaintiffs felt the impact of Defendants' decisions concerning the promotion and sale of LGBCoin by virtue of their ownership of LGBCoins, and subsequently, Plaintiffs suffered damages in the form of financial losses. (*See* Doc. 477-3, 26: 15–21; Doc. 477-4, 85:24–86:4; Doc. 403-1, 31:3–8, 83:17; Doc. 403-2, 11:25–12:3). Accordingly, Plaintiffs have demonstrated standing sufficient to survive summary judgment.

Further, simply because Plaintiffs purchased LGBCoin from an "open market" does not defeat traceability to preclude standing. (Doc. 477, p. 24). Rather, under Section 12(a)(1), Plaintiffs have standing to sue for "the unlawful sale of an unregistered security in an initial offering and *in any subsequent sales*." *Hardin v. TRON Found.*, No. 20-CV-2804 (VSB), 2024 WL 4555629, at *11 (S.D.N.Y. Oct. 23, 2024) (emphasis added); *see also Owen v. Elastos Found.*, No. 1:19-CV-5462-GHW, 2021 WL 5868171, at *9–12 (S.D.N.Y. Dec. 9, 2021) (finding that plaintiffs had standing to sue as to tokens sold on the secondary market). As Plaintiffs correctly contend, Defendants' reliance on *Ripple Labs* and *Gustafson* for their standing argument is misplaced. (*See* Doc. 477, pp. 24–25; Doc. 486, pp. 9–11).

Defendants mischaracterize the court's analysis in *Ripple Labs*. The court in *Ripple Labs* did not hold, as Defendants claim, that "a purchaser who buys on the open market without any connection to the defendant's efforts cannot satisfy the 'reliance' or causation necessary to bring a claim under Section 12." (Doc. 477, p. 24). Rather, the court expressly refused to address whether secondary market sales may constitute investment contracts. *Ripple Labs*, 682 F. Supp. 3d at 329 n.16.[6] Further, as this Court previously noted in its Class Certification Order, *Gustafson* is limited to the context of Section 12(a)(2) claims, and as such, is inapplicable to the instant action brought pursuant to Section 12(a)(1). (Doc. 455, pp. 7–8).

## B. Whether LGBCoin is a Security

### i. SEC Staff Statements

At the outset, the Court writes briefly to address Defendants' argument that the "SEC's Findings and Guidance Confirm LGBcoin is not a security." (Doc. 477, pp. 5–6). In their Motion, Defendants argue that: "[b]ecause the SEC has disclaimed any legal basis to label LGBcoin as a security – first in its publicly published staff statement, and then in a public appellate court stipulation – its expert views confirm that Plaintiffs' theory fails as a matter of law." (*Id.* at p. 6). As the Court has previously noted, Defendants' arguments about the SEC's positions are unconvincing. (*See* Doc. 515, p. 5).

---

[6]   Indeed, the court in *Ripple Labs* noted "[w]hether a secondary market sale constitutes an offer or sale of an investment contract would depend on the totality of circumstances and the economic reality of that specific contract, transaction, or scheme." *See* 682 F. Supp. 3d at 329 n.16.

There was no "Stipulated Order" between the SEC and Defendants pending before the Eleventh Circuit. (*See id.*). Instead, the "Stipulated Order" to which Defendants refer is a release from the SEC attached to a motion from Defendants in the relevant Eleventh Circuit case. (*See* Doc. 486, pp. 12–13 n.12). Notably, the release quotes the Securities Act Release No. 5130 which clarifies that the release "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation." *See* Appellant's Motion to Dismiss at Ex. 1, *Koutoulas v. Secs. & Exch. Comm'n*, No. 24-12376, (11th Cir. Mar. 25, 2025) (quoting Securities Act Release No. 5130).[7]

Further, Defendants rehash their argument from their Motion for Reconsideration on the Motion to Dismiss that the SEC's Staff Statement on meme coins provides guidance for the Court in this case. (*Compare* Doc. 463, p. 4 *with* Doc. 477, pp. 5–6). However, the SEC Staff Statement on meme coins has "no legal force or effect." *See Staff Statement on Meme Coins*, U.S. SECS. & EXCH. COMM'N (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("This statement, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person."); (*see also* Doc. 515, p. 5). Accordingly,

---

[7]  In their Response, Plaintiffs quote the full paragraph from the Securities Act Release No. 5130, which specifies, in relevant part, that "[t]he attempted use of such a communication as a purported defense in any action that might subsequently be brought against the party, either civilly or criminally, would be clearly inappropriate and improper[.]" (*See* Doc. 486, p. 14). As such, the Court finds Defendants' arguments about the importance of this "Stipulation" uncompelling and inappropriate.

while the Court may consider the SEC's position in its "Stipulated Order" and Staff Statement, the Court is not bound by either of these positions. Rather, in ruling on Defendants' Motion, the Court must analyze whether LGBCoin is a security under the canonical *Howey* Test.

ii. *Howey* Test

A threshold issue in federal securities law, and the issue central to Defendants' Motion, is whether the offering in question qualifies as a "security" under § 12(a)(1) of the Securities Act. 15 U.S.C. § 77l(a)(1); (*see also* Doc. 477, p. 2) ("Thus, the issue is simple – LGBcoin is not a security and Plaintiffs' claims fail as a matter of law."). Under the Securities Act, a "security" is defined "in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 847–48 (1975). This definition includes "stock, of course, and, among other things, investment contracts*." Secs. & Exch. Comm'n v. Kirkland*, 521 F. Supp. 2d 1281, 1288 (M.D. Fla. 2007) (citing 15 U.S.C. § 77b(a)(1)). The term "investment contract" "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek to use the money of others on the promise of profits." *Secs. & Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946). An offering is an investment contract if there is: (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to come solely from the efforts of others. *Id.*

While Plaintiffs allege that LGBCoins are "investment contracts" under Section 12(a)(1) and thus subject to securities laws, Defendants assert that Plaintiffs fail to satisfy any of the elements of the *Howey* test. (Doc. 486, pp. 11–25; *see also* Doc. 477, p. 7). Despite the novelty of cryptocurrencies in the realm of securities law, the "investment contract" inquiry remains the same under the *Howey* test. *See, e.g.*, *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1347–48 (S.D. Fla. 2019).

Here, while the first two prongs of the *Howey* test can be resolved in Plaintiffs' favor, the Court finds that a dispute of material fact exists as to the third prong of the *Howey* test. Accordingly, Plaintiffs are entitled to partial summary judgment as to the first two prongs of the *Howey* Test, and neither party is entitled to summary judgment as to the third prong. Thus, Defendants' Motion is due to be denied and the Court declines to rule entirely in favor of Plaintiffs pursuant to Rule 56(f).

### a. *Investment of Money*

The "investment of money" required for an "investment contract" need not be made in cash and refers more generally to "an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses." *Secs. & Exch. Comm'n v. Friendly*, 49 F. Supp. 2d 1363, 1368–69 (S.D. Fla. 1999). An investment of assets, "even if such investments were in the form of cryptocurrencies such as Ether and/or Bitcoin, would satisfy the

'investment of money' prong for an investment contract." *Hodges*, 372 F. Supp. 3d at 1348.

Here, Plaintiffs purchased LGBCoins through various exchanges by converting US dollars into forms of cryptocurrencies, like Ethereum. (*See* Doc. 477-4, 24:5–17; Doc. 477-5, 10:2-20). For the "investment of money" prong of the *Howey* test, this is sufficient.[8] *See Hodges*, 372 F. Supp. 3d at 1348 ("The 'investment of money' required for an 'investment contract' need not be made in cash"). Accordingly, there is no dispute of material fact as to the first prong of the *Howey* test, and this prong is satisfied by Plaintiffs' evidence. Therefore, the Court will grant Plaintiffs summary judgment as to this element.

### b. In a Common Enterprise

"[A] common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties.'" *Secs. & Exch. Comm'n v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (citation omitted). "The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary

---

[8]  In their Motion, Defendants argue that investments must "reflect a passive contribution of capital into a business venture with the expectation of return." (Doc. 477, p. 7). Defendants' argument, however, goes toward the third prong of the *Howey* test, which analyzes whether investors were led to expect an increase in value or return on their investment. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 355 (S.D.N.Y. 2019) (finding that the third prong of the *Howey* test had been satisfied where "purchasers of ATB Coins reasonably believed that those coins would increase in value based primarily on Defendants' entrepreneurial and managerial efforts."); *Harper v. O'Neal*, 746 F. Supp. 3d 1360, 1375 (S.D. Fla. 2024) ("In order to satisfy the third prong of *Howey*, investments must be substantively passive and depend on the 'entrepreneurial or managerial efforts of others.'" (citation omitted)). Accordingly, the Court will address Defendants' argument in its discussion on Plaintiffs' expectation of profits. *See infra* Section III.B.iii.

for a return" and so must rely on the work of others after handing over their assets. *Eberhardt v. Waters*, 901 F.2d 1578, 1580–81 (11th Cir. 1990). "In the Eleventh Circuit, a common enterprise may be established through either vertical or horizontal commonality." *Alunni v. Dev. Res. Grp., LLC*, No. 6:08-CV-1349-ORL-31DAB, 2009 WL 2579319, at *7 (M.D. Fla. Aug. 18, 2009), *aff'd*, 445 F. App'x 288 (11th Cir. 2011).

"If the investors' money is tied to the efforts and success of someone else—whether it be the promoter or a third party—vertical commonality is present in the scheme." *Kirkland*, 521 F. Supp. 2d at 1292. Indeed, the vertical commonality inquiry "largely overlaps with *Howey's* final prong." *Id.* For horizontal commonality, the success of investors is "tied to one another and the 'success of the overall venture.'" *ATBCOIN LLC*, 380 F. Supp. 3d at 353 (quoting *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994)). While this typically requires pooling of funds, horizontal commonality may be established in the context of cryptocurrency where investors are led to believe that as more individuals begin using the cryptocurrency, the value of their cryptocurrency will increase. *Id.* at 354; *see also Revak*, 18 F.3d at 87 ("In a common enterprise marked by horizontal commonality, the fortunes of each investor depend on the profitability of the enterprise as a whole[.]"). In determining whether a common enterprise exists, the Eleventh Circuit "does not require investor funds to be pooled nor does it require profits to be shared on a pro rata basis." *Unique Fin. Concepts, Inc.*, 196 F.3d at 1200 n.4.

Defendants argue that no common enterprise exists because Plaintiffs establish neither horizontal commonality nor vertical commonality. (*See* Doc. 477, pp. 9–12). Specifically, Defendants assert that "LGBcoin holders did not invest into a common pool or share pro-rata in any profits" and "received no equity interest, revenue rights and or claims against the LGBcoin Foundation." (*Id.* at pp. 10–11). However, the Eleventh Circuit does not require such a stringent test for a common enterprise to exist. *See Unique Fin. Concepts, Inc.*, 196 F.3d at 1200 n.4.

Here, while Plaintiffs did not invest in a common pool or share pro-rata in profits, Plaintiffs' "fortunes were interwoven with" the fortune of Defendant Koutoulas. *Id.* at 1195. For starters, Defendant Koutoulas personally owned LGBCoin, initially holding 1 trillion LGBCoins. (Doc. 488-2, 24:12–24). Thus, Defendant Koutoulas' personal interests were intimately aligned with those of LGBCoin investors, as any increase or decrease in the value of LGBCoin would be felt by Defendant Koutoulas and investors alike. (*See* Doc. 488-9, 110:13–22); *see also United States v. Kane*, No. 23-CR-20172-KMW, 2023 WL 8277602, at *3 (S.D. Fla. Nov. 30, 2023) (concluding that a reasonable jury could find a common enterprise when Defendants retained control over most minted tokens, thus aligning their interests with investors); *In re Ripple Labs, Inc. Litig.*, No. 18-CV-06753-PJH, 2024 WL 3074379, at *8 (N.D. Cal. June 20, 2024) (finding that a common enterprise existed where "the success of [Defendant] Ripple and the success of XRP are tightly tied."). For example, when NASCAR revoked its

sponsorship agreement with LGBCoin, Plaintiffs and Defendant Koutoulas equally experienced a decrease in the value of their LGBCoins. (Doc. 488-9, 110:13–111:6).

Additionally, Plaintiffs' rights "'[ran] with the tokens' without any further intervention or action from the coin purchaser." (Doc. 479, ¶ 7). Thus, Plaintiffs "had little to no control over the success of the endeavor or the future of their investments." *Kirkland*, 521 F. Supp. 2d at 1292. Instead, the profitability of Plaintiffs' LGBCoins depended on the successful "launch of the token and the post-launch development and expansion of the token's ecosystem." *Sec. & Exch. Comm'n v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 291 (S.D.N.Y. 2024), *motion to certify appeal granted*, 761 F. Supp. 3d 702 (S.D.N.Y. 2025); *see also U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 179 (S.D.N.Y. 2020) (noting that a "key feature" of horizontal commonality is "that investors' profits at any given time are tied to the success of the enterprise."). This LGBCoin ecosystem was created and advanced by Defendant Koutoulas through posts on the LGBCoin website and on various social media accounts. (*See* Doc. 488-7, pp. 41–42; Doc. 379-3, p. 12 (showing Defendant LGBCoin sent the "Official LGB Coin smart contract" to buyers in a group chat on November 5, 2021)). On the LGBCoin X account, buyers were advised of efforts taken by Defendant Koutoulas to gain national recognition for LGBCoin, including forming partnerships with major national media outlets, using influencers, and negotiating a major national sponsorship deal. (Doc. 488-7, p. 36; *see also* Doc. 488-9, 73:17–74:10). These

social media efforts drove interest in LGBCoin, thereby expanding the market for potential buyers. (Doc. 477-3, 21:23–22:12; Doc. 477-5, 31:8–16).

Because Defendant Koutoulas' personal interest in LGBCoin aligns with the Plaintiffs' interests and because the value of Plaintiffs' LGBCoin is tied to the success of the LGBCoin market as a whole, a common enterprise exists. Thus, under the Eleventh Circuit's more "flexible standard" for the common enterprise prong of *Howey*, there is no dispute of material fact as to this element and Plaintiffs have satisfied their evidentiary burden. *See Unique Fin. Concepts, Inc.*, 196 F.3d at 1200 n.4. Accordingly, the Court will grant summary judgment in favor of Plaintiffs as to this second prong of *Howey*, finding that a common enterprise exists.

> ### c. With the Expectation of Profits to Come Solely from the Efforts of Others

The third prong of the *Howey* test considers whether the purchasers of an alleged security had an "expectation of profits derived solely from the efforts of others." *Unique Fin. Concepts, Inc.*, 196 F.3d at 1199 (citation omitted). In the Eleventh Circuit, the third prong analysis typically hinges on "'whether the efforts made by those other than the investor are undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *Id.* at 1201 (quoting *Secs. & Exch. Comm'n v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)). Yet, this inquiry presupposes that the consumer of an alleged security already held an "expectation of profits." This is not always the

case. Indeed, some courts in the Eleventh Circuit have split the "expectation of profits" element into two separate inquiries: (1) whether purchasers had an expectation of profits and (2) whether that expectation of profits derived solely from the efforts of others. *See, e.g.*, *Secs. & Exch. Comm'n v. ETS Payphones, Inc.*, 408 F.3d 727, 731–32 n.1 (11th Cir. 2005); *Harper*, 746 F. Supp. 3d at 1375–76. Here, because Defendants split up the third prong by challenging (1) whether Plaintiffs ever had a reasonable expectation of profits and (2) whether Plaintiffs relied on the managerial efforts of Defendants, the Court finds it appropriate to use this two-step approach. (*See* Doc. 477, pp. 12–14).

"To determine whether a transaction satisfies the 'expectation of profits' element, the Supreme Court has instructed [courts] to examine if an investor 'is attracted solely by the prospects of a return on his investment,' as opposed to when 'a purchaser is motivated by a desire to use or consume the item purchased.'" *Fedance v. Harris*, 1 F.4th 1278, 1288 (11th Cir. 2021) (quoting *United Hous. Found., Inc.*, 421 U.S. at 852–53). In the Eleventh Circuit, courts "look at both the motivations of the purchasers and the promotional materials associated with the offer and sale at issue." *Id.*

In their respective depositions, Plaintiffs asserted that they viewed LGBCoin as "an investment." (*See* Doc. 469-2, 28:12–20; Doc. 469-3, 108:4–12; Doc. 469-4, 12:22). Plaintiffs' subjective intent, however, is not determinative for the expectation of profits analysis. *See Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 374 (S.D.N.Y. 2020) (noting that the "stated intent" of

purchasers is simply a consideration for the Court when evaluating "the motivations of a hypothetical reasonable purchaser."). While this fact cuts in favor of Plaintiffs' argument, Plaintiffs also expressed significant non-investment reasons for obtaining LGBCoin, such as "fight[ing] back against cancel culture," "help[ing] bring our Conservative party into the 21st century," and "donating to charity." (*See* Doc. 477-3, 23:12–24; Doc. 477-9; Doc. 479, ¶ 8). Additionally, Plaintiffs were not promised—either directly from Defendant Koutoulas or indirectly through social media and internet posts—any profits, dividends, transaction fees, or appreciation on their investment in LGBCoin. (*See* Doc. 477-3, 32:4–24; Doc. 477-4, 34:23–35:12; Doc. 477-5, 74:2–13). Indeed, none of the named Plaintiffs directly communicated with Defendant Koutoulas when they purchased LGBCoin. (*See* Doc. 477-3, 26:15–27:2, 32:7–33:17; Doc. 477-4, 34:23–35:16; Doc. 477-5, 115:3–8).

Further, Defendants' promotional materials would not conclusively lead a reasonable purchaser to expect a profit from their investment in LGBCoin. Where the promotional materials "do not emphasize the investment value" of the alleged security, the expectation of profits prong of *Howey* is not satisfied. *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 791 (11th Cir. 1991). Here, Defendants' promotional materials for LGBCoin did not necessarily "emphasize the investment value of [LGBCoins]" such that Plaintiffs or other investors would expect a profit. *Id.* Notably, the LGBCoin website explicitly stated:

> LGBCoin is a ERC-20 Digital 12 Collectible on the Ethereum Blockchain that allows owners to digitally voice their support

> for America. LGBCoin has no intrinsic value and you should
> not purchase it with any expectation that you will be able to
> resell it. Please do not spend money that you cannot afford.

(*See* Doc. 477-3, 25:4–17). Similarly, on the LGBCoin X account, Defendant Koutoulas reiterated the fact that LGBCoin "is a digital collectible and digital way to express your support for the Let's Go Brandon movement[.]" (Doc. 488-7, p. 36). Neither of these statements emphasize the investment value of LGBCoin.

Moreover, although posts on the LGBCoin Instagram and X accounts highlighted a future sponsorship agreement with NASCAR and other potential partnerships with influencers and major national media outlets, these posts would not objectively lead a "hypothetical reasonable purchaser" to expect profits. (*See* Doc. 488-7); *see also Telegram Grp. Inc.*, 448 F. Supp. 3d at 374. Instead, Defendant Koutoulas' social media posts could be interpreted as either promoting LGBCoin as an investment or, as Defendants assert, promoting LGBCoin as a "meme coin" for "charitable and political advocacy." [9] (Doc. 477, pp. 12, 14–16).

---

[9]   In support of their argument that LGBCoin is a "meme coin" rather than a security, Defendants cite to several cases which the Court believes are hallucinated from Artificial Intelligence. (*See* Doc. 477, pp. 15–16 (first citing *In re Dogecoin Securities Litigation*, No. 23-cv-03984, 2024 WL 3409758 (S.D.N.Y. June 24, 2024); and then citing *In re Shiba Inu Securities Litigation*, 2024 WL 2978901 (S.D.N.Y. May 15, 2024)). The Court, through its independent research, was unable to locate either of Defendants' cited cases. For example, when the Court searched the case number provided by Defendants for *In re Dogecoin Securities Litigation* on the Southern District of New York's PACER website, the Court found an entirely unrelated case asserting violations of the Americans with Disabilities Act and 42 U.S.C. §1983. *See* Complaint, *J.R. v. N.Y.C. Dep't Educ.*, No. 23-cv-03984 (S.D.N.Y. May 15, 2023), ECF No. 4. Furthermore, in their Response, Plaintiffs point out an additional hallucinated case in Defendants' Motion. (*See* Doc. 486, p. 25 n.21 (referencing Defendants' citation to *In re Uniswap Labs Litigation*, 2023 WL 3478680 (S.D.N.Y. May 16, 2023))). Although Defendants had the opportunity to dispute Plaintiffs' allegations of "AI hallucination" in their Amended Reply, Defendants fail to address, let alone deny, these allegations. (*See* Doc. 520). The Court cautions Defendants that citing to cases that do not exist is a misrepresentation to the Court and is sanctionable under Federal Rule of Civil

The facts here are distinguishable from cases in which courts found that marketing and promotional materials clearly articulated profit-driven outcomes to potential consumers. *See, e.g.*, *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 442–46 (S.D.N.Y. 2023) (determining that the defendants' social media posts promoting recent sales with the "'rocket ship emoji, 'stock chart' emoji, and 'money bags' emoji" objectively suggested a financial return on investment); *Harper*, 746 F. Supp. at 1376 (finding that consumers had an "investment intent rather than a consumptive intent" where defendants partnered with a venture capital firm and posted a whitepaper advertising that their products "will be among some of the highest sought after on the market."); *In re Ripple Labs, Inc. Litig.*, 2024 WL 3074379, at *9 (declining to find as a matter of law that defendants' conduct would not have led a reasonable investor to have an expectation of profits where defendants expressly stated that part of their mission was to "realize an 'Internet of value'").

Accordingly, there is a genuine dispute of material fact as to the third prong of the *Howey* test and neither party is entitled to judgment as a matter of law for this element. Specifically, there is a dispute over whether Defendants' promotional materials for LGBCoin attracted Plaintiffs with an expectation of profits or motivated Plaintiffs by a desire to obtain LGBCoin as a meme coin for advocacy of

---

Procedure 11(c). Moreover, such conduct violates the Local Rules and the rules of professional conduct. *See* Local Rule 2.02(b)(2)(c); Local Rule 2.01(e); Florida Bar Rule 4-1.1; Florida Bar Rule 4-3.3; Florida Bar Rule 4-8.4. Consequently, if Defendants continue to use such unethical practices in later briefings, the Court may impose appropriate sanctions against Defendants.

conservative values. Because a profit-driven intent is a requirement to satisfying the third prong of the *Howey test,* the Court need not move to the second step and evaluate whether Plaintiffs derived an expectation of profits solely from Defendants' managerial and promotional efforts.

As such, although Plaintiffs have established the first two prongs of the *Howey* test, neither party is entitled to summary judgment as to whether LGBCoin is a security.[10]

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Amended Motion for Summary Judgment (Doc. 477) is **DENIED**.

2.  Plaintiffs' request for summary judgment pursuant to Federal Rule of Civil Procedure 56(f) (Doc. 486) is **GRANTED IN PART** and **DENIED IN PART**.

    a.  The Court **GRANTS** partial summary judgment to Plaintiffs as to the following elements:

        i.  Plaintiffs' payment for LGBCoin constitutes an "investment of money" under the *Howey* test; and

---

[10] In light of the Court's conclusion that a genuine dispute of material fact exists as to the third prong of the *Howey* test, the Court cannot find as a matter of law that LGBCoin is a security. Accordingly, the Court does not need to determine whether Defendant Koutoulas is a statutory seller under Section 12(a)(1). This question is to be addressed by the jury when it considers whether LGBCoin is a security.

    ii.  The sale and purchase of LGBCoin constitutes a "common enterprise" under the *Howey* test.

  b.  Plaintiffs' request for summary judgment pursuant to Federal Rule of Civil Procedure 56(f) (Doc. 486) is **DENIED** in all other respects.

**DONE AND ORDERED** in Orlando, Florida on December 2, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties